**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| THOMAS BUCHANAN, on behalf of himself and all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIV. A. NO. 3:17-cv-00728-D |
| SIRIUS XM RADIO, INC. | § § § | |
| Defendant. | § | |

**MOTION FOR SIXTY DAY EXTENSION OF THE DEADLINE TO FILE
MOTION FOR CLASS CERTIFICATION**

Plaintiff Thomas Buchanan, on behalf of himself and all others similarly situated, respectfully moves this Court to extend the deadline to file a motion for class certification for sixty (60) days.  Defendant informed Plaintiff just last night that intends to produce today additional documents not previously produced in discovery.  These documents include, *inter alia*, a so called "White Paper" that describes Defendant's arguments regarding the issue of whether it had a prior business relationship with the people it made telemarketing calls to, a central defense to Plaintiff's claim that such calls violated the Telephone Consumer Protection Act.  Defendant had this document for months and simply chose to withhold production until just now.  Given that Plaintiff's motion for class certification is due tomorrow, and that these are documents that Plaintiff anticipates Defendant will use in its opposition, Defendant's actions smack of obvious gamesmanship.  Defendant's litigation by ambush tactics are entirely unwarranted and have forced Plaintiff to make this motion in order to ensure the completion of all discovery warranted based on these newly produced documents and to he is not unduly prejudiced in his ability to properly present the class certification motion.

I.    **Background**

This class action concerns Plaintiff's claim that Defendant has systematically and repeatedly violated the Telephone Consumer Protection Act by, *inter alia*, making telemarketing calls to individuals who have registered with either the national do-not-call list, or placed their telephone numbers on Defendant's own internal do-not-call list.  (Dkt. 1 at ¶ 1.)

On August 1, 2017, the Court entered a Scheduling Order which, among other things, set the deadline to file a motion for class certification no later than October 16, 2017 (the "Scheduling Order").  (Dkt. 28.)  Plaintiff served its First Request for Production of Documents and First Set of Interrogatories on Defendant on August 7, 2017.   Initially, Defendant's responses were due September 6, 2017, but at Defendant's request, Plaintiff granted Defendant an additional week to respond.  Given this extension, on September 11, 2017, the Court granted and entered the parties' agreed motion extending the deadline for filing the certification motion to October 23, 2017.  (Dkt. 30.)

Defendant served its responses and objections to Plaintiff's discovery requests on September 13, 2017.   Nevertheless, at that time Defendant did not produce any documents responsive to Plaintiff's request.  Instead, on September 25, 2017 the parties met and conferred regarding Defendant's discovery requests.   Thereafter, Defendant continued to object to producing most of the documents Plaintiff requested.  Through letters, emails and phone calls, the parties continued to negotiate the proper scope of discovery through October and November. (Exs. 1 - 3.)[1]

Given that Defendant had yet to produce any documents, the parties made a joint request to the court to extend Plaintiff's deadline for filing its class certification motion.  In an order

---

[1] References to Ex. are to the exhibits to the Declaration of Jarret Ellzey, which is being filed simultaneously with this motion.

entered on October 24, 2017, the Court granted the parties' agreed to motion, extending the deadline for filing the certification until January 12, 2018, and extending other deadlines set in the Scheduling Order.  (Dkt. 34.)

Among other objections, Defendant insisted that Plaintiff agree to an unusual and onerous protective order.  Defendant insisted that the protective order must include a provision whereby anyone receiving any "private personal information" (which Defendant claims includes such common information as an individual's name, phone number, or address), agree to employ stringent digital data protection procedures, to limit who can see the data, and that anyone receiving the data agree to *personally* indemnify Defendant if any of the data is hacked, stolen or in any way misused.  (Ex. 4 pp. 26-28 ¶¶ 5, 6, 7.)  These highly unusual provisions, especially the requirement that data recipients like Plaintiff's counsel and its vendors agree to unlimited personal liability should anything go wrong, were entirely unacceptable to Plaintiff.  Plaintiff proposed several alternative ways of protecting Defendant's data, but these were rejected by Defendant.

Defendant eventually made its first production of documents on November 14, 2017, but only after Plaintiff agreed in writing that it would treat certain of Defendant's agreements with its telemarketing vendors as attorneys-eyes-only material pending execution of the final protective order.  (Ex. 5.)  Over the following two weeks, Defendant produced over 2,000 pages of documents, making its final production on December 1, 2017.  Following this production, Defendant did not state that it had any other additional non-confidential documents it intended to produce.

At the same time, Plaintiff responded to Defendant's requests for production and interrogatories. Plaintiff produced numerous responsive documents, making its final supplemental production on December 12, 2017.

Throughout December, the parties continued to negotiate the terms for the protective order, both over email and on the phone. Despite Plaintiff's objections, Defendant insisted on inclusion, *inter alia*, of the stringent data protection requirements and the personal indemnification provisions. Plaintiff offered to agree to the data protection requirements (despite the significant cost it would impose), if Defendant would agree to drop the indemnification demands. Plaintiff made this request because, *inter alia*, the one vendor that Plaintiff identified who could meet the stringent security requirements at a reasonable cost refused to agree to the indemnification. Nevertheless, Defendant rejected this offer.

On December 13, 2017, Defendant suggested that it not produce any documents with personal private information, which again included any documents with customer names, and that the parties agree to a simple protective order. Again, however, Defendant did not state that it had additional non-confidential documents it was withholding and still intended to produce.

In response, Plaintiff suggested that it could only agree to drop its demand for documents with so called personal information (such as Defendant's telemarketing call logs and its internal do-not-call list) if Defendant would agree to stipulate to certain elements of Rule 23 that Plaintiff is required to establish in its motion for class certification (e.g., numerosity, commonality, and ascertainability). If Defendant did not agree to these stipulations, Plaintiff stated that it would need to move to compel production of certain documents such as the call logs pursuant to a standard court ordered protective order.

On January 2, 2018, Defendant agreed to stipulate only to numerosity, but continued to refuse to produce any call logs or its internal do-not-call list.  Following continuing discussions, the parties agreed that Plaintiff could state in its class certification motion that Defendant has the call logs, which can be produced following class certification, and provide a description of the data fields in those logs.  One of Plaintiff's issues since at least October was that in addition to producing phone numbers, Plaintiff also required Defendant to produce the names of the individuals it called.  (Ex. 2 at p. 2; Ex. 3 at p. 2.)  Therefore, if Plaintiff was going to agree to not move to compel production of the call logs and internal do not call list, it told Defendant that it needed to know it was possible after class certification for Defendant to match the phone numbers in the logs to names and addresses of the individuals called.

In order to allow Defendant time to look into this inquiry, the parties agreed to a two-week extension of Plaintiff's deadline to file his class certification motion.  On January 9, 2018, the court granted the parties' agreed to motion, setting the new deadline for class certification to January 26, 2018.  (Dkt. 36.)  Again, when agreeing to this extension, Defendant failed to state that it still had non-confidential documents it intended to produce.

On January 18, 2018, Defendant responded to Plaintiff's request regarding matching individuals' names with their phone numbers, stating that it was possible and could be produced following class certification.  However, even during this last communication, sent just a week before the class certification deadline, Defendant still did not state that it was withholding additional documents that it still intended to produce.

It was not until January 24, 2018, at 6:02 P.M., that Defendant's counsel informed Plaintiff's counsel in an email that she wanted "to give you a heads up that a production of additional non-confidential documents will be coming tomorrow.   We of course have other

documents to produce once we address/resolve confidentiality." (Ex. 6.) This was the first time that Defendant stated that it intended to produce additional non-confidential documents.

In her email, Defendant's counsel stated that these documents include "a few documents related to marketing mailings" Defendant sent to Plaintiff. She also stated that they would be producing a "White Paper" that it had described in its interrogatory responses as having been "prepared for the New York Department of State, Division of Consumer Protection, regarding Sirius XM's established business relationship with its subscribers." (Ex. 6.)

In addition to these non-confidential documents that Defendant chose to withhold until the last moment, Defendant's counsel also identified several categories of documents that it was withholding based on the need for a confidentiality agreement. Even though Plaintiff was aware that Defendant was withholding a few documents based on the need for a protective order, the January 24, 2018 email was the first time Defendant identified the scope of what it was withholding. For example, as noted, in November the parties entered into an attorneys-eyes-only agreement regarding Defendant's contracts with its telemarketing vendors. (Ex. 6.) Nevertheless, in her January 24th email, Defendant's counsel stated for the first time that it had withheld additional confidential "service agreements with telemarketing vendors."

## II.  Argument

Any analysis of a party's discovery tactics must "start with the proposition that discovery together with pretrial procedures make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616 (5th Cir. 1977) (internal quotations omitted); *Dresser-Rand Co. v. Schutte & Koerting, Acq. Co.*, CV H-12-184, 2017 WL 1650204, at *3 (S.D. Tex. May 2, 2017) (same). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Dollar*, 561 F.2d at 616. Federal courts adhere "to a policy of liberal, open,

and forthright discovery and will not tolerate gamesmanship." *ReedHycalog UK, Ltd. v. United Diamond Drilling Services, Inc.*, 6:07 CV 251, 2008 WL 11348342, at *1 (E.D. Tex. Oct. 3, 2008)   As a result, there is near universal agreement that a Court should "not tolerate gamesmanship that attempts to conceal or delay the production of discoverable items." *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 756 (E.D. Tex. 2004).

Under the Scheduling Order, the Court can modify deadlines "upon a showing of good cause." (Dkt. 28.)   Unquestionably, Defendant's actions in intentionally refusing to produce highly relevant non-confidential documents until the very last minute represents good cause for an extension.   Absent an extension, Plaintiff will be prejudiced by Defendant's late production because Plaintiff will not have the time to review such documents and either conduct additional discovery that results from these newly produced documents and/or incorporate such documents into its motion.   If Plaintiff is forced to move forward now with its class certification motion Defendant will be rewarded for paying a game of hide the ball from Plaintiff.   *See Smith v. WNA Carthage, L.L.C.*, 200 F.R.D. 576, 579 (E.D. Tex. 2001) ("the Federal Rules will not allow [a party] to hide the ball").

Defendant states that it had previously "identified" to Plaintiff most of the documents it is producing, either in Defendants' interrogatory responses or in letters in October.   But that fact only makes more evident the bad faith Defendant engaged in when it decided to willfully withhold production of these documents.   The fact that Plaintiff was aware of these documents, which Defendant admits are relevant and responsive to Plaintiff's requests and which it said it would produce, does not absolve Defendant of its obligation to produce the documents.   Simple awareness of the documents does not impart to Plaintiff the knowledge contained in those documents or of the documents' significance.

The last-minute documents Defendant is producing are clearly important to its case; otherwise, why would it seek a tactical advantage by waiting to produce them?  For example, Plaintiff anticipates that one of Defendant's arguments against class certification will be that it had a pre-existing business relationship with the class members.  As a result, Defendant's decision to knowingly withhold production of its own White Paper regarding that precise issue, a document it may use in its opposition, is blatant gamesmanship intended to deprive Plaintiff of an opportunity to adequately evaluate such information prior to making its motion.  Likewise, the newly produced documents that Defendant mailed to Plaintiff will almost certainly affect how Defendant opposes class certification, including Plaintiff's adequacy as a class representative.  Similarly, Defendant's revelations regarding the scope of the documents it is withholding on confidentiality grounds will likely lead Plaintiff to reevaluate its stance regarding the protective order in this case.

Timely production of any of these documents may have lead Plaintiff to seek additional discovery or to alter its class certification arguments.  But, here Defendant is attempting to rob Plaintiff of the opportunity to do so by holding onto these documents until it was too late for Plaintiff to act.  This is not a case where Defendants claim prior ignorance about the documents it is producing, instead Defendant admits that it knew about documents, such as the White Paper for months.  It simply chose to withhold production of documents it may intend to use to oppose Plaintiff's motion for class certification in order to gain a tactical advantage.  Plaintiff should now be given the opportunity that Defendant stole from it, he should be given the time needed to review the documents and conduct any additional discovery necessary.

Plaintiff is simply seeking time to review what is being produced, ensure that there is nothing else that Defendants need to produce, and to conduct any additional discovery that

results from Defendant's last-minute production.  Defendant's "disregard for the federal rules of discovery in this area created a 'trial by ambush' which those rules are designed to prevent."  *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5th Cir. 1978).  "The rules are designed to narrow and clarify the issues and to give the parties mutual knowledge of all relevant facts, thereby preventing surprise," instead Defendant's actions have gone against the spirit of fairness and forthrightness that are at the heart of the discovery process.  *Id.*

For these reasons, we ask that the court extend Plaintiff's deadline to file a motion for class certification until March 27, 2018, set Defendant's date to file an opposition to the motion to May 28, 2018, and Plaintiff's date to file a reply to June 26, 2018.

In addition, this extension will necessitate extending certain other deadlines in the Scheduling Order.  Therefore, the parties ask that:

a.       the deadline to designate expert witnesses and otherwise comply with Rule 26(a)(2), as described in Paragraph B of the Scheduling Order, be extended to June 11, 2018;

b.       the deadline for rebuttal expert witness reports, as described in Paragraph C of the scheduling order, be extended to July 20, 2018;

c.       the deadline for completion of discovery, filing of joint estimate of trial length and status reports, as described in Paragraph E of the Scheduling Order, be extended to September 10, 2018;

d.       the deadline for filing summary judgment motions, as described in Paragraph F of the Scheduling Order, be extended to August 20, 2018; and

e.       the deadline for filing motions not otherwise covered, as described in Paragraph H of the Scheduling Order, be extended to October 19, 2018.

This is the fourth request for an extension of time to file a motion for class certification; however, this is the first time Defendant has opposed the relief sought.

Plaintiff submits that the relief requested herein is for good cause and will not result in undue delay in the administration of this case.

WHEREFORE, for the reasons set forth in this Motion, Plaintiff respectfully requests that the Court enter an order extending the deadlines as described above.

Respectfully submitted this 25rd day of January, 2018.


*/s/  Jarrett L. Ellzey*
W. Craft Hughes
Texas Bar No. 24046123
Craft@hughesellzey.com
Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@hughesellzey.com
HUGHES ELLZEY, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone:  (713) 554-2377
Fax:  (888) 995-3335

Henry A. Turner (*pro hac vice*)
hturner@tloffices.com
403 W. Ponce de Leon Ave., Ste. 207
Decatur, Georgia 30030
Phone:  (404) 378-6274
TURNER LAW OFFICES, LLC

Aaron Siri (*pro hac vice*)
aaron@sirillp.com
200 Park Ave., 17th Floor
New York, New York 10166
Phone: (212) 532-1091
SIRI & GLIMSTAD LLP

Douglas M. Werman (*pro hac vice*)
dwerman@flsalaw.com
77 West Washington, Ste. 1402

Chicago, Illinois 60602
Phone:  (312) 419-1008
WERMAN SALAS PC

Mark A. Alexander
Texas Bar No. 01007500
5080 Spectrum, Ste. 850E
Addison, Texas 75001
Phone:  (972) 364-9700
Mark@markalexanderlaw.com
MARK ALEXANDER P.C.
*Attorneys for Plaintiff*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1, I hereby certify that on January 24, 2018, counsel for Plaintiff and counsel for Defendant conferred regarding the content of the motion, and the Defendant refused to agree to the extension sought herein because it did not think such an extension was necessary.

/s/ *Jarrett L. Ellzey*
Jarrett Elzey

## CERTIFICATE OF SERVICE

I certify that on January 25, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all ECF registrants in this action.

/s/  *Jarrett L. Ellzey*
Jarrett Elzey