IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS BUCHANAN, on behalf of himself and all others similarly situated, | § § § | |
| Plaintiff, | § § | Civil Case No. 3:17-cv-00728-D |
| v. | § § | |
| SIRIUS XM RADIO, INC. | § § | |
| Defendant. | § § | |

**DECLARATION OF JARRETT ELLZEY IN SUPPORT OF
MOTION FOR SIXTY DAY EXTENSION OF THE DEADLINE TO FILE
<u>MOTION FOR CLASS CERTIFICATION</u>**

Pursuant to 28 U.S.C. § 1746, I declare as follows:

1. My name is Jarrett Ellzey.

2. I am over twenty-one years of age.

3. I am fully competent to make the statements included in this declaration.

4. I have personal knowledge of the statements included in this declaration.

5. I am a partner at Hughes Ellzey, LLP ("Hughes Ellzey").

6. I am counsel for Thomas Buchanan ("Buchanan") and the class in this matter.

7. I submit this declaration in support of Plaintiff's Motion For Sixty Day Extension Of The Deadline To File Motion For Class Certification.

8. This class action concerns Plaintiff's claim that Defendant has systematically and repeatedly violated the Telephone Consumer Protection Act by, inter alia, making telemarketing calls to individuals who have registered with either the national do-not-call list, or placed their telephone numbers on Defendant's own internal do-not-call list. (Dkt. 1 at 1.)

9. On August 1, 2017, the Court entered a Scheduling Order which, among other things, set the deadline to file a motion for class certification no later than October 16, 2017 (the "Scheduling Order"). (Dkt. 28.) Plaintiff served its First Request for Production of Documents and First Set of Interrogatories on Defendant on August 7, 2017. Initially, Defendant's responses were due September 6, 2017, but at Defendant's request, Plaintiff granted Defendant an additional week to respond. Given this extension, on September 11, 2017, the Court granted and entered the parties' agreed motion extending the deadline for filing the certification motion to October 23, 2017. (Dkt. 30.)

10. Defendant served its responses and objections to Plaintiff's discovery requests on September 13, 2017. Nevertheless, at that time Defendant did not produce any documents responsive to Plaintiff's request. Instead, on September 25, 2017 the parties met and conferred regarding Defendant's discovery requests. Thereafter, Defendant continued to object to producing most of the documents Plaintiff requested. Through letters, emails and phone calls, the parties continued to negotiate the proper scope of discovery through October and November. Copies of the letters sent by Plaintiff's counsel to Defendant's counsel regarding discovery issues are attached hereto as Exhibits 1-3.

11. Given that Defendant had yet to produce any documents, the parties made a joint request to the court to extend Plaintiff's deadline for filing its class certification motion. In an order entered on October 24, 2017, the Court granted the parties' agreed to motion, extending the deadline for filing the certification until January 12, 2018, and extending other deadlines set in the Scheduling Order. (Dkt. 34.)

12. Among other objections, Defendant insisted that Plaintiff agree to an unusual and onerous protective order. Defendant insisted that the protective order must include a

provision whereby anyone receiving any "private personal information" (which Defendant claims includes such common information as an individual's name, phone number, or address), agree to employ stringent digital data protection procedures, to limit who can see the data, and that anyone receiving the data agree to personally indemnify Defendant if any of the data is hacked, stolen or in any way misused. A copy of Defendant's proposed version of the Protective Order sent on December 8, 2017 is attached hereto as Exhibit 4.

13. These highly unusual provisions, especially the requirement that data recipients like Plaintiff's counsel and its vendors agree to unlimited personal liability should anything go wrong, were entirely unacceptable to Plaintiff. Plaintiff proposed several alternative ways of protecting Defendant's data, but these were rejected by Defendant.

14. Defendant eventually made its first production of documents on November 14, 2017, but only after Plaintiff agreed in writing that it would treat certain of Defendant's agreements with its telemarketing vendors as attorneys-eyes-only material pending execution of the final protective order. A copy of the Confidentiality Agreement For Documents Exchanged Prior To Execution Of Stipulated Protective Order dated November 14, 2017 is attached hereto as Exhibit 5.

15. Over the following two weeks, Defendant produced over 2,000 pages of documents, making its final production on December 1, 2017. Following this production, Defendant did not state that it had any other additional non-confidential documents it intended to produce.

16. At the same time, Plaintiff responded to Defendant's requests for production and interrogatories. Plaintiff produced numerous responsive documents, making its final supplemental production on December 12, 2017.

17. Throughout December, the parties continued to negotiate the terms for the protective order, both over email and on the phone. Despite Plaintiff's objections, Defendant insisted on inclusion, inter alia, of the stringent data protection requirements and the personal indemnification provisions. Plaintiff offered to agree to the data protection requirements (despite the significant cost it would impose), if Defendant would agree to drop the indemnification demands. Plaintiff made this request because, inter alia, the one vendor that Plaintiff identified who could meet the stringent security requirements at a reasonable cost refused to agree to the indemnification. Nevertheless, Defendant rejected this offer.

18. On December 13, 2017, Defendant suggested that it not produce any documents with personal private information, which again included any documents with customer names, and that the parties agree to a simple protective order. Again, however, Defendant did not state that it had additional non-confidential documents it was withholding and still intended to produce.

19. In response, Plaintiff suggested that it could only agree to drop its demand for documents with so called personal information (such as Defendant's telemarketing call logs and its internal do-not-call list) if Defendant would agree to stipulate to certain elements of Rule 23 that Plaintiff is required to establish in its motion for class certification (e.g., numerosity, commonality, and ascertainability). If Defendant did not agree to these stipulations, Plaintiff stated that it would need to move to compel production of certain documents such as the call logs pursuant to a standard court ordered protective order.

20. On January 2, 2018, Defendant agreed to stipulate only to numerosity, but continued to refuse to produce any call logs or its internal do-not-call list. Following continuing discussions, the parties agreed that Plaintiff could state in its class certification

motion that Defendant has the call logs, which can be produced following class certification, and provide a description of the data fields in those logs. One of Plaintiff's issues since at least October was that in addition to producing phone numbers, Plaintiff also required Defendant to produce the names of the individuals it called. Therefore, if Plaintiff was going to agree to not move to compel production of the call logs and internal do not call list, it told Defendant that it needed to know it was possible after class certification for Defendant to match the phone numbers in the logs to names and addresses of the individuals called.

21.  In order to allow Defendant time to look into this inquiry, the parties agreed to a two-week extension of Plaintiff's deadline to file his class certification motion. On January 9, 2018, the court granted the parties' agreed to motion, setting the new deadline for class certification to January 26, 2018. (Dkt. 36.) Again, when agreeing to this extension, Defendant failed to state that it still had non-confidential documents it intended to produce.

22.  On January 18, 2018, Defendant responded to Plaintiff's request regarding matching individuals' names with their phone numbers, stating that it was possible and could be produced following class certification. However, even during this last communication, sent just a week before the class certification deadline, Defendant still did not state that it was withholding additional documents that it still intended to produce.

23.  It was not until January 24, 2018, at 6:02 P.M., that Defendant's counsel informed Plaintiff's counsel in an email that she wanted "to give you a heads up that a production of additional non-confidential documents will be coming tomorrow. We of course have other documents to produce once we address/resolve confidentiality." This was the first time that Defendant stated that it intended to produce additional non-confidential

documents.  A copy of Defendant's counsel's January 24, 2018 email is attached hereto as Exhibit 6.

24. In her email, Defendant's counsel stated that these documents include "a few documents related to marketing mailings" Defendant sent to Plaintiff.  She also stated that they would be producing a "White Paper" that it had described in its interrogatory responses as having been "prepared for the New York Department of State, Division of Consumer Protection, regarding Sirius XM's established business relationship with its subscribers."

25. In addition to these non-confidential documents that Defendant chose to withhold until the last moment, Defendant's counsel also identified several categories of documents that it was withholding based on the need for a confidentiality agreement.  Even though Plaintiff was aware that Defendant was withholding a few documents based on the need for a protective order, the January 24, 2018 email was the first time Defendant identified the scope of what it was withholding.  For example, as noted, in November the parties entered into an attorneys-eyes-only agreement regarding Defendant's contracts with its telemarketing vendors.  Nevertheless, in her January 24th email Defendant's counsel stated for the first time that it had withheld additional confidential "service agreements with telemarketing vendors."

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 25, 2018.

*/s/ Jarrett Ellzey*
Jarrett Ellzey
