# SIRI & GLIMSTAD LLP

200 PARK AVENUE
SEVENTEENTH FLOOR
NEW YORK, NY 10166
P: (212) 532-1091
F: (646) 417-5967
WWW.SIRILLP.COM

**VIA EMAIL**                                    October 10, 2017

Allison L. Waks
JONES DAY
250 Vesey Street
New York, NY 10281
Email: awaks@jonesday.com

Re:   *Buchanan v. Sirius XM Radio, Inc.*, Case No. 3:17-cv-728

Dear Ms. Waks:

As you are aware, my firm is co-counsel to Plaintiff in the above referenced action. I write on behalf of Plaintiff to respond to your email of October 5, 2017. In your email, you responded to our revised Requests for Production ("RFP") contained in Jarrett Ellzey's email of September 29, 2017. Plaintiff's revised RFP was intended as an accommodation to defendant Sirius XM, following our initial meet and confer, to allow class discovery to proceed in an efficient and minimally burdensome manner. Nevertheless, it appears from your responses that you are refusing to produce the vast majority of the documents we have requested even in these streamlined RFP's.[1] This failure to produce even the most basic documents has significantly hindered Plaintiff's ability to push this matter forward in a timely manner.

I will reply to your responses in turn:

**Defendant's First Response:**     Regarding RFP No. 1, Sirius XM will agree to produce its service agreements with each of its outbound telemarketers between October 2013 and 2017. Sirius XM is in the process of compiling them. Because these documents are subject to confidentiality agreements with the telemarketing vendors, Sirius XM will first need consent to produce them, and we are contacting those vendors to obtain such permission.

> *We understand that you must obtain consent from your vendors. However, presumably Sirius XM can easily contact the finite list of vendors and obtain consent easily. Therefore, such consents should not significantly delay the production process. Please let us know when you expect to begin to produce the agreements.*

---

[1] In your email, you failed to respond to each request individually, as is required by the Federal Rule of Civil Procedure 34(b).

**Defendant's Second Response:** RFP Nos. 2 and 5 both request customer lists that Sirius XM provided to its telemarketing vendors. You indicated to us during our telephonic meet and confer on September 25 that you were not interested in these lists, recognizing that they are over-inclusive, including consumers who may never have been called. For these reasons, Sirius XM will not produce lists that were provided to the telemarketing vendors. In any event, with respect to RFP No. 5, which specifically requests consumer information, Sirius XM will not provide any detailed consumer information at this stage of the litigation. Such information is not relevant before class certification. Other information that Sirius XM or the telemarketing vendors will provide is sufficient information to identify the number of putative class members for class certification purposes; at this point, consumer identities (beyond telephone numbers which can be provided by the vendors) are not relevant or necessary. Moreover, while Sirius XM does possess some of these lists, it does not have such documents for the entire relevant period; its data extends only back to 2015.

> *As Mr. Ellzey explained in his email of October 5th, you appear to have misconstrued your conversation with him. He did not state that Plaintiff is "not interested in" the customer lists, nor did he agree that the customer lists did not need to be produced because they were "over-inclusive." Even though the lists may include customers that were not called, that does not make the full lists over inclusive. To the contrary, it may be important to understand why certain customers were not called, making the entire lists relevant.*
>
> *You also claim, without justification, that consumer identities "are not relevant" at the class certification stage, and that all that is necessary are the telephone numbers actually called. We could not disagree more. The class members are not the telephone numbers, but rather the actual consumers that were called, making their identities directly relevant. The fact that this information implicates certain privacy concerns, is not a reason to withhold their production as such concerns can be resolved by the Protective Order we have proposed.*
>
> *You further stated that Sirius XM failed to maintain the customer lists for the period before 2015. This is very disturbing, especially if Sirius XM has destroyed documents that it once possessed. Therefore, we must insist that you explain why Sirius XM failed to maintain such records for longer than just 2 years.*
>
> *To the extent that Mr. Ellzey expressed a willingness during the meet and confer to allow the customer lists to be produced later, that was contingent on Sirius XM producing, and Plaintiff reviewing for sufficiency, the call logs showing the individual consumers that its vendors called. However, as the remainder of your responses indicate, you are refusing to produce those lists. If Sirius XM is willing to revisit that decision, then Plaintiff may be able to again agree to delay production of the documents responsive to RFP Nos. 2 and 5. Otherwise, we must insist that Sirius XM timely produce all documents responsive to those RFPs.*

**Defendant's Third Response:** RFP Nos. 3 and 4 seek logs and other information provided by the telemarketing vendors to Sirius XM. In response to these requests, Sirius XM can provide

the following documents within its possession, custody and control: (1) all quarterly compliance reports that it receives from the telemarketing vendors, and (2) a sample of the summary reports that the vendors provide to Sirius XM on a daily basis. If, upon a review of the sample, you believe that these reports are relevant and all of them are needed to litigate this case, we can discuss a way forward that is workable for both sides, considering the burden involved in compiling what is a massive amount of data.

> *In RFP No. 3, Plaintiff sought all spreadsheets, databases, and/or call logs, provided to Sirius XM by its vendors concerning the calls that were actually made. RFP No. 4 sought all summaries and/or reports of the same provided to you by your vendors. In your response, you offer to produce only certain quarterly reports and a "sample" of the daily summaries from your vendors. First, it is unclear whether the reports and summaries you propose to produce are all the responsive documents Sirius XM has in its possession, or if these are simply a small subset of summaries and reports you would prefer to produce. Even though we have no interest in Sirius XM producing unnecessary documents, we cannot simply agree to limit the reports and summaries as you suggest without understanding the universe of reports and summaries responsive to RFP No. 4. Therefore, please provide a list of such reports so that we can better understand the nature of your proposed production.*
>
> *Second, it appears that you have ignored RFP No. 3. You did not object to it, but you also do not propose to produce any call logs or other records of the actual calls that were made by the vendors. Such logs are very important to our ability to seek class certification as they show who was actually called. In your Fifth Response below you admit that Sirius XM possesses such logs. Likewise, at least one vendor informed us that it regularly provides to Sirius XM what it refers to as a "flatfile" that is essentially a call log. Given the importance of such logs, the fact that Sirius XM has such documents in its possession, and that Sirius XM has not objected to their production, we must insist that you promptly produce all documents responsive to RFP No. 3.*

**Defendant's Fourth Response:** RFP No. 9 and Interrogatory No. 15 essentially ask for the same information: the total number of individuals contacted during the class period. Sirius XM will not produce documents responsive to this request (see responses to RFP Nos. 1, 5, 6, and 9). However, Sirius XM states that 39.79 million unique phone numbers received calls on behalf of Sirius XM from October 16, 2013 until the present. We will follow up with an amended response to Interrogatory No. 15 and a verification from the company.

> *You state "that 39.79 million unique phone numbers received calls on behalf of Sirius XM," however, you refuse to provide any documents to support this number. Through our communications with Sirius XM's vendors we have reason to believe that the number of actual calls was substantially higher than you claim. One vendor alone stated that it made 142 million calls on behalf of Sirius XM during the relevant period. As a result, we must insist that you produce the relevant call logs and customer lists that will allow us to, inter alia, verify your claim that 39.79 million unique phone numbers were called.*

**Defendant's Fifth Response:** RFP Nos. 5, 6, and 9 seek information on the consumers who were called. Although Sirius XM receives lists of consumers that the telemarketing vendors calls, Sirius XM does not know if those records are accurate, and maintains that such information is best sought directly from the vendors who created the documents in the first instance.

> *This response is preposterous and belies an attempt by you to delay this litigation. You assert that, even though Sirius XM possesses documents responsive to RFP Nos. 5, 6, and 9 (and presumably to RFP No. 3 as well), it is refusing to produce such documents because Plaintiff can seek those documents from a myriad of nonparty vendors. Under the Federal Rules of Civil Procedure, a party is required to seek documents from its party opponent before seeking the same documents from a third party. See, e.g., Haworth, Inc. v. Herman Miller, Inc., 998 F.2d 975, 978 (Fed. Cir. 1993) ("the district court could properly require Herman Miller to seek discovery from its party opponent before burdening the nonparty"); Nidec Corp. v. Victor Co. of Japan, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."). Sirius XM cannot now pass the burden of production to its vendors.*
>
> *Despite the burden being on Sirius XM, in an effort to be complete, Plaintiff has sought production from all of the nonparty vendors. So far, each has refused to produce the relevant call logs, citing, inter alia, the cost of producing such documents and the fact that Sirius XM possesses the logs. As a result, the onus is on Sirius XM to produce the responsive documents, not on Plaintiff to chase down those same documents from multiple nonparties.*
>
> *Furthermore, your statement that Sirius XM does not know if the records it received from the vendors it contracted with "are accurate" is shocking. Presumably Sirius XM reviewed and relied on the reports it received from its vendors, among other things, to evaluate the effectiveness of its phone related marketing, and to compensate its vendors. Therefore, if Sirius XM believed that its vendors were providing inaccurate information, one would think that Sirius XM would have acted to ensure that such inaccuracies were corrected. That Sirius XM now questions the accuracy of such information raises serious doubts about Sirius XM's ability to ensure that its vendors were complying with the TCPA, making production of such logs all the more critical.*
>
> *Lastly, whether a document is accurate or not has nothing to do with whether that document must be produced. Sirius XM is welcome to argue that the court should ignore the reports and call lists Sirius XM received from its own vendors due to inaccuracies in those documents. However, that does not exclude Sirius XM from having to produce such documents in the first place.*
>
> *For all the foregoing reasons, we insist that Sirius XM promptly produce all documents responsive to RFP Nos. 3, 5, 6, and 9.*

**Defendant's Sixth Response:** RFP Nos. 7 and 8 seek documents evidencing consent and authorization to call Mr. Buchanan and those in the DNC class. As to Mr. Buchanan, we will provide all documents in Sirius XM's possession, custody and control. As to the DNC class, we are still looking into this because it implicates a vast universe of data. We are also looking into producing samples of calls with consumers. We will respond to this with more detail as soon as we can.

*We look forward to your prompt production of the documents relating to Mr. Buchanan that are responsive to RFP No. 7. As to RFP No. 8, whether the DNC class members gave Sirius XM permission to call them is central to Plaintiff's class related claims. As such, even though we understand that a proper response to this request may require Sirius XM to review and produce a large volume of documents, the burden required is necessary and unavoidable. Therefore, we eagerly await your response to this request.*

****************

In Mr. Ellzey's September 29th email, he noted that currently the deadline to file a motion for class certification is October 23rd, and therefore, requested that Sirius XM produce the responsive documents by October 10th. In your response, you stated that Sirius XM would not be able to meet this request, and that you would not even begin production until the court enters a protective order. As noted, many of the documents Plaintiff seeks in its RFP are critical to our motion for class certification, and obviously we will require sufficient time to review the documents prior to making the motion for class certification. As a result, we intend to make a motion to the court to extend the deadline for making the class certification motion, based in part on our inability to proceed without sufficient productions. Please let us know if you intend to oppose this motion.

We are committed to working with Sirius XM as part of the meet and confer process, however, we need to move this litigation forward. As such, please inform us by no later than the close of business on October 13th whether you intend to revise your responses and produce the critical documents we have requested. If we do not hear from you by that date, or you continue to refuse to produce the documents responsive to our RFPs, then we will have no choice but to make a motion to compel production of same.

We look forward to hearing from you. If you would like to discuss any of the above, please feel free to contact me.

Sincerely Yours,

Mason A. Barney

*Attorney for Plaintiff*

CC:    Demitrack, Thomas (tdemitrack@JonesDay.com)
       Lee A. Armstrong (laarmstrong@JonesDay.com)
       Natalia O. Delaune (ndelaune@jonesday.com)
       W. Craft Hughes (Craft@hughesellzey.com)
       Henry Turner (hturner@tloffices.com)
       Douglas M. Werman (dwerman@flsalaw.com)
       Aaron Siri (aaron@sirillp.com)
       Jarrett Ellzey (Jarrett@hughesellzey.com)