IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THOMAS BUCHANAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO, INC.,<br><br>Defendant. | Case No. 3:17-cv-00728-D |

**DEFENDANT SIRIUS XM RADIO INC.'S
RESPONSE TO PLAINTIFF'S REQUEST FOR FIFTH EXTENSION OF
CLASS CERTIFICATION MOTION**

At 1 p.m. on January 25, 2018, Defendant Sirius XM Radio Inc. ("Sirius XM" or "Defendant") made its sixth production of documents to Plaintiff Thomas Buchanan ("Plaintiff"), most of which (i.e., 814 of 844), as Plaintiff admits, "appear to be similar to documents Defendant previously produced" (ECF No. 40).  In fact, there are only around 30 documents that are arguably different from what Sirius XM previously produced, and those 30 documents are either identified and described in Sirius XM's discovery responses; or consist of advertisements and other materials physically visible at a dealership, a document authored by Plaintiff, a document admittedly sent to Plaintiff, and a few pages explaining how to find Sirius XM's stations on the radio.[1]  All of this would have been readily apparent to Plaintiff had they taken the time to review the documents, but yesterday, Plaintiff's five law firms instead ran to Court – *one minute* after receiving the documents – seeking yet another extension.  While Sirius

---

[1] These documents (excluding the White Paper) are collectively attached as Exhibit C to the Waks Affidavit.

XM does not oppose an extension, it is obliged to advise the Court that the Motion rests on a yarn that does nothing to explain how the production could have possibly prevented Plaintiff from meeting his court-ordered deadline to file its class certification motion today. Indeed, Plaintiff makes no serious attempt to explain how these documents – or other highly-confidential documents Sirius XM has been unable to produce *only* because Plaintiff has declined to complete the negotiations on, and sign, a confidentiality agreement – are relevant to Plaintiff's Rule 23 burden at the class certification stage.

Here are the facts:

*History of Discovery*

The parties have been conferring on discovery for four months, including attempting to negotiate a protective order. Plaintiff initially served 78 document requests on Sirius XM, which it later reduced to 9 requests, effectively conceding its original requests were overbroad and unnecessary. Sirius XM then began a rolling production of documents on November 14, November 15, November 20, November 27, and December 1, 2017.

Sirius XM has also, for months, been requesting Plaintiff sign a protective order to guard against dissemination of confidential information requested by Plaintiff (such as consumer personal information), but Plaintiff has either ignored Sirius XM or levelled baseless objections to reasonable protections (such as an indemnity in favor of Sirius XM should Plaintiff or its agents inappropriately share such information). In addition, Plaintiff did not move to compel documents Sirius XM clearly identified and described in its discovery responses months ago (such as the so-called "White Paper," see below), made no subsequent requests for their production and sought not one deposition.

***This Week's Inconsequential Production***

On January 25, 2018, Sirius XM's counsel, continuing its review and rolling production of documents, made a sixth, "mop up" production of other non-confidential documents. Approximately 814 of those documents (specifically identified to Plaintiff's counsel by Bates-number range) were responsive yet bland – additional copies of Sirius XM's sample mass marketing letters (envelope templates, order forms, channel brochures), all of which are substantially identical to hundreds of such samples that had already been produced. (Plaintiff admits that these documents "appear to be similar to documents Defendant previously produced" (ECF No. 40).) (A sample of one such document is attached as Exhibit D to the Waks Affidavit.) In any event, one would think that the 5 Plaintiff firms could easily review 814 substantially similar, mostly 1-page, documents within a day and reach this same conclusion – that these have no bearing on Plaintiff's application to certify, result in no prejudice, and certainly provide no "tactical advantage."

That then left approximately 30 other documents. Plaintiff complains in particular about one of them – a "White Paper," but Sirius XM identified that document, by name, 10 times in its 41-page document production response served on September 13, 2017. Sirius XM initially withheld the White Paper as confidential from the previous productions. This week, in connection with supplementing its production, Sirius XM reassessed and removed its confidentiality designation. Certainly there was no intention to sandbag Plaintiff with a document it specifically identified to Plaintiff (along with an explanation detailing how the White Paper fit into Defendant's established business relationship defense) over three months ago and which it then assumed would be promptly produced upon execution of a protective order. Plaintiff never even asked why the document had not been produced. Certainly, Plaintiff has known about this document but failed to show any diligence in either its actions or its

inquiries with respect to this document, so there is no reason to grant an extension now. *See Missing Link, Inc. v. eBay, Inc.*, No. C-07-04487 RMW, 2010 WL 94268, at *2 (N.D. Cal. Jan. 6, 2010).

As to the other 29 documents in this "mop up" production (comprising 55 pages), one was concededly sent to Plaintiff, one was authored by Plaintiff, many were identified and described last fall in Sirius XM's interrogatory answers and/or are documents publicly available at any vehicle dealership in the United States:

1. A marketing letter sent <u>to Plaintiff</u> welcoming her as a Sirius XM subscriber and a document tracking form showing it was mailed to her, a fact that Plaintiff does not deny.

2. The form signed by Plaintiff's dealership (Bob Tedford Chevrolet) when it enrolled in Sirius XM's marketing program (identified by name and described in detail in Sirius XM's response to Plaintiff's Interrogatory Nos. 3 and 12).

3. <u>Plaintiff's own letter</u> to a Texas small claims court complaining about the same conduct alleged in the complaint in this case.

4. Several "dealer pre-delivery check list forms," documenting the process known to anyone who has ever bought or leased a vehicle and who then goes to pick it up, as explained in Sirius XM's response to Interrogatory No. 12.

5. A few pages from a vehicle manual explaining how to tune a radio to the Sirius XM stations (similar to what can be found in the pages of the Honda Odyssey book produced by Plaintiff himself in discovery).

6. A page describing some of the features on a Mercedes vehicle.

7. A few pages containing the so-called Monroney labels affixed to the rear drivers side windows of vehicles detailing the features of those vehicles (for a Subaru Forrester, a Hyundai Sonata and a Lexus GS 350, an unidentified vehicle, and a Dodge Ram truck).

8. A few pages consisting of pictures of Sirius XM advertising at various vehicle dealerships (again, described in Sirius XM's response to Interrogatory No. 12).

9. A page containing the support phone number for vehicle dealers to call Sirius XM.

Again, there was no conspiracy to identify documents and refuse to produce them. It would be a foolish strategy – not a "tactical" one – to attempt to surprise Plaintiff with documents either flagged for the Plaintiff months ago in discovery responses or that consist of form letters substantially similar to letters that were previously produced.

### *Confidential Documents*

Plaintiff has known for many months that there are confidential documents being withheld because of Plaintiff's failure to enter into a protective order. There has been one issue left to resolve – the appropriate treatment of personal identifying information relating to consumers, which Sirius XM receives from various sources, including vehicle manufacturers, and which must be adequately protected in view of the all-too-familiar security breaches in today's modern world – in short, this is a serious issue that requires serious attention.

Unable to reach a resolution, and in an effort to move things along *so that Plaintiff's counsel could get the remaining confidential documents*, in a December 13, 2017 email, counsel for Sirius XM offered that, "[i]n order to move things along, we suggest entering into a protective order that is either silent on the issue of PPI [private person information] or specifically states that the issue of sharing PPI will be addressed separately to the extent it becomes necessary." (*See* Exhibit A to the accompanying Waks Affidavit.) On December 15, counsel for Plaintiff responded that they "appreciate [the] suggestion regarding the PO without the PPI. We need to consider it on our end and will get back to you next week." (*Id.*) *We have heard nothing from Plaintiff's counsel regarding the protective order since then*. Of course, there would be no reason to enter into a protective order – and no "things to move along" – had Sirius XM not had confidential documents it then planned to produce.

There have been other communications from Sirius XM's counsel advising that Sirius XM had confidential documents to produce. For example, on November 14, 2017, Sirius XM

produced to Plaintiff service agreements with certain of its telemarketing vendors upon execution of a specific attorneys-eyes-only agreement. Three days later, on November 17, 2017, counsel for Plaintiff emailed counsel for Sirius XM that "it appears that Sirius' first production did not include contracts for the following vendors …" (*See* Exhibit B to Waks Aff.) Counsel for Sirius XM replied on November 20, 2017, that "[f]or those vendors for whom contracts were not provided, we were asked [by the vendors] to wait for execution of the governing protective order." (*Id.*) So, Plaintiff has known for months that Sirius XM needed a protective order before it could produce its and third party's confidential documents; indeed, Plaintiff sought these documents directly from the telemarketing vendors by issuing 12 third-party subpoenas to those telemarketing vendors seeking service contracts with Sirius XM. (*See also* ECF No. 39-1 (Sirius XM's Response to RFP No. 1).) In addition, Sirius XM's discovery responses repeatedly identified documents that it has not yet produced. (*See, e.g.*, ECF No 39-1 at 2-3 stating that "Sirius XM can provide the following documents within its possession, custody and control: (1) all quarterly compliance reports that it receives from the telemarketing vendors, and (2) a sample of the summary reports that the vendors provide to Sirius XM on a daily basis.")

**Conclusion**

Plaintiff's counsel first accessed Sirius XM's production at 1:00 p.m. EST on January 25. *One minute later*, at 1:01 p.m. EST, Plaintiff's co-counsel filed the instant motion. Clearly, the content of the production was of no moment to Plaintiff; it was a smokescreen for yet another extension request. Plaintiff did not file its supplemental affidavit purporting to describe the documents for another 6 hours. Sirius XM's counsel's last communication with Plaintiff described the production and stated that counsel did not believe an extension was necessary on account of the content of the production, adding "I trust this adequately responds to your email. Let us know if you have any questions." (ECF No. 39-6.) Plaintiff's counsel never responded,

never indicated that Plaintiff still believed an extension was necessary, and never asked for Defendant's consent.  In fact, as of the morning of January 25, Sirius XM's counsel assumed Plaintiff was satisfied with their description of the production and did not plan to seek an extension.  (Nor did Plaintiff's counsel ever seek consent to extend all remaining dates in the scheduling order, despite writing in the Motion that "the parties ask" for the following schedule.)

| | |
|---|---|
| Dated: January 26, 2018 | Respectfully submitted, |
| New York, New York | /s/ Allison L. Waks |

Albert J. Rota
Texas Bar No. 24056233
Natalia O. Delaune
Texas Bar No. 24074831
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Tel: (214) 969-3698
Fax: (214) 969-5100
Email: ajrota@jonesday.com
Email: ndelaune@jonesday.com

Thomas Demitrack
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Tel: (216) 586-3939
Fax: (216) 579-0212
Email: tdemitrack@jonesday.com

Lee A. Armstrong
Allison L. Waks
JONES DAY
250 Vesey Street
New York, New York
Tel: (212) 326-3939
Fax: (212) 755-7306
Email: laarmstrong@jonesday.com
Email: awaks@jonesday.com

*Attorneys for Defendant Sirius XM Radio Inc.*