**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| THOMAS BUCHANAN, on behalf of himself and all others similarly situated, | § § § | |
| Plaintiff, | § § | Civil Case No. 3:17-cv-00728-D |
| v. | § § | |
| SIRIUS XM RADIO, INC. | § § | |
| Defendant. | § § | |

**DECLARATION OF JARRETT ELLZEY IN SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL
AND MOTION FOR PROTECTIVE ORDER**

Pursuant to 28 U.S.C. § 1746, I declare as follows:

1.      My name is Jarrett Ellzey.

2.      I am over twenty-one years of age.

3.      I am fully competent to make the statements included in this declaration.

4.      I have personal knowledge of the statements included in this declaration.

5.      I am a partner at Hughes Ellzey, LLP ("Hughes Ellzey").

6.      I am counsel for Thomas Buchanan ("Buchanan") and the class in this matter.

7.      I submit this declaration in support of Plaintiff's Motion To Compel And

8.      In his complaint, which the Court designated as Document No. 1 on the court's

Docket, Plaintiff alleges that Sirius, in violation of the TCPA, has engaged in a practice of

making telemarketing calls to consumers on the National Do Not Call ("NDNC") Registry

Registry and of failing to implement the required minimum procedures to honor consumers'

do-not-call requests.

9.      Mr. Buchanan asserts that, in 2008, he listed his home telephone number on the NDNC.  (Dkt. 1 at ¶ 31.)[1]  Nonetheless, in 2016, Sirius began placing telemarketing sales calls to Mr. Buchanan's home.  (*Id.* at ¶ 34.)  Mr. Buchanan never provided prior express consent to Sirius XM to call his home.  (*Id.* at ¶ 38.)  On July 24, 2016, Mr. Buchanan sent a letter to the company requesting that it immediately stop making these unauthorized telemarketing calls to him, and place his number on Sirius XM's internal do-not-call registry.  (*Id.* at ¶ 36.)  Nevertheless, Sirius continued to call Mr. Buchanan's home.  (*Id.* at ¶ 37.)

10.      Mr. Buchanan seeks to represent a National Do Not Call Registry Class and an Internal Do Not Call Registry Class, as defined in the Class Action Complaint. (Dkt. 1 at ¶¶ 39, 41.)  The only way to ascertain the actual size of the classes, and to identify who should be included in the classes, is to review Sirius' call data.  (*See id.* at ¶ 43.)

11.      On August 7, 2017, Plaintiff served discovery requests seeking documents or ESI sufficient to ascertain the proposed classes.  Copies of those requests are attached hereto as Exhibits 1 and 2.

12.      In those requests, Plaintiff sought, *inter alia*, (1) data evidencing the number and identity of proposed class members to whom Sirius placed a call during the class period, (*See* Request Nos. 23-24), and (2) Sirius's internal do-not-call list.  (*See* Request No. 78.).

13.      Sirius XM requested a one-week extension on its time to respond to Plaintiff's discovery requests, and the parties agreed to provide an equivalent extension for Plaintiff's time to file a motion for class certification.  (Dkt. 30.)  On September 11, 2017, the Court

---

[1] References to "Dkt" are to documents filed on the Court's ECF Docket in this action.  References to "Ex." are to the exhibits attached hereto.

granted this extension, setting the new deadline for filing the class certification motion to October 23, 2017.  (Dkt. 31.)

14.     On or about September 13, 2017, Sirius XM served on Plaintiff its responses and objections to the requests for production and interrogatories.  Sirius XM produced no documents at that time and objected to producing any documents in response to the three requests highlighted above.  Copies of Sirius XM's responses and objections are attached hereto as Exhibits 3 and 4.

15.     In its interrogatory responses, Sirius XM stated that it contracted with twelve "outbound telemarketing vendors" to place calls on its behalf.  (Ex. 4 at p. 10 (response to Interrogatory No. 7 listing the vendors.)  These vendors are located in nine different states spread throughout the country (none of which are within this Court's jurisdiction).  (*Id.*)  Sirius XM stated that its maintained a list of individuals "that Sirius XM wants the telemarketing vendors to contact by telephone."  (*Id.* at p. 9 (response to Interrogatory No. 6).)  Sirius XM claims it "scrubs" the list to remove "names on Sirius XM's company-specific do-not-call list."  (*Id.*)  However, it does not scrub the list to remove individuals who are on the National Do-Not-Call Registry.  (*Id.* at p. 8 (response to Interrogatory No. 6, describing the procedure Sirius XM uses to remove phone numbers from the lists provided to the vendors, without referencing the national do-not-call registry), p. 13 (response to Interrogatory No. 13, stating that Sirius XM does not maintain a list of numbers on the national do-not-call registry that were called).)  It provides the list to its vendors, who also allegedly perform additional scrubbing on the list to remove phone numbers on the vendor's company specific do-not-call list.  (*Id.*)  Clearly, these purported procedures were not

adequate to scrub Mr. Buchanan's name and home phone number, as he both registered with the National and Sirius XM's company do-not-call lists.

16.    Sirius XM also admits in response to Mr. Buchanan's interrogatories that it "maintains contact history information and conversion information it receives electronically from vendors using secure FTP sites in its Marketing Database." (Ex. 4 at p. 14 (response to Interrogatory No. 19).)    Thus, in its interrogatory responses, Sirius XM admits that it maintains: (i) a list of consumers that it asks its telemarketing vendors to call; (ii) a list of consumers that have asked to be added to Sirius XM's internal do-not-call list; and (iii) a database of the call and conversation history with each consumers that its telemarketing vendors called.    However, in its responses to Mr. Buchanan's requests for production, Sirius XM repeatedly refused to produce any of those lists or databases.    (*E.g.,* Ex. 3 at pp. 9, 11-12, 25, 27-28, 30, 41.)

17.    On or about September 18, 2017, I as counsel for Plaintiff, sent Sirius XM's counsel a letter listing the deficiencies in Sirius XM's objections and responses to Plaintiff's requests for production and interrogatories.    In the letter, I noted that Sirius XM failed to produce any documents, and he asked that the company begin its production within 7 days.

18.    To assist Sirius XM in its production efforts, I told them that the most relevant documents to prioritize for the upcoming class certification motion were: (1) all call logs from all vendors who placed outbound telemarketing calls to consumers during the relevant class period; (2) Sirius XM's internal-do-not-call list during the relevant period; (3) all call scripts utilized by the call centers; (4) all documents Sirius XM contends evidence Plaintiff consented to receive telemarketing calls from, or on behalf of, Sirius XM; (5) all documents identifying all third parties who placed telemarketing calls on behalf of Sirius XM.

19.    On September 25, 2017, the parties conducted a telephonic meet and confer session.  During that call, Sirius XM questioned why Plaintiff needed lists of consumers that its telemarketing vendors called, to which I explained that, among other things, such lists can be used to determine which call recipients were on either the National or Sirius XM's internal do-not-call lists, thereby making those calls potentially illegal under the TCPA.  Furthermore, I stated that the lists can be used to identify class notices.  I emphasized that Plaintiff needed the requested documents as soon as possible given the upcoming deadline for the motion for class certification.

20.    In a series of letters and emails, the parties continued to confer regarding Plaintiff's discovery requests.  To facilitate this discussion, the parties jointly ask the court to adjourn the deadline for Plaintiff to file the class certification motion until January 12, 2018, which the court granted in an order filed on October 24, 2017.  (Dkt. No. 34.)  In these negotiations Plaintiff requested that the call logs include the date and time of each call placed by one of Sirius XM's vendors, the number called, and that person's name and address (collectively the "Call Recipient Contact Information").

21.    On October 16, 2017, Sirius XM agreed to produce the call logs received from its vendors by providing a "file that will consist of all calls placed on its behalf by telemarketing vendors during the relevant class period. It will contain at least the telephone number called and the date and time of call."  A copy of Sirius XM's October 16, 2017 email is attached hereto as Exhibit 5.

22.    However, Sirius XM refused to produce such information unless the parties entered into a protective order requiring stringent and overly burdensome digital data protection procedures, and "unlimited" *personal* indemnification to Sirius XM if its

suggested digital data protection procedures do not work.  A copy of the most recent draft protective order Sirius XM proposed on December 8, 2017 is attached as Exhibit 6.[2]

23.     Sirius XM's proposed protective order would require, among other things, the following:

- Anyone receiving the call logs (the "Data Recipients") "maintain appropriate security measures to protect the confidentiality of personally identifying information consistent with the applicable regulations of the Commonwealth of Massachusetts (201 CMR 17.00, et. Seq.), the regulations of California (Cal. Civ. Code §§ 56.06, 1785.11.2, 1798.29, 1798.82), and *all other states*."  (Ex. 6 at p. 26 § 2 (emphasis added).)

- Data Recipients must keep the data "at a facility that maintains technical, organizational, administrative, and human resource security measures which utilize ISO 27001 and 27002 as a reference to protect the security of" all Call Recipient Contact Information produced.  (*Id.* at p. 27 § 5.)

- Data Recipients must encrypt the Call Recipient Contact Information at all times, which encryption must meet strict standards established in the Data Security Acknowledgment.  (*Id.* at p. 27 § 6.)

- In the event of any unauthorized access to the data, Data Recipients must personally agree to pay, *inter alia,* to conduct an investigation approved by Sirius XM and to notify anyone who's information was affected along with the relevant credit bureaus, and other persons or entities that Sirius XM deems appropriate.  (*Id.* at p. 27 § 4.)

---

[2] Sirius XM originally sent Plaintiff a draft protective order that included the Data Security Acknowledgment on October 5, 2017.  The December 8, 2017 version attached hereto is the most recent version of that document proposed by Sirius XM and reflects at least two rounds of edits by both parties.

- Data Recipients personally agree to unlimited indemnification of Sirius XM, specifically that the Data Recipients:

> shall indemnify, defend and hold harmless [Sirius XM], its affiliates, and their respective employees, officers and directors against any and all third party claims and resulting damages, costs and other liabilities and expenses (including attorneys' fees) arising out of or related to: (i) any negligence or willful misconduct by [Plaintiff], its affiliates, its subcontractors, or their agents; (ii) a breach or alleged breach of any of its representations, warranties or obligations of this Agreement by [Plaintiff], its affiliates, its subcontractors, or their agents; (iii) any loss of Private Person Information by [Plaintiff], its affiliates, its contractors, or their agents; and (iv) any failure or alleged failure by [Plaintiff], its affiliates, its subcontractors, or their agents to comply with any applicable law, rule, and regulation with respect to its performance of this Agreement. (*Id.* at p. 28 § 7.)

24.     Although Sirius XM's requirements were unduly burdensome, Plaintiff continued to meet and confer in good faith.

25.     Plaintiff informed Sirius XM that there was no need for such stringent data security requirements, and that insisting on the level of security proposed in the Data Security Acknowledgment, including the special software that would be required and the indemnification demanded, would be unduly burdensome. Sirius XM, however, insisted that the Data Security Acknowledgment must be included in any protective order.

26.     The Parties telephonically met and conferred regarding the Data Security Acknowledgment, among other issues, on November 17, 2017. During that call, Plaintiff agreed to investigate whether he could find a vendor that could meet the requirements in the Data Security Acknowledgment and determine how much it would cost.

27.     Standard discovery vendors software was unable to meet the data security requirements. After a time consuming search, Plaintiff's counsel located only three vendors that provided sophisticated secure data room software with the capabilities to meet the

requirements of Sirius XM's Data Security Acknowledgment.   The first vendor charged $7,400 per month, a clearly unreasonable sum to protect non-sensitive information such as names and contact information.   The second vendor charged $1,500 per month, still a burdensome amount, but stated that it could not guarantee that it could meet all of the various security requirements.   The Third vendor charged less, but upon reviewing the Data Security Acknowledgment stated that the indemnification provisions were not reasonable under the circumstances and that it could not take on that type of potentially unlimited liability.

28.   Even though Plaintiff still believed these charges and the data security requirements were unduly burdensome, in hopes of reaching an agreement without resorting to the instant motion, Plaintiff told Sirius XM that he would be willing to incur the required fees to host the data securely, if Sirius XM would agree to certain changes to the Data Security Acknowledgment, including (1) identifying specifically which states' laws Plaintiff needed to comply with; (2) limiting the financial and logistical requirements that Plaintiff would need to meet in the event someone gained unauthorized access to the data; and (3) dropping the demand for indemnification.   However, negotiations on this issue broke down after Sirius XM refused to withdraw these requirements.   Sirius XM's December 12, 2017 email rejecting these changes is attached as Exhibit 7.

29.   During these negotiations, Sirius XM also refused to produce the name and address of the consumers called, or on its internal do-not-call list.   Plaintiff questioned why Sirius XM could not produce the name and addresses of the individuals called, in addition to their phone numbers.   Plaintiff asserted that this information is relevant to his class certification motion, among other things, to allow him to establish numerosity, commonality,

and to show ascertainably.   Plaintiff's counsel's October 24, 2017 email is attached as

Exhibit 8.

30.     After repeated requests, in January 2018, Sirius XM informed Plaintiff that,

using its marketing database, it is able to associate a phone number called with the name and

address of that person (though it admits that the information could be out of date).   However,

to date, Sirius XM has not reconsidered its position and agreed to produce the names and

addresses.

31.     As this background makes clear, prior to making this motion, the parties made

significant efforts to meet and confer to obtain the necessary documents without court action.

Regrettably these efforts failed.   Plaintiff now respectfully seeks an order compelling Sirius

XM to produce documents relevant to Plaintiff's motion for class certification pursuant to a

reasonable protective order.   Specifically, Plaintiff believes that the protective order attached

hereto as Exhibit 9 would adequately protect Sirius XM's data while not unduly burdening

Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 7, 2018.


                                        _____/s/ Jarrett Ellzey_____
                                        Jarrett Ellzey

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| THOMAS BUCHANAN, on behalf of himself and all others similarly situated, | Case No. 3:17-cv-00728-D |
| Plaintiff, | |
| v. | |
| SIRIUS XM RADIO, INC. | **JURY TRIAL DEMANDED** |
| Defendant. | |

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ("ESI")
TO DEFENDANT SIRIUS XM RADIO, INC.**

To:   Defendant SIRIUS XM RADIO, INC., by and through its attorneys of record, Thomas Demitrack, JONES DAY, North Point, 901 Lakeside Ave, Cleveland, OH 44114;

Lee Armstrong, Allison Waks, JONES DAY, 250 Vesey Street, New York, New York 10281; and

Albert J. Rota, Natalia O. Delaune, JONES DAY, 2727 North Harwood St., Dallas, Texas 75201.

THOMAS BUCHANAN ("PLAINTIFF") serves the following First Request for Production of Documents and Electronically Stored Information ("ESI") to SIRIUS XM RADIO, INC. ("DEFENDANT") pursuant to Rule 34 of the FEDERAL RULES OF CIVIL PROCEDURE.  As required by Rule 34(b), DEFENDANT must produce all requested documents, electronically stored information, or tangible things within thirty (30) days after service of this request. Responsive documents are to be produced in the offices of HUGHES ELLZEY, LLP, 2700 Post Oak Blvd., Suite 1120, Houston, Texas 77056 within thirty (30) days following the service of this request.  No extensions of time with respect to the responses shall be valid unless such agreement

is set forth in writing and signed by counsel for PLAINTIFF.  This document is governed by the

definitions and instructions that follow pursuant to the FEDERAL RULES OF CIVIL PROCEDURE.

Respectfully Submitted,

**HUGHES ELLZEY, LLP**

_____/s/ Jarrett L. Ellzey_____
W. Craft Hughes
Texas Bar No. 24046123
craft@hughesellzey.com
Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@hughesellzey.com
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335

**TURNER LAW OFFICES, LLC**

Henry A. Turner
Georgia Bar No. 719310
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Telephone: (404) 378-6274
hturner@tloffices.com

**SIRI & GLIMSTAD LLP**

Aaron Siri
NY Bar No. 4321790
Mason A. Barney
NY Bar No. 4405809
200 Park Avenue, 17th Floor
New York, New York 10166
Tel: (212) 532-1091
E-Mail: aaron@sirillp.com

**WERMAN SALAS P.C.**

Douglas M. Werman
IL Bar No. 6204740
77 West Washington, Suite 1402
Chicago, Illinois 60602
dwerman@flsalaw.com
(312) 419-1008

**MARK A. ALEXANDER P.C.**

Mark A. Alexander
TX Bar No. 01007500
5080 Spectrum, Suite 850E
Addison, Texas 75001
Ph: 972.364.9700
Fax: 972. 239.2244
E-Mail: mark@markalexanderlaw.com

**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLAS**

## CERTIFICATE OF SERVICE

I certify that on <u>August 7, 2017</u>, a true and correct copy of the attached set of Requests for Production was served upon the following parties pursuant to Rule 5 of the FEDERAL RULES OF CIVIL PROCEDURE:

Thomas Demitrack
JONES DAY
North Point
901 Lakeside Ave.
Cleveland, OH 44114

Lee Armstrong
Allison Waks
JONES DAY
250 Vesey Street
New York, New York 10281

Albert J. Rota
Natalia O. Delaune
JONES DAY
2727 North Harwood St.
Dallas, Texas 75201

_/s/ Jarrett L. Ellzey_
Jarrett L. Ellzey

## I.    DEFINITIONS

The following definitions apply to these discovery requests pursuant to the FEDERAL RULES OF CIVIL PROCEDURE:

1.    **"ADVERTISMENT"** has the same meaning as described in 47 C.F.R. § 64.1200(f)(1), defined as material advertising the commercial availability or quality of any property, goods, or services.

2.    **"AUTOMATIC TELEPHONE DIALING SYSTEM"** and **"ATDS"** and **"AUTODIALER"** has the same meaning as described in 47 U.S.C.A. § 227(a)(1), defined as equipment which has the capacity (a) to store or produce telephone numbers to be called, using a random or sequential number generator, and (b) to dial such numbers as.

3.    **"PLAINTIFF"** means Thomas Buchanan, his representatives, and all other natural PERSONS or businesses or legal entities acting or purporting to act for or on his behalf.

4.    **"DNC CLASS"** means the Putative Class of individuals defined in PLAINTIFF'S Original Class Action Complaint filed March 13, 2017, on pages 8, ¶ 39 as:

All natural persons in the United States  who, from October 16, 2013 to the commencement of this litigation, received more than one telephone solicitation call in a 12-month period on their Residential Land Line telemarketing Sirius XM's satellite radio service more than 31 days after registering their telephone number with the National Do-Not-Call Registry and who did not have a prior established business relationship with Defendant and did not provide Defendant prior express written consent to receive such calls. Excluded from this class definition are any employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

5.    **"I-DNC CLASS"** means the Putative Class of individuals defined in PLAINTIFF'S Original Class Action Complaint filed March 13, 2017, on pages 8-9, ¶ 41 as:

All natural persons in the United States who, from October 16, 2013 to the commencement of this litigation, received one or more telephone solicitation calls on their Residential Land Line telemarketing Sirius XM's satellite radio service after registering their telephone number with Defendant's Company-Specific Do-Not-Call Registry and did not provide Defendant prior express written consent to receive such calls. Excluded from this class definition are any employees,

officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

6.      **"DEFENDANT"** means SIRIUS XM RADIO, INC. its officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, businesses or legal entities, if any, acting or purporting to act for or on its behalf.

7.      **"YOU"** and **"YOUR"** mean SIRIUS XM RADIO, INC., its officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, businesses or legal entities, if any, acting or purporting to act for or on its behalf.

8.      **"COMMUNICATION"** means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

9.      **"CONCERNING"** and **"RELATING TO"** mean referring to, regarding, describing, evidencing, constituting, discussing, memorializing, summarizing, recording or providing evidence of a subject matter.

10.     **"DIALED CALL"** means any attempt to communicate with a PERSON through the initiation of a telephone call or text message.

11.     **"DIALER"** means the electronic or manual system used to make a DIALED CALL.  "DIALER" includes any and all components of that system that are necessary in order to make a DIALED CALL, without limitation.

12.     **"DNC"** means the National Do Not Call Registry, established pursuant to 47 U.S.C. 227(c) and the regulations promulgated by the Federal Communications Commission.

13.     **"DOCUMENT"** and **"DOCUMENTS"** are defined to be synonymous in meaning and equal in scope to the usage of this term in FEDERAL RULE OF CIVIL PROCEDURE 34(a), including, without limitation, all "ELECTRONICALLY STORED INFORMATION" and "ESI," electronic or computerized data compilations. The terms include, without limitation, all

ii

typewritten, handwritten, graphic, photographic, printed or otherwise recorded matter or recording of symbols in tangible form, however produced or reproduced, of every kind and regardless of where located, which is in YOUR possession, custody, or control; or in the possession, custody or control of any servant or agent of YOU or of YOUR attorneys.  The terms include the following: electronically recorded information such as electronic mail ("email"), html files, databases, data processing cards or tapes, computerized data, computer diskettes, or information otherwise contained on a computer's hard drive, disks or backup tapes; video tapes, audio tapes, view-graphs, or any information maintained on digital, electronic, magnetic or other media; and any other summary, schedule, memorandum, note, statement, letter, telegram, interoffice COMMUNICATION, report, diary, worksheet, list, graph, chart, or index, tape record, partial or complete report of telephone or oral conversation, transcript or minutes, compilation, tabulation, study, analysis, or other such writing or recording.   The terms "DOCUMENT" and "DOCUMENTS" include any originals, all file copies, all other copies, no matter how prepared, and all drafts prepared in connection with such DOCUMENTS, whether or not used, as well as the file in which the DOCUMENTS are maintained.  A draft or non-identical copy of a DOCUMENT, including a copy or duplicate of a DOCUMENT that has any nonconforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing, is a separate DOCUMENT within the meaning of these terms.

14.    **"ELECTRONICALLY STORED INFORMATION"** and **"ESI"** have the same full meaning as construed by FED. R. CIV. P. 26 and 34 and includes, without limitation, the following:

(a)    Activity listings of electronic mail receipts and/or transmittals;

(b)     Output resulting from the use of any software program, including without limitation word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, AOL Instant Messenger (or similar program) or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether such electronic data exist in an active file, deleted file, or file fragment;

(c)     Any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other vehicle for digital data storage and/or transmittal, including without limitation a personal digital assistant, e.g., Palm Pilot, Blackberry, Treo, iPod, or other device; and

(d)     PLAINTIFF requests that ESI be processed and produced in a manner that preserves all metadata, and the parties confer regarding the production of metadata and the form of any electronic production prior to the gathering or processing of ESI.   Unless otherwise requested, all such ESI is to be produced in an agreed-upon, computer searchable format.

15.     **"IDENTIFY"** when referring to DOCUMENTS means to give, to the extent known, the (a) type of DOCUMENT, (b) general subject matter, (c) date of the DOCUMENT, and (d) author(s), addressee(s), and recipients(s).

16.     **"IDENTIFY"** when referring to a PERSON means to give, to the extent known, the PERSON'S full name, present or last known address, and when referring to a natural PERSON, the present or last known place of employment. Once a PERSON has been IDENTIFIED in accordance with this subsection, only the PERSON'S name need be listed in response to subsequent discovery requesting the identification of that PERSON.

17.    **"PERSON"** means any individual, partnership, association, corporation, joint venture, governmental or administrative body, or other business or legal entity.

18.    **"POLICY"** means any practice, procedure, directives, routine, rules, courses of conduct or code of conduct, written or unwritten, formal or informal, recorded or unrecorded, which were recognized, adopted, issued or followed by YOU.

19.    **"PREDICTIVE DIALER"** means:

(e)    Equipment that dials numbers and, when certain computer software is attached, assists callers in predicting when an agent will be available to take calls; or

(f)    Hardware, that when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers.

20.    **"PRIOR EXPRESS WRITTEN CONSENT"** has the same meaning as described in 47 C.F.R. § 64.1200(f)(8), defined as agreement, in writing, bearing the signature of the PERSON called that clearly authorizes the SELLER to deliver or cause to be delivered to the PERSON called ADVERTISEMENTS or telemarketing messages using an ATDS or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such ADVERTISEMENTS or telemarketing messages to be delivered.

21.    **"SELLER"** has the same meaning as described in 47 C.F.R. § 64.1200(f)(9), defined as the PERSON or entity on whose behalf a DIALED CALL or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any PERSON.

22.    **"TELEPHONE SOLICITATION"** has the same meaning as described in 47 U.S.C.A. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(14), defined as the initiation of a DIALED CALL

or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any PERSON.

23.     **"THIRD PARTY"** means any entity not owned or controlled by DEFENDANT, or any PERSON that does not receive an annual salary from DEFENDANT.

## II.   INSTRUCTIONS

1.     Unless otherwise indicated, these requests shall pertain to the time period from October 16, 2013 to the present and shall include all DOCUMENTS and information relating in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated, or received prior or subsequent to that period.

2.     Pursuant to Rule 26(b)(5) of the FEDERAL RULES OF CIVIL PROCEDURE, if DEFENDANT withholds the production of any DOCUMENT which is responsive to the following requests on the grounds that the DOCUMENT is privileged or otherwise protected, DEFENDANT shall state in a privilege log the nature of the claim of privilege or protection; and describe generally the type and nature of the DOCUMENT; the date of the DOCUMENT; the identity of the author(s), the addressees, and any recipients of the DOCUMENT; the DOCUMENT's present location; and any other information that will enable PLAINTIFF and the Court to assess the applicability of the privilege or protection.

3.     DEFENDANT is required to produce all the requested DOCUMENTS which are in its possession, custody or control, including (by way of illustration only and not limited to) DOCUMENTS in the possession, custody or control of DEFENDANT or its affiliates, or its merged and acquired predecessors, its present and former directors, officers, partners, employees,

accountants, attorneys or other agents, its present and former independent contractors over which it has control, and any other PERSON acting on DEFENDANT'S behalf.

4.      If a DOCUMENT responsive to these requests was at any time in DEFENDANT'S possession, custody or control but is no longer available for production, as to each such DOCUMENT state the following information:

A.      Whether the DOCUMENT is missing or lost;

B.      Whether the DOCUMENT has been destroyed;

C.      Whether the DOCUMENT has been transferred or delivered to another PERSON and, if so, at whose request;

D.      Whether the DOCUMENT has been otherwise disposed of; and

E.      The circumstances surrounding the disposition of the DOCUMENT and the date of its disposition.

## III.    RULES OF CONSTRUCTION

The following rules of construction apply to these discovery requests pursuant to the FEDERAL RULES OF CIVIL PROCEDURE:

1.      **All/Each.** The terms "all" and "each" shall be construed as all and each.

2.      **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.      **Number.** The use of the singular form of any word includes the plural and vice versa.

## IV.    ASSERTION OF CLAIM OR PRIVILEGE

The following rules concerning the assertion of a claim or privilege apply to these discovery requests pursuant to the FEDERAL RULES OF CIVIL PROCEDURE:

1.     Pursuant to Rule 26(b)(5) of the FEDERAL RULES OF CIVIL PROCEDURE, as to every request which YOU fail to answer in whole or in part on the ground that the information sought involves a DOCUMENT or oral COMMUNICATION which YOU contend to be privileged or otherwise protected from disclosure, state in detail:

A.     the portion of the request to which the response is claimed to be privileged;

B.     the identification of the DOCUMENT as defined below;

C.     the general subject matter of the DOCUMENT or COMMUNICATION;

D.     the author and all recipients of any DOCUMENT and the PERSONS involved in any oral COMMUNICATION;

E.     the identity of any other PERSON having knowledge of the DOCUMENT or COMMUNICATION involved;

F.     the express nature of the privilege claimed; and

G.     every fact on which YOU base the claim of privilege or that the information need not be disclosed.

2.     Where a party asserts a claim of privilege in objecting to any means of discovery or disclosure, and withholds otherwise responsive information based on that assertion:

(a)     the party asserting the privilege shall identify the nature of the privilege (including work product) being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

(b)     shall provide the following information, unless to divulge such information would cause disclosure of the allegedly privileged information:

(i)     for DOCUMENTS: (a) the type of DOCUMENT, *e.g.*, letter or memorandum; (b) the general subject

viii

matter of the DOCUMENT; (c) the date of the DOCUMENT; and (d) such other information as is sufficient to identify the DOCUMENT for a subpoena *duces tecum*, including, where appropriate, the author of the DOCUMENT, the addressees of the DOCUMENT, and any other recipients shown in the DOCUMENT, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

(ii)   for oral COMMUNICATIONS: (a) the names of the PERSON making the COMMUNICATION and the PERSON(s) present while the COMMUNICATION was made and, where not apparent, the relationship of the PERSON making the COMMUNICATION to the PERSON(s) present; (b) the date and place of COMMUNICATION; and (c) its general subject matter.

3.      Where the claim of privilege is asserted in response to discovery or disclosure other than at a deposition, the information set forth in subsection (1) shall be furnished in writing when the party responds to such discovery or disclosure, unless otherwise ordered by the Court.

4.      Where the claim of privilege is asserted during a deposition, the information set forth in subsection (1) shall be furnished: (a) at the deposition, to the extent it is readily available from the witness being deposed or otherwise, and (b) to the extent it not readily available, in writing within fourteen days after the privilege is asserted, unless otherwise ordered by the Court.

## V.      ELECTRONICALLY STORED INFORMATION ("ESI")

Discovery of relevant electronically stored information shall proceed as follows pursuant to any Protective Order or ESI Order entered by this Court, and the FEDERAL RULES OF CIVIL PROCEDURE:

1.      After receiving requests for DOCUMENT production, the parties shall search their DOCUMENTS, including ESI other than ESI that has been identified as not reasonably accessible,

and produce relevant responsive ESI in accordance with Rule 26(b)(2) of the FEDERAL RULES OF CIVIL PROCEDURE.

2. Searches and production of ESI identified as not reasonably accessible shall not be required to be conducted until the initial disclosure of reasonably accessible ESI has been completed. Requests for information expected to be found in ESI that is not reasonably accessible must be narrowly focused with some basis in fact supporting the request, and good cause must be provided. The party seeking such discovery may be required to pay all or a portion of the costs of search, retrieval, review, and production of the information, upon application to the Court.

3. **Search Methodology.** If a party intends to employ an electronic search to locate relevant ESI, the parties shall discuss and attempt to reach agreement as to the method of searching, and the words, terms, and phrases to be searched and any restrictions as to scope and method which might affect their ability to conduct a complete electronic search of the ESI. The parties shall also attempt to reach agreement as to the timing and conditions of any additional searches which may become necessary in the normal course of discovery. To minimize undue expense, the parties may consider limiting the scope of the electronic search (*e.g.*, time frames, fields, document types).

4. **Metadata.** Except as otherwise provided, metadata, especially substantive metadata, need not be routinely produced, except upon agreement of the requesting and producing litigants, or upon a showing of good cause in a motion filed by the requesting party.

5. **Format.** If the parties have not agreed or cannot agree to the format for DOCUMENT production, ESI shall be produced to the requesting party as image files (*e.g.*, PDF or TIFF). When the image file is produced, the producing party must preserve the integrity of the electronic DOCUMENT's contents, *i.e.*, the original formatting of the DOCUMENT, its metadata

and, where applicable, its revision history. After initial production in image file format is complete, a party must demonstrate particularized need for production of ESI in its native format.

## VI.   FEDERAL RULES OF CIVIL PROCEDURE REQUIREMENTS

1.      Unless otherwise set forth in a specific DOCUMENT request, the DOCUMENTS requested include all DOCUMENTS ever created through the date of this request.

2.      Pursuant to Rule 34(b) of the FEDERAL RULES OF CIVIL PROCEDURE, the DOCUMENTS requested shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in the request.

3.      Pursuant to Rule 34(b) of the FEDERAL RULES OF CIVIL PROCEDURE, YOUR response shall state, with respect to each item or category, that inspection and related activities shall be permitted as requested, unless the request is objected to, in which event the reasons for objection shall be stated. If objection is made to part of an item or category, the part shall be specified.

4.      This request is intended to be deemed continuing in character, so as to request YOU to properly amend or supplement YOUR response if YOU obtain further material information.

5.      If any DOCUMENT is withheld for any reason, including, but not limited to, any alleged claim of privilege, confidentiality or trade secret, or for any other reason or objection, please provide a description of the DOCUMENT being withheld which includes the following:

A.      The date of the DOCUMENT;

B.      The author of the DOCUMENT;

C.      The recipient of the DOCUMENT;

D.      All PERSONS to whom copies of the DOCUMENT have been furnished;

E.      The subject matter of the DOCUMENT;

    F.       The file in which the DOCUMENT is kept in the normal course of business;

    G.      The current custodian of the DOCUMENT; and

    H.      The nature of the privilege or other reason for not producing the DOCUMENT and sufficient description of the facts surrounding the contents of the DOCUMENT to justify withholding the DOCUMENT under said privilege or reason.

6.      If any DOCUMENT responsive to this request was, but is no longer, in YOUR possession, custody or control, or in existence, state whether it (1) is missing or lost; (2) has been destroyed; (3) has been transferred voluntarily or involuntarily to others; or (4) has been otherwise disposed of, and in each instance explain the circumstances surrounding the authorization of such disposition and state the date or approximate date thereof.

7.      Pursuant to Rule 26(e) of the FEDERAL RULES OF CIVIL PROCEDURE, these requests shall be deemed continuing in character such that YOU are under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the Court or in the following circumstances:

    (a)     YOU are under a duty to supplement at appropriate intervals with respect to testimony of an expert from whom a report is required under Rule 26(a)(2)(B) of the FEDERAL RULES OF CIVIL PROCEDURE. This duty extends to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under the Court's Scheduling Order are due.

    (b)     YOU are under a duty reasonably to amend a prior response to an interrogatory, request for production, or a request for admission if YOU learn that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

8.      Pursuant to Rule 26(g)(2) of the FEDERAL RULES OF CIVIL PROCEDURE, every discovery request, response, or objection made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name. The attorney's address

shall be stated. The signature of the attorney or party constitutes a certification that to the best of

the signer's knowledge, information, and belief, formed after a reasonable inquiry, the request,

response, or objection is:

> (a)    Consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;

> (b)    Not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the litigation;

> (c)    Not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation;

9.      If a request, response, or objection is not signed, it shall be stricken unless it is

signed promptly after the omission is called to the attention of the party marking the request,

response, or objection, and a party shall not be obligated to take any action with respect to it, until

it is signed.

10.     If without substantial justification a certification is made in violation of the rule,

the court, upon motion or upon its own initiative, shall impose upon the PERSON who made the

certification, the party on whose behalf the disclosure, request, response, or objection is made, or

both, an appropriate sanction, which may include an order to pay the amount of the reasonable

expenses incurred because of the violation, including a reasonable attorney's fee.

**NOTE:**        **As to each of the following requests, there is a duty on YOUR part to supplement the response with any information hereafter acquired, pursuant to Rule 26(e) of the FEDERAL RULES OF CIVIL PROCEDURE.**

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ("ESI")
TO DEFENDANT SIRIUS XM RADIO, INC.**

**REQUEST FOR PRODUCTION NO. 1:**   Produce all DOCUMENTS showing YOU had PRIOR EXPRESS WRITTEN CONSENT to call PLAINTIFF at any time.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:**   Produce all DOCUMENTS and/or ESI that contain any evidence or indication the PLAINTIFF provided his telephone number to YOU.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:**   Produce all DOCUMENTS and/or ESI that contain any evidence or indication YOU obtained PRIOR EXPRESS CONSENT from PLAINTIFF to received DIALED CALLS on his telephone.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:**   Produce all DOCUMENTS and/or ESI CONCERNING or RELATING TO any POLICIES governing contact with PERSONS on their cell phones and/or *via* DIALED CALLS, regardless of PRIOR EXPRESS CONSENT. DOCUMENTS and/or ESI responsive to this Request shall include but not be limited to those related to POLICIES regarding:  (1) whether and how to verify that a PERSON provided PRIOR EXPRESS CONSENT to receive DIALED CALLS; (2) whether and how to verify that a PERSON'S number is registered to the DNC (3) the frequency with which DIALED CALLS shall occur; (4) the duration and content of each DIALED CALL; and (5) the circumstances or reasons triggering the addition of a PERSON'S name to the list of those receiving DIALED CALLS.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:**   Produce all DOCUMENTS and/or ESI evidencing any version of the DNC YOU or any THIRD PARTY on behalf of YOU used to cross check PLAINTIFF'S or any member of the DNC CLASS' telephone numbers before placing DIALED CALLS to those numbers.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:**     Produce all DOCUMENTS and/or ESI CONCERNING or RELATING TO the creation, drafting, revision, approval, and/or implementation of the POLICIES referred to in YOUR response to Request No. 004 (above).

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 7:**     Produce all DOCUMENTS and/or ESI that define or describe YOUR DOCUMENT and/or ESI retention, preservation, and/or destruction POLICIES, including DOCUMENTS and/or ESI pertaining to YOUR telephone contact with PERSONS.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 8:**     Produce all DOCUMENTS and/or ESI that identify or describe all DIALERS, equipment, telephones, software, computer systems, and databases YOU, or someone on behalf of YOU, used to placed DIALED CALLS from October 16, 2013 to the present.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 9:**     Produce all phone scripts, conversation templates, conversation flowcharts, matrixes, flowcharts, and all other similar DOCUMENTS used by YOU or any THIRD PARTY during a DIALED CALL to any PERSON from October 16, 2013 to the present.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 10:**     Produce all phone scripts, conversation templates, conversation flowcharts, matrixes, flowcharts, and all other similar DOCUMENTS used by YOU or any THIRD PARTY during a DIALED CALL to PLAINTIFF from October 16, 2013 to the present.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 11:**     Produce all database(s) listing the PERSONS who received a DIALED CALL to their landline phone for TELEPHONE SOLICITATION purposes from YOU, or any THIRD PARTY on your behalf, from October 16, 2013 to the present.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12:**    Produce all database(s) listing the PERSONS who received a DIALED CALL to their cellular phone for TELEPHONE SOLICITATION purposes from YOU, or any THIRD PARTY on your behalf, from October 16, 2013 to the present.

   **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 13:**    Produce all DOCUMENTS evidencing any of the following information pertaining to any and all calls made by or on behalf of YOU, from October 16, 2013, to recipients of any complimentary programming provided by YOU during their respective complimentary programming period: (a) the initiating telephone number; (b) the telephone number which was called; (c) the dates on which such calls were made; (d) the time at which calls were initiated; (e) the identity of the person called; (f) the telephone numbers and/or addresses of the called party as reflected in any sale or lease records or customer data provided to YOU or YOUR contractor by any car dealer; (g) whether the called number was or was not assigned to a cellular telephone or landline.

   **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 14:**    Produce    all    DOCUMENTS    and/or    ESI CONCERNING or RELATING TO the instructions or procedures any employee who worked for YOU, or any THIRD PARTY retained by YOU, is required or recommended by YOU to follow in performing any job task, assignment, duty, or function related to outgoing DIALED CALLS made by YOU or any THIRD PARTY retained by YOU.

   **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 15:**    Produce    all    DOCUMENTS    and/or    ESI CONCERNING or RELATING TO any data and/or information provided or shared by Bob Tedford Chevrolet in Farmersville, Texas regarding PLAINTIFF.

   **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 16:**    Produce all DOCUMENTS provided by or on behalf of YOU or at YOUR instruction to PLAINTIFF prior to or at the time he purchased his 2011 Honda Odyssey from Tedford Chevrolet in Farmersville, Texas.

   **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 17:**    Produce    all    DOCUMENTS    and/or    ESI constituting any Welcome Kit (including the form envelope) mailed or otherwise provided by YOU or on behalf of YOU to PLAINTIFF.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:** Produce all DOCUMENTS and/or ESI constituting any customer agreement and/or contracts between YOU and PLAINTIFF.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:** Produce all DOCUMENTS and/or ESI evidencing that PLAINTIFF registered or provided his information on any website operated by YOU or on behalf of YOU.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:** Produce all DOCUMENTS and/or ESI evidencing that PLAINTIFF opened or created any accounts with YOU.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 21:** Produce all DOCUMENTS and/or ESI evidencing the manner in which telephone numbers were obtained from consumers, including PLAINTIFF and the members of the DNC CLASS and I-DNC CLASS.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 22:** Produce all DOCUMENTS and/or ESI identifying all sources in which consumer contact information, including telephone numbers was obtained by or on behalf of YOU.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23:** Produce all DOCUMENTS and/or ESI evidencing the number of individuals to which YOU of someone on YOUR behalf placed calls from October 16, 2013 to the present.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 24:**    Produce all DOCUMENTS and/or ESI identifying the individuals to which YOU of someone on YOUR behalf placed calls from October 16, 2013 to the present.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 25:**    Produce all DOCUMENTS and/or ESI evidencing YOU had an established business relationship with PLAINTIFF.
    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 26:**    Produce all DOCUMENTS and/or ESI evidencing YOU had an established business relationship with any member of the DNC CLASS.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 27:**    Produce all DOCUMENTS and/or ESI evidencing YOU had an established business relationship with any member of the I-DNC CLASS.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 28:**    Produce all DOCUMENTS and/or ESI evidencing any transaction between YOU and PLAINTIFF during the eighteen months preceding the call YOU your someone on YOUR behalf placed to PLAINTIFF on July 21, 2016.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 29:**    Produce all DOCUMENTS and/or ESI evidencing any service or product YOU provided to PLAINTIFF during the eighteen months preceding the call YOU your someone on YOUR behalf placed to PLAINTIFF on July 21, 2016.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 30:**    Produce all DOCUMENTS and/or ESI supporting the contention, if YOU so contend, that YOU had the express invitation or permission of PLAINTIFF to contact PLAINTIFF on his residential line.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 31:**   Produce all DOCUMENTS and/or ESI supporting the contention, if YOU so contend, that YOU had the express invitation or permission of and member of the DNC CLASS to contact his or her residential line.

   **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 32:**   Produce all DOCUMENTS and/or ESI CONCERNING or RELATING TO the existence of POLICIES through which YOU have retained a THIRD PARTY to contact residential telephone numbers on YOUR behalf since October 16, 2013, including, without limitation, any correspondence and/or contractual agreements with such THIRD PARTIES, and any DOCUMENTS and/or ESI describing such POLICIES, identifying THIRD PARTIES that have been retained, and/or identifying any of DEFENDANT'S officers or employees with authority to approve, create, revise, or implement such POLICIES.

   **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 33:**   Produce all DOCUMENTS and/or ESI CONCERNING or RELATING TO audits, investigations, inquiries, or studies, by YOU or any THIRD PARTY, including but not limited to any independent auditor, law firm, or governmental agency, regarding YOUR compliance with any state and/or federal laws or regulations involving the use of DIALED CALLS, including TCPA and its implementing regulations.

   **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 34:**   Produce all DOCUMENTS and/or ESI, including but not limited to notes, memoranda, electronic mail, letters, and/or meeting minutes, CONCERNING or RELATING TO YOUR compliance with any state and/or federal laws or regulations involving the use of DIALED CALLS, including the TCPA and its implementing regulations.

   **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 35:**   Produce all DOCUMENTS and/or ESI reflecting YOUR knowledge that YOUR POLICIES or practices governing contact with customers on their cellular phones may have been in violation of the FCC regulatory guidance or federal and/or state laws and regulations.

   **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 36:**   Produce all DOCUMENTS and/or ESI identifying or listing the names of PERSONS to whom YOU, or any THIRD PARTY retained by YOU, placed a DIALED CALL to a residential telephone at any time on or after October 16, 2013.

   **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 37:**   Produce   all   DOCUMENTS   and/or   ESI CONCERNING or RELATING TO any and all reports for each outbound dial list to PERSONS that YOU, or any THIRD PARTY retained by YOU, called or attempted to call, including those outbound dial lists generated by any DIALER that YOU, or any THIRD PARTY retained by YOU, have employed or utilized since October 16, 2013.  Do not modify or alter the lists; each call and attempted call made must be included in these lists.

   **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 38:**   Produce all applicable insurance agreements under which any insurer may be liable to satisfy all or part of any judgment which may be entered in this action, or to indemnify or reimburse YOU for payments made to satisfy all or part of any judgment.

   **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 39:**   Produce   all   DOCUMENTS   and/or   ESI identifying, describing, and/or listing the various offices, regions, units, or divisions within DEFENDANT, including but not limited to organizational charts, lists of YOUR office locations, and telephone or e-mail lists or directories.

   **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 40:**   Produce all DOCUMENTS and/or ESI (including but not limited to investigation files, logs, or databases) CONCERNING or RELATING TO requests, inquiries, demands, claims, grievances, concerns, protests, or complaints made against YOU, concerning or relating to a DIALED CALL to a cellular telephone.  This DOCUMENT request includes all forms of COMMUNICATIONS – either in writing or orally, formal or informal, to YOU or a THIRD PARTY.

   **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 41:**   Produce   all   DOCUMENTS   and/or   ESI CONCERNING or RELATING TO the POLICIES for raising a complaint concerning or relating

to a DIALED CALL to a cellular telephone, and all DOCUMENTS and/or ESI that concern or relate to YOUR procedures for investigating and addressing such complaints.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 42:** Produce all DOCUMENTS and/or ESI CONCERNING or RELATING TO the PLAINTIFF and/or his residential telephone number. This request includes any voice recordings concerning the PLAINTIFF and/or his telephone number, and any voice recording of any phone call with the PLAINTIFF.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 43:** Produce all DOCUMENTS and/or ESI that record or list every DIALED CALL made by YOU from October 16, 2013 to the present, including all DOCUMENTS and/or ESI that identify, reflect and/or evidence the number of times each such telephone number was called.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 44:** Produce all DOCUMENTS CONCERNING or RELATING TO PLAINTIFF's files, including but not limited to all records of DIALED CALLS YOU made to PLAINTIFF, all notes of conversations with PLAINTIFF, all recordings, notes and records regarding any COMMUNICATION with PLAINTIFF from October 16, 2013 to the present.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 45:** Produce all DOCUMENTS CONCERNING or RELATING TO PLAINTIFF, which YOU maintain or have maintained, from October 16, 2013 to the present.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 46:** Produce all DOCUMENTS CONCERNING or RELATING TO YOUR corporate structure which sets forth YOUR entities, subsidiaries or other departments engaged in conducting DIALED CALL campaigns from October 16, 2013 to the present.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 47:** Produce all DOCUMENTS that YOU used to determine whether the telephone numbers to be called by YOU had provided their PRIOR

EXPRESS WRITTEN CONSENT, before attempting to call those numbers, including but not limited to any electronic notations in the outbound dial lists that the called party provided PRIOR EXPRESS WRITTEN CONSENT and including all DOCUMENTS that YOU may rely on at trial or other hearing in this case to establish PRIOR EXPRESS WRITTEN CONSENT was provided to YOU from October 16, 2013 to the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 48:**   Produce all DOCUMENTS CONCERNING or RELATING TO reports in electronically searchable format of AUTODIALER or PREDICTIVE DIALER calls made by YOU or any of YOUR employees, agents or independent contractors, or other PERSONS or entities working on YOUR behalf, residential telephones of PERSONS YOU called on behalf of YOURSELF, and/or any THIRD PARTY, from October 16, 2013 to the present. [Do not modify or alter the lists; each call and attempted call made must be included in these lists].

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 49:**   Produce all DOCUMENTS CONCERNING or RELATING TO contracts or agreements between YOU and any entity that provided DIALED CALL services for YOU, from October 16, 2013 to the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 50:**   Produce all DOCUMENTS CONCERNING or RELATING TO any system, scheme, technique, practice, procedure or method that DEFENDANT maintains, operates, or employs to record, memorialize, or otherwise document DIALED CALLS made to PERSONS for the purposes of TELEPHONE SOLICITATION.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 51:**   Produce all DOCUMENTS CONCERNING or RELATING TO any training that YOU provide to YOUR employees involved in making DIALED CALLS to PERSONS for the purposes of contacting customers, past customers, or prospective customers.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 52:**   Produce all DOCUMENTS CONCERNING or RELATING TO any instructions that YOU provide to YOUR employees involved in making

DIALED CALLS to PERSONS with respect to how to document an oral or written request to cease contacting such PERSON.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 53:**   Produce all POLICY and/or practice manuals CONCERNING or RELATING TO the use of telephones by YOUR TELEPHONE SOLICITATION and/or prospective customer department used from October 16, 2013 to the present.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 54:**   Produce all DOCUMENTS describing the means for determining whether an outgoing call between DEFENDANT and its customers, past customers, or prospective customers is to a landline number or a cellular telephone number used from October 16, 2013 to the present.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 55:**   Produce all DOCUMENTS describing the criteria and methodology for establishing a number to be called from October 16, 2013 to the present.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 56:**   Produce all written data retention POLICIES and a description of the data retention POLICIES actually in place, from October 16, 2013 to the present.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 57:**   Produce all DOCUMENTS describing the methods for reporting on outgoing calls made, the content of those calls and the call treatment performed when a called party answers the call, from October 16, 2013 to the present.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 58:**   Produce all DOCUMENTS describing the methods for reporting on outgoing calls made, the content of those calls and the call treatment performed when a called party does not answer the call, from October 16, 2013 to the present.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 59:**   Produce all DOCUMENTS describing the call recording and reporting procedures for outgoing calls between DEFENDANT and its customers, past customers, or prospective customers from October 16, 2013 to the present.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 60:**   Produce all DOCUMENTS describing the procedures for outgoing calls between DEFENDANT and its customers, past customers, or prospective customers from October 16, 2013 to the present, when the called party requests DEFENDANT cease making calls to the called party.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 61:**   Produce each and every report, opinion, physical model, compilation of data, and other material prepared by an expert used for consultation, even if it was prepared in anticipation of litigation or for trial, which forms a basis either in whole or in part of the opinion of an expert who is to be called as a witness.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 62:**   Produce all DOCUMENTS, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for any consulting expert of YOURS whose mental impressions and opinions have been reviewed by any testifying expert of YOURS in anticipation of a testifying expert's testimony in this litigation.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 63:**   Produce the resume and bibliography of any consulting expert whose mental impressions and opinions have been reviewed by any testifying expert of YOURS.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 64:**   Produce all DOCUMENTS, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for any testifying expert of YOURS, in anticipation of the testifying expert's testimony in this litigation.

      **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 65:**   Produce the resume and bibliography of YOUR testifying expert(s).

   **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 66:**   Produce all transcripts of testimony previously provided by any PERSON YOU listed as an expert witness.

   **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 67:**   Produce all treatises, rules, regulations, guidelines, statutes, POLICIES, procedures, and any other authoritative materials considered by any testifying expert in forming an opinion.

   **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 68:**   Produce all invoices, bills, and other billing materials for each expert YOU expect will testify at trial.

   **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 69:**   Produce all non-privileged ESI YOU received from any PERSON concerning PLAINTIFF's allegations in this suit.

   **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 70:**   Produce all testimony lists, case lists or similar DOCUMENTS identifying any and all cases in which or for which YOUR testifying experts have been retained.

   **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 71:**   Produce all testimony lists, case lists or similar DOCUMENTS maintained by any of YOUR consulting experts whose mental impressions and opinions have been reviewed by any of YOUR testifying experts.

   **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 72:**   Produce all DOCUMENTS and ESI in YOUR possession, custody, or control evidencing or supporting YOUR defenses in this lawsuit.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 73:**   Produce all cooperation agreements, settlement agreements, releases, covenants not to sue, loan receipt agreements, Mary Carter agreements, guarantee agreements, and indemnification agreements which YOU have entered into or which have been proposed with respect to the PLAINTIFF's claims, causes of action, and alleged damages made the basis of this lawsuit.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 74:**   Produce all statements, ESI, DOCUMENTS, and memos relating to witnesses or potential witnesses or PERSONS YOU contacted in connection with this case.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 75:**   Produce all statements, ESI, DOCUMENTS, and memos relating to witnesses or potential witnesses or PERSONS that contacted YOU in connection with this case.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 76:**   Produce all correspondence between YOU (and/or YOUR attorneys) and the expert witnesses YOU designated herein or consulted in this case.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 77:**   Produce all DOCUMENTS, ESI, reports or records pertaining to any investigation concerning the incident made the basis of this lawsuit that are not privileged under law.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 78:**   Produce all DOCUMENTS, ESI, reports or records YOU, or someone on your behalf, maintained as an internal do-not-call list from October 16, 2013 to the present.

  **RESPONSE:**

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| THOMAS BUCHANAN, on behalf of himself and all others similarly situated,<br><br>                     Plaintiff,<br>   v.<br><br>SIRIUS XM RADIO, INC.<br><br>                   Defendant. | Case No. 3:17-cv-00728-D<br><br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES**
**TO DEFENDANT SIRIUS XM RADIO, INC.**

To:   Defendant SIRIUS XM RADIO, INC., by and through its attorneys of record, Thomas Demitrack, JONES DAY, North Point, 901 Lakeside Ave, Cleveland, OH 44114;

      Lee Armstrong, Allison Waks, JONES DAY, 250 Vesey Street, New York, New York 10281; and

      Albert J. Rota, Natalia O. Delaune, JONES DAY, 2727 North Harwood St., Dallas, Texas 75201.

THOMAS BUCHANAN ("PLAINTIFF") serves the following First Set of Interrogatories to SIRIUS XM RADIO, INC. ("DEFENDANT") pursuant to Rule 33 of the FEDERAL RULES OF CIVIL PROCEDURE. Responses are to be sent to the offices of HUGHES ELLZEY, LLP, 2700 Post Oak Blvd., Suite 1120, Houston, Texas 77056 within thirty (30) days following the service of this request. No extensions of time with respect to the responses shall be valid unless such agreement is set forth in writing and signed by counsel for PLAINTIFF. This document is governed by the definitions and instructions that follow pursuant to the FEDERAL RULES OF CIVIL PROCEDURE.

Respectfully Submitted,

**HUGHES ELLZEY, LLP**


_____/s/ Jarrett L. Ellzey_____
W. Craft Hughes
Texas Bar No. 24046123
craft@hughesellzey.com
Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@hughesellzey.com
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335


**TURNER LAW OFFICES, LLC**

Henry A. Turner
Georgia Bar No. 719310
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Telephone: (404) 378-6274
hturner@tloffices.com

**SIRI & GLIMSTAD LLP**

Aaron Siri
NY Bar No. 4321790
Mason A. Barney
NY Bar No. 4405809
200 Park Avenue, 17th Floor
New York, New York 10166
Tel: (212) 532-1091
E-Mail: aaron@sirillp.com

**WERMAN SALAS P.C.**

Douglas M. Werman
IL Bar No. 6204740
77 West Washington, Suite 1402
Chicago, Illinois 60602
dwerman@flsalaw.com
(312) 419-1008

**MARK A. ALEXANDER P.C.**

Mark A. Alexander
TX Bar No. 01007500
5080 Spectrum, Suite 850E
Addison, Texas 75001
Ph: 972.364.9700
Fax: 972. 239.2244
E-Mail: mark@markalexanderlaw.com

**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLAS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>August 7, 2017</u>, a true and correct copy of the attached set of Requests for Production was served upon the following parties pursuant to Rule 5 of the FEDERAL RULES OF CIVIL PROCEDURE:

Thomas Demitrack
JONES DAY
North Point
901 Lakeside Ave.
Cleveland, OH 44114

Lee Armstrong
Allison Waks
JONES DAY
250 Vesey Street
New York, New York 10281

Albert J. Rota
Natalia O. Delaune
JONES DAY
2727 North Harwood St.
Dallas, Texas 75201

*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey

## I.    DEFINITIONS

The following definitions apply to these discovery requests pursuant to the FEDERAL RULES OF CIVIL PROCEDURE:

1.    **"ADVERTISMENT"** has the same meaning as described in 47 C.F.R. § 64.1200(f)(1), defined as material advertising the commercial availability or quality of any property, goods, or services.

2.    **"AUTOMATIC TELEPHONE DIALING SYSTEM"** and **"ATDS"** and **"AUTODIALER"** has the same meaning as described in 47 U.S.C.A. § 227(a)(1), defined as equipment which has the capacity (a) to store or produce telephone numbers to be called, using a random or sequential number generator, and (b) to dial such numbers as.

3.    **"PLAINTIFF"** means Thomas Buchanan, his representatives, and all other natural PERSONS or businesses or legal entities acting or purporting to act for or on his behalf.

4.    **"DNC CLASS"** means the Putative Class of individuals defined in PLAINTIFF'S Original Class Action Complaint filed March 13, 2017, on pages 8, ¶ 39 as:

All natural persons in the United States  who, from October 16, 2013 to the commencement of this litigation, received more than one telephone solicitation call in a 12-month period on their Residential Land Line telemarketing Sirius XM's satellite radio service more than 31 days after registering their telephone number with the National Do-Not-Call Registry and who did not have a prior established business relationship with Defendant and did not provide Defendant prior express written consent to receive such calls. Excluded from this class definition are any employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

5.    **"I-DNC CLASS"** means the Putative Class of individuals defined in PLAINTIFF'S Original Class Action Complaint filed March 13, 2017, on pages 8-9, ¶ 41 as:

All natural persons in the United States who, from October 16, 2013 to the commencement of this litigation, received one or more telephone solicitation calls on their Residential Land Line telemarketing Sirius XM's satellite radio service after registering their telephone number with Defendant's Company-Specific Do-Not-Call Registry and did not provide Defendant prior express written consent to receive such calls. Excluded from this class definition are any employees,

officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

6.       **"DEFENDANT"** means SIRIUS XM RADIO, INC. its officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, businesses or legal entities, if any, acting or purporting to act for or on its behalf.

7.       **"YOU"** and **"YOUR"** mean SIRIUS XM RADIO, INC., its officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, businesses or legal entities, if any, acting or purporting to act for or on its behalf.

8.       **"COMMUNICATION"** means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

9.       **"CONCERNING"** and **"RELATING TO"** mean referring to, regarding, describing, evidencing, constituting, discussing, memorializing, summarizing, recording or providing evidence of a subject matter.

10.       **"DIALED CALL"** means any attempt to communicate with a PERSON through the initiation of a telephone call or text message.

11.       **"DIALER"** means the electronic or manual system used to make a DIALED CALL.  "DIALER" includes any and all components of that system that are necessary in order to make a DIALED CALL, without limitation.

12.       **"DNC"** means the National Do Not Call Registry, established pursuant to 47 U.S.C. 227(c) and the regulations promulgated by the Federal Communications Commission.

13.       **"DOCUMENT"** and **"DOCUMENTS"** are defined to be synonymous in meaning and equal in scope to the usage of this term in FEDERAL RULE OF CIVIL PROCEDURE 34(a), including, without limitation, all "ELECTRONICALLY STORED INFORMATION" and "ESI," electronic or computerized data compilations. The terms include, without limitation, all

ii

typewritten, handwritten, graphic, photographic, printed or otherwise recorded matter or recording of symbols in tangible form, however produced or reproduced, of every kind and regardless of where located, which is in YOUR possession, custody, or control; or in the possession, custody or control of any servant or agent of YOU or of YOUR attorneys.  The terms include the following: electronically recorded information such as electronic mail ("email"), html files, databases, data processing cards or tapes, computerized data, computer diskettes, or information otherwise contained on a computer's hard drive, disks or backup tapes; video tapes, audio tapes, view-graphs, or any information maintained on digital, electronic, magnetic or other media; and any other summary, schedule, memorandum, note, statement, letter, telegram, interoffice COMMUNICATION, report, diary, worksheet, list, graph, chart, or index, tape record, partial or complete report of telephone or oral conversation, transcript or minutes, compilation, tabulation, study, analysis, or other such writing or recording.  The terms "DOCUMENT" and "DOCUMENTS" include any originals, all file copies, all other copies, no matter how prepared, and all drafts prepared in connection with such DOCUMENTS, whether or not used, as well as the file in which the DOCUMENTS are maintained.  A draft or non-identical copy of a DOCUMENT, including a copy or duplicate of a DOCUMENT that has any nonconforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing, is a separate DOCUMENT within the meaning of these terms.

14.    **"ELECTRONICALLY STORED INFORMATION"** and **"ESI"** have the same full meaning as construed by FED. R. CIV. P. 26 and 34 and includes, without limitation, the following:

(a)    Activity listings of electronic mail receipts and/or transmittals;

iii

(b)     Output resulting from the use of any software program, including without limitation word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, AOL Instant Messenger (or similar program) or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether such electronic data exist in an active file, deleted file, or file fragment;

(c)     Any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other vehicle for digital data storage and/or transmittal, including without limitation a personal digital assistant, e.g., Palm Pilot, Blackberry, Treo, iPod, or other device; and

(d)     PLAINTIFF requests that ESI be processed and produced in a manner that preserves all metadata, and the parties confer regarding the production of metadata and the form of any electronic production prior to the gathering or processing of ESI.   Unless otherwise requested, all such ESI is to be produced in an agreed-upon, computer searchable format.

15.     **"IDENTIFY"** when referring to DOCUMENTS means to give, to the extent known, the (a) type of DOCUMENT, (b) general subject matter, (c) date of the DOCUMENT, and (d) author(s), addressee(s), and recipients(s).

16.     **"IDENTIFY"** when referring to a PERSON means to give, to the extent known, the PERSON'S full name, present or last known address, and when referring to a natural PERSON, the present or last known place of employment. Once a PERSON has been IDENTIFIED in accordance with this subsection, only the PERSON'S name need be listed in response to subsequent discovery requesting the identification of that PERSON.

iv

17.     **"PERSON"** means any individual, partnership, association, corporation, joint venture, governmental or administrative body, or other business or legal entity.

18.     **"POLICY"** means any practice, procedure, directives, routine, rules, courses of conduct or code of conduct, written or unwritten, formal or informal, recorded or unrecorded, which were recognized, adopted, issued or followed by YOU.

19.     **"PREDICTIVE DIALER"** means:

        (a)     Equipment that dials numbers and, when certain computer software is attached, assists callers in predicting when an agent will be available to take calls; or

        (b)     Hardware, that when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers.

20.     **"PRIOR EXPRESS WRITTEN CONSENT"** has the same meaning as described in 47 C.F.R. § 64.1200(f)(8), defined as agreement, in writing, bearing the signature of the PERSON called that clearly authorizes the SELLER to deliver or cause to be delivered to the PERSON called ADVERTISEMENTS or telemarketing messages using an ATDS or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such ADVERTISEMENTS or telemarketing messages to be delivered.

21.     **"SELLER"** has the same meaning as described in 47 C.F.R. § 64.1200(f)(9), defined as the PERSON or entity on whose behalf a DIALED CALL or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any PERSON.

22.     **"TELEPHONE SOLICITATION"** has the same meaning as described in 47 U.S.C.A. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(14), defined as the initiation of a DIALED CALL

or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any PERSON.

23.    **"THIRD PARTY"** means any entity not owned or controlled by DEFENDANT, or any PERSON that does not receive an annual salary from DEFENDANT.


## II.    INSTRUCTIONS

1.    Unless otherwise indicated, these requests shall pertain to the time period from October 16, 2013 to the present and shall include all DOCUMENTS and information relating in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated, or received prior or subsequent to that period.

2.    Pursuant to Rule 26(b)(5) of the FEDERAL RULES OF CIVIL PROCEDURE, if DEFENDANT withholds the production of any DOCUMENT which is responsive to the following requests on the grounds that the DOCUMENT is privileged or otherwise protected, DEFENDANT shall state in a privilege log the nature of the claim of privilege or protection; and describe generally the type and nature of the DOCUMENT; the date of the DOCUMENT; the identity of the author(s), the addressees, and any recipients of the DOCUMENT; the DOCUMENT's present location; and any other information that will enable PLAINTIFF and the Court to assess the applicability of the privilege or protection.

3.    DEFENDANT is required to produce all the requested DOCUMENTS which are in its possession, custody or control, including (by way of illustration only and not limited to) DOCUMENTS in the possession, custody or control of DEFENDANT or its affiliates, or its merged and acquired predecessors, its present and former directors, officers, partners, employees,

accountants, attorneys or other agents, its present and former independent contractors over which it has control, and any other PERSON acting on DEFENDANT'S behalf.

4.      If a DOCUMENT responsive to these requests was at any time in DEFENDANT'S possession, custody or control but is no longer available for production, as to each such DOCUMENT state the following information:

      A.      Whether the DOCUMENT is missing or lost;

      B.      Whether the DOCUMENT has been destroyed;

      C.      Whether the DOCUMENT has been transferred or delivered to another PERSON and, if so, at whose request;

      D.      Whether the DOCUMENT has been otherwise disposed of; and

      E.      The circumstances surrounding the disposition of the DOCUMENT and the date of its disposition.

## III.   RULES OF CONSTRUCTION

The following rules of construction apply to these discovery requests pursuant to the FEDERAL RULES OF CIVIL PROCEDURE:

1.      **All/Each.** The terms "all" and "each" shall be construed as all and each.

2.      **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.      **Number.** The use of the singular form of any word includes the plural and vice versa.

## IV.   ASSERTION OF CLAIM OR PRIVILEGE

The following rules concerning the assertion of a claim or privilege apply to these discovery requests pursuant to the FEDERAL RULES OF CIVIL PROCEDURE:

1.     Pursuant to Rule 26(b)(5) of the FEDERAL RULES OF CIVIL PROCEDURE, as to every request which YOU fail to answer in whole or in part on the ground that the information sought involves a DOCUMENT or oral COMMUNICATION which YOU contend to be privileged or otherwise protected from disclosure, state in detail:

    A.    the portion of the request to which the response is claimed to be privileged;

    B.    the identification of the DOCUMENT as defined below;

    C.    the general subject matter of the DOCUMENT or COMMUNICATION;

    D.    the author and all recipients of any DOCUMENT and the PERSONS involved in any oral COMMUNICATION;

    E.    the identity of any other PERSON having knowledge of the DOCUMENT or COMMUNICATION involved;

    F.    the express nature of the privilege claimed; and

    G.    every fact on which YOU base the claim of privilege or that the information need not be disclosed.

2.     Where a party asserts a claim of privilege in objecting to any means of discovery or disclosure, and withholds otherwise responsive information based on that assertion:

    (a)    the party asserting the privilege shall identify the nature of the privilege (including work product) being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

    (b)    shall provide the following information, unless to divulge such information would cause disclosure of the allegedly privileged information:

        (i)    for DOCUMENTS: (a) the type of DOCUMENT, *e.g.*, letter or memorandum; (b) the general subject

matter of the DOCUMENT; (c) the date of the DOCUMENT; and (d) such other information as is sufficient to identify the DOCUMENT for a subpoena *duces tecum*, including, where appropriate, the author of the DOCUMENT, the addressees of the DOCUMENT, and any other recipients shown in the DOCUMENT, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

(ii)    for oral COMMUNICATIONS: (a) the names of the PERSON making the COMMUNICATION and the PERSON(s) present while the COMMUNICATION was made and, where not apparent, the relationship of the PERSON making the COMMUNICATION to the PERSON(s) present; (b) the date and place of COMMUNICATION; and (c) its general subject matter.

3.      Where the claim of privilege is asserted in response to discovery or disclosure other than at a deposition, the information set forth in subsection (1) shall be furnished in writing when the party responds to such discovery or disclosure, unless otherwise ordered by the Court.

4.      Where the claim of privilege is asserted during a deposition, the information set forth in subsection (1) shall be furnished: (a) at the deposition, to the extent it is readily available from the witness being deposed or otherwise, and (b) to the extent it not readily available, in writing within fourteen days after the privilege is asserted, unless otherwise ordered by the Court.

## V.    ELECTRONICALLY STORED INFORMATION ("ESI")

Discovery of relevant electronically stored information shall proceed as follows pursuant to any Protective Order or ESI Order entered by this Court, and the FEDERAL RULES OF CIVIL PROCEDURE:

1.      After receiving requests for DOCUMENT production, the parties shall search their DOCUMENTS, including ESI other than ESI that has been identified as not reasonably accessible,

and produce relevant responsive ESI in accordance with Rule 26(b)(2) of the FEDERAL RULES OF CIVIL PROCEDURE.

2.      Searches and production of ESI identified as not reasonably accessible shall not be required to be conducted until the initial disclosure of reasonably accessible ESI has been completed. Requests for information expected to be found in ESI that is not reasonably accessible must be narrowly focused with some basis in fact supporting the request, and good cause must be provided.  The party seeking such discovery may be required to pay all or a portion of the costs of search, retrieval, review, and production of the information, upon application to the Court.

3.      **Search Methodology.**  If a party intends to employ an electronic search to locate relevant ESI, the parties shall discuss and attempt to reach agreement as to the method of searching, and the words, terms, and phrases to be searched and any restrictions as to scope and method which might affect their ability to conduct a complete electronic search of the ESI. The parties shall also attempt to reach agreement as to the timing and conditions of any additional searches which may become necessary in the normal course of discovery. To minimize undue expense, the parties may consider limiting the scope of the electronic search (*e.g.*, time frames, fields, document types).

4.      **Metadata.** Except as otherwise provided, metadata, especially substantive metadata, need not be routinely produced, except upon agreement of the requesting and producing litigants, or upon a showing of good cause in a motion filed by the requesting party.

5.      **Format.**  If the parties have not agreed or cannot agree to the format for DOCUMENT production, ESI shall be produced to the requesting party as image files (*e.g.*, PDF or TIFF). When the image file is produced, the producing party must preserve the integrity of the electronic DOCUMENT's contents, *i.e.*, the original formatting of the DOCUMENT, its metadata

x

and, where applicable, its revision history. After initial production in image file format is complete, a party must demonstrate particularized need for production of ESI in its native format.

## VI.   FEDERAL RULES OF CIVIL PROCEDURE REQUIREMENTS

1.      Unless otherwise set forth in a specific DOCUMENT request, the DOCUMENTS requested include all DOCUMENTS ever created through the date of this request.

2.      Pursuant to Rule 34(b) of the FEDERAL RULES OF CIVIL PROCEDURE, the DOCUMENTS requested shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in the request.

3.      Pursuant to Rule 34(b) of the FEDERAL RULES OF CIVIL PROCEDURE, YOUR response shall state, with respect to each item or category, that inspection and related activities shall be permitted as requested, unless the request is objected to, in which event the reasons for objection shall be stated. If objection is made to part of an item or category, the part shall be specified.

4.      This request is intended to be deemed continuing in character, so as to request YOU to properly amend or supplement YOUR response if YOU obtain further material information.

5.      If any DOCUMENT is withheld for any reason, including, but not limited to, any alleged claim of privilege, confidentiality or trade secret, or for any other reason or objection, please provide a description of the DOCUMENT being withheld which includes the following:

      A.      The date of the DOCUMENT;

      B.      The author of the DOCUMENT;

      C.      The recipient of the DOCUMENT;

      D.      All PERSONS to whom copies of the DOCUMENT have been furnished;

      E.      The subject matter of the DOCUMENT;

F.      The file in which the DOCUMENT is kept in the normal course of business;

G.      The current custodian of the DOCUMENT; and

H.      The nature of the privilege or other reason for not producing the DOCUMENT and sufficient description of the facts surrounding the contents of the DOCUMENT to justify withholding the DOCUMENT under said privilege or reason.

6.      If any DOCUMENT responsive to this request was, but is no longer, in YOUR possession, custody or control, or in existence, state whether it (1) is missing or lost; (2) has been destroyed; (3) has been transferred voluntarily or involuntarily to others; or (4) has been otherwise disposed of, and in each instance explain the circumstances surrounding the authorization of such disposition and state the date or approximate date thereof.

7.      Pursuant to Rule 26(e) of the FEDERAL RULES OF CIVIL PROCEDURE, these requests shall be deemed continuing in character such that YOU are under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the Court or in the following circumstances:

(a)      YOU are under a duty to supplement at appropriate intervals with respect to testimony of an expert from whom a report is required under Rule 26(a)(2)(B) of the FEDERAL RULES OF CIVIL PROCEDURE. This duty extends to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under the Court's Scheduling Order are due.

(b)      YOU are under a duty reasonably to amend a prior response to an interrogatory, request for production, or a request for admission if YOU learn that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

8.      Pursuant to Rule 26(g)(2) of the FEDERAL RULES OF CIVIL PROCEDURE, every discovery request, response, or objection made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name. The attorney's address

shall be stated. The signature of the attorney or party constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the request, response, or objection is:

(a)     Consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;

(b)     Not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the litigation;

(c)     Not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation;

9.     If a request, response, or objection is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the party marking the request, response, or objection, and a party shall not be obligated to take any action with respect to it, until it is signed.

10.     If without substantial justification a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the PERSON who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

**NOTE:**     **As to each of the following requests, there is a duty on YOUR part to supplement the response with any information hereafter acquired, pursuant to Rule 26(e) of the FEDERAL RULES OF CIVIL PROCEDURE.**

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## TO DEFENDANT SIRIUS XM RADIO, INC.

**INTERROGATORY NO. 1:** IDENTIFY the name, address and phone number of each PERSON who answered these Interrogatories, supplied information used or intended to be used in answering these Interrogatories, or assisted, in any way, with the formulation and preparation of the answers to these Interrogatories.

**ANSWER:**

**INTERROGATORY NO. 2:** IDENTIFY and describe all DOCUMENTS reviewed, referred to, or consulted, in the preparation of YOUR answers and responses to these Interrogatories, including the Bates number of each DOCUMENT.

**ANSWER:**

**INTERROGATORY NO. 3:** Explain precisely how YOU obtained the PLAINTIFF'S telephone number (972) 437-8642.

**ANSWER:**

**INTERROGATORY NO. 4:** IDENTIFY, list, and describe all the actions YOU took to determine whether PRIOR EXPRESS WRITTEN CONSENT had been obtained CONCERNING telephone numbers YOU called, or YOU attempted to call, from October 16, 2013 to the present.

**ANSWER:**

**INTERROGATORY NO. 5:** IDENTIFY the specific date and substance of each COMMUNICATION, contact, or attempted COMMUNICATION or contact, between YOU and PLAINTIFF from October 16, 2013 to the present.

**ANSWER:**

**INTERROGATORY NO. 6:** Describe and explain (1) how YOU determine whether a telephone number is registered with the DNC, and (2) the procedure YOU use to IDENTIFY whether a telephone number is registered with the DNC.

**ANSWER:**

**INTERROGATORY NO. 7:** IDENTIFY and list the names of all THIRD PARTIES utilized by YOU to make DIALED CALLS to YOUR customers, past customers, or prospective customers from October 16, 2013 to the present. This Interrogatory includes, but is not limited to, all call centers, telephone providers, telegraph providers, cable providers, telecommunication providers, and electronic communication providers, suppliers, servicers, and carriers.

**ANSWER:**


**INTERROGATORY NO. 8:** IDENTIFY each DIALED CALL that YOU made to PLAINTIFF'S telephone number (972) 437-8642 from October 16, 2013 to the present, including the specific date of each DIALED CALL.

**ANSWER:**


**INTERROGATORY NO. 9:** IDENTIFY all equipment YOU used to make each DIALED CALL to PLAINTIFF'S telephone number (972) 437-8642 from October 16, 2013 to the present, including the manufacturer's name, model number, and type of equipment.

**ANSWER:**


**INTERROGATORY NO. 10:** IDENTIFY all software, software applications, software packages, software systems, and software programs YOU used to make each DIALED CALL to PLAINTIFF'S telephone number (972) 437-8642 from October 16, 2013 to the present.

**ANSWER:**


**INTERROGATORY NO. 11:** IDENTIFY all DIALERS, hardware, computer systems, and other electronic or non-electronic devices YOU used to make each DIALED CALL to PLAINTIFF'S telephone number (972) 437-8642 from October 16, 2013 to the present.

**ANSWER:**


**INTERROGATORY NO. 12:** Describe and explain how PLAINTIFF provided YOU with PRIOR EXPRESS WRITTEN CONSENT to make DIALED CALLS to his telephone number (972) 437-8642.

**ANSWER:**

**INTERROGATORY NO. 13:** For all DIALED CALLS that YOU placed from October 16, 2013 to the present to a telephone number registered with the DNC, please IDENTIFY and list each telephone number.

**ANSWER:**

**INTERROGATORY NO. 14:** For all DIALED CALLS that YOU placed from October 16, 2013 to the present, state the total number of individuals listed on YOUR internal do-not-call list. This requests includes lists maintained by any party who placed DIALED CALLS on your behalf.

**ANSWER:**

**INTERROGATORY NO. 15:** How many unique telephone numbers have been called by YOU, and THIRD PARTIES on your behalf, for TELEPHONE SOLICITATION purposes from October 16, 2013 to the present?

**ANSWER:**

**INTERROGATORY NO. 16:** How many total DIALED CALLS have been made by YOU, and THIRD PARTIES on your behalf, for TELEPHONE SOLICITATION purposes from October 16, 2013 to the present?

**ANSWER:**

**INTERROGATORY NO. 17:** IDENTIFY and list all PERSONS having possession, custody, or control of DOCUMENTS or ESI relevant to this suit, and a brief description of the DOCUMENTS or ESI over which they have possession, custody, or control. This Interrogatory specifically includes possession, custody, or control of ESI relevant to this suit.

**ANSWER:**

**INTERROGATORY NO. 18:** IDENTIFY any THIRD PARTY you have retained or outsourced to contact PERSONS *via* telephone since October 16, 2013, and indicate the period of time during which each identified THIRD PARTY was so retained and the type of calls, or category of calls, made by that THIRD PARTY.

**ANSWER:**

**INTERROGATORY NO. 19:** IDENTIFY and list all the types of electronic formats in which YOU maintain outbound dial list(s) and/or reports of calls from October 16, 2013 to the present, identifying each by the dates YOU used it and the purpose for which it was used.

**ANSWER:**


**INTERROGATORY NO. 20:** Describe your, or any THIRD PARTY whom placed DIALED CALLS on your behalf's, procedures, from October 16, 2013 to the present, for recording the requests of individuals who asked that calls to that individual cease.

**ANSWER:**

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **THOMAS BUCHANAN, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SIRIUS XM RADIO INC.,**<br><br>**Defendant.** | **Civil Action No. 3:17-cv-00728-D** |

### DEFENDANT SIRIUS XM RADIO INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Sirius XM Radio Inc. ("Sirius XM") hereby serves the following Objections and Responses to Plaintiff's First Request for Production of Documents and Electronically Stored Information ("Document Requests" or "Requests").

### PRELIMINARY STATEMENT

Sirius XM's responses to the Document Requests are given without prejudice to Sirius XM's right to introduce any subsequently discovered fact or facts that Sirius XM may later recall. Sirius XM reserves the right to change any of its objections as additional facts are ascertained, legal research is completed, and contentions are made. Sirius XM's objections to the Document Requests are made in a good-faith effort, but should in no way be to the prejudice of Sirius XM in relation to further discovery, research or analysis. Sirius XM expressly reserves its right to supplement or modify these objections with relevant information as it may hereafter

discover and will do so consistent with the Federal Rules of Civil Procedure and the Local Rules of this Court.

Sirius XM's objections to the Document Requests are based on its interpretation and understanding of the Requests themselves.  If Plaintiff subsequently asserts an interpretation of any Document Request that differs from Sirius XM's understanding, Sirius XM reserves the right to supplement or modify its objections to address that interpretation.

By responding to these Document Requests, Sirius XM is not implicitly or explicitly agreeing with or otherwise adopting Plaintiff's characterizations of the Requests or the definitions contained in them, or admitting or conceding that the information sought is likely to lead to the discovery of admissible evidence.

In response to each Document Request, Sirius XM will set forth and explain its objections, if any, to that Request, and will then describe generally the documents that it is providing in response to the Request.  Sirius XM is willing to discuss an appropriate resolution of any issues regarding its objection to any Request.

Sirius XM will produce documents in either TIFF, PDF, native, or some other agreed upon format.  Prior to producing documents, Sirius XM will review with counsel for Plaintiff its search terms and the custodians whose files it intends to review, and Sirius XM will then proceed to search for and produce documents by a date to be agreed between the parties.

## **GENERAL OBJECTIONS**

The following General Objections apply to Sirius XM's responses to each of the Document Requests, in addition to any specifically stated objections to a specific Document Request.

1.      Sirius XM objects to each and every Document Request to the extent that it is inconsistent with or seeks to impose obligations beyond those imposed by the Federal Rules of

Civil Procedure and the Local Civil Rules, any applicable orders of this Court, or any stipulation or agreement of the parties. As explained in the remainder of these General Objections, Sirius XM shall follow the Federal Rules of Civil Procedure and the Northern District of Texas' Local Civil Rules, applicable orders of this Court, and any stipulation or agreement of the parties.

2.      Sirius XM objects to each and every Document Request to the extent that such Document Request seeks information that is subject to the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or immunity, or to a protective order and/or stipulation of confidentiality between a defendant and any third party. Sirius XM hereby asserts all such privileges, protections, or immunities from discovery.

3.      Sirius XM objects to each and every Document Request to the extent that the Request, as construed in view of the applicable instructions and definitions, is unduly burdensome to the extent that it purports to require Sirius XM to undertake an unreasonable inquiry or review of information and materials outside Sirius XM's possession, custody, or control or not readily obtainable or accessible by Sirius XM. Sirius XM's search for documents responsive to individual Requests (and production of any responsive documents) will be based upon (1) a reasonable search, using appropriate search terms and instructions, of an appropriate set of facilities and files reasonably expected to possess responsive, non-duplicative information, and (2) inquiries of an appropriate number of Sirius XM employees who could reasonably be expected to possess responsive, non-duplicative information. Sirius XM will review with counsel for Plaintiff the search terms that Sirius XM plans to use and the custodians whose files it intends to review. In responding to these Document Requests, Sirius XM will not be making inquiry to, or reviewing information in the possession, custody, or control of, the independently-owned telemarketing vendors retained by Sirius XM to make telemarketing calls on its behalf.

Nor will Sirius XM be producing documents from the files of those vendors or from the files of vehicle manufacturers, vehicle dealers, and other third parties referenced in those responses, whose files can be subpoenaed by Plaintiff. Files maintained by those independent entities are not within Sirius XM's possession, custody, or control.

4.      Sirius XM objects to the Document Requests as overbroad, unduly burdensome, not relevant, and not proportional to the needs of the case to the extent that they call for production of "any" or "all" documents relating to an individual person, topic, or subject area. Sirius XM further objects that such an unreasonably broad search would seek the production of documents that are not reasonably accessible. Specifically, Sirius XM objects to the phrases "all documents" or "all documents concerning or relating to" as they are used throughout these Document Requests to the extent that they purport to require Sirius XM to search for and review millions of pages of documents, many of which could not possibly have any relevance to this litigation, even though they conceivably might be responsive to a Request, broadly interpreted. As set forth above, Sirius XM will explain both the search terms it will be using and the custodian files it will be searching in response to each of the Document Requests.

5.      Sirius XM objects to each and every Document Request, and instruction and definition, to the extent that a Document Request seeks documents containing information that is confidential or proprietary business information, trade secrets, or intellectual property or other proprietary information, or commercially sensitive information of a third party to whom Sirius XM owes a legal obligation of non-disclosure. Such information will only be provided pursuant to a court-entered protective order and with the consent of the operative third parties. Further, and for the same reasons, Sirius XM reserves the right to redact confidential or proprietary business information and trade secrets that are not relevant to the subject matter of this litigation

from any documents that Sirius XM otherwise will be producing in response to a Document Request.

## SPECIFIC OBJECTIONS TO PLAINTIFF'S INSTRUCTIONS AND DEFINITIONS

1.      Sirius XM objects to Plaintiff's Instruction II.1 as overbroad and unduly burdensome to the extent that it purports to seek the production of documents and the furnishing of information that came into existence after the filing of the Complaint in this action.  Sirius XM instead will provide responsive documents and information for the period between October 16, 2013 (i.e., the date selected by the Plaintiff in its discovery requests) and March 13, 2017 (the date of the filing of the Complaint).

2.      Sirius XM objects to Plaintiff's Instruction II.3 because Plaintiff seeks documents "in the possession, custody or control of [Sirius XM] or its affiliates, or its merged and acquired predecessors, its present and former directors, officers, partners, employees, accountants, attorneys or other agents, its present and former independent contractors over which it has control, and any other PERSON acting on [Sirius XM's] behalf."  Such an instruction is overbroad and unduly burdensome to the extent it asks Sirius XM to search for every document anywhere in the company having any relationship to any of these Document Requests. Specifically, to the extent that Plaintiff intends to include within the definition of "possession, custody or control" documents or information of any independently-owned telemarketing vendors with which Sirius XM has entered into contractual relationships to provide telemarketing services on its behalf, Sirius XM objects to the Instruction as being overbroad. Such documents and information are not within Sirius XM's possession, custody, or control. Sirius XM will respond to these Document Requests with respect to information known to Sirius XM and not any other entity.  As explained in General Objection No. 3, Sirius XM will search

documents and review information that is reasonably accessible and within its possession, custody, and control, and will identify for Plaintiff the Sirius XM employees (including their titles or functions) whose files Sirius XM will search for responsive documents and information. Sirius XM will produce documents from those Sirius XM employees based on a list of search terms to be agreed to by the parties.

3.      To the extent that Plaintiff intends, through the definition of "You" and "Your" in Definition I.7, to include any independently-owned telemarketing vendors with which Sirius XM has entered into contractual relationships to provide telemarketing services on its behalf, Sirius XM objects to the definition as being overbroad and seeking information that is not within Sirius XM's possession, custody, and control.  Sirius XM will respond to these Document Requests with respect to information known to Sirius XM and not any other entity.

4.      Sirius XM objects to Plaintiff's Definition of "Identify" in I.15 as unduly burdensome and unreasonable and beyond the scope of the Federal Rules of Civil Procedure. Sirius XM will produce documents with appropriate Bates-stamps.

5.      Sirius XM objects to Plaintiff's Definition of "Identify" in I.16 as unduly burdensome and unreasonable and beyond the scope of the Federal Rules of Civil Procedure.  To the extent any individual is being identified in Sirius XM's Interrogatory Responses, but was not previously identified in Sirius XM's Rule 26(a)(2) Initial Disclosures, Sirius XM will provide information regarding that individual comparable to the information set forth in the Initial Disclosures.

6.      Sirius XM objects to Plaintiff's ESI Instruction V.1 because, by its own terms, it is not limited to documents within the possession, custody, or control of Sirius XM.  Sirius XM will undergo a reasonable search of documents within its possession, custody, and control.

7.      Sirius XM objects to Plaintiff's ESI Instruction V.2 to the extent it seeks documents that are "not reasonably accessible" and to the extent the instruction asks Sirius XM to search documents beyond the bounds of Federal Rule of Civil Procedure 26(b)(2)(B).  Sirius XM objects to any demand that Sirius XM produce original versions of requested documents. Unless otherwise indicated, Sirius XM will provide true copies of requested documents.

## SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST NO. 1**:  Produce all DOCUMENTS showing YOU had PRIOR EXPRESS WRITTEN CONSENT to call PLAINTIFF at any time.

**RESPONSE**:  Sirius XM will be producing the Welcome Kit received by Plaintiff as well as all other non-privileged, responsive documents that are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained in General Objection No. 3.  Sirius XM explained in its response to Interrogatory No. 4 that documents responsive to this Request are also contained in the files of Bob Tedford Chevrolet and iPacesetters, which are not in Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 2**:  Produce all DOCUMENTS and/or ESI that contain any evidence or indication the PLAINTIFF provided his telephone number to YOU.

**RESPONSE**:  Sirius XM described how Sirius XM received Plaintiff's telephone number in its response to Interrogatory No. 3.  Sirius XM will be producing the Dealer Enrollment Authorization Form signed by Bob Tedford Chevrolet, and it will also produce all other non-privileged, responsive documents that are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained in General Objection No. 3.  Sirius XM objects to this Request to the extent it seeks the electronic data, systems and files relating to Sirius XM's actual receipt of Plaintiff's telephone number on

grounds of burden, relevance and proportionality.  Documents responsive to this Request may

also be contained in the files of Bob Tedford Chevrolet and iPacesetters, which are not in Sirius

XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and

Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 3**:  Produce all DOCUMENTS and/or ESI that contain any evidence or
indication YOU obtained PRIOR EXPRESS CONSENT from PLAINTIFF to received [sic]
DIALED CALLS on his telephone.

**RESPONSE**:  Sirius XM will be producing the Welcome Kit received by Plaintiff as

well as all other non-privileged, responsive documents that are within its possession, custody or

control based on a reasonable search for responsive documents.  The scope of its search is

explained in General Objection No. 3.  Documents responsive to this Request may also be

contained in the files of Bob Tedford Chevrolet and iPacesetters, which are not in Sirius XM's

possession, custody or control, as explained in Sirius XM's General Objection No. 3 and

Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 4**:  Produce all DOCUMENTS and/or ESI CONCERNING or
RELATING TO any POLICIES governing contact with PERSONS on their cell phones and/or
via DIALED CALLS, regardless of PRIOR EXPRESS CONSENT.  DOCUMENTS and/or ESI
responsive to this Request shall include but not be limited to those related to POLICIES
regarding:  (1) whether and how to verify that a PERSON provided PRIOR EXPRESS
CONSENT to receive DIALED CALLS; (2) whether and how to verify that a PERSON'S
number is registered to the DNC; (3) the frequency with which DIALED CALLS shall occur; (4)
the duration and content of each DIALED CALL; and (5) the circumstances or reasons triggering
the addition of a PERSON'S name to the list of those receiving DIALED CALLS.

**RESPONSE**:  Sirius XM will be producing non-privileged, responsive policies that are

within its possession, custody or control based on a reasonable search for responsive documents.

The scope of its search is explained in General Objection No. 3.  To the extent this request seeks

all documents "concerning or relating" to such policies, Sirius XM objects on burden and

proportionality grounds.  Documents responsive to this Request may also be contained in the

files of Sirius XM's contracted telemarketing vendors, which are not in Sirius XM's possession,

custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection

to Instructions and Definitions No. 2.

**REQUEST NO. 5**:  Produce all DOCUMENTS and/or ESI evidencing any version of the DNC YOU or any THIRD PARTY on behalf of YOU used to cross check PLAINTIFF'S or any member of the DNC CLASS' telephone numbers before placing DIALED CALLS to those numbers.

**RESPONSE**:  Sirius XM described in its responses to Interrogatory Nos. 6 and 13 the

"scrubbing" functions performed by Sirius XM and its contracted telemarketing vendors before

any of those vendors placed calls to Sirius XM's subscribers on behalf of Sirius XM.  Sirius XM

will produce non-privileged documents relating to the policies prescribed by Sirius XM for those

"scrubbing" functions to the extent those documents are within its possession, custody or control

based on a reasonable search for responsive documents.  The scope of its search is explained in

General Objection No. 3.  Sirius XM objects to providing any DNC lists themselves on burden,

relevance and proportionality grounds; moreover, those lists are constantly updated and in any

event exist only in an electronic format that is not readily accessible.  Sirius XM also objects to

producing hardware, software, computer programs and data-bases that actually performed Sirius

XM's "scrubbing" functions on grounds of burden, relevance and proportionality and because

they are not reasonably accessible.  Documents responsive to this Request may also be contained

in the files of its contracted telemarketing vendors, which are not in Sirius XM's possession,

custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection

to Instructions and Definitions No. 2.

**REQUEST NO. 6**:  Produce all DOCUMENTS and/or ESI CONCERNING or RELATING TO the creation, drafting, revision, approval, and/or implementation of the POLICIES referred to in YOUR response to Request No. 004 (above).

**RESPONSE**:  Subject to its objections to Request No. 4, Sirius XM will be producing

non-privileged, responsive policies that are within its possession, custody or control based on a

reasonable search.  The scope of its search is explained in General Objection No. 3.  To the

extent this request seeks all documents "concerning or relating" to the requested topics, Sirius

XM objects on burden and proportionality grounds.  Documents responsive to this Request may

also be contained in the files of Sirius XM's contracted telemarketing vendors, which are not in

Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3

and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 7**:  Produce all DOCUMENTS and/or ESI that define or describe
YOUR DOCUMENT and/or ESI retention, preservation, and/or destruction POLICIES,
including DOCUMENTS and/or ESI pertaining to YOUR telephone contact with PERSONS.

**RESPONSE**:  Sirius XM will be producing non-privileged, responsive documents

sufficient to explain the referenced policies, to the extent those documents are within its

possession, custody or control based on a reasonable search for responsive documents.  The

scope of its search is explained in General Objection No. 3.  To the extent this request seeks all

documents on the referenced policies, Sirius XM objects on relevance, burden and

proportionality grounds.  Documents responsive to this Request may also be contained in the

files of Sirius XM's contracted telemarketing vendors, which are not in Sirius XM's possession,

custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection

to Instructions and Definitions No. 2.

**REQUEST NO. 8**:  Produce all DOCUMENTS and/or ESI that identify or describe all
DIALERS, equipment, telephones, software, computer systems, and databases YOU, or someone
on behalf of YOU, used to placed DIALED CALLS from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM objects to this Request on burden, relevance and

proportionality grounds.  Information relating to the hardware and software architecture of, and

the systems and databases used by, the dialing systems employed by Sirius XM's contracted

telemarketing vendors is not relevant to any of the issues in this case.  There is no allegation in

the Complaint that any of Sirius XM's vendors violated the Telephone Consumer Protection Act

(the "TCPA")  by using an automated telephone dialing system to dial Plaintiff's landline phone

(although the TCPA would have permitted Sirius XM's contracted telemarketing vendors to do

so).

**REQUEST NO. 9**:  Produce all phone scripts, conversation templates, conversation flowcharts, matrixes, flowcharts, and all other similar DOCUMENTS used by YOU or any THIRD PARTY during a DIALED CALL to any PERSON from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM objects to this Request on burden, relevance and

proportionality grounds.  Documents responsive to this Request may also be contained in the

files of Sirius XM's contracted telemarketing vendors, which are not in Sirius XM's possession,

custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection

to Instructions and Definitions No. 2.

**REQUEST NO. 10**:  Produce all phone scripts, conversation templates, conversation flowcharts, matrixes, flowcharts, and all other similar DOCUMENTS used by YOU or any THIRD PARTY during a DIALED CALL to PLAINTIFF from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM will be producing non-privileged, responsive scripts that are

within its possession, custody or control based on a reasonable search for responsive documents.

The scope of its search is explained General Objection No. 3.  To the extent this request seeks

anything else, Sirius XM objects on burden and proportionality grounds.  Documents responsive

to this Request may also be contained in the files of Sirius XM's contracted telemarketing

vendors, which are not in Sirius XM's possession, custody or control, as explained in Sirius

XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 11**:  Produce all database(s) listing the PERSONS who received a DIALED CALL to their landline phone for TELEPHONE SOLICITATION purposes from YOU, or any THIRD PARTY on your behalf, from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM objects to this Request on burden, relevance and

proportionality grounds and because Sirius XM does not maintain the requested information in a

- 11 -

readily accessible format.  Sirius XM also objects to this Request because it seeks the personal identifying information of numerous Sirius XM subscribers, the disclosure of which raises substantial privacy and security issues.  In addition, such information, to the extent it is within Sirius XM's possession, custody or control, may have been provided to Sirius XM by third party suppliers (e.g., vehicle manufacturers or dealers) pursuant to confidentiality agreements, the disclosure of which may violate such agreements.  Responsive documents will also exist in the files of Sirius XM's contracted telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 12**:  Produce all database(s) listing the PERSONS who received a DIALED CALL to their cellular phone for TELEPHONE SOLICITATION purposes from YOU, or any THIRD PARTY on your behalf, from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM objects to this Request on burden, relevance and proportionality grounds and because Sirius XM does not maintain the requested information in a readily accessible format.  Sirius XM also objects to this Request because it seeks the personal identifying information of numerous Sirius XM subscribers, the disclosure of which raises substantial privacy and security issues.  In addition, such information, to the extent it is within Sirius XM's possession, custody or control, may have been provided to Sirius XM by third party suppliers (e.g., vehicle manufacturers and dealers) pursuant to confidentiality agreements, the disclosure of which may violate such agreements.  Such information will also exist in the files of Sirius XM's contracted telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 13**:  Produce all DOCUMENTS evidencing any of the following information pertaining to any and all calls made by or on behalf of YOU, from October 16, 2013, to recipients of any complimentary programming provided by YOU during their respective

complimentary programming period:  (a) the initiating telephone number; (b) the telephone number which was called; (c) the dates on which such calls were made; (d) the time at which calls were initiated; (e) the identity of the person called; (f) the telephone numbers and/or addresses of the called party as reflected in any sale or lease records or customer data provided to YOU or YOUR contractor by any car dealer; (g) whether the called number was or was not assigned to a cellular telephone or landline.

**RESPONSE**:  Sirius XM objects to this Request on burden, relevance and

proportionality grounds and because Sirius XM does not maintain the requested information in a

readily accessible format.  Sirius XM also objects to this Request because it seeks the personal

identifying information of numerous Sirius XM subscribers, the disclosure of which raises

substantial privacy and security issues.  In addition, such information, to the extent it is within

Sirius XM's possession, custody or control, may have been provided to Sirius XM by third party

suppliers (e.g., vehicle manufacturers and dealers) pursuant to confidentiality agreements, the

disclosure of which may violate such agreements.   Such information will also exist in the files of

Sirius XM's contracted telemarketing vendors, which are not in Sirius XM's possession, custody

or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to

Instructions and Definitions No. 2.

**REQUEST NO. 14**:  Produce all DOCUMENTS and/or ESI CONCERNING or RELATING TO the instructions or procedures any employee who worked for YOU, or any THIRD PARTY retained by YOU, is required or recommended by YOU to follow in performing any job task, assignment, duty, or function related to outgoing DIALED CALLS made by YOU or any THIRD PARTY retained by YOU.

**RESPONSE**:  Sirius XM will be producing non-privileged, responsive instructions or

procedures relating to do-not-call procedures that Sirius XM provided to its contracted

telemarketing vendors, to the extent they are within its possession, custody or control based on a

reasonable search for responsive documents.  The scope of its search is explained in General

Objection No. 3.  Sirius XM objects to this Request on burden, relevance and proportionality

grounds to the extent that this Request seeks instructions or procedures relating solely to other

topics.  Sirius XM also objects on relevance, burden and proportionality grounds to the extent

this Request seeks all documents "concerning or relating to" any instructions or procedures.

**REQUEST NO. 15**:  Produce all DOCUMENTS and/or ESI CONCERNING or
RELATING TO any data and/or information provided or shared by Bob Tedford Chevrolet in
Farmersville, Texas regarding PLAINTIFF.

**RESPONSE**:  Sirius XM will be producing non-privileged, responsive documents

sufficient to explain the data or information covered by this Request, to the extent those

documents are within its possession, custody or control based on a reasonable search for

responsive documents.  The scope of its search is explained in General Objection No. 3.  Sirius

XM objects to this Request to the extent it seeks electronic data and/or information "concerning

or relating" to the topic covered by this Request, including all data actually provided by Bob

Tedford Chevrolet, on grounds of burden, relevance and proportionality.

**REQUEST NO. 16**:  Produce all DOCUMENTS provided by or on behalf of YOU or at
YOUR instruction to PLAINTIFF prior to or at the time he purchased his 2011 Honda Odyssey
from Tedford Chevrolet in Farmersville, Texas.

**RESPONSE**:  Sirius XM will be producing non-privileged, responsive documents that

are within its possession, custody or control based on a reasonable search for responsive

documents.  The scope of its search is explained in General Objection No. 3.

**REQUEST NO. 17**:  Produce all DOCUMENTS and/or ESI constituting any Welcome
Kit (including the form envelope) mailed or otherwise provided by YOU or on behalf of YOU to
PLAINTIFF.

**RESPONSE**:  Sirius XM will be producing non-privileged, responsive documents that

are within its possession, custody or control based on a reasonable search for responsive

documents.  The scope of its search is explained in General Objection No. 3.

**REQUEST NO. 18**:  Produce all DOCUMENTS and/or ESI constituting any customer agreement and/or contracts between YOU and PLAINTIFF.

**RESPONSE**:  Sirius XM will be producing non-privileged, responsive documents that are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained in General Objection No. 3.

**REQUEST NO. 19**:  Produce all DOCUMENTS and/or ESI evidencing that PLAINTIFF registered or provided his information on any website operated by YOU or on behalf of YOU.

**RESPONSE**:  Sirius XM will be producing non-privileged, responsive documents that are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained in General Objection No. 3.

**REQUEST NO. 20**:  Produce all DOCUMENTS and/or ESI evidencing that PLAINTIFF opened or created any accounts with YOU.

**RESPONSE**:  Sirius XM will be producing non-privileged, responsive documents that are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained in General Objection No. 3.

**REQUEST NO. 21**:  Produce all DOCUMENTS and/or ESI evidencing the manner in which telephone numbers were obtained from consumers, including PLAINTIFF and the members of the DNC CLASS and I-DNC CLASS.

**RESPONSE**:  Sirius XM objects to this Request on the grounds that the phrases "all documents" and "evidencing the manner," when construed together, result in a request that is vague and ambiguous, and potentially burdensome depending on how Plaintiff intends to interpret them.  Sirius XM cannot realistically produce each and every document relating to (or evidencing) the thousands of sources from which it receives information about its subscribers' telephone numbers.  Sirius XM receives information regarding its subscribers, including their telephone numbers, in a variety of ways, much of it electronically.  Some consumers provide that information to Sirius XM via telephone or over the internet.  Numerous vehicle manufacturers

(also known as Original Equipment Manufacturers ("OEMs")) and more than ten thousand automobile dealers are sources of such information; consumers provide information to OEMs or dealers, and that information is eventually received by Sirius XM pursuant to contractual arrangements.  Sirius XM also receives information from numerous third parties, such as automotive care and similar businesses that perform service and other repairs on vehicles, as well as from other third parties.  Sirius XM further objects to this Request on relevance and proportionality grounds:  the Complaint does not challenge the legality of Sirius XM's receipt of consumers' telephone numbers, and virtually all of that information exists only in an electronic format that cannot reasonably be transferred to and read by any computer to which Plaintiff and its counsel likely would have access.  Sirius XM is willing to have a discussion with Plaintiff regarding a narrowed set of information that could readily be provided from a reasonable set of files.  Additional information responsive to this Request likely would be contained in the files of thousands of third parties, such as OEMs, vehicle dealers and other third parties, as well as Sirius XM's contracted telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 22**:  Produce all DOCUMENTS and/or ESI identifying all sources in which consumer contact information, including telephone numbers was obtained by or on behalf of YOU.

**RESPONSE**:  Sirius XM objects to this Request on the grounds that the phrases "all documents" and "evidencing the manner," when construed together, result in a request that is vague and ambiguous, and potentially burdensome depending on how Plaintiff intends to interpret them.  Sirius XM cannot realistically produce each and every document relating to (or evidencing) the thousands of sources from which it receives information about its subscribers' telephone numbers.  Sirius XM receives information regarding its subscribers, including their

telephone numbers, in a variety of ways, much of it electronically.  Some consumers provide that

information to Sirius XM via telephone or over the internet.  Numerous OEMs and more than ten

thousand automobile dealers are sources of such information; consumers provide information to

OEMs or dealers, and that information is eventually received by Sirius XM pursuant to

contractual arrangements.  Sirius XM also receives information from numerous third parties,

such as automotive care and similar businesses that perform service and other repairs on

vehicles, as well as from other third parties.  Sirius XM further objects to this Request on

relevance and proportionality grounds:  the Complaint does not challenge the legality of Sirius

XM's receipt of consumers' telephone numbers, and that information exists only in an electronic

format that cannot reasonably be transferred to and read by any computer to which Plaintiff and

its counsel likely would have any access.  Sirius XM is willing to have a discussion with Plaintiff

regarding a narrowed set of information that could readily be provided from a reasonable set of

files.  Additional information responsive to this Request likely would be contained in the files of

thousands of third parties, such as OEMs, vehicle dealers and other third parties, as well as Sirius

XM's contracted telemarketing vendors, which are not in Sirius XM's possession, custody or

control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to

Instructions and Definitions No. 2.

     **REQUEST NO. 23**:  Produce all DOCUMENTS and/or ESI evidencing the number of
individuals to which YOU of [sic] someone on YOUR behalf placed calls from October 16, 2013
to the present.

     **RESPONSE**:  Sirius XM objects to this Request on burden, relevance and

proportionality grounds.

**REQUEST NO. 24**:  Produce all DOCUMENTS and/or ESI identifying the individuals to which YOU of [sic] someone on YOUR behalf placed calls from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM objects to this Request on burden, relevance and proportionality grounds.  Sirius XM also objects to this Request because it seeks the personal identifying information of numerous Sirius XM subscribers, the disclosure of which raises substantial privacy and security issues.  In addition, such information, to the extent it is within Sirius XM's possession, custody or control, may have been provided to Sirius XM by third party suppliers (e.g., vehicle manufacturers or dealers) pursuant to confidentiality agreements, the disclosure of which may violate such agreements.

**REQUEST NO. 25**:  Produce all DOCUMENTS and/or ESI evidencing YOU had an established business relationship with PLAINTIFF.

**RESPONSE**:  Sirius XM will be producing the White Paper prepared for the New York Department of State, Division of Consumer Protection, regarding Sirius XM's established business relationship with its subscribers, as well as any other non-privileged, responsive documents that are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained in General Objection No. 3. Documents responsive to this Request also would be in the files of iPacesetters, Sirius XM's contracted telemarketing vendor that called Plaintiff, which are not in Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 26**:  Produce all DOCUMENTS and/or ESI evidencing YOU had an established business relationship with any member of the DNC CLASS.

**RESPONSE**:  Sirius XM will be producing the White Paper prepared for the New York Department of State, Division of Consumer Protection, regarding Sirius XM's established business relationship with its subscribers.  Sirius XM objects to this request to the extent it seeks

"all" documents responsive to the request on the grounds of burden and proportionality:  this Request, to that extent, seeks an extraordinary volume of electronically-stored information. Sirius XM is willing to have a discussion with counsel for Plaintiff regarding an appropriate response to this Request that addresses the substance of what Plaintiff seeks in a manner consistent with its concerns.  Documents responsive to this Request also would be in the files of Sirius XM's contracted telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 27**:  Produce all DOCUMENTS and/or ESI evidencing YOU had an established business relationship with any member of the I-DNC CLASS.

**RESPONSE**:  Sirius XM will be producing the White Paper prepared for the New York Department of State, Division of Consumer Protection, regarding Sirius XM's established business relationship with its subscribers.  Sirius XM objects to this Request to the extent it seeks "all" documents responsive to the request on the grounds of burden and proportionality:  this Request, to that extent, seeks an extraordinary volume of electronically-stored information. Sirius XM is willing to have a discussion with counsel for Plaintiff regarding an appropriate response to this Request that addresses the substance of what Plaintiff seeks in a manner consistent with its concerns.  Documents responsive to this Request also would be in the files of Sirius XM's contracted telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 28**:  Produce all DOCUMENTS and/or ESI evidencing any transaction between YOU and PLAINTIFF during the eighteen months preceding the call YOU [sic] your someone on YOUR behalf placed to PLAINTIFF on July 21, 2016.

**RESPONSE**:  Sirius XM will be producing the White Paper prepared for the New York

Department of State, Division of Consumer Protection, regarding Sirius XM's established

business relationship with its subscribers, as well as any other non-privileged, responsive

documents that are within its possession, custody or control based on a reasonable search for

responsive documents.  The scope of its search is explained in General Objection No. 3.

Documents responsive to this Request also would be in the files of Sirius XM's contracted

telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained

in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions

No. 2.

**REQUEST NO. 29**:  Produce all DOCUMENTS and/or ESI evidencing any service or product YOU provided to PLAINTIFF during the eighteen months preceding the call YOU [sic] your someone on YOUR behalf placed to PLAINTIFF on July 21, 2016.

**RESPONSE**:  Sirius XM will be producing the White Paper prepared for the New York

Department of State, Division of Consumer Protection, regarding Sirius XM's established

business relationship with its subscribers, as well as any other non-privileged, responsive

documents that are within its possession, custody or control based on a reasonable search for

responsive documents.  The scope of its search is explained in General Objection No. 3.

Documents responsive to this Request also would be in the files of Sirius XM's contracted

telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained

in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions

No. 2.

**REQUEST NO. 30**:  Produce all DOCUMENTS and/or ESI supporting the contention, if YOU so contend, that YOU had the express invitation or permission of PLAINTIFF to contact PLAINTIFF on his residential line.

**RESPONSE**:  Sirius XM will be producing non-privileged, responsive documents that are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained in General Objection No. 3.  Documents responsive to this Request also would be in the files of Sirius XM's contracted telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 31**:  Produce all DOCUMENTS and/or ESI supporting the contention, if YOU so contend, that YOU had the express invitation or permission of and member of the DNC CLASS to contact his or her residential line.

**RESPONSE**:  Sirius XM objects to this Request to the extent it seeks "all" documents responsive to the request on the grounds of burden and proportionality:  this Request, to that extent, seeks an extraordinary volume of electronically-stored information.  Sirius XM is willing to have a discussion with counsel for Plaintiff regarding an appropriate response to this Request that addresses the substance of what Plaintiff seeks in a manner consistent with its concerns.  Documents responsive to this Request also would be in the files of Sirius XM's contracted telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 32**:  Produce all DOCUMENTS and/or ESI CONCERNING or RELATING TO the existence of POLICIES through which YOU have retained a THIRD PARTY to contact residential telephone numbers on YOUR behalf since October 16, 2013, including, without limitation, any correspondence and/or contractual agreements with such THIRD PARTIES, and any DOCUMENTS and/or ESI describing such POLICIES, identifying THIRD PARTIES that have been retained, and/or identifying any of DEFENDANT'S officers or employees with authority to approve, create, revise, or implement such POLICIES.

**RESPONSE**:  Sirius XM will produce its agreements with its contracted telemarketing vendors.  Sirius XM also will produce any other non-privileged policies with its contracted telemarketing vendors relating to do-not-call procedures to be used in connection with the dialing of residential telephone numbers on behalf of Sirius XM, to the extent those documents are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained in Sirius XM's General Objection No. 3.  Sirius XM objects to this Request on overbreadth, relevance and proportionality grounds to the extent that this Request seeks policies relating solely to other topics.  To the extent this Request seeks all documents "concerning or relating" to all policies, Sirius XM objects on grounds of burden and proportionality.  Documents responsive to this Request also would be in the files of Sirius XM's contracted telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 33**:  Produce all DOCUMENTS and/or ESI CONCERNING or RELATING TO audits, investigations, inquiries, or studies, by YOU or any THIRD PARTY, including but not limited to any independent auditor, law firm, or governmental agency, regarding YOUR compliance with any state and/or federal laws or regulations involving the use of DIALED CALLS, including TCPA and its implementing regulations.

**RESPONSE**:  Sirius XM will be producing the White Paper prepared for the New York Department of State, Division of Consumer Protection, regarding Sirius XM's established business relationship with its subscribers, as well as any other non-privileged, responsive audits or studies relating to Sirius XM's compliance with federal and state do-not-call requirements, to

the extent that such documents are within its possession, custody or control based on a

reasonable search for responsive documents.  The scope of its search is explained in Sirius XM's

General Objection No. 3.  To the extent this Request seeks all documents "concerning or

relating" to such audits or studies, Sirius XM objects on grounds of burden and proportionality.

Sirius XM also objects on overbreadth, relevance and proportionality grounds to the extent that

the Request seeks documents concerning or relating to Sirius XM's compliance with the TCPA

and implementing regulations with respect to topics other than do-not-call requirements, or any

other documents relating to do-not-call requirements.  Such issues are not relevant in this case.

Documents responsive to this Request may also be in the files of Sirius XM's contracted

telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained

in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions

No. 2.

**REQUEST NO. 34**:  Produce all DOCUMENTS and/or ESI, including but not limited to notes, memoranda, electronic mail, letters, and/or meeting minutes, CONCERNING or RELATING TO YOUR compliance with any state and/or federal laws or regulations involving the use of DIALED CALLS, including the TCPA and its implementing regulations.

**RESPONSE**:  Sirius XM will produce the White Paper prepared for the New York

Department of State, Division of Consumer Protection, regarding Sirius XM's established

business relationship with its subscribers, as well as any other non-privileged policies relating to

Sirius XM's compliance with federal and state do-not-call requirements, to the extent that such

documents are within its possession, custody or control based on a reasonable search for

responsive documents.  The scope of its search is explained in General Objection No. 3.  To the

extent this Request seeks all documents "concerning or relating" to such policies, Sirius XM

objects on grounds of burden and proportionality.  Sirius XM also objects on overbreadth,

relevance and proportionality grounds to the extent that the Request seeks documents concerning

or relating to Sirius XM's compliance with the TCPA and implementing regulations with respect to topics other than do-not-call requirements.  Such issues are not relevant in this case.  Also, documents responsive to this Request may also be in the files of Sirius XM's contracted telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 35**:  Produce all DOCUMENTS and/or ESI reflecting YOUR knowledge that YOUR POLICIES or practices governing contact with customers on their cellular phones may have been in violation of the FCC regulatory guidance or federal and/or state laws and regulations.

**RESPONSE**:  Sirius XM objects to this Request (and to all of the requests) to the extent the Request seeks documents that may be covered by a claim of privilege or work product, as explained in General Objection No. 2.  Sirius XM will produce non-privileged documents responsive to this Request, to the extent the documents relate to do-not-call requirements, and to the extent those documents are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained in General Objection No. 3.  Documents relating to Sirius XM's compliance with the TCPA and related regulations or with state laws with respect to topics, other than do-not-call requirements, are not relevant to the issues in this case.  As explained in the White Paper being produced in this case, both the United States Federal Trade Commission (the "FTC") and the New York Department of State are aware of, and have not objected to, Sirius XM's policies and procedures regarding its established business relationships with its subscribers and its related do-not-call policies.

**REQUEST NO. 36**:  Produce all DOCUMENTS and/or ESI identifying or listing the names of PERSONS to whom YOU, or any THIRD PARTY retained by YOU, placed a DIALED CALL to a residential telephone at any time on or after October 16, 2013.

**RESPONSE**:  Sirius XM objects to this Request on burden, relevance and proportionality grounds.  Sirius XM also objects to this Request because it seeks the personal identifying information of numerous Sirius XM subscribers, the disclosure of which raises substantial privacy and security issues.  In addition, such information, to the extent it is within Sirius XM's possession, custody or control, may have been provided to Sirius XM by third party suppliers (e.g., vehicle manufacturers or dealers) pursuant to confidentiality agreements, the disclosure of which may violate such agreements.

**REQUEST NO. 37**:  Produce all DOCUMENTS and/or ESI CONCERNING or RELATING TO any and all reports for each outbound dial list to PERSONS that YOU, or any THIRD PARTY retained by YOU, called or attempted to call, including those outbound dial lists generated by any DIALER that YOU, or any THIRD PARTY retained by YOU, have employed or utilized since October 16, 2013.  Do not modify or alter the lists; each call and attempted call made must be included in these lists.

**RESPONSE**:  Sirius XM objects to this Request on burden, relevance and proportionality grounds.  Sirius XM also objects to this Request because it seeks the personal identifying information of numerous Sirius XM subscribers, the disclosure of which raises substantial privacy and security issues.  In addition, such information, to the extent it is within Sirius XM's possession, custody or control, may have been provided to Sirius XM by third party suppliers (e.g., vehicle manufacturers or dealers) pursuant to confidentiality agreements, the disclosure of which may violate such agreements.

**REQUEST NO. 38**:  Produce all applicable insurance agreements under which any insurer may be liable to satisfy all or part of any judgment which may be entered in this action, or to indemnify or reimburse YOU for payments made to satisfy all or part of any judgment.

**RESPONSE**:  Sirius XM is not presently aware of any insurance coverage, but will update this response as appropriate.

**REQUEST NO. 39**:  Produce all DOCUMENTS and/or ESI identifying, describing, and/or listing the various offices, regions, units, or divisions within DEFENDANT, including but not limited to organizational charts, lists of YOUR office locations, and telephone or e-mail lists or directories.

**RESPONSE**:  Sirius XM will produce organizational charts sufficient to describe the

functions relevant to the claims in this lawsuit.  Sirius XM otherwise objects to this Request to

the extent it seeks information that is not relevant to the claims or defenses in this lawsuit or

proportional to the needs of the case.

**REQUEST NO. 40**:  Produce all DOCUMENTS and/or ESI (including but not limited to investigation files, logs, or databases) CONCERNING or RELATING TO requests, inquiries, demands, claims, grievances, concerns, protests, or complaints made against YOU, concerning or relating to a DIALED CALL to a cellular telephone.  This DOCUMENT request includes all forms of COMMUNICATIONS – either in writing or orally, formal or informal, to YOU or a THIRD PARTY.

**RESPONSE**:  Sirius XM objects to this Request (and to all of the Requests) to the extent

the Request seeks documents that may be covered by a claim of privilege or work product, as

explained in General Objection No. 2.  Sirius XM also objects to this Request on overbreadth,

burden, relevance and proportionality grounds.  In addition, documents relating to Sirius XM's

compliance with the TCPA and related regulations or with state laws with respect to topics, other

than do-not-call requirements and obligations, are not relevant to the issues in this case.  As

explained in the White Paper being produced in this case, both the FTC and the New York

Department of State are aware of, and have declined to challenge, Sirius XM's established

business relationship with its subscribers and its related do-not-call policies.  Documents

responsive to this Request may also be in the files of Sirius XM's contracted telemarketing

vendors, which are not in Sirius XM's possession, custody or control, as explained in General

Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 41**:  Produce all DOCUMENTS and/or ESI CONCERNING or RELATING TO the POLICIES for raising a complaint concerning or relating to a DIALED

CALL to a cellular telephone, and all DOCUMENTS and/or ESI that concern or relate to YOUR procedures for investigating and addressing such complaints.

**RESPONSE**:  Sirius XM objects to this Request (and to all of the Requests) to the extent the Request seeks documents that may be covered by a claim of privilege or work product, as explained in General Objection No. 2.  Sirius XM also objects to this Request on overbreadth, burden, relevance and proportionality grounds.  In addition, documents relating to Sirius XM's compliance with the TCPA and related regulations or with state laws with respect to topics, other than do-not-call requirements and obligations, are not relevant to the issues in this case.  As explained in the White Paper being produced in this case, both the FTC and the New York Department of State are aware of, and have declined to challenge, Sirius XM's established business relationship with its subscribers and its related do-not-call policies.  Documents responsive to this Request may also be in the files of Sirius XM's contracted telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained in General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 42**:  Produce all DOCUMENTS and/or ESI CONCERNING or RELATING TO the PLAINTIFF and/or his residential telephone number.  This request includes any voice recordings concerning the PLAINTIFF and/or his telephone number, and any voice recording of any phone call with the PLAINTIFF.

**RESPONSE**:  Sirius XM will be producing responsive documents that are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained in General Objection No. 3.  Responsive information, if any, may also be in the files of iPacesetters, which are not in Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 43**:  Produce all DOCUMENTS and/or ESI that record or list every DIALED CALL made by YOU from October 16, 2013 to the present, including all

DOCUMENTS and/or ESI that identify, reflect and/or evidence the number of times each such telephone number was called.

**RESPONSE**:  Sirius XM objects to this Request on burden, relevance and

proportionality grounds.  Sirius XM does not maintain the requested information in a readily

accessible format.  Sirius XM also objects to this Request because it seeks the personal

identifying information of numerous Sirius XM subscribers, the disclosure of which raises

substantial privacy and security issues.  In addition, such information, to the extent it is within

Sirius XM's possession, custody or control, may have been provided to Sirius XM by third party

suppliers (e.g., vehicle manufacturers or dealers) pursuant to confidentiality agreements, the

disclosure of which may violate such agreements.  Responsive documents may also exist in the

files of Sirius XM's contracted telemarketing vendors, which are not in Sirius XM's possession,

custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection

to Instructions and Definitions No. 2

**REQUEST NO. 44**:  Produce all DOCUMENTS CONCERNING or RELATING TO PLAINTIFF's files, including but not limited to all records of DIALED CALLS YOU made to PLAINTIFF, all notes of conversations with PLAINTIFF, all recordings, notes and records regarding any COMMUNICATION with PLAINTIFF from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM will be producing non-privileged, responsive documents that

are within its possession, custody or control based on a reasonable search for responsive

documents.  The scope of its search is explained in General Objection No. 3.  Responsive

information, if any, may also be in the files of iPacesetters, which are not in Sirius XM's

possession, custody or control, as explained in Sirius XM's General Objection No. 3 and

Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 45**:  Produce all DOCUMENTS CONCERNING or RELATING TO PLAINTIFF, which YOU maintain or have maintained, from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM will be producing non-privileged, responsive documents that are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained in General Objection No. 3.

**REQUEST NO. 46**:  Produce all DOCUMENTS CONCERNING or RELATING TO YOUR corporate structure which sets forth YOUR entities, subsidiaries or other departments engaged in conducting DIALED CALL campaigns from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM will produce organizational charts sufficient to describe the functions relevant to the claims in this lawsuit.  Sirius XM otherwise objects to this Request to the extent it seeks anything else because, to that extent, the Request seeks information that is not relevant to the claims or defenses in this lawsuit or proportional to the needs of the case.

**REQUEST NO. 47**:  Produce all DOCUMENTS that YOU used to determine whether the telephone numbers to be called by YOU had provided their PRIOR EXPRESS WRITTEN CONSENT, before attempting to call those numbers, including but not limited to any electronic notations in the outbound dial lists that the called party provided PRIOR EXPRESS WRITTEN CONSENT and including all DOCUMENTS that YOU may rely on at trial or other hearing in this case to establish PRIOR EXPRESS WRITTEN CONSENT was provided to YOU from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM objects to this Request on burden and proportionality grounds because the Request seeks all documents reflecting any contacts with millions of its subscribers. Sirius XM also objects to this Request because it seeks the personal identifying information of numerous Sirius XM subscribers, the disclosure of which raises substantial privacy and security issues.  In addition, such information, to the extent it is within Sirius XM's possession, custody or control, may have been provided to Sirius XM by third party suppliers (e.g., vehicle manufacturers or dealers) pursuant to confidentiality agreements, the disclosure of which may violate such agreements.  Documents responsive to this Request may also be contained in the files of its contracted telemarketing vendors, which are not in Sirius XM's possession, custody or

control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to

Instructions and Definitions No. 2.

**REQUEST NO. 48**:  Produce all DOCUMENTS CONCERNING or RELATING TO reports in electronically searchable format of AUTODIALER or PREDICTIVE DIALER calls made by YOU or any of YOUR employees, agents or independent contractors, or other PERSONS or entities working on YOUR behalf, residential telephones of PERSONS YOU called on behalf of YOURSELF, and/or any THIRD PARTY, from October 16, 2013 to the present.  [Do not modify or alter the lists; each call and attempted call made must be included in these lists].

**RESPONSE**:  Sirius XM objects to this Request because the request seeks documents

that are not relevant to the claims or defenses in this lawsuit nor proportional to the needs of the

case.  This case has nothing to do with a claim under the TCPA regarding alleged use of an

automated telephone dialing system.

**REQUEST NO. 49**:  Produce all DOCUMENTS CONCERNING or RELATING TO contracts or agreements between YOU and any entity that provided DIALED CALL services for YOU, from October 16, 2013 to the present.

**RESPONSE**:  To the extent this Request seeks all documents "concerning or relating" to

the topics in this Request, Sirius XM objects on relevance, burden and proportionality grounds.

Sirius XM will produce the agreements with its contracted telemarketing vendors.

**REQUEST NO. 50**:  Produce all DOCUMENTS CONCERNING or RELATING TO any system, scheme, technique, practice, procedure or method that DEFENDANT maintains, operates, or employs to record, memorialize, or otherwise document DIALED CALLS made to PERSONS for the purposes of TELEPHONE SOLICITATION.

**RESPONSE**:  Sirius XM will produce non-privileged documents relating to instructions

provided to its contracted telemarketing vendors regarding the recording of calls to Sirius XM's

subscribers, to the extent those documents are within its possession, custody or control based on

a reasonable search for responsive documents.  The scope of its search is explained in General

Objection No. 3.  To the extent that this Request seeks all documents "concerning or relating" to

the topics in this Request, Sirius XM objects on relevance, burden and proportionality grounds.

Documents responsive to this Request may also be contained in the files of its contracted telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 51**:  Produce all DOCUMENTS CONCERNING or RELATING TO any training that YOU provide to YOUR employees involved in making DIALED CALLS to PERSONS for the purposes of contacting customers, past customers, or prospective customers.

**RESPONSE**:  Sirius XM will produce non-privileged documents constituting or reflecting the instructions provided to its contracted telemarketing vendors regarding those vendors' handling of consumers' requests that they cease receiving calls, to the extent those documents are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained in General Objection No. 3.  To the extent that this Request seeks all documents "concerning or relating" to the topics in this Request, Sirius XM objects on burden and proportionality grounds.  Sirius XM objects to this Request on burden, relevance and proportionality grounds to the extent that this Request seeks training relating to other topics.  Documents responsive to this Request may also be contained in the files of its contracted telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 52**:  Produce all DOCUMENTS CONCERNING or RELATING TO any instructions that YOU provide to YOUR employees involved in making DIALED CALLS to PERSONS with respect to how to document an oral or written request to cease contacting such PERSON.

**RESPONSE**:  Sirius XM will produce non-privileged documents constituting or reflecting the instructions provided to its contracted telemarketing vendors regarding those vendors' handling of consumers' requests that they cease receiving calls, to the extent those

documents are within its possession, custody or control based on a reasonable search for

responsive documents.  The scope of its search is explained in General Objection No. 3.  To the

extent that this Request seeks all documents "concerning or relating" to the topics in this

Request, Sirius XM objects on burden and proportionality grounds.  Documents responsive to

this Request may also be contained in the files of its contracted telemarketing vendors, which are

not in Sirius XM's possession, custody or control, as explained in Sirius XM's General

Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 53**:  Produce all POLICY and/or practice manuals CONCERNING or
RELATING TO the use of telephones by YOUR TELEPHONE SOLICITATION and/or
prospective customer department used from October 16, 2013 to the present.

**RESPONSE**: Sirius XM will produce non-privileged documents constituting or

reflecting its policy or practice manuals provided to its contracted telemarketing vendors

regarding those vendors' handling of consumers' requests that they cease receiving calls, to the

extent those documents are within its possession, custody or control based on a reasonable search

for responsive documents.  Sirius XM objects to this Request on burden, relevance and

proportionality grounds to the extent that this Request seeks policies and/or practice manuals

relating to other topics.  The scope of its search is explained in General Objection No. 3.

Documents responsive to this Request may also be contained in the files of its contracted

telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained

in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions

No. 2.

**REQUEST NO. 54**:  Produce all DOCUMENTS describing the means for determining whether an outgoing call between DEFENDANT and its customers, past customers, or prospective customers is to a landline number or a cellular telephone number used from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM objects to this Request on burden, relevance and

proportionality grounds because the Request seeks documents that are not relevant to the claims

or defenses in this litigation or proportional to the needs of the case.  In addition, determining

whether an outbound call is to a landline or cellular phone is made electronically by Sirius XM's

contracted telemarketing vendors, which purchase electronic lists from a third party service

containing information on landline v. cellular phones.  Those materials, including associated

hardware, software, systems and data-bases, are not in Sirius XM's possession, custody or

control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to

Instructions and Definitions No. 2.

**REQUEST NO. 55**:  Produce all DOCUMENTS describing the criteria and methodology for establishing a number to be called from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM will produce non-privileged policies and instructions to its

contracted telemarketing vendors concerning the procedures to be followed prior to calling a

telephone number on lists provided by Sirius XM to the vendors, to the extent those documents

are within its possession, custody or control based on a reasonable search for responsive

documents.  The scope of its search is explained in General Objection No. 3.  Sirius XM

otherwise objects to this Request on vagueness, burden, relevance and proportionality grounds.

Documents responsive to this Request may also be contained in the files of its contracted

telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained

in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions

No. 2.

**REQUEST NO. 56**:  Produce all written data retention POLICIES and a description of the data retention POLICIES actually in place, from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM will produce non-privileged documents sufficient to respond to this Request, to the extent those documents are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained in General Objection No. 3.  Sirius XM objects to producing "all" such documents on relevance, burden and proportionality grounds.

**REQUEST NO. 57**:  Produce all DOCUMENTS describing the methods for reporting on outgoing calls made, the content of those calls and the call treatment performed when a called party answers the call, from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM will produce non-privileged policies and instructions to its contracted telemarketing vendors regarding the topics in this Request, to the extent those documents are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained in General Objection No. 3.  Sirius XM otherwise objects to this Request on burden, relevance and proportionality grounds. Documents responsive to this Request may also be contained in the files of its contracted telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions No. 2.

**REQUEST NO. 58**:  Produce all DOCUMENTS describing the methods for reporting on outgoing calls made, the content of those calls and the call treatment performed when a called party does not answer the call, from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM will produce non-privileged policies and instructions to its contracted telemarketing vendors regarding the topics in this Request, to the extent those documents are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained in General Objection No. 3.  Sirius

XM otherwise objects to this Request on burden, relevance and proportionality grounds.

Documents responsive to this Request may also be contained in the files of its contracted

telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained

in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions

No. 2.

**REQUEST NO. 59**:  Produce all DOCUMENTS describing the call recording and reporting procedures for outgoing calls between DEFENDANT and its customers, past customers, or prospective customers from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM will produce non-privileged policies and instructions to its

contracted telemarketing vendors regarding the topics in this Request, to the extent those

documents are within its possession, custody or control based on a reasonable search for

responsive documents.  The scope of its search is explained in General Objection No. 3.  Sirius

XM otherwise objects to this Request on burden, relevance and proportionality grounds.

Documents responsive to this Request may also be contained in the files of its contracted

telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained

in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions

No. 2.

**REQUEST NO. 60**:  Produce all DOCUMENTS describing the procedures for outgoing calls between DEFENDANT and its customers, past customers, or prospective customers from October 16, 2013 to the present, when the called party requests DEFENDANT cease making calls to the called party.

**RESPONSE**:  Sirius XM will produce non-privileged policies and instructions to its

contracted telemarketing vendors regarding the topics in this Request, to the extent those

documents are within its possession, custody or control based on a reasonable search for

responsive documents.  The scope of its search is explained in General Objection No. 3.  Sirius

XM otherwise objects to this Request on burden, relevance and proportionality grounds.

Documents responsive to this Request may also be contained in the files of its contracted

telemarketing vendors, which are not in Sirius XM's possession, custody or control, as explained

in Sirius XM's General Objection No. 3 and Specific Objection to Instructions and Definitions

No. 2.

**REQUEST NO. 61**:  Produce each and every report, opinion, physical model, compilation of data, and other material prepared by an expert used for consultation, even if it was prepared in anticipation of litigation or for trial, which forms a basis either in whole or in part of the opinion of an expert who is to be called as a witness.

**RESPONSE**:  Sirius XM objects to this Request on the grounds that it is overly broad

and unduly burdensome, is premature, seeks privileged information, and seeks to impose

obligations greater than those contemplated by the Federal Rules of Civil Procedure.  Sirius XM

also objects to this Request to the extent that Plaintiff seeks confidential and proprietary

information of Sirius XM.  Sirius XM will provide information concerning any expert witnesses

in accordance with applicable Federal Rules of Civil Procedure and orders of this Court.  At this

time, Sirius XM has no non-privileged documents responsive to this Request.

**REQUEST NO. 62**:  Produce all DOCUMENTS, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for any consulting expert of YOURS whose mental impressions and opinions have been reviewed by any testifying expert of YOURS in anticipation of a testifying expert's testimony in this litigation.

**RESPONSE**:  Sirius XM objects to this Request on the grounds that it is overly broad

and unduly burdensome, is premature, seeks privileged information, and seeks to impose

obligations greater than those contemplated by the Federal Rules of Civil Procedure.  Sirius XM

also objects to this Request to the extent that Plaintiff seeks confidential and proprietary

information of Sirius XM.  Sirius XM will provide information concerning any expert witnesses

in accordance with applicable Federal Rules of Civil Procedure and orders of this Court.  At this

time, Sirius XM has no non-privileged documents responsive to this Request.

**REQUEST NO. 63**:  Produce the resume and bibliography of any consulting expert whose mental impressions and opinions have been reviewed by any testifying expert of YOURS.

**RESPONSE**:  Sirius XM objects to this Request on the grounds that it is premature, seeks privileged information, and seeks to impose obligations greater than those contemplated by the Federal Rules of Civil Procedure.  Sirius XM will provide information concerning any expert witnesses in accordance with applicable Federal Rules of Civil Procedure and orders of this Court.  At this time, Sirius XM has no non-privileged documents responsive to this Request.

**REQUEST NO. 64**:  Produce all DOCUMENTS, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for any testifying expert of YOURS, in anticipation of the testifying expert's testimony in this litigation.

**RESPONSE**: Sirius XM objects to this Request on the grounds that it is overly broad and unduly burdensome, is premature, seeks privileged information, and seeks to impose obligations greater than those contemplated by the Federal Rules of Civil Procedure.  Sirius XM also objects to this Request to the extent that Plaintiff seeks confidential and proprietary information of Sirius XM.  Sirius XM will provide information concerning any expert witnesses in accordance with applicable Federal Rules of Civil Procedure and orders of this Court.  At this time, Sirius XM has no non-privileged documents responsive to this Request.

**REQUEST NO. 65**:  Produce the resume and bibliography of YOUR testifying expert(s).

**RESPONSE**: Sirius XM objects to this Request on the grounds that it is premature, and seeks to impose obligations greater than those contemplated by the Federal Rules of Civil Procedure.  Sirius XM will provide information concerning any expert witnesses in accordance with applicable Federal Rules of Civil Procedure and orders of this Court.  At this time, Sirius XM has no non-privileged documents responsive to this Request.

**REQUEST NO. 66**:  Produce all transcripts of testimony previously provided by any PERSON YOU listed as an expert witness.

**RESPONSE**:  Sirius XM objects to this Request on the grounds that it is premature, and seeks to impose obligations greater than those contemplated by the Federal Rules of Civil Procedure.  Sirius XM will provide information concerning any expert witnesses in accordance with applicable Federal Rules of Civil Procedure and orders of this Court.  At this time, Sirius XM has no non-privileged documents responsive to this Request.

**REQUEST NO. 67**:  Produce all treatises, rules, regulations, guidelines, statutes, POLICIES, procedures, and any other authoritative materials considered by any testifying expert in forming an opinion.

**RESPONSE**:  Sirius XM objects to this Request on the grounds that it is premature, and seeks to impose obligations greater than those contemplated by the Federal Rules of Civil Procedure.  Sirius XM will provide information concerning any expert witnesses in accordance with applicable Federal Rules of Civil Procedure and orders of this Court.  At this time, Sirius XM has no non-privileged documents responsive to this Request.

**REQUEST NO. 68**:  Produce all invoices, bills, and other billing materials for each expert YOU expect will testify at trial.

**RESPONSE**:  Sirius XM objects to this Request on the grounds that it is overbroad and unduly burdensome, is premature, and seeks to impose obligations greater than those contemplated by the Federal Rules of Civil Procedure.  Sirius XM will provide information concerning any expert witnesses in accordance with applicable Federal Rules of Civil Procedure and orders of this Court.  At this time, Sirius XM has no non-privileged documents responsive to this Request.

**REQUEST NO. 69**:  Produce all non-privileged ESI YOU received from any PERSON concerning PLAINTIFF's allegations in this suit.

**RESPONSE**:  To the extent there are any non-privileged, responsive documents relating to Plaintiff, they will be produced to the extent they are within Sirius XM's possession, custody, or control based on a reasonable search for responsive documents.  The scope of its search is explained in General Objection No. 3.  Sirius XM otherwise objects to this Request on vagueness, burden, relevance and proportionality grounds.

**REQUEST NO. 70**:  Produce all testimony lists, case lists or similar DOCUMENTS identifying any and all cases in which or for which YOUR testifying experts have been retained.

**RESPONSE**:  Sirius XM objects to this Request on the grounds that it is overbroad and unduly burdensome, is premature, and seeks to impose obligations greater than those contemplated by the Federal Rules of Civil Procedure.  Sirius XM will provide information concerning any expert witnesses in accordance with applicable Federal Rules of Civil Procedure and orders of this Court.  At this time, Sirius XM has no non-privileged documents responsive to this Request.

**REQUEST NO. 71**:  Produce all testimony lists, case lists or similar DOCUMENTS maintained by any of YOUR consulting experts whose mental impressions and opinions have been reviewed by any of YOUR testifying experts.

**RESPONSE**:  Sirius XM objects to this Request on the grounds that it is overbroad and unduly burdensome, is premature, seeks privileged information, and seeks to impose obligations greater than those contemplated by the Federal Rules of Civil Procedure.  Sirius XM will provide information concerning any expert witnesses in accordance with applicable Federal Rules of Civil Procedure and orders of this Court.  At this time, Sirius XM has no non-privileged documents responsive to this Request.

**REQUEST NO. 72**:  Produce all DOCUMENTS and ESI in YOUR possession, custody, or control evidencing or supporting YOUR defenses in this lawsuit.

**RESPONSE**:  Sirius XM will be producing non-privileged, responsive documents that are within its possession, custody or control based on a reasonable search for responsive documents.  The scope of its search is explained General Objection No. 3.

**REQUEST NO. 73**:  Produce all cooperation agreements, settlement agreements, releases, covenants not to sue, loan receipt agreements, Mary Carter agreements, guarantee agreements, and indemnification agreements which YOU have entered into or which have been proposed with respect to the PLAINTIFF's claims, causes of action, and alleged damages made the basis of this lawsuit.

**RESPONSE**:  Sirius XM has no documents responsive to this Request.

**REQUEST NO. 74**:  Produce all statements, ESI, DOCUMENTS, and memos relating to witnesses or potential witnesses or PERSONS YOU contacted in connection with this case.

**RESPONSE**:  Sirius XM objects to this Request on the grounds that it is overbroad and unduly burdensome, is premature, seeks privileged information, and seeks to impose obligations greater than those contemplated by the Federal Rules of Civil Procedure.  Sirius XM will provide information concerning any witnesses in accordance with applicable Federal Rules of Civil Procedure and orders of this Court.  At this time, Sirius XM has no non-privileged documents responsive to this Request.

**REQUEST NO. 75**:  Produce all statements, ESI, DOCUMENTS, and memos relating to witnesses or potential witnesses or PERSONS that contacted YOU in connection with this case.

**RESPONSE**:  Sirius XM objects to this Request on the grounds that it is overbroad and unduly burdensome, is premature, seeks privileged information, and seeks to impose obligations greater than those contemplated by the Federal Rules of Civil Procedure.  Sirius XM will provide information concerning any witnesses in accordance with applicable Federal Rules of Civil Procedure and orders of this Court.  At this time, Sirius XM has no non-privileged documents responsive to this Request.

**REQUEST NO. 76**:  Produce all correspondence between YOU (and/or YOUR attorneys) and the expert witnesses YOU designated herein or consulted in this case.

**RESPONSE**:  Sirius XM objects to this Request on the grounds that it is overbroad and unduly burdensome, is premature, seeks privileged information, and seeks to impose obligations greater than those contemplated by the Federal Rules of Civil Procedure.  Sirius XM also objects to this Request because it seeks the production of documents that are subject to the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or immunity.  Sirius XM will provide information concerning any witnesses in accordance with applicable Federal Rules of Civil Procedure and orders of this Court.  Sirius XM has no non-privileged documents responsive to this Request.

**REQUEST NO. 77**:  Produce all DOCUMENTS, ESI, reports or records pertaining to any investigation concerning the incident made the basis of this lawsuit that are not privileged under law.

**RESPONSE**:  Sirius XM has no non-privileged documents responsive to this Request.

**REQUEST NO. 78**:  Produce all DOCUMENTS, ESI, reports or records YOU, or someone on your behalf, maintained as an internal do-not-call list from October 16, 2013 to the present.

**RESPONSE**:  Sirius XM objects to this Request on the grounds of burden, relevance and proportionality.  The requested information is retained electronically, in computer files, programs and bases that cannot reasonably be accessed and produced, and in any event, cannot reasonably be transferred to and read by any computer to which Plaintiff and its counsel likely would have any access.  Sirius XM also objects to this Request because it seeks the personal identifying information of numerous Sirius XM subscribers, the disclosure of which raises substantial privacy and security issues.  In addition, such information, to the extent it is within Sirius XM's possession, custody or control, may have been provided to Sirius XM by third party suppliers

(e.g., vehicle manufacturers or dealers), pursuant to confidentiality agreements, the disclosure of which may violate such agreements.

Dated: September 13, 2017

Respectfully submitted,

/s/ *Natalia Delaune*
Albert J. Rota
Texas Bar No. 24056233
Natalia O. Delaune
Texas Bar No. 24074831
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Phone: (214) 220-3939
Fax: (214) 969-5100
Email: ajrota@jonesday.com
Email: ndelaune@jonesday.com

Thomas Demitrack (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
Tel:     (216) 586-3939
Fax:     (216) 579-0212
Email:  tdemitrack@jonesday.com

Lee A. Armstrong (admitted *pro hac vice*)
Allison L. Waks (admitted *pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY  10281
Tel:     (212) 326-3939
Fax:     (212) 755-7306
Email:  laarmstrong@jonesday.com
Email:  awaks@jonesday.com

*Attorneys for Defendant Sirius XM Radio Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 13, 2017, a copy of the foregoing was served via email and

U.S. Mail upon the following:

**HUGHES ELLZEY, LLP**
W. Craft Hughes
Texas Bar No. 24046123
craft@hughesellzey.com
Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@hughesellzey.com
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335

**TURNER LAW OFFICES, LLC**
Henry A. Turner
Georgia Bar No. 719310
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Telephone: (404) 378-6274
hturner@tloffices.com

**SIRI & GLIMSTAD LLP**
Aaron Siri
NY Bar No. 4321790
Mason A. Barney
NY Bar No. 4405809
200 Park Avenue, 17th Floor
New York, New York 10166
Tel: (212) 532-1091
E-Mail: aaron@sirillp.com

**WERMAN SALAS P.C.**
Douglas M. Werman
IL Bar No. 6204740
77 West Washington, Suite 1402
Chicago, Illinois 60602
dwerman@flsalaw.com
(312) 419-1008

**MARK A. ALEXANDER P.C.**
Mark A. Alexander
TX Bar No. 01007500
5080 Spectrum, Suite 850E
Addison, Texas 75001
Ph: 972.364.9700
Fax: 972. 239.2244
E-Mail: mark@markalexanderlaw.com

/s/ *Natalia Delaune*

# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |  |
|---|---|---|
| **THOMAS BUCHANAN, on behalf of himself and all others similarly situated,** | ) ) ) |  |
|  | ) |  |
| **Plaintiff,** | ) ) | **Civil Action No. 3:17-cv-00728-D** |
| **v.** | ) ) |  |
| **SIRIUS XM RADIO INC.,** | ) ) |  |
| **Defendant.** | ) ) |  |

**DEFENDANT SIRIUS XM RADIO INC.'S OBJECTIONS AND**
**RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Sirius

XM Radio Inc. ("Sirius XM") hereby serves the following Objections and Responses to

Plaintiff's First Set of Interrogatories.

## PRELIMINARY STATEMENT

The following objections are given without prejudice to Sirius XM's right to produce

evidence of any subsequently discovered fact or facts that Sirius XM may later recall.  Sirius XM

reserves the right to change any and all objections herein as additional facts are ascertained,

analyses are made, legal research is completed, and contentions are made.  The objections

contained herein are made in a good-faith effort, but should in no way be to the prejudice of

Sirius XM in relation to further discovery, research, or analysis.  Sirius XM expressly reserves its

right to supplement or modify these objections with relevant information as it may hereafter

discover and will do so to the extent required by the Federal Rules of Civil Procedure and the

Local Rules of this Court.

Sirius XM's objections to the Interrogatories are based on its interpretation and understanding of the Interrogatories themselves.  If Plaintiff subsequently asserts an interpretation of any Interrogatory that differs from Sirius XM's understanding, Sirius XM reserves the right to supplement or modify its objections to address that interpretation.

By responding to these Interrogatories, Sirius XM is not implicitly or explicitly agreeing with or otherwise adopting Plaintiff's characterizations or definitions contained in them, or admitting or conceding that the information sought is likely to lead to the discovery of admissible evidence.

In response to each Interrogatory, Sirius XM will set forth and explain its objections, if any, to that Interrogatory, and will then set forth the information that it is providing in response to the Interrogatory.  Sirius XM is willing to discuss the scope of appropriate responses to any of these Interrogatories that will address its objections to the Interrogatories.

## <u>GENERAL OBJECTIONS</u>

The following General Objections apply to Sirius XM's responses to each of the Interrogatories, in addition to any specifically stated objections to a specific Interrogatory.

1.     Sirius XM objects to each and every Interrogatory to the extent that it is inconsistent with or seeks to impose obligations beyond those imposed by the Federal Rules of Civil Procedure and the Local Civil Rules, any applicable orders of this Court, or any stipulation or agreement of the parties.  As explained in the remainder of these General Objections, Sirius XM shall follow the Federal Rules of Civil Procedure and the Northern District of Texas' Local Civil Rules, applicable orders of this Court, and any stipulation or agreement of the parties.

2.     Sirius XM objects to each and every Interrogatory to the extent that such Interrogatory seeks information that is subject to the attorney-client privilege, attorney work

product doctrine, and/or any other applicable privilege or immunity, or to a protective order and/or stipulation of confidentiality between a defendant and any third party.  Sirius XM hereby asserts all such privileges, protections, or immunities from discovery.

3.     Sirius XM objects to each and every Interrogatory to the extent that the Interrogatory, as construed in view of the applicable instructions and definitions, is unduly burdensome to the extent that it purports to require Sirius XM to undertake an unreasonable inquiry or review of information and materials outside Sirius XM's possession, custody, or control or not readily obtainable or accessible by Sirius XM.  Sirius XM's responses will be based upon (1) a reasonable search, in view of the time permitted to respond to the Interrogatories, of an appropriate set of facilities and files reasonably expected to possess responsive, non-duplicative information, and (2) inquiries of an appropriate number of Sirius XM employees who could reasonably be expected to possess responsive, non-duplicative information.  In responding to these Interrogatories, Sirius XM will not be making inquiry to, or reviewing information in the possession, custody, or control of, the independently-owned telemarketing vendors retained by Sirius XM to make telemarketing calls on its behalf.  Nor will Sirius XM be producing documents from the files of those vendors, or from the files of vehicle manufacturers, vehicle dealers, and other third parties referenced in these responses, which can be subpoenaed by Plaintiff.  Files maintained by those independent entities are not within Sirius XM's possession, custody or control.

4.     Sirius XM objects to each and every Interrogatory, and instruction and definition therein, to the extent that an Interrogatory seeks information that is confidential or proprietary business information, trade secrets, intellectual property or other proprietary information, or commercially sensitive information of a third party to whom Sirius XM owes a legal obligation

of non-disclosure.  Such information will only be provided pursuant to a court-entered protective

order and with the consent of the affected third parties.

### SPECIFIC OBJECTIONS TO PLAINTIFF'S INSTRUCTIONS AND DEFINITIONS

1.      Sirius XM objects to Plaintiff's Instruction II.1 as overbroad and unduly

burdensome to the extent that it purports to seek the production of documents and the furnishing

of information that came into existence after the filing of the Complaint in this action.  Sirius

XM instead will provide responsive documents and information for the period between October

16, 2013 (i.e., the date selected by the Plaintiff in his discovery requests) and the date of the

filing of the Complaint.

2.      Sirius XM objects to Plaintiff's Instruction II.3 because Plaintiff seeks documents

"in the possession, custody or control of [Sirius XM] or its affiliates, or its merged and acquired

predecessors, its present and former directors, officers, partners, employees, accountants,

attorneys or other agents, its present and former independent contractors over which it has

control, and any other PERSON acting on [Sirius XM's] behalf."  Such an instruction is

overbroad and unduly burdensome to the extent it asks Sirius XM to search for every document

anywhere in the company having any relationship to any of these Interrogatories.  Specifically, to

the extent that Plaintiff intends to include within the definition of "possession, custody or

control" documents or information of any independently-owned telemarketing vendors with

which Sirius XM has entered into contractual relationships to provide telemarketing services on

its behalf, Sirius XM objects to the Instruction as being overbroad.  Such documents and

information are not within Sirius XM's possession, custody, or control.  Sirius XM will respond

to these Interrogatories with respect to information known to Sirius XM Radio Inc. and not any

other entity.  As explained in General Objection No. 3, Sirius XM will search documents and

review information that is reasonably accessible and within its possession, custody, and control, and will identify for Plaintiff the Sirius XM employees (including their titles or functions) whose files Sirius XM will search for responsive documents and information.  Sirius XM will produce documents from those Sirius XM employees based on a list of search terms to be agreed to by the parties.

3.     To the extent that Plaintiff intends, through the definition of "You" and "Your" in Definition I.7, to include any independently-owned telemarketing vendors with which Sirius XM has entered into contractual relationships to provide telemarketing services on its behalf, Sirius XM objects to the definition as being overbroad and seeking information that is not within Sirius XM's possession, custody, and control.  Sirius XM will respond to these Interrogatories with respect to information known to Sirius XM Radio Inc. and not any other entity.

4.     Sirius XM objects to Plaintiff's Definition of "Identify" in I.15 as unduly burdensome and unreasonable and beyond the scope of the Federal Rules of Civil Procedure.  To the extent that Sirius XM references a specific document in the responses to these Interrogatories, Sirius XM will sufficiently identify that document.

5.     Sirius XM objects to Plaintiff's Definition of "Identify" in I.16 as unduly burdensome and unreasonable and beyond the scope of the Federal Rules of Civil Procedure.  To the extent any individual is being identified in Sirius XM's Interrogatory Responses, but was not previously identified in Sirius XM's Rule 26(a)(2) Initial Disclosures, Sirius XM will provide information regarding that individual comparable to the information set forth in the Initial Disclosures.

6.      Sirius XM objects to Plaintiff's ESI Instruction V.1 because, by its own terms, it is not limited to documents within the possession, custody, or control of Sirius XM.  Sirius XM will undergo a reasonable search of documents within its possession, custody, and control.

7.      Sirius XM objects to Plaintiff's ESI Instruction V.2 to the extent it seeks documents that are "not reasonably accessible" and to the extent the instruction asks Sirius XM to search documents beyond the bounds of Federal Rule of Civil Procedure 26(b)(2)(B).

## **SPECIFIC OBJECTIONS AND RESPONSES TO PLAINTIFF'S INTERROGATORIES**

**NO. 1:**  IDENTIFY the name, address and phone number of each PERSON who answered these Interrogatories, supplied information used or intended to be used in answering these Interrogatories, or assisted, in any way, with the formulation and preparation of the answers to these Interrogatories.

**RESPONSE:**   The following individuals were consulted in the course of preparing the responses to these Interrogatories:

1.      Karina Dahir, Senior Director-Listener Care.  She is located at Sirius XM's office at 1290 Avenue of the Americas in New York, NY and can be contacted through Jones Day.

2.      Jeffrey Myers, Vice President-Sales Operations.  He is located at Sirius XM's office at 1290 Avenue of the Americas in New York, NY and can be contacted through Jones Day.

3.      Chaya Leder, Senior Manager-Sales and Marketing Analytics.  She is located at Sirius XM's office at 1290 Avenue of the Americas in New York, NY and can be contacted through Jones Day.

4.      Gail Berger, Vice President-Automotive Remarketing.  She is located at Sirius XM's office at 27200 Haggerty Road, Suite B5, Farmington Hills, MI 48331 and can be contacted through Jones Day.

5.      Richard Lawsky, Director-Marketing Operations.  He is located at Sirius XM's office at 1290 Avenue of the Americas in New York, NY and can be contacted through Jones Day.

**NO. 2:**  IDENTIFY and describe all DOCUMENTS reviewed, referred to, or consulted, in the preparation of YOUR answers and responses to these Interrogatories, including the Bates number of each DOCUMENT.

**RESPONSE:** Any documents specifically identified in the individual responses below are described in sufficient detail, including Bates numbers to the extent that such numbers have already been assigned to an individual document, and those documents will be produced. Sirius XM objects to identifying any other documents that may have been reviewed, referred to, or consulted, in the course of responding to these Interrogatories on the ground of burden and overbreadth grounds.

**NO. 3:** Explain precisely how YOU obtained the PLAINTIFF'S telephone number (972) 437-8642.

**RESPONSE:** Plaintiff voluntarily provided his telephone number to Bob Tedford Chevrolet, the dealer from which Plaintiff purchased the Honda Odyssey Van referenced in the complaint (the "Honda"). Plaintiff did so at or around the time Plaintiff purchased the Honda. Pursuant to Sirius XM's Pre-Owned Vehicle Program, in which Bob Tedford Chevrolet agreed to participate, Bob Tedford Chevrolet then provided this information to Sirius XM (through an intermediary entity with which Sirius XM has a contractual relationship). The actual transfer of the information from Bob Tedford Chevrolet to the intermediary and then to Sirius XM occurred electronically. A copy of the Dealer Enrollment Authorization Form, signed by Bob Tedford Chevrolet, which, among other things, further describes this process. See also the response to Interrogatory No. 12 below.

**NO. 4:** IDENTIFY, list, and describe all the actions YOU took to determine whether PRIOR EXPRESS WRITTEN CONSENT had been obtained CONCERNING telephone numbers YOU called, or YOU attempted to call, from October 16, 2013 to the present.

**RESPONSE:** Sirius XM objects to this Interrogatory as overbroad and unduly burdensome, and as seeking irrelevant information that is not proportional to the needs of the case, to the extent it asks for a description of "all actions" taken respecting the topic covered by this Interrogatory. First, Sirius XM does not make any telemarketing calls. Sirius XM has

- 7 -

entered into contractual relationships with certain independent vendors to make telemarketing calls on Sirius XM's behalf.  Second, this lawsuit concerns do-not-call claims, and calls placed by telemarketing vendors on Sirius XM's behalf to telephone numbers that are not on any do-not-call list are not relevant to any of the issues in this case.  Third, to the extent that "prior express written consent" may have been necessary in order for one of Sirius XM's telemarketing vendors to dial, on behalf of Sirius XM, either a landline or a cellular phone number listed on a do-not-call list during the period October 16, 2013 to the present, the details of all of the steps taken to obtain such consent from the owners of all of the telephone numbers dialed during that period requires a detailed and individualized inquiry or review of information and materials, including information and materials within the possession, custody, and control of Sirius XM's contracted telemarketing vendors.

**NO. 5:**  IDENTIFY the specific date and substance of each COMMUNICATION, contact, or attempted COMMUNICATION or contact, between YOU and PLAINTIFF from October 16, 2013 to the present.

**RESPONSE:**  Sirius XM did not place any phone calls to Plaintiff.  Rather, Sirius XM understands that iPacesetters LLC, an independent telemarketing vendor, placed calls on Sirius XM's behalf.  Sirius XM believes that iPacesetters may have called Plaintiff fifteen times during the course of Plaintiff's Sirius XM subscription, although Plaintiff did not answer any of the calls.  Other vendors engaged by Sirius XM contacted Plaintiff by direct mail (IWCO Direct, Inc.) and by e-mail (CheetahMail Inc.) on Sirius XM's behalf during the course of Plaintiff's subscription and shortly thereafter.  All of those communications (i.e., the phone calls placed by iPacesetters and the mail and emails sent by IWCO Direct and CheetahMail) are listed below; the contacts occurred in 2016.  To the extent that Sirius XM has copies of IWCO Direct's mailings to Plaintiff, or CheetahMail's emails to Plaintiff, Sirius XM will produce those materials in response to the document production requests.

1. iPacesetters's phone contacts:  July 18, 21, 22, 23, 25, 26, 27, 28, 29, 30; August 1, 2 (twice); 3, 4

2. CheetahMail's email contacts:  May 4, 6-8, July 13; July 2, 29; August 8

3. IWCO Direct's direct mail contacts:  May 5; June 13, 30; July 11, August 5-6, 17.

Also, on August 15, 2016, Sirius XM contacted Plaintiff by direct mail in response to Mr. Buchanan's request for a copy of Sirius XM's do-not-call policy.

**NO. 6:**  Describe and explain (1) how YOU determine whether a telephone number is registered with the DNC, and (2) the procedure YOU use to IDENTIFY whether a telephone number is registered with the DNC.

**RESPONSE:**  Sirius XM objects to this Interrogatory to the extent that it seeks information that is not within its possession, custody, or control.  Sirius XM will respond with respect to information within its possession, custody or control.  In short, Sirius XM provides to its contracted telemarketing vendors various lists of those of its present and former subscribers that Sirius XM wants the telemarketing vendors to contact by telephone.  Prior to providing those lists to the telemarketing vendors, Sirius XM electronically scrubs those lists against its own internal do-not-call list, that is, its list of consumers who have asked Sirius XM to place their names on Sirius XM's company-specific do-not-call list.  Sirius XM suppresses such consumers in the lists that it then provides to the telemarketing vendors.  Each of Sirius XM's telemarketing vendors then scrubs the lists provided by Sirius XM to suppress names that are on that vendor's individual do-not-call list or, to the extent required by state law, on an applicable state do-not-call list.  Sirius XM's vendors use one of several available services to assist them in those scrubbing functions.  Sirius XM updates its do-not-call list and understands that its telemarketing vendors also update their do-not-call lists consistent with regulations set forth by the United States Federal Trade Commission (the "FTC"), the United States Federal Communications Commission (the "FCC") and, to the extent applicable, various state regulatory entities.

**NO. 7:**  IDENTIFY and list the names of all THIRD PARTIES utilized by YOU to make DIALED CALLS to YOUR customers, past customers, or prospective customers from October 16, 2013 to the present.  This Interrogatory includes, but is not limited to, all call centers, telephone providers, telegraph providers, cable providers, telecommunication providers, and electronic communication providers, suppliers, servicers, and carriers.

**RESPONSE:**  During the requested time period, Sirius XM had contractual relationships

with the following outbound telemarketing vendors to dial present and former Sirius XM

subscribers:

1. Career Horizon, Inc., d/b/a TeleServices Direct ("TSD").  TSD is located at 5305 Lakeview Parkway South Drive, Indianapolis, IN 46268.

2. Convergys Corporation f/k/a Stream International Inc. ("Convergys").  Convergys is located at 201 East Fourth Street, Cincinnati, Ohio 45202-4206.

3. DialAmerica Marketing, Inc. ("DialAmerica").  DialAmerica is located at 960 Macarthur Boulevard, Mahwah, NJ 07495.

4. iPacesetters LLC ("iPacesetters").  iPacesetters is located at 135 Chestnut Ridge Road, Montvale, NJ 07645.

5. Jnet Communications LLC, d/b/a Servicom ("Servicom").  Servicom is located at 25 Independence Boulevard, Suite 103, Warren, NJ 07059.

6. The Results Companies LLC ("Results").  Results is located at 100 NE Third Ave., Suite 200, Fort Lauderdale, FL 33301.

7. StraightForward of Wisconsin, Inc. ("StraightForward").  StraightForward is located at 855 Community Drive, Sauk City, WI 53583.

8. Afni, Inc. ("Afni").  Afni is located at 404 Brock Drive, Bloomington, IL 61701.

9. Global Telesourcing, LLC ("GTS").  GTS is located at 4301 N. Fairfax Drive, #320, Arlington, VA 22203.

10. Marketlink Inc., an Allied Global Company ("Marketlink").  Marketlink is located at 3600 Army Post Rd., Des Moines, IA 50321.

11. InfoCision, Inc., 325 Springdale Road, Akron, OH 44333.

12. Alorica, Inc., 5 Park Plaza, Suite 11, Irvine, CA 92614.

**NO. 8:**  IDENTIFY each DIALED CALL that YOU made to PLAINTIFF'S telephone number (972) 437-8642 from October 16, 2013 to the present, including the specific date of each DIALED CALL.

**RESPONSE:**  Sirius XM refers to and incorporates its response to Interrogatory No. 5 in response to this Interrogatory.

**NO. 9:**  IDENTIFY all equipment YOU used to make each DIALED CALL to PLAINTIFF'S telephone number (972) 437-8642 from October 16, 2013 to the present, including the manufacturer's name, model number, and type of equipment.

**RESPONSE:**  Sirius XM did not itself make any calls to Plaintiff's telephone number.

Sirius XM otherwise objects to this Interrogatory on grounds of relevance, and because the requested information is not within Sirius XM's possession, custody or control.

**NO. 10:**  IDENTIFY all software, software applications, software packages, software systems, and software programs YOU used to make each DIALED CALL to PLAINTIFF'S telephone number (972) 437-8642 from October 16, 2013 to the present.

**RESPONSE:**  Sirius XM did not itself make any calls to Plaintiff's telephone number.

Sirius XM otherwise objects to this Interrogatory on grounds of relevance, and because the requested information is not within Sirius XM's possession, custody or control.

**NO. 11:**  IDENTIFY all DIALERS, hardware, computer systems, and other electronic or non-electronic devices YOU used to make each DIALED CALL to PLAINTIFF'S telephone number (972) 437-8642 from October 16, 2013 to the present.

**RESPONSE:**  Sirius XM did not itself make any calls to Plaintiff's telephone number.

Sirius XM otherwise objects to this Interrogatory on grounds of relevance, and because the requested information is not within Sirius XM's possession, custody or control.

**NO. 12:**  Describe and explain how PLAINTIFF provided YOU with PRIOR EXPRESS WRITTEN CONSENT to make DIALED CALLS to his telephone number (972) 437-8642.

**RESPONSE:**  As explained in the response to Interrogatory No. 3, Sirius XM enters into contractual relationships with original vehicle manufacturers and dealers as well as other third parties pursuant to which those parties agree to participate in Sirius XM's vehicle subscription program and provide certain consumer information to Sirius XM.  In the case of participating dealers, Sirius XM sends them a program welcome kit, containing consumer brochures and

literature as well as other point of sale information and instructions for those dealers to use in communicating with customers (and Sirius XM, or an OEM on its behalf, periodically sends refresh point of sale materials to participating dealers).  As explained in the response to Interrogatory No. 3, Bob Tedford Chevrolet agreed to participate in one of those contractual relationships (i.e., Sirius XM's Pre-Owned Vehicle Program).

At or about the time that Plaintiff purchased his Honda, per Sirius XM's instructions and the contractual requirements, personnel at Bob Tedford Chevrolet with whom Plaintiff communicated in the course of purchasing his Honda were required to advise Plaintiff that his Honda came with a subscription to Sirius XM's satellite radio service, and they were required to place Sirius XM subscription materials in the vehicle.  In addition, per Sirius XM's instructions and Sirius XM materials provided to Bob Tedford Chevrolet, Sirius XM's subscription may have also been disclosed, among other places, in a Sirius XM-branded sticker on the vehicle window, in advertising, or on Bob Tedford Chevrolet's website which includes an inventory of available vehicles and their features and accessories.  In the course of purchasing his Honda, Plaintiff voluntarily provided his telephone number to Bob Tedford Chevrolet in writing.  Bob Tedford Chevrolet then provided that information to a vendor that, in turn, provided it to Sirius XM, consistent with Bob Tedford Chevrolet's agreement with Sirius XM.

Shortly after Plaintiff purchased his Honda, Plaintiff received a Welcome Kit from Sirius XM in the mail that contained a copy of the Sirius XM Customer Agreement that governed the parties' relationship and welcomed him as a subscriber to the Sirius XM service.  The Sirius XM Customer Agreement incorporates by reference Sirius XM's Privacy Policy, which confirms to consumers that by using Sirius XM's service they are agreeing that Sirius XM can contact them by phone regarding their subscriptions.

Plaintiff's Sirius XM subscription required Sirius XM to provide what was promised to the consumer—satellite radio service along with full Sirius XM customer service privileges.

**NO. 13:**  For all DIALED CALLS that YOU placed from October 16, 2013 to the present to a telephone number registered with the DNC, please IDENTIFY and list each telephone number.

**RESPONSE:**  Sirius XM did not itself make any calls to subscribers.  To the extent that Sirius XM's telemarketing vendors placed calls on Sirius XM's behalf, they would have placed calls to telephone numbers associated with present or former subscribers with whom Sirius XM had established business relationships consistent with 16 CFR 310.4 and 47 CFR 64.1200.  As stated in the response to Interrogatory No. 6, Sirius XM provides to its telemarketing vendors various lists of those of its present and former subscribers that Sirius XM wants the telemarketing vendors to contact by telephone.  Prior to providing those lists to the telemarketing vendors, Sirius XM suppresses from those lists any telephone numbers on Sirius XM's do-not-call list.  Once the telemarketing vendors receive those lists, they then take steps to suppress any telephone numbers on the vendors' own do-not-call lists and, to the extent required by state law, any applicable state do-not-call lists, prior to making calls to the remaining numbers on the Sirius XM-provided lists.  Sirius XM does not maintain a list of telephone numbers on the national do-not-call registry that were provided to vendors and that the vendors thereafter called.

**NO. 14:**  For all DIALED CALLS that YOU placed from October 16, 2013 to the present, state the total number of individuals listed on YOUR internal do-not-call list.  This requests includes lists maintained by any party who placed DIALED CALLS on your behalf.

**RESPONSE:**  As explained in the response to Interrogatory No. 6, Sirius XM maintains an internal do-not-call list, appropriately updated consistent with appropriate regulatory agency guidance, and suppresses numbers on that list from the list of numbers that Sirius XM provides to its contracted telemarketing vendors.  As a result, Sirius XM does not believe that its

telemarketing vendors placed telephone calls on Sirius XM's behalf, in violation of appropriate

regulatory guidance, to any telephone number contained on Sirius XM's internal do-not-call lists.

**NO. 15:**  How many unique telephone numbers have been called by YOU, and THIRD PARTIES on your behalf, for TELEPHONE SOLICITATION purposes from October 16, 2013 to the present?

      **RESPONSE:**  Sirius XM did not itself make any calls to its subscribers.  Sirius XM

otherwise objects to this Interrogatory on relevance and burden grounds.

**NO. 16:**  How many total DIALED CALLS have been made by YOU, and THIRD PARTIES on your behalf, for TELEPHONE SOLICITATION purposes from October 16, 2013 to the present?

      **RESPONSE:**  Sirius XM did not itself make any calls to its subscribers.  Sirius XM

objects to this Interrogatory on relevance and burden grounds.

**NO. 17:**  IDENTIFY and list all PERSONS having possession, custody, or control of DOCUMENTS or ESI relevant to this suit, and a brief description of the DOCUMENTS or ESI over which they have possession, custody, or control.  This Interrogatory specifically includes possession, custody, or control of ESI relevant to this suit.

      **RESPONSE:**  Sirius XM objects to this Interrogatory on relevance and burden grounds.

Sirius XM will provide to Plaintiff's counsel a list of individuals whose files Sirius XM proposes

to search for purposes of responding to Plaintiff's document requests.

**NO. 18:**  IDENTIFY any THIRD PARTY you have retained or outsourced to contact PERSONS via telephone since October 16, 2013, and indicate the period of time during which each identified THIRD PARTY was so retained and the type of calls, or category of calls, made by that THIRD PARTY.

      **RESPONSE:**  See the response to Interrogatory No. 7 above.

**NO. 19:**  IDENTIFY and list all the types of electronic formats in which YOU maintain outbound dial list(s) and/or reports of calls from October 16, 2013 to the present, identifying each by the dates YOU used it and the purpose for which it was used.

      **RESPONSE:**  Sirius XM maintains contact history information and conversion

information it receives electronically from vendors using secure FTP sites in its Marketing

Database, for which Sirius XM utilizes a database solution provided by Teradata Operations, Inc.

**NO. 20:**  Describe your, or any THIRD PARTY whom placed DIALED CALLS on your behalf's, procedures, from October 16, 2013 to the present, for recording the requests of individuals who asked that calls to that individual cease.

**RESPONSE:**  Sirius XM does not itself make telemarketing calls.  Sirius XM respects customer privacy, and therefore trains agents employed by its contracted telemarketing vendors to honor promptly all subscribers' requests not to be contacted by those vendors, recording and updating contact preferences upon subscribers' requests and advising subscribers regarding the timing of the subscribers' requests.  Sirius XM provides regular training to agents employed by its vendors regarding this topic and audits the vendors' agents to confirm their compliance with Sirius XM's training.  Sirius XM requires the telemarketing vendors to use two processes for purposes of recording and updating subscriber requests not to be contacted.  First, a preference management tool is used by the vendors' agents to update, as necessary, a subscriber's contact preferences.  Second, a back-up process posts do-not-call requests recorded by a vendor's agents daily to a secure FTP site that is managed by a third party, Possible Now, which then compares those requests to the subscribers' contact preferences to confirm that each subscriber's updated preferences have been appropriately recorded in that subscriber's contact preferences in the subscriber management tool.

## VERIFICATION

I, **Karina Dahir**, Senior Director, Listener Care, state that the averments of fact contained in Sirius XM Radio Inc's Objections and Responses to Plaintiff's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.


**Karina Dahir**

Dated: September 13, 2017

Respectfully submitted,

/s/ *Natalia Delaune*_____
Albert J. Rota
Texas Bar No. 24056233
Natalia O. Delaune
Texas Bar No. 24074831
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Phone: (214) 220-3939
Fax: (214) 969-5100
Email: ajrota@jonesday.com
Email: ndelaune@jonesday.com

Thomas Demitrack (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Tel: (216) 586-3939
Fax: (216) 579-0212
Email: tdemitrack@jonesday.com

Lee A. Armstrong (admitted *pro hac vice*)
Allison L. Waks (admitted *pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY 10281
Tel: (212) 326-3939
Fax: (212) 755-7306
Email: laarmstrong@jonesday.com
Email: awaks@jonesday.com

*Attorneys for Defendant Sirius XM Radio Inc.*

## CERTIFICATE OF SERVICE

I certify that on September 13, 2017, a copy of the foregoing was served via email and

U.S. Mail upon the following:

**HUGHES ELLZEY, LLP**
W. Craft Hughes
Texas Bar No. 24046123
craft@hughesellzey.com
Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@hughesellzey.com
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335

**TURNER LAW OFFICES, LLC**
Henry A. Turner
Georgia Bar No. 719310
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Telephone: (404) 378-6274
hturner@tloffices.com

**SIRI & GLIMSTAD LLP**
Aaron Siri
NY Bar No. 4321790
Mason A. Barney
NY Bar No. 4405809
200 Park Avenue, 17th Floor
New York, New York 10166
Tel: (212) 532-1091
E-Mail: aaron@sirillp.com

**WERMAN SALAS P.C.**
Douglas M. Werman
IL Bar No. 6204740
77 West Washington, Suite 1402
Chicago, Illinois 60602
dwerman@flsalaw.com
(312) 419-1008

**MARK A. ALEXANDER P.C.**
Mark A. Alexander
TX Bar No. 01007500
5080 Spectrum, Suite 850E
Addison, Texas 75001
Ph: 972.364.9700
Fax: 972. 239.2244
E-Mail: mark@markalexanderlaw.com

_/s/ Natalia Delaune_____

# **Exhibit 5**

From: Allison L Waks - To: mbarney@sirillp.com - Date: October 16, 2017 at 6:43 PM

Mason,

The response to your October 10 letter and email today.

First, we are generally fine with your request for a 60 day extension of the briefing schedule (which would bring your deadline to December 22) but propose a slight modification in light of the holidays.  We propose January 2, 2018 for your motion for class certification and our opposition will be due March 5.  Our position is contingent on this being a neutral request to the Court, based on the parties' best estimate in view of the nature/extent of discovery on both sides.

Second, regarding the protective order, there are no documents that we can produce without at least a confidential designation.  Therefore, until the protective order is entered, we cannot make any production.

Outstanding discovery issues:

**RFP No. 1.**  Although we have reached out to the vendors, not all have confirmed that we have their consent to produce our service agreements (so-called MSAs).  Those vendors that have responded have made varying demands on what must be redacted.  If you want to speed this process, you are welcome to reach out to the vendors directly.  Sirius XM will not subject itself to breach of contract claims brought by the vendors by its production of any MSAs absent written consent from the vendors and the execution of the protective order.

**RFP Nos. 2, 5**.  Sirius XM's position remains that these lists, which do not capture those who ultimately received telephone calls, are irrelevant and over inclusive.  Please see our response to RFP No. 3.

**RFP Nos. 3, 6**.  Sirius XM will produce to plaintiffs a .txt file that will consist of all calls placed on its behalf by telemarketing vendors during the relevant class period.  It will contain at least the telephone number called and the date and time of call.  These logs, however, will not include the name and address of the consumers.  This is the best and only source of call logs that Sirius XM has in its possession.  For clarity, the "flatfile" to which TSD referred and the "daily report" to which Servicom referred are not separate stand alone documents that Sirius XM can produce.  Rather, those are data transmissions, and the data contained within them is captured within the logs we will produce to you.  Please note that Sirius XM believes that the call volumes that were provided to you by at least TSD, Servicom and MarketLink may represent more calls that can be at issue in this lawsuit.  For example, TSD is Sirius XM's primary vendor for debt collection calls.  TSD may have included those calls in the volume of calls it reported to you.  Finally, due to the massive size of the file, we will need to make arrangements for how we can transmit this .txt file to you.  We think it will be most appropriate to have an IT specialist on your end talk to an IT specialist at our e-discovery vendor.

**RFP No. 4**.  Sirius XM is producing all of the quarterly certifications that it has received from the telemarketing vendors over the class period.  The second category of documents responsive to this request are daily summaries that we receive from the vendors (although not from all vendors for the duration of the class period).  As to the second category, we will be providing a sampling of these documents, and then we can meet and confer to discuss whether further production is appropriate.  The reason for the initial sample is that it is highly burdensome and time consuming to locate and produce this magnitude of data.  In response to your request for a list of what these reports are, please note that it would be inefficient and uninformative to provide you with a listing of what these reports are, beyond stating that they are reports on call metrics, by campaign or other grouping.

**RFP No. 9 and Rog No. 15**.  Sirius XM stated that calls were placed to 39.79 million unique phone numbers on behalf of Sirius XM during the relevant period.  We believe that this number will be confirmed upon production of our call logs, in response to RFP No. 3.

As to **RFP Nos. 7 & 8**, as mentioned, we are gathering and preparing documents for production as soon as we are able to upon the execution of a protective order.

Allison L. Waks
Associate
**JONES DAY® - One Firm Worldwide℠**
250 Vesey Street
New York, NY 10281
Office: +1.212.326.7808
awaks@jonesday.com

From:    Mason Barney <mbarney@sirillp.com>
To:      Allison L Waks <awaks@jonesday.com>
Cc:      "Delaune, Natalia O." <ndelaune@jonesday.com>, Jarrett Ellzey <jarrett@hughesellzey.com>, "Douglas M. Werman" <dwerman@flsalaw.com>, "Aaron Siri" <aaron@sirillp.com>, "TURNER LAW OFFICES, LLC" <hturner@tloffices.com>, "Lee A. Armstrong" <laarmstrong@jonesday.com>, "W. Craft Hughes" <craft@hughesellzey.com>, "Demitrack, Thomas" <tdemitrack@jonesday.com>
Date:    10/16/2017 01:59 PM
Subject: Re: Case No. 3:17-cv-728; Buchanan v. Sirius XM Radio, Inc.

Allison,

Given that we have not received any discovery from you, we are still going back and forth regarding the scope of discovery, and you are saying you will not produce without a protective order, we are asking for a 60 day extension on the class certification motion. This should provide sufficient time for you to produce the required information, for us to review and analyze them, and then to draft the necessary motion papers.

As to the protective order, we will get back to you as soon as we can. However, at least some of the documents we have requested do not require the AEO or other highly protected designation, and therefore, we believe you can start producing such documents immediately. Please confirm your agreement to do so.

I look forward to your response regarding our outstanding discovery requests today.

Regards,
**Mason A. Barney, Esq.**
**SIRI & GLIMSTAD LLP**
200 Park Avenue
17th Floor
New York, NY 10166
P: 212-532-1091
F: 646-417-5967
www.sirillp.com

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

On October 13, 2017 at 3:45:34 PM, Allison L Waks (awaks@jonesday.com) wrote:

Mason,

    We received your letter dated October 10. We are in the process of discussing with our client, and we are not able to respond today, but we will on Monday. We are preparing documents for production, but nothing can be produced until we have a signed protective order. We responded with comments on October 5, but we have not heard back from you. Finally, as to your motion for class certification, please advise how long of an extension you plan to request from the court so we can give you our position.

Sincerely,
Allison

Allison L. Waks
Associate
**JONES DAY® - One Firm Worldwide℠**
250 Vesey Street
New York, NY 10281
Office: +1.212.326.7808
awaks@jonesday.com

From:    Mason Barney <mbarney@sirillp.com>
To:      Jarrett Ellzey <jarrett@hughesellzey.com>, Allison L Waks <awaks@jonesday.com>
Cc:      "Delaune, Natalia O." <ndelaune@jonesday.com>, "Douglas M. Werman" <dwerman@flsalaw.com>, Aaron Siri <aaron@sirillp.com>, "TURNER LAW OFFICES, LLC" <hturner@tloffices.com>, "Demitrack, Thomas" <tdemitrack@jonesday.com>, "W. Craft Hughes" <craft@hughesellzey.com>, "Lee A. Armstrong" <laarmstrong@jonesday.com>
Date:    10/10/2017 03:39 PM
Subject: Re: Case No. 3:17-cv-728; Buchanan v. Sirius XM Radio, Inc.

Allison,
Please see the attached letter regarding the above referenced matter.

Regards,
**Mason A. Barney, Esq.**
**SIRI & GLIMSTAD LLP**
200 Park Avenue
17th Floor
New York, NY 10166
P: 212-532-1091
F: 646-417-5967
www.sirillp.com

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

On October 5, 2017 at 4:57:11 PM, Allison L Waks (awaks@jonesday.com) wrote:

Jarrett,

We have reviewed your revised document requests 1-9.

Regarding RFP No. 1, Sirius XM will agree to produce its service agreements with each of its outbound telemarketers between October 2013 and 2017.  Sirius XM is in the process of compiling them.  Because these documents are subject to confidentiality agreements with the telemarketing vendors, Sirius XM will first need consent to produce them, and we are contacting those vendors to obtain such permission.

RFP Nos. 2 and 5 both request customer lists that Sirius XM provided to its telemarketing vendors.  You indicated to us during our telephonic meet and confer on September 25 that you were not interested in these lists, recognizing that they are over-inclusive, including consumers who may never have been called.  For these reasons, Sirius XM will not produce lists that were provided to the telemarketing vendors.  In any event, with respect to RFP No. 5, which specifically requests consumer information, Sirius XM will not provide any detailed consumer information at this stage of the litigation.  Such information is not relevant before class certification.  Other information that Sirius XM or the telemarketing vendors will provide is sufficient information to identify the number of putative class members for class certification purposes; at this point, consumer identities (beyond telephone numbers which can be provided by the vendors) are not relevant or necessary. Moreover, while Sirius XM does possess some of these lists, it does not have such documents for the entire relevant period; its data extends only back to 2015.

RFP Nos. 3 and 4 seek logs and other information provided by the telemarketing vendors to Sirius XM.  In response to these requests, Sirius XM can provide the following documents within its possession, custody and control: (1) all quarterly compliance reports that it receives from the telemarketing vendors, and (2) a sample of the summary reports that the vendors provide to Sirius XM on a daily basis.  If, upon a review of the sample, you believe that these reports are relevant and all of them are needed to litigate this case, we can discuss a way forward that is workable for both sides, considering the burden involved in compiling what is a massive amount of data.

RFP No. 9 and Interrogatory No. 15 essentially ask for the same information: the total number of individuals contacted during the class period.  Sirius XM will not produce documents responsive to this request (see responses to RFP Nos. 1, 5, 6, and 9).  However, Sirius XM states that 39.79 million unique phone numbers received calls on behalf of Sirius XM from October 16, 2013 until the present.  We will follow up with an amended response to Interrogatory No. 15 and a verification from the company.

RFP Nos. 5, 6, and 9 seek information on the consumers who were called.  Although Sirius XM receives lists of consumers that the telemarketing vendors calls, Sirius XM does not know if those records are accurate, and maintains that such information is best sought directly from the vendors who created the documents in the first instance.

RFP Nos. 7 and 8 seek documents evidencing consent and authorization to call Mr. Buchanan and those in the DNC class. As to Mr. Buchanan, we will provide all documents in Sirius XM's possession, custody and control.  As to the DNC class, we are still looking into this because it implicates a vast universe of data.  We are also looking into producing samples of calls with consumers.  We will respond to this with more detail as soon as we can.

Of course, before any documents are produced, we will need to have our protective order entered.  At this time, we cannot guarantee that all documents as described above can be produced by October 10, but we are confident we can begin production shortly after entry of the protective order, and continue with production on a rolling basis.

Allison

Allison L. Waks
Associate
JONES DAY® - One Firm Worldwide℠
250 Vesey Street
New York, NY 10281
Office: +1.212.326.7808
awaks@jonesday.com

From:      Jarrett Ellzey <Jarrett@hughesellzey.com>
To:        "Demitrack, Thomas" <tdemitrack@JonesDay.com>, "Lee A. Armstrong" <laarmstrong@JonesDay.com>
Cc:        "Delaune, Natalia O." <ndelaune@jonesday.com>, "Waks, Allison L." <awaks@jonesday.com>, "W. Craft Hughes" <Craft@hughesellzey.com>, "TURNER
LAW OFFICES, LLC" <hturner@tloffices.com>, "Douglas M. Werman" <dwerman@flsalaw.com>, Aaron Siri <aaron@sirillp.com>, Mason Barney
<mbarney@sirillp.com>
Date:      09/29/2017 07:40 AM
Subject:   Case No. 3:17-cv-728; Buchanan v. Sirius XM Radio, Inc.

Dear Tom and Lee,

Thank you for taking the time to speak with me about your outstanding document production and various discovery responses.  We look forward to working with you so we can obtain the requested information in an efficient and minimally burdensome manner.  We have discussed streamlining our document requests and are willing to narrow them as outlined below, while still preserving our right to seek discovery of information not covered in these topics:

**REQUEST FOR PRODUCTION NO. 1:**        Produce all DOCUMENTS, ESI, agreements and/or contracts between SIRIUS and any third-party call center or telemarketer relating to TELEPHONE SOLICITATIONS from October 16, 2013 through the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:**        Produce all DOCUMENTS, ESI, spreadsheets, databases, and customer lists that YOU provided to any third-party call center or telemarketerrelating TELEPHONE SOLICITATIONS from October 16, 2013 through the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:**        Produce all DOCUMENTS, ESI, spreadsheets, databases, and/or call logs that any third-party call center or telemarketer provided you relating TELEPHONE SOLICITATIONS it made on behalf of SIRIUS from October 16, 2013 through the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:**        Produce all DOCUMENTS, ESI, summaries, and/or reports that any third-party call center or telemarketer provided you relating to TELEPHONE SOLICITATIONS it made on behalf of SIRIUS from October 16, 2013 through the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:**        Produce all DOCUMENTS, ESI, spreadsheets, databases, and customer lists containing the names, mailing addresses, e-mail addresses, and total number of names and telephone numbers that SIRIUS provided any third-party call center or telemarketer, from October 16, 2013 through the present for TELEPHONE SOLICITATION purposes.

**REQUEST FOR PRODUCTION NO. 6:**       Produce all DOCUMENTS, ESI, spreadsheets, COMMUNICATIONS, databases, and reports containing or referencing the names and/or telephone numbers of PERSONS that any third-party call center or telemarketer called from October 16, 2013 through the present for TELEPHONE SOLICITATION purposes on behalf of SIRIUS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:**       Produce all DOCUMENTS evidencing CONSENT or authorization to call PLAINTIFF'S telephone number.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8:**       Produce all DOCUMENTS evidencing CONSENT or authorization to call any member of the DNC class as defined in Plaintiff's Original Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:**       Produce all DOCUMENTS evidencing the total number of individuals YOU or any third-party on your behalf called for TELEPHONE SOLICITATION PURPOSES from October 16, 2013 to the present.

**RESPONSE:**

In addition to the document requests above, you stated you can and will provide a complete response to INTERROGATORY NO. 15, which asks for the total number of individuals contacted during the class period.  Please provide that response in the form of a supplement to your First Interrogatory responses.

With respect to the timing of your production/responses, Plaintiff's current (and already extended) deadline to file his motion for class certification is October 23, 2017.  I'm sure you recognize these streamlined requests are our best efforts to seek documents and information that are critical to that motion.  Therefore, in consideration of our time constraints, we are willing to allow Sirius until October 10, 2017 to produce the above requested documents and supplement its interrogatory 16 response.  If we do not receive responses by this date, we will be forced to seek an order compelling production and extending the motion deadline.  If unforeseen circumstances arise that will prevent Sirius from providing everything before October 10, we may be willing to work with you on seeking a second extension of the class cert deadline, depending on what the circumstances are.

Finally, you briefly mentioned the possibility of Sirius withholding documents to prevent disclosure of customer contact information.  As we discussed, Plaintiff's counsel provided a draft Protective Order for your review, which we believe covers disclosure of customer data.  We are happy to agree that customer data cannot be used outside of this litigation, and may only be provided to a third-party class administrator in the even a compromise is reached in this case.  Please edit the draft  protective order and send it for our review, so we can file in advance of the document production.

As a separate matter, Plaintiff's responses to Defendant's discovery requests are currently due October 2, 2017.  While we are near completing the responses, we would appreciate the courtesy of a one-week extension to October 9, 2017.

Please let us know if the arrangement outlined above, as well as our request for an extension of Plaintiff's discovery response deadline, is acceptable.  Thank you for your cooperation in this matter.

Jarrett L. Ellzey
Hughes Ellzey, LLP
2700 Post Oak Blvd., Ste. 1120
Houston, Texas 77056
(713) 554-2377
(713) 554-2376 – Direct Line

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========
[attachment "2017-10-10 - Letter from M. Barney to A. Waks.pdf" deleted by Allison L Waks/JonesDay]

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

# **Exhibit 6**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| THOMAS BUCHANAN, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>SIRIUS XM RADIO INC.,<br><br>        Defendant. | Case No.:<br><br>17-cv-00728 |

## STIPULATED JOINT PROTECTIVE ORDER

IT IS HEREBY STIPULATED by and between Named Plaintiff Thomas Buchanan ("Plaintiff") and Defendant Sirius XM Radio Inc. ("Defendant"), through their respective Attorneys of Record, as follows:

**1.    PURPOSES AND LIMITATIONS**

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information, including personally identifiable information of individual consumers, for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the Parties hereby stipulate to and petition the Court to enter the following Stipulation and Order. The Parties acknowledge that this Stipulation and Order does not confer blanket protections on all

disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information that are entitled to confidential treatment under the applicable legal principles. The Parties understand that nothing in this Stipulation and Order changes, amends, or circumvents any court rule or local rule.

2.      **DEFINITIONS**

2.1     **Challenging Party:** a Party or Non-Party that challenges the designation of information under this Stipulation and Order.

2.2     **"CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – PRIVATE PERSON INFORMATION" Information:** information (regardless of how it is generated, stored or maintained) that qualifies for protection under Federal Rule of Civil Procedure 26(c). The Parties agree that "Confidential Information" shall not include: (a) information that is or, after its production in this action, has become public as a result of disclosure not involving a violation of this Stipulation and Order; or (b) information that the Receiving Party can show was received by it from a source who obtained the information lawfully and under no obligation of confidentiality, provided that the Receiving Party treats the information as Confidential as designated until the Designating Party agrees to such change of designation or until resolution of any dispute as to designation as set out in Section 6 below. To designate information as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," the Producing Party or Designating Party must reasonably and in good faith believe that the information meets the same requirements as those for that designated as "CONFIDENTIAL" and

in addition reflects trade secrets or information concerning confidential research and development, or other commercial information that has value from not being generally known, and the disclosure of which to the Receiving Party creates a likely and substantial risk of serious commercial or reputation harm to the Producing Party or Designating Party. To designate information as "HIGHLY CONFIDENTIAL – PRIVATE PERSON INFORMATION" the Producing Party or Designating Party must reasonably and in good faith believe that the information meets the same requirements as those for that designated as "CONFIDENTIAL" and in addition includes private personal information, which includes but is not limited to customer names, addresses, and/or telephone numbers which are subject to confidentiality agreements, is protected by state privacy laws or is otherwise protected by Fed. R. Civ. P. 5.2.

2.3     **Counsel (without qualifier):** Outside Counsel of Record and House Counsel (as well as their support staff).

2.4     **Designating Party:** a Party or Non-Party that designates information that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – PRIVATE PERSON INFORMATION."

2.5     **Disclosure or Discovery Material:** all information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

**2.6**     **Expert:** a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action.

**2.7**     **House Counsel:** attorneys who are employees of a Party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

**2.8**     **Non-Party:** any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

**2.9**     **Outside Counsel of Record:** attorneys who are not employees of a Party to this action but are retained to represent or advise a Party to this action and have appeared in this action on behalf of that Party or are affiliated with a law firm which has appeared on behalf of that Party.

**2.10**    **Party:** any Party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

**2.11**    **Producing Party:** a Party or Non-Party that produces Disclosure or Discovery Material in this action.

**2.12**    **Professional Vendors:** persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

**2.13**    **Protected Material:** any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY," or "HIGHLY CONFIDENTIAL – PRIVATE PERSON INFORMATION."

**2.14**    **Receiving Party:** a Party that receives Disclosure or Discovery Material from, e.g., a Producing Party.

## 3.    SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Stipulation and Order, including becoming part of the public record through trial or otherwise; and (b) any information obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order entered by the district court in which the case is tried.

4.      **DURATION**

The provisions of this Stipulation and Order shall, absent written permission of the Designating Party or further order of the Court, continue to be binding throughout and after the conclusion of this action, including without limitation any appeals therefrom.

**DESIGNATING PROTECTED MATERIAL**

5.1      **Exercise of Restraint and Care in Designating Material for Protection.**

Each Party or Non-Party that designates information for protection under this Stipulation and Order shall limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Stipulation and Order.  Indiscriminate designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions. If it comes to a Designating Party's attention that information that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the designation.

5.2      **Manner and Timing of Designations.** Except as otherwise provided in this Stipulation and Order (see, e.g., section 5.4 below), or as otherwise stipulated or

ordered, Disclosure or Discovery Material that qualifies for protection under this Stipulation and Order must be clearly so designated before the material is disclosed or produced. Designation in conformity with this Stipulation and Order requires:

(a)  for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – PRIVATE PERSON INFORMATION" to each page that contains protected material. A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – PRIVATE PERSON INFORMATION." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Stipulation and Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – PRIVATE PERSON INFORMATION" legend to each page that contains Protected Material.

(b) For all testimony given in depositions, the testimony and transcript shall presumptively be treated as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" and subject to this Stipulation and Order during the deposition and for a period of fifteen (15) days after a transcript of said deposition is received by counsel for each of the Parties. At or before the end of such fifteen-day period, the Parties may designate portions of the testimony and transcript as either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" by letter sent to the other Parties identifying the Protected Material by page and line numbers; after the fifteen-day period, all portions of the testimony and transcript not so designated shall be considered to not contain Protected Material and shall not be subject to this Stipulation and Order.

(c) for information produced in some form other than documentary and for any other tangible or intangible items, the Producing Party shall affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – PRIVATE PERSON INFORMATION," If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

**5.3    Inadvertent Failures to Designate.**  An inadvertent failure to designate qualified information does not, standing alone, waive the Designating Party's right to secure protection under this Stipulation and Order for such material. Upon

correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Stipulation and Order.

**5.**     **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

**6.1**     **Timing of Challenges.** Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

**6.2**     **Meet and Confer.** The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of this Stipulation and Order. The Parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within fourteen (14) days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A

Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3   **Judicial Intervention.** If the Parties cannot resolve a challenge without Court intervention, the Designating Party shall file and serve a motion to retain confidentiality within twenty-one (21) days of written notice of the initial notice of challenge or within fourteen (14) days of the Parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.  Failure by the Designating Party to make such a motion including the required declaration within twenty-one (21) days (or fourteen (14) days, if applicable) shall automatically waive the confidentiality designation for each challenged designation. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. The burden of persuasion in any such challenge proceeding shall be on the Designating Party and the Designating Party must show that the information qualifies for protection under Federal Rule of Civil Procedure 26(c). Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties), may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a

motion to retain confidentiality as described above, all Parties shall continue to afford

the material in question the level of protection to which it is entitled under the

Producing Party's designation until the Court rules on the challenge.

6.     **ACCESS TO AND USE OF PROTECTED MATERIAL**

7.1     **Basic Principles.** A Receiving Party may use Protected Material that is disclosed or

produced by another Party or by a Non-Party in connection with this case only for

prosecuting, defending, or attempting to settle this litigation. Such Protected Material

may be disclosed only to the categories of persons and under the conditions described

in this Stipulation and Order. When the litigation has been terminated, a Receiving

Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location

and in a secure manner that ensures that access is limited to the persons authorized

under this Stipulation and Order.  Additional protections, as described herein, must be

taken to ensure proper storage and security of HIGHLY CONFIDENTIAL –

PRIVATE PERSON INFORMATION, and any person who receives HIGHLY

CONFIDENTIAL – PRIVATE PERSON INFORMATION must sign the attached

"Acknowledgement and Agreement to Be Bound Regarding Private Person

Information."

7.2     **Disclosure of "CONFIDENTIAL" Information.** Unless otherwise ordered by the

Court or permitted in writing by the Designating Party, a Receiving Party may

disclose any information or item designated "CONFIDENTIAL" only to:

(a) Counsel to the Parties, whether House or Outside Counsel;

(b) Current officers, directors, and employees of the Parties to whom disclosure is reasonably necessary for this litigation;

(c) Experts (as defined in this Stipulation and Order) of the Parties to whom disclosure is reasonably necessary for this litigation and who have signed an "Acknowledgment and Agreement to Be Bound";

(d) the Court and its personnel, including stenographic reporters;

(e) Court reporters and their staff to whom disclosure is reasonably necessary for this litigation;

(f) during their depositions or trial, or preparation for their depositions or trial, any witness or potential witness in the action to whom disclosure is reasonably necessary and who have signed an "Acknowledgment and Agreement to Be Bound", unless otherwise agreed by the Designating Party or ordered by the Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulation and Order;

(g) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed an "Acknowledgment and Agreement to Be Bound"; and

(h) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

**7.3** **Disclosure of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" OR**

**"HIGHLY CONFIDENTIAL – PRIVATE PERSON INFORMATION"**

**Information.** Unless otherwise ordered by the Court or permitted in writing by the

Designating Party, a Receiving Party may disclose any information or item designated

"HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or "HIGHLY

CONFIDENTIAL – PRIVATE PERSON INFORMATION" only to:

(a) Counsel to the Parties, whether House or Outside Counsel;

(b) Experts (as defined in this Stipulation and Order) of the Parties to whom
disclosure is reasonably necessary for this litigation and who have signed an
"Acknowledgment and Agreement to Be Bound" or an "Acknowledgment and
Agreement to Be Bound Regarding Private Person Information," as
applicable;

(c) the Court and its personnel, including stenographic reporters;

(d) Court reporters and their staff to whom disclosure is reasonably necessary for
this litigation;

(e) Professional Vendors to whom disclosure is reasonably necessary for this
litigation and who have signed an "Acknowledgment and Agreement to Be
Bound" or an "Acknowledgment and Agreement to Be Bound Regarding
Private Person Information," as applicable; and

(f) during their depositions or trial, or preparation for their depositions or trial,
any potential witness who is the author of the document or information
designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or

"HIGHLY CONFIDENTIAL – PRIVATE PERSON INFORMATION" or is identified as an addressee or copy recipient of the information prior to and apart from this action, to whom disclosure is reasonably necessary and who have signed an "Acknowledgment and Agreement to Be Bound" or an "Acknowledgment and Agreement to Be Bound Regarding Private Person Information," as applicable, unless otherwise agreed by the Designating Party or ordered by the Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulation and Order.

8.    **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

If a Party is served with a subpoena or a Court Order issued in other litigation that compels disclosure of any information designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – PRIVATE PERSON INFORMATION" that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or Court Order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Stipulation and Order. Such notification shall include a copy of this Stipulation and Order; and

- 14 -

(c) cooperate with respect to all reasonable procedures sought to be pursued by the
Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the
subpoena or Court Order shall not produce any information designated in this action as
"CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," or
"HIGHLY CONFIDENTIAL – PRIVATE PERSON INFORMATION" before a determination
by the Court from which the subpoena or order issued, unless the Party has obtained the
Designating Party's written permission. The Designating Party shall bear the burden and expense
of seeking protection in that Court of its confidential material – and nothing in these provisions
should be construed as authorizing or encouraging in this action to disobey a lawful directive
from another Court.

9.      **A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE
PRODUCED IN THIS LITIGATION**

The terms of this Stipulation and Order are applicable to information produced by a Non-
Party in this action and designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL—
ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – PRIVATE PERSON
INFORMATION."  Such information produced by Non-Parties in connection with this litigation
is protected by the remedies and relief provided by this Stipulation and Order. The protections in
this Stipulation and Order are permissive: nothing in these provisions should be construed as
prohibiting a Non-Party from seeking additional protections, from asserting that this Stipulation
and Order does not provide sufficient protection, and/or from asserting that information is not
relevant or otherwise not discoverable.

**10.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulation and Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Stipulation and Order, and (d) request such person or persons to execute an "Acknowledgment and Agreement to Be Bound" or an "Acknowledgment and Agreement to Be Bound Regarding Private Person Information," as applicable.

**11.     INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(e), insofar as the Parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the Parties may request that this Stipulation and Order be modified consistent with their agreement.  The Parties' agreement will be effective only if the Court modifies this Stipulation and Order to incorporate their agreement.

**12.     MISCELLANEOUS**

**12.1** **No waiver of previous designations or application of Fed. R. Evid. 408.** This Stipulation and Order is intended to continue the protection of confidential information notwithstanding the reproduction of materials used in any related actions. Similarly, all information and documents exchanged previous to the effective date of this Stipulation and Order, for purposes of compromising or settling, or negotiating or attempting to compromise or settle this action, shall remain protected under Federal Rule of Evidence 408. Nothing in this Stipulation and Order, nor productions/re-productions of materials in this action, shall be considered a waiver of any earlier designations of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – PRIVATE PERSON INFORMATION" information. To the extent communications, documents, and information were exchanged for purposes of compromising or settling, or negotiating or attempting to compromise or settle, nothing in this Stipulation and Order, nor productions/re-productions of such communications, documents, and information in this action shall be considered a waiver of the otherwise-applicable protection under Federal Rule of Evidence 408.

**12.2** **Right to Further Relief.** Nothing in this Stipulation and Order abridges the right of any person to seek its modification by the Court in the future.

**12.3** **Right to Assert Other Objections.** By stipulating to the entry of this Stipulation and Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulation and Order. In particular, neither the Parties nor Non-Parties waive any objection with

- 17 -

respect to the right to privacy of Non-Parties nor do the Parties waive the right to

challenge any objection on privacy or other grounds. Similarly, no Party waives any

right to object on any ground to use in evidence of any of the material covered by this

Stipulation and Order.

**12.4**   **Filing Protected Material.** No document shall be filed under seal unless counsel

secures a court order allowing the filing of a document under seal. An application to

file a document under seal shall be served on opposing counsel, and on the person or

entity that has custody and control of the document, if different from opposing

counsel. If opposing counsel, or the person or entity who has custody and control of

the document, wishes to oppose the application, he/she must contact the chambers of

the judge who will rule on the application, to notify the judge's staff that an

opposition to the application will be filed. Similarly, if a party other than the

Designating Party seeks to file Protected Material and the Designating Party wishes to

support an application, the Designating Party must contact the Court's chambers to

notify the judge's staff that a response in support of the application will be filed. If

the Court grants an application to file a document under seal, a redacted version of the

document shall be filed in the public record via ECF. If the Court denies an

application to file a document under seal, the Receiving Party may file the Protected

Material in the public record (unless otherwise ordered by the Court). Any Party that

reasonably believes that a filing or disclosure it intends to make in a proceeding

before the Court will contain Protected Material belonging to another Party shall

inform the Designating Party of the content and Bates-numbers of the Protected

Material it intends to file or disclose at least five (5) business days before the filing to provide an opportunity for the Designating Party to agree to disclosure or filing of the Protected Material in redacted or unredacted form and to avoid filing unnecessary applications to file a document under seal where agreement can be reached. If agreement is reached, the Party disclosing the Protected Material shall inform the Court of the agreement at time of its filing or disclosure. In the event agreement cannot be reached, any papers or material attached to a Receiving Party's application to file under seal shall be deemed timely filed with respect to any substantive deadline that applies to such material when the Receiving Party files its application prior to such deadline.

13.      **FINAL DISPOSITION.**

Within sixty (60) days after the final disposition of this action, as defined in Section 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the sixty (60) day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition,

and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert

reports, attorney work product, and consultant and expert work product, even if such materials

contain Protected Material, provided that such documents or materials does not contain HIGHLY

CONFIDENTIAL – PRIVATE PERSON INFORMATION. Any such archival copies that

contain or constitute Protected Material remain subject to this Stipulation and Order as set forth

in Section 4 (DURATION). Furthermore, within sixty (60) days after the final disposition of this

action, the Parties shall move ex parte for an order authorizing the Court to destroy all

Confidential, Attorneys' Eyes Only Material, and Confidential – Private Person Information in

the Court's possession.

**14.      MODIFICATION OF THE PROTECTIVE ORDER BY THE COURT.**

        The Court may modify the terms and conditions of this Stipulation and Order for good

cause, or in the interest of justice, or on its own order at any time in these proceedings.

**15.      RELATION TO ANY COURT OR LOCAL RULES.**

        Without separate court order, this Stipulation and Order and the Parties' stipulation does

not change, amend, or circumvent any court rule or local rule.

AGREED TO BY

HUGHES ELLZEY, LLP

By: _____
        Jarrett L. Ellzey
        Texas Bar No. 24040864

W. Craft Hughes
Deola T. Ali
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335

E-Mail: craft@hughesellzey.com
jarrett@hughesellzey.com
Deola@hughesellzey.com

**Co-Lead Counsel For Plaintiff**

TURNER LAW OFFICES, LLC


By: _____
    Henry A. Turner
    Georgia Bar No. 719310
    (*pro hac vice*)


403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Telephone: (404) 378-6274
hturner@tloffices.com

**Co-Lead Counsel For Plaintiff**


SIRI & GLIMSTAD LLP


_____
Aaron Siri
NY Bar No. 4321790
(*pro hac vice* to be filed)


_____
Mason A. Barney
NY Bar No. 4405809
(*pro hac vice*)


200 Park Avenue, 17th Floor
New York, New York 10166
Tel: (212) 532-1091
E-Mail: aaron@sirillp.com

**Co-Lead Counsel For Plaintiff**

WERMAN SALAS P.C.


_____

Douglas M. Werman
IL Bar No. 6204740
(*pro hac vice*)

77 West Washington, Suite 1402
Chicago, Illinois 60602
dwerman@flsalaw.com
(312) 419-1008                                              **Co-Counsel For Plaintiff**


MARK A. ALEXANDER P.C.


_____

Mark A. Alexander
TX Bar No. 01007500

5080 Spectrum, Suite 850E
Addison, Texas 75001
Ph: 972.364.9700
Fax: 972. 239.2244
E-Mail: mark@markalexanderlaw.com


                                                          **Co-Counsel For Plaintiff**


JONES DAY


_____

Lee A. Armstrong

250 Vesey Street
New York, New York 10281-1047
Phone: 212-326-8340
E-Mail: laarmstrong@jonesday.com


                                                          **Counsel for Defendant**

**IT IS SO ORDERED.**

Dated:_____          By:   _____
                                     The Honorable Sidney A Fitzwater
                                     Judge, U.S. District Court

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| THOMAS BUCHANAN, on behalf of himself and all others similarly situated, | Case No.: |
| Plaintiff, | 17-cv-00728 |
| v. | |
| SIRIUS XM RADIO, INC., | |
| Defendant. | |

**Acknowledgment and Agreement to Be Bound**

I, _____, declare as follows:

    1.    My address is _____.

    2.    My present employer is _____.

    3.    My present occupation or job description is _____.

    4.    I have received a copy of the Stipulation and Order entered in this action on _____, 20___.

    5.    I have carefully read and understand the provisions of the Stipulation and Order.

    6.    I will comply with all provisions of the Stipulation and Order.

    7.    I will hold in confidence, and will not disclose to anyone not qualified under the Stipulation and Order, any information, documents or other materials subject to the Stipulation and Order.

    8.    I will use such information, documents or other materials subject to the Stipulation and Order only for purposes of this present action.

- 24 -

9.     Upon notification of termination of this action, or upon request, I will return and deliver all information, documents or other materials produced subject to the Stipulation and Order, and all documents or things which I have prepared that summarize or quote from the information, documents or other materials that are subject to the Stipulation and Order, to my counsel in this action, or to counsel for the party by whom I am employed or retained or from whom I received the documents.

10.    I hereby submit to the jurisdiction of this Court for the purposes of enforcing this acknowledgment and the Stipulation and Order in this action.

I declare under penalty of perjury under the laws of the United States that the following is true and correct.

Executed this _____ day of _____, 201_ at _____.

_____
QUALIFIED PERSON

**Acknowledgment and Agreement to Be Bound**
**Regarding Private Person Information**

1.      Confidentiality.  (a)  In connection with this Agreement, Disclosing Party, Sirius XM Radio Inc., shall be disclosing highly confidential information, including customer contact information ("Private Person Information"), to _____ ("Recipient"). The term "Private Person Information" does not include information that is or becomes generally available to the public through no action or inaction by (i) the Recipient or (ii) a source to which Recipient knows is bound by a duty or obligation of confidentiality (contractual, fiduciary or otherwise) with respect to such information.  Recipient shall hold Private Person Information in confidence, use such Private Person Information only for the purposes of fulfilling their obligations hereunder and/or in connection with the prosecution or defense of the action entitled *Buchanan v. Sirius XM Radio, Inc.* (N.D. Tx. 17-cv-00728) (the "Action") and in conformity with the Stipulated Joint Protective Order in the Action. Other than for these purposes, Recipient shall not copy, reproduce, sell, assign, license, market, transfer, give or otherwise disclose such information to third parties or use such information for any purposes whatsoever, without the written permission of Disclosing Party.  Recipient agrees to disclose Private Person Information only to those employees who have a legitimate reason to know, and those disclosures shall not occur until those employees are bound by restrictions on confidentiality no less restrictive than those imposed herein and Recipient has advised them of their obligations to keep such information confidential.

        (b)  All Private Person Information provided or disclosed to the Recipient shall remain the sole property of the Disclosing Party.  In the event Recipient becomes legally compelled to disclose any Private Person Information, Recipient will advise Disclosing Party as soon as possible in writing so that the Disclosing Party may either seek an appropriate remedy, including a protective order, or waive compliance with the provisions of this Agreement.  In the event that any such protective order or other remedy is not obtained, or that compliance with this Agreement is waived, the party required to disclose the Private Person Information will furnish only that portion of the Private Person Information which, in the opinion of its legal counsel, is legally required to be disclosed and will exercise reasonable efforts to obtain reliable assurances that confidential treatment will be accorded such Private Person Information.

2.      Legal Compliance.  Recipient shall maintain appropriate security measures to protect the confidentiality of personally identifying information consistent with the applicable regulations of the Commonwealth of Massachusetts (201 CMR 17.00, et. seq.), the regulations of California (Cal. Civ. Code §§ 56.06, 1785.11.2, 1798.29, 1798.82), and all other states.

3.      Subcontractors and Affiliates.  Recipient shall not share Private Person Information with any third party without Disclosing Party's written consent, other than in connection with the prosecution or defense of the Action and in conformity with the Stipulated Joint Protective Order in the Action.

4.      Data Breach.  Recipient shall immediately notify the Disclosing Party's contacts set forth below, by telephone with an immediate confirmation in writing of the facts of the call, if Recipient becomes aware of any actual or reasonably suspected unauthorized access to, use, or disclosure of Private Person Information either alone or with other information, including a notification of loss or suspected loss of data whether or not such data has been encrypted. Recipient shall cooperate with Disclosing Party in any manner reasonably requested by Disclosing Party and in accordance with applicable law and regulations, including:  conducting the investigation; and cooperating with authorities; and notifying affected persons, credit bureaus, or other persons or entities deemed appropriate by Disclosing Party.  Such cooperation shall include without limitation: (i) providing Disclosing Party access to relevant Recipient records and facilities; (ii) providing all relevant data and reports to Disclosing Party; and (iii) providing Disclosing Party the right to review and approve the content and form of any notifications to Disclosing Party affiliated impacted individuals.

>      Disclosing Party contacts are as follows unless otherwise updated by Disclosing Party in writing:

>      Mr. Patrick Donnelly, General Counsel, (212) 584-5180; Patrick.Donnelly@siriusxm.com

>      and

>      Ms. Patricia Edfors, Vice President, Information Security, Privacy and Compliance, (202) 380-1297; Patty.Edfors@siriusxm.com

5.      Private Person Information Requirements.  Recipient shall maintain the Disclosing Party's Private Person Information at a facility that maintains technical, organizational, administrative, and human resource security measures which utilize ISO 27001 and 27002 as a reference to protect the security of information which may be used to identify any individual (Private Person Information) from a breach resulting from or arising out of Recipient's processing, access to, or other transmission of Private Person Information.

6.      Encryption.  Recipient shall encrypt all Disclosing Party's Private Person Information that it transmits, stores and processes by the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key and such algorithmic process meets the following requirements:

>      (a)      A valid encryption processes for data at rest consistent with the National Institute of Standards and Technology (NIST) Special Publication 800-111, Guide to Storage Encryption Technologies for End User Devices.

>      (b)      A valid encryption processes for data in motion that meets the requirements of Federal Information Processing Standards (FIPS) 140–2, Security Requirements for Cryptographic Modules.  These include, as appropriate, standards described in NIST Special Publication 800-52, Guidelines for the Selection and Use of Transport Layer Security (TLS)

Implementations;  800-77, Guide to IPsec VPNs;  or 800-113, Guide to SSL VPNs, and may include others which are FIPS 140-2 validated.

87.    <u>Indemnification</u>.  Recipient shall indemnify, defend and hold harmless Disclosing Party, its affiliates, and their respective employees, officers and directors against any and all third party claims and resulting damages, costs and other liabilities and expenses (including attorneys' fees) arising out of or related to: (i) any negligence or willful misconduct by Recipient, its affiliates, its subcontractors, or their agents; (ii) a breach or alleged breach of any of its representations, warranties or obligations of this Agreement by Recipient, its affiliates, its subcontractors, or their agents; (iii) any loss of Private Person Information by Recipient, its affiliates, its contractors, or their agents; and (iv) any failure or alleged failure by Recipient, its affiliates, its subcontractors, or their agents to comply with any applicable law, rule, and regulation with respect to its performance of this Agreement.

8.    <u>Termination</u>.  Upon termination of this Agreement, Recipient shall securely destroy (and shall cause any permitted affiliates or subcontractors, if any, to securely destroy) all of the Disclosing Party's Private Person Information made available by Disclosing Party, including any copies or derivatives thereof.

Executed this _____ day of _____, 201_ at _____.

_____

# **Exhibit 7**

From: Waks, Allison L. - To: mbarney@sirillp.com, jarrett@hughesellzey.com, hturner@tloffices.com, aaron@sirillp.com, craft@hughesellzey.com, Douglas M. Werman - Date: December 12, 2017 at 3:19 PM

Mason,

In regard to the 3 issues you raised yesterday with the addendum to the protective order, below please find our client's response.

Addendum Paragraph 2.  We propose the bolded language:

> Legal Compliance.  Recipient shall maintain appropriate security measures to protect the confidentiality of personally identifying information consistent with the applicable regulations of the Commonwealth of Massachusetts (201 CMR 17.00, et. seq.), the regulations of California (Cal. Civ. Code §§ 56.06, 1785.11.2, 1798.29, 1798.82)**, and any other States that the Disclosing Party identifies in writing to Recipient as having statutes, rules and/or regulations requiring security measures to protect the confidentiality of personally identifying information.**

Addendum Paragraph 4:  Notwithstanding your contention regarding the perceived cost of compliance, what we are proposing is the law in several States.  From a simple risk allocation perspective, it is unfair for you to suffer a data breach and then impose the costs upon Sirius XM.  Any reputable vendor should be willing to accept this obligation, which requires a modicum of protection to Sirius XM in today's environment.  We propose the following edit, below:

> Data Breach.  Recipient shall immediately notify the Disclosing Party's contacts set forth below, by telephone with an immediate confirmation in writing of the facts of the call, if Recipient becomes aware of any actual or reasonably suspected unauthorized access to, use, or disclosure of Private Person Information either alone or with other information, including a notification of loss or suspected loss of data whether or not such data has been encrypted.  **Recipient shall cooperate with Disclosing Party in any manner reasonably requested by Disclosing Party and in accordance with applicable law and regulations, including:  cooperating in Disclosing Party's investigation; and cooperating with authorities; and notifying affected persons, credit bureaus, or other persons or entities** <u>as required by law.</u>  ~~deemed appropriate by Disclosing Party.~~  Such cooperation shall include without limitation: (i) providing Disclosing Party access to relevant Recipient records and facilities; (ii) providing all relevant data and reports to Disclosing Party; and (iii) providing Disclosing Party the right to review and approve the content and form of any notifications to Disclosing Party affiliated impacted individuals.

Addendum Paragraph 7, Indemnification.  Sirius XM requires an indemnification from anyone to whom it releases personally identifiable information in the ordinary course of business.  And many of the OEMs with which Sirius XM has relationships require the appropriate protection of consumer data.  It is not an unreasonable request, and one that you, as plaintiffs' counsel, should have expected and anticipated.  It will encourage and incentivize plaintiff's counsel and their vendor to adopt the appropriate level of protection.  Security breaches and data hacks unfortunately are a feature of today's world, and again this is risk allocation between Sirius XM and its shareholders, on the one hand, and the plaintiff (and his counsel) who chose to sue Sirius XM, on the other.  It is the simple care that Sirius XM's stockholders would insist upon.

Sincerely,
Allison

Allison L. Waks
Associate
**JONES DAY® - One Firm Worldwide℠**
250 Vesey Street
New York, NY 10281
Office: +1.212.326.7808
awaks@jonesday.com

***This e-mail (including any attachments) may contain information that is private, confidential, or protected

by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.

# Exhibit 8

From: Mason Barney - To: Allison L Waks - Date: October 24, 2017 at 4:55 PM, Attachments: THOMAS BUCHANAN v SIRIUS XM RADIIO INC DRAFT PROTECTIVE ORDER (10-19-2017 Pl. Draft).doc 2017-10-24 - Second Letter from M. Barney to A.

Allison,
Please see our attached letter, responding to your below email.

Regards,
**Mason A. Barney, Esq.**
**SIRI & GLIMSTAD LLP**
200 Park Avenue
17th Floor
New York, NY 10166
P: 212-532-1091
F: 646-417-5967
www.sirillp.com

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the
intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly
prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

On October 16, 2017 at 6:43:35 PM, Allison L Waks (awaks@jonesday.com) wrote:

Mason,

The response to your October 10 letter and email today.

First, we are generally fine with your request for a 60 day extension of the briefing schedule (which would bring your deadline to December 22) but propose a slight modification in light of the holidays. We propose January 2, 2018 for your motion for class certification and our opposition will be due March 5. Our position is contingent on this being a neutral request to the Court, based on the parties' best estimate in view of the nature/extent of discovery on both sides.

Second, regarding the protective order, there are no documents that we can produce without at least a confidential designation. Therefore, until the protective order is entered, we cannot make any production.

Outstanding discovery issues:

**RFP No. 1.** Although we have reached out to the vendors, not all have confirmed that we have their consent to produce our service agreements (so-called MSAs). Those vendors that have responded have made varying demands on what must be redacted. If you want to speed this process, you are welcome to reach out to the vendors directly. Sirius XM will not subject itself to breach of contract claims brought by the vendors by its production of any MSAs absent written consent from the vendors and the execution of the protective order.

**RFP Nos. 2, 5.** Sirius XM's position remains that these lists, which do not capture those who ultimately received telephone calls, are irrelevant and over inclusive. Please see our response to RFP No. 3.

**RFP Nos. 3, 6.** Sirius XM will produce to plaintiffs a .txt file that will consist of all calls placed on its behalf by telemarketing vendors during the relevant class period. It will contain at least the telephone number called and the date and time of call. These logs, however, will not include the name and address of the consumers. This is the best and only source of call logs that Sirius XM has in its possession. For clarity, the "flatfile" to which TSD referred and the "daily report" to which Servicom referred are not separate stand alone documents that Sirius XM can produce. Rather, those are data transmissions, and the data contained within them is captured within the logs we will produce to you. Please note that Sirius XM believes that the call volumes that were provided to you by at least TSD, Servicom and MarketLink may represent more calls that can be at issue in this lawsuit. For example, TSD is Sirius XM's primary vendor for debt collection calls. TSD may have included those calls in the volume of calls it reported to you. Finally, due to the massive size of the file, we will need to make arrangements for how we can transmit this .txt file to you. We think it will be most appropriate to have an IT specialist on your end talk to an IT specialist at our e-discovery vendor.

**RFP No. 4.** Sirius XM is producing all of the quarterly certifications that it has received from the telemarketing vendors over the class period. The second category of documents responsive to this request are daily summaries that we receive from the vendors (although not from all vendors for the duration of the class period). As to the second category, we will be providing a sampling of these documents, and then we can meet and confer to discuss whether further production is appropriate. The reason for the initial sample is that it is highly burdensome and time consuming to locate and produce this magnitude of data. In response to your request

for a list of what these reports are, please note that it would be inefficient and uninformative to provide you with a list of over 150 reports, 18 of which are the others, and others not in all range, by one page or page grouping.

**RFP No. 9 and Rog No. 15**.  Sirius XM stated that calls were placed to 39.79 million unique phone numbers on behalf of Sirius XM during the relevant period.  We believe that this number will be confirmed upon production of our call logs, in response to RFP No. 3.

As to **RFP Nos. 7 & 8**, as mentioned, we are gathering and preparing documents for production as soon as we are able to upon the execution of a protective order.


Allison L. Waks
Associate
JONES DAY® - One Firm Worldwide℠
250 Vesey Street
New York, NY 10281
Office: +1.212.326.7808
awaks@jonesday.com



| | |
|---|---|
| From: | Mason Barney <mbarney@sirillp.com> |
| To: | Allison L Waks <awaks@jonesday.com> |
| Cc: | "Delaune, Natalia O." <ndelaune@jonesday.com>, Jarrett Ellzey <jarrett@hughesellzey.com>, "Douglas M. Werman" <dwerman@flsalaw.com>, "Aaron Siri" <aaron@sirillp.com>, "TURNER LAW OFFICES, LLC" <hturner@tloffices.com>, "Lee A. Armstrong" <laarmstrong@jonesday.com>, "W. Craft Hughes" <craft@hughesellzey.com>, "Demitrack, Thomas" <tdemitrack@jonesday.com> |
| Date: | 10/16/2017 01:59 PM |
| Subject: | Re: Case No. 3:17-cv-728; Buchanan v. Sirius XM Radio, Inc. |



Allison,
Given that we have not received any discovery from you, we are still going back and forth regarding the scope of discovery, and you are saying you will not produce without a protective order, we are asking for a 60 day extension on the class certification motion.  This should provide sufficient time for you to produce the required information, for us to review and analyze them, and then to draft the necessary motion papers.

As to the protective order, we will get back to you as soon as we can.  However, at least some of the documents we have requested do not require the AEO or other highly protected designation, and therefore, we believe you can start producing such documents immediately.  Please confirm your agreement to do so.

I look forward to your response regarding our outstanding discovery requests today.

Regards,
**Mason A. Barney, Esq.**
**SIRI & GLIMSTAD LLP**
200 Park Avenue
17th Floor
New York, NY 10166
P: 212-532-1091
F: 646-417-5967
www.sirillp.com

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

On October 13, 2017 at 3:45:34 PM, Allison L Waks (awaks@jonesday.com) wrote:

Mason,

    We received your letter dated October 10.  We are in the process of discussing with our client, and we are not able to respond today, but we will on Monday.  We are preparing documents for production, but nothing can be produced until we have a signed protective order.  We responded with comments on October 5, but we have not heard back from you.  Finally, as to your motion for class certification, please advise how long of an

extension you plan to request from the court so we can give you our position.



Sincerely,
Allison

Allison L. Waks
Associate
JONES DAY® - One Firm Worldwide℠
250 Vesey Street
New York, NY 10281
Office: +1.212.326.7808
awaks@jonesday.com

From: Mason Barney <mbarney@sirillp.com>
To: Jarrett Ellzey <jarrett@hughesellzey.com>, Allison L Waks <awaks@jonesday.com>
Cc: "Delaune, Natalia O." <ndelaune@jonesday.com>, "Douglas M. Werman" <dwerman@flsalaw.com>, Aaron Siri <aaron@sirillp.com>, "TURNER LAW OFFICES, LLC" <hturner@tloffices.com>, "Demitrack, Thomas" <tdemitrack@jonesday.com>, "W. Craft Hughes" <craft@hughesellzey.com>, "Lee A. Armstrong" <laarmstrong@jonesday.com>
Date: 10/10/2017 03:39 PM
Subject: Re: Case No. 3:17-cv-728; Buchanan v. Sirius XM Radio, Inc.

---

Allison,
Please see the attached letter regarding the above referenced matter.

Regards,
**Mason A. Barney, Esq.**
**SIRI & GLIMSTAD LLP**
200 Park Avenue
17th Floor
New York, NY 10166
P: 212-532-1091
F: 646-417-5967
www.sirillp.com

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

On October 5, 2017 at 4:57:11 PM, Allison L Waks (awaks@jonesday.com) wrote:

Jarrett,

We have reviewed your revised document requests 1-9.

Regarding RFP No. 1, Sirius XM will agree to produce its service agreements with each of its outbound telemarketers between October 2013 and 2017. Sirius XM is in the process of compiling them. Because these documents are subject to confidentiality agreements with the telemarketing vendors, Sirius XM will first need consent to produce them, and we are contacting those vendors to obtain such permission.

RFP Nos. 2 and 5 both request customer lists that Sirius XM provided to its telemarketing vendors. You indicated to us during our telephonic meet and confer on September 25 that you were not interested in these lists, recognizing that they are over-inclusive, including consumers who may never have been called. For these reasons, Sirius XM will not produce lists that were provided to the telemarketing vendors. In any event, with respect to RFP No. 5, which specifically requests consumer information, Sirius XM will not provide any detailed consumer information at this stage of the litigation. Such information is not relevant before class certification. Other information that Sirius XM or the telemarketing vendors will provide is sufficient information to identify the number of putative class members for class certification purposes; at this point, consumer identities (beyond telephone numbers which can be provided by the vendors) are not relevant or necessary. Moreover, while Sirius XM does possess some of these lists, it does not have such documents for the entire relevant period; its data extends only back to 2015.

RFP Nos. 3 and 4 seek logs and other information provided by the telemarketing vendors to Sirius XM. In response to these requests, Sirius XM can provide the following documents within its possession, custody and

control: (1) all quarterly compliance reports that it receives from the telemarketing vendors, and (2) a sample of the calls placed to the vendor lists. This is a large task. If, however, you believe that these reports are relevant and all of them are needed to litigate this case, we can discuss a way forward that is workable for both sides, considering the burden involved in compiling what is a massive amount of data.

RFP No. 9 and Interrogatory No. 15 essentially ask for the same information: the total number of individuals contacted during the class period. Sirius XM will not produce documents responsive to this request (see responses to RFP Nos. 1, 5, 6, and 9). However, Sirius XM states that 39.79 million unique phone numbers received calls on behalf of Sirius XM from October 16, 2013 until the present. We will follow up with an amended response to Interrogatory No. 15 and a verification from the company.

RFP Nos. 5, 6, and 9 seek information on the consumers who were called. Although Sirius XM receives lists of consumers that the telemarketing vendors calls, Sirius XM does not know if those records are accurate, and maintains that such information is best sought directly from the vendors who created the documents in the first instance.

RFP Nos. 7 and 8 seek documents evidencing consent and authorization to call Mr. Buchanan and those in the DNC class. As to Mr. Buchanan, we will provide all documents in Sirius XM's possession, custody and control. As to the DNC class, we are still looking into this because it implicates a vast universe of data. We are also looking into producing samples of calls with consumers. We will respond to this with more detail as soon as we can.

Of course, before any documents are produced, we will need to have our protective order entered. At this time, we cannot guarantee that all documents as described above can be produced by October 10, but we are confident we can begin production shortly after entry of the protective order, and continue with production on a rolling basis.

Allison


Allison L. Waks
Associate
JONES DAY® - One Firm Worldwide℠
250 Vesey Street
New York, NY 10281
Office: +1.212.326.7808
awaks@jonesday.com


From:     Jarrett Ellzey <Jarrett@hughesellzey.com>
To:       "Demitrack, Thomas" <tdemitrack@JonesDay.com>, "Lee A. Armstrong" <laarmstrong@JonesDay.com>
Cc:       "Delaune, Natalia O." <ndelaune@jonesday.com>, "Waks, Allison L." <awaks@jonesday.com>, "W. Craft Hughes"
<Craft@hughesellzey.com>, "TURNER LAW OFFICES, LLC" <hturner@tloffices.com>, "Douglas M. Werman" <dwerman@flsalaw.com>, Aaron
Siri <aaron@sirillp.com>, Mason Barney <mbarney@sirillp.com>
Date:     09/29/2017 07:40 AM
Subject:  Case No. 3:17-cv-728; Buchanan v. Sirius XM Radio, Inc.


Dear Tom and Lee,

Thank you for taking the time to speak with me about your outstanding document production and various discovery responses. We look forward to working with you so we can obtain the requested information in an efficient and minimally burdensome manner. We have discussed streamlining our document requests and are willing to narrow them as outlined below, while still preserving our right to seek discovery of information not covered in these topics:

**REQUEST FOR PRODUCTION NO. 1:**        Produce all DOCUMENTS, ESI, agreements and/or contracts between SIRIUS and any third-party call center or telemarketer relating to TELEPHONE SOLICITATIONS from October 16, 2013 through the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:**          Produce all DOCUMENTS, ESI, spreadsheets, databases, and customer lists that YOU provided to any third-party call center or telemarketerrelating TELEPHONE SOLICITATIONS from October 16, 2013 through the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:**          Produce all DOCUMENTS, ESI, spreadsheets, databases, and/or call logs that any third-party call center or telemarketer provided you relating TELEPHONE SOLICITATIONS it made on behalf of SIRIUS from October 16, 2013 through the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:**          Produce all DOCUMENTS, ESI, summaries, and/or reports that any third-party call center or telemarketer provided you relating to TELEPHONE SOLICITATIONS it made on behalf of SIRIUS from October 16, 2013 through the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:**          Produce all DOCUMENTS, ESI, spreadsheets, databases, and customer lists containing the names, mailing addresses, e-mail addresses, and total number of names and telephone numbers that SIRIUS provided any third-party call center or telemarketer, from October 16, 2013 through the present for TELEPHONE SOLICITATION purposes.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:**          Produce all DOCUMENTS, ESI, spreadsheets, COMMUNICATIONS, databases, and reports containing or referencing the names and/or telephone numbers of PERSONS that any third-party call center or telemarketer called from October 16, 2013 through the present for TELEPHONE SOLICITATION purposes on behalf of SIRIUS.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:**          Produce all DOCUMENTS evidencing CONSENT or authorization to call PLAINTIFF'S telephone number.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8:**          Produce all DOCUMENTS evidencing CONSENT or authorization to call any member of the DNC class as defined in Plaintiff's Original Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:**          Produce all DOCUMENTS evidencing the total number of individuals YOU or any third-party on your behalf called for TELEPHONE SOLICITATION PURPOSES from October 16, 2013 to the present.

**RESPONSE:**

In addition to the document requests above, you stated you can and will provide a complete response to

With respect to the timing of your production/responses, Plaintiff's current (and already extended) deadline to file his
motion for class certification is October 23, 2017.  I'm sure you recognize these streamlined requests are our best efforts
to seek documents and information that are critical to that motion.  Therefore, in consideration of our time constraints,
we are willing to allow Sirius until October 10, 2017 to produce the above requested documents and supplement its
interrogatory 16 response.  If we do not receive responses by this date, we will be forced to seek an order compelling
production and extending the motion deadline.  If unforeseen circumstances arise that will prevent Sirius from providing
everything before October 10, we may be willing to work with you on seeking a second extension of the class cert
deadline, depending on what the circumstances are.

Finally, you briefly mentioned the possibility of Sirius withholding documents to prevent disclosure of customer contact
information.  As we discussed, Plaintiff's counsel provided a draft Protective Order for your review, which we believe
covers disclosure of customer data.  We are happy to agree that customer data cannot be used outside of this litigation,
and may only be provided to a third-party class administrator in the even a compromise is reached in this case.  Please
edit the draft  protective order and send it for our review, so we can file in advance of the document production.

As a separate matter, Plaintiff's responses to Defendant's discovery requests are currently due October 2, 2017.  While
we are near completing the responses, we would appreciate the courtesy of a one-week extension to October 9, 2017.

Please let us know if the arrangement outlined above, as well as our request for an extension of Plaintiff's discovery
response deadline, is acceptable.  Thank you for your cooperation in this matter.

Jarrett L. Ellzey
Hughes Ellzey, LLP
2700 Post Oak Blvd., Ste. 1120
Houston, Texas 77056
(713) 554-2377
(713) 554-2376 – Direct Line

www.hughesellzey.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by
attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without
copying it and notify sender by reply e-mail, so that our records can be corrected.
==========
[attachment "2017-10-10 - Letter from M. Barney to A. Waks.pdf" deleted by Allison L Waks/JonesDay]


==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by
attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without
copying it and notify sender by reply e-mail, so that our records can be corrected.
==========


==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by
attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without
copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

# SIRI & GLIMSTAD LLP

200 PARK AVENUE
SEVENTEENTH FLOOR
NEW YORK, NY 10166
P: (212) 532-1091
F: (646) 417-5967
WWW.SIRILLP.COM

**VIA EMAIL**                                    October 24, 2017

Allison L. Waks
JONES DAY
250 Vesey Street
New York, NY 10281
Email: awaks@jonesday.com

          Re:    *Buchanan v. Sirius XM Radio, Inc.*, Case No. 3:17-cv-728

Dear Ms. Waks:

          I write on behalf of Plaintiff to respond to your email of October 5, 2017.  In your email, you responded to our revised Requests for Production ("RFP") contained in Jarrett Ellzey's email of October 16, 2017.  We appreciate your willingness to agree to extend the deadline for our filing the motion for class certification.  The deadlines we agreed to, however, assume that we can resolve our differences regarding Sirius XM's production, and receive documents in a timely manner. To that end, I will again reply to your responses in turn:

**Defendant's First Response:**          **RFP No. 1.**  Although we have reached out to the vendors, not all have confirmed that we have their consent to produce our service agreements (so-called MSAs).  Those vendors that have responded have made varying demands on what must be redacted.  If you want to speed this process, you are welcome to reach out to the vendors directly.  Sirius XM will not subject itself to breach of contract claims brought by the vendors by its production of any MSAs absent written consent from the vendors and the execution of the protective order.

          *I understand Sirius XM's need to adhere to the provisions of its contracts, however, the fact that this is slowing down the production process and that you say you will need to redact certain portions of the agreements is troubling.  The existence of a private nondisclosure agreement is not a valid objection to a request for production.  See Nvision Biomedical Techs., LLC v. Jalex Med., LLC, No. 5:15-CV-284 RP, 2016 WL 8285637, at \*2 (W.D. Tex. Feb. 1, 2016) (ordering production of documents that were subject to a nondisclosure agreement with third parties); Tinkers & Chance v. Leapfrog Enterprises, Inc., No. CIV.A. 2:05-CV-349, 2006 WL 462601, at \*2 (E.D. Tex. Feb. 23, 2006) (ordering "the production of all relevant documents and evidence, without regard to any private non-disclosure agreements").  If the vendors have concerns regarding confidential or trade secret information, Sirius XM is welcome to mark the documents in*

*accordance with the confidentiality protective order we intend to enter into. See Nvision Biomedical Techs., LLC, 2016 WL 8285637, at \*3 (stating that "the existing Confidentiality and Protective Order . . . is sufficient to satisfy" any concerns over sensitive or proprietary information); Tinkers & Chance, 2006 WL 462601, at \*2 (directing that confidential information be produced under the protective order in the case). As a result, we see no valid reason why portions of the contracts need to be redacted. Plaintiff in this action is not a competitor of any of Sirius XM's vendors, thus, so long as we are prohibited by the protective order from disseminating confidential information, there is no reason to hide that information in the litigation. Given all of the above, so long as Sirius XM provided the vendors with notice and an opportunity to intervene in this action to protect their interests, I see no reason why Sirius XM is risking a breach of contract by producing the documents immediately in response to Plaintiff's request for production.*

**Defendant's Second Response:**     **RFP Nos. 2, 5**. Sirius XM's position remains that these lists, which do not capture those who ultimately received telephone calls, are irrelevant and over inclusive. Please see our response to RFP No. 3.

*Sirius XM's objection, that the lists it sent to the vendors are irrelevant, is simply wrong. As noted in my prior letter, the names, addresses and phone numbers of the individuals called are relevant to both Plaintiff's case and to the class certification motion. Gossett v. CMRE Fin. Servs., 142 F. Supp. 3d 1083, 1090 (S.D. Cal. 2015) (ordering the production of call lists provided by a company to its telephone vendor because they were relevant to class certification in a TCPA matter). As just one example of the lists' relevance, we understand that Sirius XM may assert an affirmative defense that the people called either provided consent for the calls or were in pre-existing business relationships with Sirius XM prior to the calls. If that is the case, then both the names and numbers of the people called are required so that Plaintiff can match the consent/prior relationship with the name of the person called. E.g., Mey v. Interstate Nat'l Dealer Servs., Inc., No. 1:14-CV-01846-ELR, 2015 WL 11256613, at \*4 (N.D. Ga. June 19, 2015) (ordering the defendant to produce the <u>names and numbers</u> of the individuals called if it intended to assert an affirmative defense based on consent or business relationship). Similarly, if Sirius XM intends to assert a defense to class certification based on whether the class members are ascertainable, the name, address and phone number of the individuals called will be critical to Plaintiff's response to such a defense.*

*To the extent the lists may include individuals that were not called, their presence on those lists is not a reason to withhold production of the entire lists. Sirius XM is welcome to scrub the lists to redact those individuals prior to producing the lists. Thrasher v. CMRE Fin. Servs., Inc., No. 14-CV-1540 BEN NLS, 2015 WL 1138469, at \*2 (S.D. Cal. Mar. 13, 2015) (holding that where a call list may have included certain numbers that were outside the class definition, i.e., land lines, the defendant still needed to produce the entire list, but it could "'scrub,' or, redact that information from the production"). For*

*these reasons, the customer lists are relevant and are not overly broad, therefore, we insist that you produce such customer lists as soon as possible.*

**Defendant's Third Response:**        **RFP Nos. 3, 6**. Sirius XM will produce to plaintiffs a .txt file that will consist of all calls placed on its behalf by telemarketing vendors during the relevant class period. It will contain at least the telephone number called and the date and time of call. These logs, however, will not include the name and address of the consumers. This is the best and only source of call logs that Sirius XM has in its possession. For clarity, the "flatfile" to which TSD referred and the "daily report" to which Servicom referred are not separate stand alone documents that Sirius XM can produce. Rather, those are data transmissions, and the data contained within them is captured within the logs we will produce to you. Please note that Sirius XM believes that the call volumes that were provided to you by at least TSD, Servicom and MarketLink may represent more calls that can be at issue in this lawsuit. For example, TSD is Sirius XM's primary vendor for debt collection calls. TSD may have included those calls in the volume of calls it reported to you. Finally, due to the massive size of the file, we will need to make arrangements for how we can transmit this .txt file to you. We think it will be most appropriate to have an IT specialist on your end talk to an IT specialist at our e-discovery vendor.

*We appreciate your change of mind regarding the call logs. Please let us know the format of the .txt file, and confirm that it will be formatted in a manner that will make it easy for us to upload and review the data (e.g., in a csv format). As to the actual transmission of the file, we agree that we should have the IT specialist discuss the matter when the logs are ready.*

*You note that some of the calls made by your vendors may fall outside the class definition. If you intend to filter out of the logs the phone calls you claim are outside the class definition, we ask that you identify what criteria you are using to effectuate such a filter so we can understand the data we will receive and evaluate whether it is sufficient.*

*You state that the .txt file "will not include the name and address of the consumers." However, for the reasons stated above, we disagree with your refusal to provide such information. The names and addresses are directly relevant to both Plaintiff's causes of action and to the class certification motion. Furthermore, if the call logs are stored along with the names and addresses of the call recipients, then we are entitled to receive the full logs as they are maintained pursuant to Rule 34(b)(E) and our original document demands. Therefore, we must demand that you produce the names and addresses along with the phone numbers.*

*You further assert that the information in the flatfiles and daily reports Sirius XM receives from its vendors are subsumed in the database that will create the .txt file. Your email is unclear as to whether Sirius XM still maintains copies of the flatfiles and daily reports. We have no interest in duplicating work. But, those flatfiles and daily reports could be useful tools in confirming or evaluating the data you provide. Therefore, even though we are willing to forego production of such documents at this time, we cannot agree that we will never demand such documents from Sirius XM in the future. As a result, could you please confirm whether Sirius XM maintains such documents from the*

*relevant class period, and if so that it will continue to maintain such documents during the pendency of this action?*

**Defendant's Fourth Response:**      **RFP No. 4**.  Sirius XM is producing all of the quarterly certifications that it has received from the telemarketing vendors over the class period.  The second category of documents responsive to this request are daily summaries that we receive from the vendors (although not from all vendors for the duration of the class period).  As to the second category, we will be providing a sampling of these documents, and then we can meet and confer to discuss whether further production is appropriate.  The reason for the initial sample is that it is highly burdensome and time consuming to locate and produce this magnitude of data.  In response to your request for a list of what these reports are, please note that it would be inefficient and uninformative to provide you with a listing of what these reports are, beyond stating that they are reports on call metrics, by campaign or other grouping.

> *Thank you for agreeing to produce the quarterly certifications.  Furthermore, we agree with your suggestion that Sirius XM should produce samples of the daily summaries to evaluate their usefulness before we ask you to produce the remaining summaries.  As to my prior request for a list of what the reports are, I asked if Sirius XM has any reports in addition to the quarterly certifications and daily summaries that it receives from its vendors, and if so I was asking for a description of those reports so we can evaluate whether they would be relevant and useful. Therefore, if Sirius XM receives any vendor reports other than the quarterly certifications and daily summaries from its vendors, please provide a list of those additional reports.*

**Defendant's Fifth Response:**      **RFP No. 9 and Rog No. 15**.  Sirius XM stated that calls were placed to 39.79 million unique phone numbers on behalf of Sirius XM during the relevant period.  We believe that this number will be confirmed upon production of our call logs, in response to RFP No. 3.

> *We look forward to receiving documents sufficient to evaluate your asserted call total.*

**Defendant's Sixth Response:**      As to **RFP Nos. 7 & 8**, as mentioned, we are gathering and preparing documents for production as soon as we are able to upon the execution of a protective order.

> *As noted above, these documents will presumably be important to Sirius XM's defenses in this action.  Therefore, we request that you provide at least samples of the documents you intend to produce as soon as possible.  It is possible, upon review of the evidence you intend to provide concerning consent/prior relationship, that we may not need the names and addresses that you are refusing to produce.  But, we cannot know that until we review the consent/prior relationship documents.*

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

We have reviewed your proposed changes to the "Stipulated Joint Protective Order."  I am enclosing a red-line showing the changes we propose.

We are primarily concerned about your proposed addition of the "Acknowledgment and Agreement to Be Bound Regarding Private Person Information." The data Plaintiff is requesting includes names, addresses and phone numbers, all information that is freely available in phone books or through other services. We are not seeking sensitive information, such as that described in Fed. R. Civ. Pro. 5.2. As a result, we see no need for the extreme level of security that the Acknowledgment and Agreement requires. *See United States v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543, 2016 WL 278967, at *6 (E.D. Tex. Jan. 22, 2016) (refusing to issue a protective order requiring the Plaintiff to observe "the same privacy and data security obligations imposed on Defendants" who were debt collectors, and to "[c]omply with Texas's information security requirements," because the protections in the standard protective order were sufficient to safeguard the data).

Furthermore, the demands that the Acknowledgment and Agreement assert are unduly burdensome. For example, your demand for ISO 27001 and 27002 compliance, SSAE 16 Assessments, and encryption that meets certain NIST standards, are extremely expensive to implement, and entirely unnecessary for the type of information being exchanged here. Likewise, there is no basis for you to demand indemnification in exchange for producing documents that Plaintiff is entitled to.

We can agree to include the standard "Acknowledgment and Agreement to Be Bound" that you inserted. However, the additional requirements "Regarding Private Person Information" are unacceptable.

Again, we are committed to working with Sirius XM as part of the meet and confer process, however, as I stated in my prior letter, we need to move this litigation forward. As such, if we do not hear from you by October 31, 2017, or you continue to refuse to produce the documents responsive to our RFPs, then we will have no choice but to make a motion to compel production of same.

We look forward to hearing from you. If you would like to discuss any of the above, please feel free to contact me.

Sincerely Yours,

Mason A. Barney

*Attorney for Plaintiff*

Enclosure

CC:   Demitrack, Thomas (tdemitrack@JonesDay.com)
      Lee A. Armstrong (laarmstrong@JonesDay.com)
      Natalia O. Delaune (ndelaune@jonesday.com)

Page **5** of **6**

W. Craft Hughes (Craft@hughesellzey.com)
Henry Turner (hturner@tloffices.com)
Douglas M. Werman (dwerman@flsalaw.com)
Aaron Siri (aaron@sirillp.com)
Jarrett Ellzey (Jarrett@hughesellzey.com)

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| THOMAS BUCHANAN, on behalf of himself and all others similarly situated, | Case No.: |
| Plaintiff, | 17-cv-00728 |
| v. | |
| SIRIUS XM RADIO INC., | |
| Defendant. | |

## STIPULATED JOINT PROTECTIVE ORDER

IT IS HEREBY STIPULATED by and between Named Plaintiff Thomas Buchanan ("Plaintiff") and Defendant Sirius XM Radio Inc. ("Defendant"), through their respective Attorneys of Record, as follows:

### 1.     PURPOSES AND LIMITATIONS

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information, including personally identifiable information of individual consumers, for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the Parties hereby stipulate to and petition the Court to enter the following Stipulation and Order. The Parties acknowledge that this Stipulation and Order does not confer blanket protections on all

disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The Parties understand that nothing in this Stipulation and Order changes, amends, or circumvents any court rule or local rule.

2.      **DEFINITIONS**

2.1     **Challenging Party:** a Party or Non-Party that challenges the designation of information or items under this Stipulation and Order.

2.2     **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Information or Items:** information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c). The Parties agree that "Confidential Information" shall not include: (a) information that is or, after its production in this action, has become public as a result of disclosure not involving a violation of this Stipulation and Order; or (b) information that the Receiving Party can show was received by it from a source who obtained the information lawfully and under no obligation of confidentiality, provided that the Receiving Party treats the information as Confidential as designated until the Designating Party agrees to such change of designation or until resolution of any dispute as to designation as set out in Section 6 below. To designate information as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," the Producing Party or Designating Party must reasonably and in good faith believe that the information meets the same requirements as those for that designated as "CONFIDENTIAL" and in addition reflects: (a) trade secrets or information

- 2 -

concerning confidential research and development, or other commercial information that has value from not being generally known, and the disclosure of which to the Receiving Party creates a likely and substantial risk of serious commercial or reputation harm to the Producing Party or Designating Party; or (b) private personal information, which shall be the types of information subject to the requirements of Fed. R. Civ. P. 5.2 ("PRIVATE PERSON INFORMATION").

**Deleted:** ("PRIVATE PERSON INFORMATION"), including but not limited to

2.3     **Counsel (without qualifier):** Outside Counsel of Record and House Counsel (as well as their support staff).

2.4     **Designating Party:** a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY."

2.5     **Disclosure or Discovery Material:** all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.6     **Expert:** a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action.

2.7     **House Counsel:** attorneys who are employees of a Party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.8     **Non-Party:** any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

- 3 -

**2.09**   **Outside Counsel of Record:** attorneys who are not employees of a Party to this

action but are retained to represent or advise a Party to this action and have appeared

in this action on behalf of that Party or are affiliated with a law firm which has

appeared on behalf of that Party.

**2.10**   **Party:** any Party to this action, including all of its officers, directors, employees,

consultants, retained experts, and Outside Counsel of Record (and their support

staffs).

**2.11**   **Producing Party:** a Party or Non-Party that produces Disclosure or Discovery

Material in this action.

**2.12**   **Professional Vendors:** persons or entities that provide litigation support services

(e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations,

and organizing, storing, or retrieving data in any form or medium) and their

employees and subcontractors.

**2.13**   **Protected Material:** any Disclosure or Discovery Material that is designated as

"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS EYES

ONLY."

**2.14**   **Receiving Party:** a Party that receives Disclosure or Discovery Material from, e.g., a

Producing Party.

**3.**   **SCOPE**

The protections conferred by this Stipulation and Order cover not only Protected Material

(as defined above), but also (1) any information copied or extracted from Protected Material; (2)

all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony,

- 4 -

conversations, or presentations by Parties or their Counsel that might reveal Protected Material.
However, the protections conferred by this Stipulation and Order do not cover the following
information: (a) any information that is in the public domain at the time of disclosure to a
Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as
a result of publication not involving a violation of this Stipulation and Order, including
becoming part of the public record through trial or otherwise; and (b) any information obtained
by the Receiving Party after the disclosure from a source who obtained the information lawfully
and under no obligation of confidentiality to the Designating Party. Any use of Protected
Material at trial shall be governed by a separate agreement or order entered by the district court
in which the case is tried.

**4.      DURATION**

The provisions of this Stipulation and Order shall, absent written permission of the
Designating Party or further order of the Court, continue to be binding throughout and after the
conclusion of this action, including without limitation any appeals therefrom. Within sixty (60)
calendar days after receiving notice of the entry of an order, judgment, or decree finally
disposing of this Case, including any appeals therefrom, all persons having received materials
designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES
ONLY" shall return such information and all copies thereof to counsel for the Designating Party,
or shall certify destruction thereof; provided, however, that Counsel shall be entitled to retain
court papers, deposition and trial transcripts and attorney-work product (including court papers,
transcripts, and attorney work product that contain Confidential Information), so long as such
documents or materials do not contain PRIVATE PERSON INFORMATION.

- 5 -

5.    **DESIGNATING PROTECTED MATERIAL**

5.1    **Exercise of Restraint and Care in Designating Material for Protection.**

Each Party or Non-Party that designates information or items for protection under this

Stipulation and Order shall limit any such designation to specific material that

qualifies under the appropriate standards. The Designating Party must designate for

protection only those parts of material, documents, items, or oral or written

communications that qualify – so that other portions of the material, documents,

items, or communications for which protection is not warranted are not swept

unjustifiably within the ambit of this Stipulation and Order. Mass, indiscriminate, or

routinized designations are prohibited. Designations that are shown to be clearly

unjustified or that have been made for an improper purpose (e.g., to unnecessarily

encumber or retard the case development process or to impose unnecessary expenses

and burdens on other parties) expose the Designating Party to sanctions. If it comes to

a Designating Party's attention that information or items that it designated for

protection do not qualify for protection, that Designating Party must promptly notify

all other Parties that it is withdrawing the mistaken designation.

5.2    **Manner and Timing of Designations.** Except as otherwise provided in this

Stipulation and Order (see, e.g., section 5.4 below), or as otherwise stipulated or

ordered, Disclosure or Discovery Material that qualifies for protection under this

Stipulation and Order must be clearly so designated before the material is disclosed or

produced. Designation in conformity with this Stipulation and Order requires:

- 6 -

**Deleted:** , except in the case of PRIVATE PERSON INFORMATION

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" to each page that contains protected material. A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Stipulation and Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" legend to each page that contains Protected Material.

(b) For all testimony given in depositions, the testimony and transcript shall presumptively be treated as Protected Material and subject to this Stipulation and Order during the deposition and for a period of fifteen (15) days after a transcript of said deposition is received by counsel for each of the Parties. At or before the end of such fifteen-day period, the Parties may designate portions of the testimony and transcript as either "CONFIDENTIAL" or "HIGHLY

- 7 -

CONFIDENTIAL—ATTORNEYS' EYES ONLY" by letter sent to the other Parties identifying the Protected Material by page and line numbers; after the fifteen-day period, all portions of the testimony and transcript not so designated shall be considered to not contain Protected Material and shall not be subject to this Stipulation and Order.

(c) for information produced in some form other than documentary and for any other tangible items, the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

**5.3    Inadvertent Failures to Designate.** If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Stipulation and Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Stipulation and Order.

# 6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

**6.1    Timing of Challenges.** Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness,

- 8 -

**Deleted:** deisgnated

**Deleted:** consitered

**Deleted:**

unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2  **Meet and Confer.** The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of this Stipulation and Order. The Parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within fourteen (14) days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3  **Judicial Intervention.** If the Parties cannot resolve a challenge without Court intervention, the Designating Party shall file and serve a motion to retain confidentiality within twenty-one (21) days of the initial notice of challenge or within fourteen (14) days of the Parties agreeing that the meet and confer process will not

resolve their dispute, whichever is earlier. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to make such a motion including the required declaration within twenty-one (21) days (or fourteen (14) days, if applicable) shall automatically waive the confidentiality designation for each challenged designation. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph. The burden of persuasion in any such challenge proceeding shall be on the Designating Party and the Designating Party must show that the information qualifies for protection under Federal Rule of Civil Procedure 26(c). Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties), may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all Parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

7.      **ACCESS TO AND USE OF PROTECTED MATERIAL**

**Deleted:** may

**Deleted:** , except for any documents that include PRIVATE PERSON INFORMATION, the confidentially of which shall never be waived

7.1     **Basic Principles.** A Receiving Party may use Protected Material that is disclosed or

produced by another Party or by a Non-Party in connection with this case only for

prosecuting, defending, or attempting to settle this litigation. Such Protected Material

may be disclosed only to the categories of persons and under the conditions described

in this Stipulation and Order. When the litigation has been terminated, a Receiving

Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location

and in a secure manner that ensures that access is limited to the persons authorized

under this Stipulation and Order.

> **Deleted:** Additional protections, as described herein, must be taken to ensure proper storage and security of PRIVATE PERSON INFORMATION, and any person who receives PRIVATE PERSON INFORMATION must sign the attached "Acknowledgement and Agreement to Be Bound Regarding Private Person Information."

7.2     **Disclosure of "CONFIDENTIAL" Information or Items.** Unless otherwise

ordered by the Court or permitted in writing by the Designating Party, a Receiving

Party may disclose any information or item designated "CONFIDENTIAL" only to:

> (a) Counsel to the Parties, whether House or Outside Counsel;
>
> (b) Current officers, directors, and employees of the Parties to whom disclosure is reasonably necessary for this litigation;
>
> (c) Experts (as defined in this Stipulation and Order) of the Parties to whom disclosure is reasonably necessary for this litigation and who have signed an "Acknowledgment and Agreement to Be Bound";
>
> (d) the Court and its personnel, including stenographic reporters;
>
> (e) Court reporters and their staff to whom disclosure is reasonably necessary for this litigation;

(f)  during their depositions or trial, or preparation for their depositions or trial, any witness or potential witness in the action to whom disclosure is reasonably necessary and who have signed an "Acknowledgment and Agreement to Be Bound", unless otherwise agreed by the Designating Party or ordered by the Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulation and Order;

(g)  professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed an "Acknowledgment and Agreement to Be Bound"; and

(h)  the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

**7.3**    **Disclosure of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY"**

**Information or Items.** Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" only to:

(a)  Counsel to the Parties, whether House or Outside Counsel;

(b)  Experts (as defined in this Stipulation and Order) of the Parties to whom disclosure is reasonably necessary for this litigation and who have signed an "Acknowledgment and Agreement to Be Bound";

(c)  the Court and its personnel, including stenographic reporters;

- 12 -

(d) Court reporters and their staff to whom disclosure is reasonably necessary for this litigation;

(e) Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed an "Acknowledgment and Agreement to Be Bound"; and

(f) during their depositions or trial, or preparation for their depositions or trial, any potential witness who is the author of the document or information designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or is identified as an addressee or copy recipient of the information prior to and apart from this action, to whom disclosure is reasonably necessary and who have signed an "Acknowledgment and Agreement to Be Bound", unless otherwise agreed by the Designating Party or ordered by the Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulation and Order.

8.    **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

If a Party is served with a subpoena or a Court Order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or Court Order;

- 13 -

**Deleted:** 7.4 · **Disclosure of "HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY" Information or Items that contains PRIVATE PERSON INFORMATION.** Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "PRIVATE PERSON INFORMATION" only to:¶
<#>Counsel to the Parties, whether House or Outside Counsel. Such counsel need not sign the Acknowledgment and Agreement to Be Bound Regarding Private Person Information if they do not store any PRIVATE PERSON INFORMATION internally. However, if such Counsel reviews any PRIVATE PERSON INFORMATION, it must not be shared with any other individual or entity and must be adequately encrypted; ¶
<#>Experts (as defined in this Stipulation and Order) of the Parties to whom disclosure is reasonably necessary for this litigation and who have signed an "Acknowledgment and Agreement to Be Bound." Such counsel need not sign the Acknowledgment and Agreement to Be Bound Regarding Private Person Information if they do not store any PRIVATE PERSON INFORMATION internally. However, if such Experts review any PRIVATE PERSON INFORMATION, it must not be shared with any other individual or entity and must be adequately encrypted; and¶
<#>Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed an "Acknowledgment and Agreement to Be Bound" as well as an "Acknowledgment and Agreement to Be Bound Regarding Private Person Information."¶

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Stipulation and Order. Such notification shall include a copy of this Stipulation and Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or Court Order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the Court from which the subpoena or order issued, unless the Party has obtained the Designating Party's written permission. The Designating Party shall bear the burden and expense of seeking protection in that Court of its confidential material – and nothing in these provisions should be construed as authorizing or encoura in this action to disobey a lawful directive from another Court.

**9.    A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION**

The terms of this Stipulation and Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Stipulation and Order. The protections in this Stipulation and Order are permissive: nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections, from asserting that this Stipulation and Order does not provide sufficient protection, and/or from asserting that information is not relevant or otherwise not discoverable.

- 14 -

**10.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulation and Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Stipulation and Order, and (d) request such person or persons to execute an "Acknowledgment and Agreement to Be Bound".

**11.     INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the Parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the Parties may request that this Stipulation and Order be modified consistent with their agreement.  The Parties' agreement will be effective only if the Court modifies this Stipulation and Order to incorporate their agreement.

**12.     MISCELLANEOUS**

12.1   **No waiver of previous designations or application of Fed. R. Evid. 408.** This
Stipulation and Order is intended to continue the protection of confidential
information or items notwithstanding the reproduction of materials used in any
related actions. Similarly, all information and documents exchanged previous to the
effective date of this Stipulation and Order, for purposes of compromising or settling,
or negotiating or attempting to compromise or settle this Case, shall remain protected
under Federal Rule of Evidence 408. Nothing in this Stipulation and Order, nor
productions/re-productions of materials in this action, shall be considered a waiver of
any earlier designations of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—
ATTORNEYS' EYES ONLY" information or items. To the extent communications,
documents, and information were exchanged for purposes of compromising or
settling, or negotiating or attempting to compromise or settle, nothing in this
Stipulation and Order, nor productions/re-productions of such communications,
documents, and information in this action shall be considered a waiver of the
otherwise-applicable protection under Federal Rule of Evidence 408.

12.2   **Right to Further Relief.** Nothing in this Stipulation and Order abridges the right of
any person to seek its modification by the Court in the future.

12.3   **Right to Assert Other Objections.** By stipulating to the entry of this Stipulation and
Order no Party waives any right it otherwise would have to object to disclosing or
producing any information or item on any ground not addressed in this Stipulation
and Order. In particular, neither the Parties nor Non-Parties waive any objection with
respect to the right to privacy of Non-Parties nor do the Parties waive the right to

- 16 -

challenge any objection on privacy or other grounds. Similarly, no Party waives any

right to object on any ground to use in evidence of any of the material covered by this

Stipulation and Order.

**12.4**   **Filing Protected Material.** No document shall be filed under seal unless counsel

secures a court order allowing the filing of a document under seal. An application to

file a document under seal shall be served on opposing counsel, and on the person or

entity that has custody and control of the document, if different from opposing

counsel. If opposing counsel, or the person or entity who has custody and control of

the document, wishes to oppose the application, he/she must contact the chambers of

the judge who will rule on the application, to notify the judge's staff that an

opposition to the application will be filed. Similarly, if a party other than the

Designating Party seeks to file Protected Material and the Designating Party wishes to

support an application, the Designating Party must contact the Court's chambers to

notify the judge's staff that a response in support of the application will be filed. If

the Court grants an application to file a document under seal, a redacted version of the

document shall be filed in the public record via ECF. If the Court denies an

application to file a document under seal, the Receiving Party may file the Protected

Material in the public record (unless otherwise ordered by the Court). Any Party that

reasonably believes that a filing or disclosure it intends to make in a proceeding

before the Court will contain Protected Material belonging to another Party shall

inform the Designating Party of the content and Bates-numbers of the Protected

Material it intends to file or disclose at least five (5) business days before the filing to

- 17 -

provide an opportunity for the Designating Party to agree to disclosure or filing of the

Protected Material in redacted or unredacted form and to avoid filing unnecessary

applications to file a document under seal where agreement can be reached. If

agreement is reached, the Party disclosing the Protected Material shall inform the

Court of the agreement at time of its filing or disclosure. In the event agreement

cannot be reached, any papers or material attached to a Receiving Party's application

to file under seal shall be deemed timely filed with respect to any substantive deadline

that applies to such material when the Receiving Party files its application prior to

such deadline.

13.     **FINAL DISPOSITION.**

Within sixty (60) days after the final disposition of this action, as defined in

paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or

destroy such material. As used in this subdivision, "all Protected Material" includes all copies,

abstracts, compilations, summaries, and any other format reproducing or capturing any of the

Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party

must submit a written certification to the Producing Party (and, if not the same person or entity,

to the Designating Party) by the sixty (60) day deadline that (1) identifies (by category, where

appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the

Receiving Party has not retained any copies, abstracts, compilations, summaries or any other

format reproducing or capturing any of the Protected Material. Notwithstanding this provision,

Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition,

and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert

- 18 -

reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material, provided that such documents or materials does not contain PRIVATE PERSON INFORMATION. Any such archival copies that contain or constitute Protected Material remain subject to this Stipulation and Order as set forth in Section 4 (DURATION). Furthermore, within sixty (60) days after the final disposition of this action, as defined in paragraph 4, the Parties shall move ex parte for an order authorizing the Court to destroy all Confidential and Attorneys' Eyes Only Material in the Court's possession.

**14.      MODIFICATION OF THE PROTECTIVE ORDER BY THE COURT.**

The Court may modify the terms and conditions of this Stipulation and Order for good cause, or in the interest of justice, or on its own order at any time in these proceedings.

**15.      RELATION TO ANY COURT OR LOCAL RULES.**

Without separate court order, this Stipulation and Order and the Parties' stipulation does not change, amend, or circumvent any court rule or local rule.

AGREED TO BY

HUGHES ELLZEY, LLP

By: _____
    Jarrett L. Ellzey
    Texas Bar No. 24040864

W. Craft Hughes
Deola T. Ali
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
E-Mail: craft@hughesellzey.com
jarrett@hughesellzey.com
Deola@hughesellzey.com

- 19 -

**Deleted:** . However, Counsel is not entitled to retain any

**Deleted:** that

**Co-Lead Counsel For Plaintiff**

TURNER LAW OFFICES, LLC


By: _____
      Henry A. Turner
      Georgia Bar No. 719310
      (*pro hac vice*)

403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Telephone: (404) 378-6274
hturner@tloffices.com

**Co-Lead Counsel For Plaintiff**

SIRI & GLIMSTAD LLP


_____
Aaron Siri
NY Bar No. 4321790
(*pro hac vice* to be filed)

_____
Mason A. Barney
NY Bar No. 4405809
(*pro hac vice*)

200 Park Avenue, 17th Floor
New York, New York 10166
Tel: (212) 532-1091
E-Mail: aaron@sirillp.com

**Co-Lead Counsel For Plaintiff**

WERMAN SALAS P.C.


_____

- 20 -

Douglas M. Werman
IL Bar No. 6204740
(*pro hac vice*)

77 West Washington, Suite 1402
Chicago, Illinois 60602
dwerman@flsalaw.com
(312) 419-1008

**Co-Counsel For Plaintiff**

MARK A. ALEXANDER P.C.

_____
Mark A. Alexander
TX Bar No. 01007500

5080 Spectrum, Suite 850E
Addison, Texas 75001
Ph: 972.364.9700
Fax: 972. 239.2244
E-Mail: mark@markalexanderlaw.com

**Co-Counsel For Plaintiff**

JONES DAY

_____
Lee A. Armstrong

250 Vesey Street
New York, New York 10281-1047
Phone: 212-326-8340
E-Mail: laarmstrong@jonesday.com

**Counsel for Defendant**

IT IS SO ORDERED.

Deleted: ¶
¶

Dated:_____        By: _____
The Honorable Sidney A Fitzwater
Judge, U.S. District Court

- 21 -

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| THOMAS BUCHANAN, on behalf of himself and all others similarly situated, | Case No.: |
| Plaintiff, | 17-cv-00728 |
| v. | |
| SIRIUS XM RADIO, INC., | |
| Defendant. | |

**Acknowledgment and Agreement to Be Bound**

I, _____, declare as follows:

1.  My address is _____.

2.  My present employer is _____.

3.  My present occupation or job description is _____.

4.  I have received a copy of the Stipulation and Order entered in this action on _____, 20___.

5.  I have carefully read and understand the provisions of this Stipulation and Order.

6.  I will comply with all provisions of this Stipulation and Order.

7.  I will hold in confidence, and will not disclose to anyone not qualified under the Stipulation and Order, any information, documents or other materials subject to this Stipulation and Order.

**Deleted:** produced

8.  I will use such information, documents or other materials subject to this Stipulation and Order only for purposes of this present action.

**Deleted:** produced

- 22 -

9.    Upon notification of termination of this action, or upon request, I will return and deliver all information, documents or other materials produced subject to this Stipulation and Order, and all documents or things which I have prepared that summarize or quote from the information, documents or other materials that are subject to the Stipulation and Order, to my counsel in this action, or to counsel for the party by whom I am employed or retained or from whom I received the documents.

10.    I hereby submit to the jurisdiction of this Court for the purposes of enforcing this acknowledgment and the Stipulation and Order in this action.

I declare under penalty of perjury under the laws of the United States that the following is true and correct.

Executed this _____ day of _____, 2016 at _____.

_____

QUALIFIED PERSON

- 23 -

**Deleted:** Acknowledgement and Agreement to Be Bound Regarding Private Person Information

1.  Confidentiality.  (a)  In connection with this Agreement, Disclosing Party, Sirius XM Radio Inc.,  shall be disclosing highly confidential information, including customer contact information ("Private Person Information"), to _____ ("Recipient"). The term "Private Person Information" does not include information that is or becomes generally available to the public through no action or inaction by (i) the Recipient or (ii) a source to which Recipient knows is bound by a duty or obligation of confidentiality (contractual, fiduciary or otherwise) with respect to such information.  Recipient shall hold Private Person Information in confidence, use such Private Person Information only for the purposes of fulfilling their obligations  hereunder, and not copy, reproduce, sell, assign, license, market, transfer, give or otherwise disclose such information to third parties or use such information for any purposes whatsoever, without the written permission of Disclosing Party.  Recipient agrees to disclose Private Person Information only to those employees who have a legitimate reason to know, and those disclosures shall not occur until those employees are bound by restrictions on confidentiality no less restrictive than those imposed herein and Recipient has advised them of their obligations to keep such information confidential.

(b)  All Private Person Information provided or disclosed to the Recipient shall remain the sole property of the Disclosing Party.  In the event Recipient becomes legally compelled to disclose any Private Person Information, Recipient will advise Disclosing Party as soon as possible in writing so that the Disclosing Party may either seek an appropriate remedy, including a protective order, or waive compliance with the provisions of this Agreement.  In the event that any such protective order or other remedy is not obtained, or that compliance with this Agreement is waived, the party required to disclose the Private Person Information will furnish only that portion of the Private Person Information which, in the written opinion of its legal counsel, is legally required to be disclosed and will exercise reasonable efforts to obtain reliable assurances that confidential treatment will be accorded such Private Person Information.

2.  Legal Compliance.  Recipient shall maintain appropriate security measures to protect the confidentiality of personally identifying information consistent with the applicable regulations of the Commonwealth of Massachusetts (201 CMR 17.00, et. seq.), the regulations of California (Cal. Civ. Code §§ 56.06, 1785.11.2, 1798.29, 1798.82), and all other states, and consistent with any applicable federal regulations.

3.  Subcontractors and Affiliates.  Recipient shall not share Private Person Information with any third party without Disclosing Party's written consent.

4.  Data Breach.  Recipient shall immediately notify the Disclosing Party's contacts set forth below, and in no event take longer than (2) hours to do so, by telephone with an immediate confirmation in writing of the facts of the call, if Recipient becomes aware of any actual or reasonably suspected unauthorized access to, use, or disclosure of Private Person Information either alone or with other information, including a notification of loss or suspected loss of data whether or not such data has been encrypted.  Recipient shall cooperate with Disclosing Party in any manner reasonably requested by Disclosing Party and in accordance with applicable law and regulations, including:  conducting the investigation; cooperating with authorities; and notifying affected persons, credit bureaus, or other persons or entities deemed appropriate by Disclosing Party.  Such cooperation shall include without limitation: (i) providing... [1]

- 24 -

Page - 24 -: [1] Deleted             Author

## Acknowledgment and Agreement to Be Bound
## Regarding Private Person Information

1.     <u>Confidentiality</u>.  (a)  In connection with this Agreement, Disclosing Party, Sirius XM Radio Inc.,  shall be disclosing highly confidential information, including customer contact information ("Private Person Information"), to _____ ("Recipient"). The term "Private Person Information" does not include information that is or becomes generally available to the public through no action or inaction by (i) the Recipient or (ii) a source to which Recipient knows is bound by a duty or obligation of confidentiality (contractual, fiduciary or otherwise) with respect to such information.  Recipient shall hold Private Person Information in confidence, use such Private Person Information only for the purposes of fulfilling their obligations hereunder, and not copy, reproduce, sell, assign, license, market, transfer, give or otherwise disclose such information to third parties or use such information for any purposes whatsoever, without the written permission of Disclosing Party.  Recipient agrees to disclose Private Person Information only to those employees who have a legitimate reason to know, and those disclosures shall not occur until those employees are bound by restrictions on confidentiality no less restrictive than those imposed herein and Recipient has advised them of their obligations to keep such information confidential.

(b)  All Private Person Information provided or disclosed to the Recipient shall remain the sole property of the Disclosing Party.  In the event Recipient becomes legally compelled to disclose any Private Person Information, Recipient will advise Disclosing Party as soon as possible in writing so that the Disclosing Party may either seek an appropriate remedy, including a protective order, or waive compliance with the provisions of this Agreement.  In the event that any such protective order or other remedy is not obtained, or that compliance with this Agreement is waived, the party required to disclose the Private Person Information will furnish only that portion of the Private Person Information which, in the written opinion of its legal counsel, is legally required to be disclosed and will exercise reasonable efforts to obtain reliable assurances that confidential treatment will be accorded such Private Person Information.

2.     <u>Legal Compliance</u>.  Recipient shall maintain appropriate security measures to protect the confidentiality of personally identifying information consistent with the applicable regulations of the Commonwealth of Massachusetts (201 CMR 17.00, et. seq.), the regulations of California (Cal. Civ. Code §§ 56.06, 1785.11.2, 1798.29, 1798.82), and all other states, and consistent with any applicable federal regulations.

3.     <u>Subcontractors and Affiliates</u>.  Recipient shall not share Private Person Information with any third party without Disclosing Party's written consent.

4.     <u>Data Breach</u>.  Recipient shall immediately notify the Disclosing Party's contacts set forth below, and in no event take longer than (2) hours to do so, by telephone with an immediate confirmation in writing of the facts of the call, if Recipient becomes aware of any actual or reasonably suspected unauthorized access to, use, or disclosure of Private Person Information either alone or with other information, including a notification of loss or suspected loss of data whether or not such data has been encrypted.  Recipient shall cooperate with Disclosing Party in

any manner reasonably requested by Disclosing Party and in accordance with applicable law and regulations, including:  conducting the investigation; cooperating with authorities; and notifying affected persons, credit bureaus, or other persons or entities deemed appropriate by Disclosing Party.  Such cooperation shall include without limitation: (i) providing Disclosing Party access to relevant Recipient records and facilities; (ii) providing all relevant data and reports to Disclosing Party; and (iii) providing Disclosing Party the right to review and approve the content and form of any notifications to Disclosing Party affiliated impacted individuals.

Disclosing Party contacts are as follows unless otherwise updated by Disclosing Party in writing:

Mr. Patrick Donnelly, General Counsel, (212) 584-5180; Patrick.Donnelly@siriusxm.com

and

Ms. Patricia Edfors, Vice President, Information Security, Privacy and Compliance, (202) 380-1297; Patty.Edfors@siriusxm.com

5.      Private Person Information Requirements.  Recipient shall maintain technical, organizational, administrative, and human resource security measures which utilize ISO 27001 and 27002 as a reference to protect the security of information which may be used to identify any individual (Private Person Information) from a breach resulting from or arising out of Recipient's processing, access to, or other transmission of Private Person Information.

6.      SSAE 16 Assessment.  Prior to Disclosing Party providing Recipient with any Disclosing Party Private Person Information, and on an at least an annual basis thereafter, Recipient shall perform a SSAE 16 Statements on Standards for Attestation Services No. 16), Service Organizations Control Reporting SOC 2 Type II Review (a "SOC 2 Review") or other similar third party assessment, as may be agreed by the parties in writing.  Recipient will provide Disclosing Party periodic updates on the status of the review, and specifically notify Disclosing Party of any relevant weaknesses that are identified in Recipient's internal controls.  Recipient shall provide Disclosing Party with a complete report of the findings from the SOC 2 Review (the "SSAE 16 Report").  If a SSAE 16 Report shows more than a de minimis deficiency in the effectiveness of Recipient's internal controls, Recipient will promptly remedy the deficiency indicated by the SSAE 16 Report. Failure by Recipient to timely remedy a deficiency that is more than de minimis will be deemed a material breach of this Agreement.

7.      Encryption.  Recipient shall encrypt all Disclosing Party data that it transmits, stores and processes by the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key and such algorithmic process meets the following requirements:

(a)      A valid encryption processes for data at rest consistent with the National Institute of Standards and Technology (NIST) Special Publication 800-111, Guide to Storage Encryption Technologies for End User Devices.

(b)      A valid encryption processes for data in motion that meets the requirements of Federal Information Processing Standards (FIPS) 140–2, Security Requirements for Cryptographic Modules.  These include, as appropriate, standards described in NIST Special Publication 800-52, Guidelines for the Selection and Use of Transport Layer Security (TLS) Implementations; 800-77, Guide to IPsec VPNs;  or 800-113, Guide to SSL VPNs, and may include others which are FIPS 140-2 validated.

8.      <u>Indemnification</u>.  Recipient shall indemnify, defend and hold harmless Disclosing Party, its affiliates, and their respective employees, officers and directors against any and all third party claims and resulting damages, costs and other liabilities and expenses (including attorneys' fees) arising out of or related to: (i) any negligence or willful misconduct by Recipient, its affiliates, its subcontractors, or their agents; (ii) a breach or alleged breach of any of its representations, warranties or obligations of this Agreement by Recipient, its affiliates, its subcontractors, or their agents; (iii) any loss of Private Person Information by Recipient, its affiliates, its contractors, or their agents; and (iv) any failure or alleged failure by Recipient, its affiliates, its subcontractors, or their agents to comply with any applicable law, rule, and regulation with respect to its performance of this Agreement.

9.      <u>Termination</u>.  Upon termination of this Agreement, Recipient shall securely destroy (and shall cause any permitted affiliates or subcontractors, if any, to securely destroy) all of the Disclosing Party's Private Person Information made available by Disclosing Party, including any copies or derivatives thereof.

# **Exhibit 9**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| THOMAS BUCHANAN, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>SIRIUS XM RADIO INC.,<br><br>       Defendant. | Case No.:<br><br>17-cv-00728 |

**[PLAINTIFF'S PROPOSED]**

**STIPULATED JOINT PROTECTIVE ORDER**

IT IS HEREBY STIPULATED by and between Named Plaintiff Thomas Buchanan ("Plaintiff") and Defendant Sirius XM Radio Inc. ("Defendant"), through their respective Attorneys of Record, as follows:

1. **PURPOSES AND LIMITATIONS**

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information, including personally identifiable information of individual consumers, for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the Parties hereby stipulate to and petition the Court to enter the following Stipulation and Order. The Parties

acknowledge that this Stipulation and Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The Parties understand that nothing in this Stipulation and Order changes, amends, or circumvents any court rule or local rule.

2.    **DEFINITIONS**

2.1   **Challenging Party:** a Party or Non-Party that challenges the designation of information or items under this Stipulation and Order.

2.2   **"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Information or Items:** information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c). The Parties agree that "Confidential Information" shall not include: (a) information that is or, after its production in this action, has become public as a result of disclosure not involving a violation of this Stipulation and Order; or (b) information that the Receiving Party can show was received by it from a source who obtained the information lawfully and under no obligation of confidentiality, provided that the Receiving Party treats the information as Confidential as designated until the Designating Party agrees to such change of designation or until resolution of any dispute as to designation as set out in Section 6 below. To designate information as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," the Producing Party or Designating Party must reasonably and in good faith believe that the information meets the same requirements as those for that designated as

"CONFIDENTIAL" and in addition reflects: (a) trade secrets or information concerning confidential research and development, or other commercial information that has value from not being generally known, and the disclosure of which to the Receiving Party creates a likely and substantial risk of serious commercial or reputation harm to the Producing Party or Designating Party; or (b) private personal information, which shall be the types of information subject to the requirements of Fed. R. Civ. P. 5.2 ("PRIVATE PERSON INFORMATION").

2.3     **Counsel (without qualifier):** Outside Counsel of Record and House Counsel (as well as their support staff).

2.4     **Designating Party:** a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY."

2.5     **Disclosure or Discovery Material:** all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.6     **Expert:** a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action.

2.7     **House Counsel:** attorneys who are employees of a Party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

**2.8**   **Non-Party:** any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

**2.09**   **Outside Counsel of Record:** attorneys who are not employees of a Party to this action but are retained to represent or advise a Party to this action and have appeared in this action on behalf of that Party or are affiliated with a law firm which has appeared on behalf of that Party.

**2.10**   **Party:** any Party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

**2.11**   **Producing Party:** a Party or Non-Party that produces Disclosure or Discovery Material in this action.

**2.12**   **Professional Vendors:** persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

**2.13**   **Protected Material:** any Disclosure or Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY."

**2.14**   **Receiving Party:** a Party that receives Disclosure or Discovery Material from, e.g., a Producing Party.

**3.**   **SCOPE**

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Stipulation and Order, including becoming part of the public record through trial or otherwise; and (b) any information obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order entered by the district court in which the case is tried.

## 4.    DURATION

The provisions of this Stipulation and Order shall, absent written permission of the Designating Party or further order of the Court, continue to be binding throughout and after the conclusion of this action, including without limitation any appeals therefrom. Within sixty (60) calendar days after receiving notice of the entry of an order, judgment, or decree finally disposing of this Case, including any appeals therefrom, all persons having received materials designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" shall return such information and all copies thereof to counsel for the Designating Party, or shall certify destruction thereof; provided, however, that Counsel shall be entitled to retain

court papers, deposition and trial transcripts and attorney-work product (including court papers, transcripts, and attorney work product that contain Confidential Information), so long as such documents or materials do not contain PRIVATE PERSON INFORMATION.

**5.      DESIGNATING PROTECTED MATERIAL**

**5.1      Exercise of Restraint and Care in Designating Material for Protection.**

Each Party or Non-Party that designates information or items for protection under this Stipulation and Order shall limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Stipulation and Order. Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions. If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

**5.2      Manner and Timing of Designations.** Except as otherwise provided in this Stipulation and Order (see, e.g., section 5.4 below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this

Stipulation and Order must be clearly so designated before the material is disclosed or

produced. Designation in conformity with this Stipulation and Order requires:

(a)  for information in documentary form (e.g., paper or electronic documents, but

excluding transcripts of depositions or other pretrial or trial proceedings), that the

Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY

CONFIDENTIAL—ATTORNEYS' EYES ONLY" to each page that contains

protected material. A Party or Non-Party that makes original documents or

materials available for inspection need not designate them for protection until

after the inspecting Party has indicated which material it would like copied and

produced. During the inspection and before the designation, all of the material

made available for inspection shall be deemed "CONFIDENTIAL" or "HIGHLY

CONFIDENTIAL—ATTORNEYS' EYES ONLY." After the inspecting Party

has identified the documents it wants copied and produced, the Producing Party

must determine which documents, or portions thereof, qualify for protection under

this Stipulation and Order. Then, before producing the specified documents, the

Producing Party must affix the "CONFIDENTIAL" or "HIGHLY

CONFIDENTIAL—ATTORNEYS' EYES ONLY" legend to each page that

contains Protected Material.

(b)  For all testimony given in depositions, the testimony and transcript shall

presumptively be treated as Protected Material and subject to this Stipulation and

Order during the deposition and for a period of fifteen (15) days after a transcript

of said deposition is received by counsel for each of the Parties. At or before the

end of such fifteen-day period, the Parties may designate portions of the testimony and transcript as either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" by letter sent to the other Parties identifying the Protected Material by page and line numbers; after the fifteen-day period, all portions of the testimony and transcript not so designated shall be considered to not contain Protected Material and shall not be subject to this Stipulation and Order.

(c) for information produced in some form other than documentary and for any other tangible items, the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3    **Inadvertent Failures to Designate.** If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Stipulation and Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Stipulation and Order.

6.    **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

**6.1**     **Timing of Challenges.** Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

**6.2**     **Meet and Confer.** The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of this Stipulation and Order. The Parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within fourteen (14) days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

**6.3** **Judicial Intervention.** If the Parties cannot resolve a challenge without Court intervention, the Designating Party shall file and serve a motion to retain confidentiality within twenty-one (21) days of the initial notice of challenge or within fourteen (14) days of the Parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to make such a motion including the required declaration within twenty-one (21) days (or fourteen (14) days, if applicable) shall automatically waive the confidentiality designation for each challenged designation. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph. The burden of persuasion in any such challenge proceeding shall be on the Designating Party and the Designating Party must show that the information qualifies for protection under Federal Rule of Civil Procedure 26(c). Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties), may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all Parties shall continue to afford

the material in question the level of protection to which it is entitled under the

Producing Party's designation until the Court rules on the challenge.

**7.    ACCESS TO AND USE OF PROTECTED MATERIAL**

**7.1    Basic Principles.** A Receiving Party may use Protected Material that is disclosed or

produced by another Party or by a Non-Party in connection with this case only for

prosecuting, defending, or attempting to settle this litigation. Such Protected Material

may be disclosed only to the categories of persons and under the conditions described

in this Stipulation and Order. When the litigation has been terminated, a Receiving

Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location

and in a secure manner that ensures that access is limited to the persons authorized

under this Stipulation and Order.

**7.2    Disclosure of "CONFIDENTIAL" Information or Items.** Unless otherwise

ordered by the Court or permitted in writing by the Designating Party, a Receiving

Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) Counsel to the Parties, whether House or Outside Counsel;

(b) Current officers, directors, and employees of the Parties to whom disclosure is

reasonably necessary for this litigation;

(c) Experts (as defined in this Stipulation and Order) of the Parties to whom

disclosure is reasonably necessary for this litigation and who have signed an

"Acknowledgment and Agreement to Be Bound";

(d) the Court and its personnel, including stenographic reporters;

(e) Court reporters and their staff to whom disclosure is reasonably necessary for this litigation;

(f) during their depositions or trial, or preparation for their depositions or trial, any witness or potential witness in the action to whom disclosure is reasonably necessary and who have signed an "Acknowledgment and Agreement to Be Bound", unless otherwise agreed by the Designating Party or ordered by the Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulation and Order;

(g) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed an "Acknowledgment and Agreement to Be Bound"; and

(h) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

**7.3** **Disclosure of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Information or Items.** Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" only to:

(a) Counsel to the Parties, whether House or Outside Counsel;

(b) Experts (as defined in this Stipulation and Order) of the Parties to whom disclosure is reasonably necessary for this litigation and who have signed an "Acknowledgment and Agreement to Be Bound";

(c) the Court and its personnel, including stenographic reporters;

(d) Court reporters and their staff to whom disclosure is reasonably necessary for this litigation;

(e) Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed an "Acknowledgment and Agreement to Be Bound"; and

(f) during their depositions or trial, or preparation for their depositions or trial, any potential witness who is the author of the document or information designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or is identified as an addressee or copy recipient of the information prior to and apart from this action, to whom disclosure is reasonably necessary and who have signed an "Acknowledgment and Agreement to Be Bound", unless otherwise agreed by the Designating Party or ordered by the Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulation and Order.

## 8. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a Court Order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or Court Order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Stipulation and Order. Such notification shall include a copy of this Stipulation and Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or Court Order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the Court from which the subpoena or order issued, unless the Party has obtained the Designating Party's written permission. The Designating Party shall bear the burden and expense of seeking protection in that Court of its confidential material – and nothing in these provisions should be construed as authorizing or encoura in this action to disobey a lawful directive from another Court.

## 9.     A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

The terms of this Stipulation and Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL." Such information produced by Non-

Parties in connection with this litigation is protected by the remedies and relief provided by this Stipulation and Order. The protections in this Stipulation and Order are permissive: nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections, from asserting that this Stipulation and Order does not provide sufficient protection, and/or from asserting that information is not relevant or otherwise not discoverable.

## 10.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulation and Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Stipulation and Order, and (d) request such person or persons to execute an "Acknowledgment and Agreement to Be Bound".

## 11.    INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the Parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product

protection, the Parties may request that this Stipulation and Order be modified consistent with their agreement.  The Parties' agreement will be effective only if the Court modifies this Stipulation and Order to incorporate their agreement.

## 12.   MISCELLANEOUS

12.1   **No waiver of previous designations or application of Fed. R. Evid. 408.** This Stipulation and Order is intended to continue the protection of confidential information or items notwithstanding the reproduction of materials used in any related actions. Similarly, all information and documents exchanged previous to the effective date of this Stipulation and Order, for purposes of compromising or settling, or negotiating or attempting to compromise or settle this Case, shall remain protected under Federal Rule of Evidence 408. Nothing in this Stipulation and Order, nor productions/re-productions of materials in this action, shall be considered a waiver of any earlier designations of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY" information or items. To the extent communications, documents, and information were exchanged for purposes of compromising or settling, or negotiating or attempting to compromise or settle, nothing in this Stipulation and Order, nor productions/re-productions of such communications, documents, and information in this action shall be considered a waiver of the otherwise-applicable protection under Federal Rule of Evidence 408.

12.2   **Right to Further Relief.** Nothing in this Stipulation and Order abridges the right of any person to seek its modification by the Court in the future.

**12.3**   **Right to Assert Other Objections.** By stipulating to the entry of this Stipulation and Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulation and Order. In particular, neither the Parties nor Non-Parties waive any objection with respect to the right to privacy of Non-Parties nor do the Parties waive the right to challenge any objection on privacy or other grounds. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Stipulation and Order.

**12.4**   **Filing Protected Material.** No document shall be filed under seal unless counsel secures a court order allowing the filing of a document under seal. An application to file a document under seal shall be served on opposing counsel, and on the person or entity that has custody and control of the document, if different from opposing counsel. If opposing counsel, or the person or entity who has custody and control of the document, wishes to oppose the application, he/she must contact the chambers of the judge who will rule on the application, to notify the judge's staff that an opposition to the application will be filed. Similarly, if a party other than the Designating Party seeks to file Protected Material and the Designating Party wishes to support an application, the Designating Party must contact the Court's chambers to notify the judge's staff that a response in support of the application will be filed. If the Court grants an application to file a document under seal, a redacted version of the document shall be filed in the public record via ECF. If the Court denies an application to file a document under seal, the Receiving Party may file the Protected

Material in the public record (unless otherwise ordered by the Court). Any Party that reasonably believes that a filing or disclosure it intends to make in a proceeding before the Court will contain Protected Material belonging to another Party shall inform the Designating Party of the content and Bates-numbers of the Protected Material it intends to file or disclose at least five (5) business days before the filing to provide an opportunity for the Designating Party to agree to disclosure or filing of the Protected Material in redacted or unredacted form and to avoid filing unnecessary applications to file a document under seal where agreement can be reached. If agreement is reached, the Party disclosing the Protected Material shall inform the Court of the agreement at time of its filing or disclosure. In the event agreement cannot be reached, any papers or material attached to a Receiving Party's application to file under seal shall be deemed timely filed with respect to any substantive deadline that applies to such material when the Receiving Party files its application prior to such deadline.

13.      **FINAL DISPOSITION.**

Within sixty (60) days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the sixty (60) day deadline that (1) identifies (by category, where

appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the

Receiving Party has not retained any copies, abstracts, compilations, summaries or any other

format reproducing or capturing any of the Protected Material. Notwithstanding this provision,

Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition,

and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert

reports, attorney work product, and consultant and expert work product, even if such materials

contain Protected Material, provided that such documents or materials does not contain

PRIVATE PERSON INFORMATION. Any such archival copies that contain or constitute

Protected Material remain subject to this Stipulation and Order as set forth in Section 4

(DURATION). Furthermore, within sixty (60) days after the final disposition of this action, as

defined in paragraph 4, the Parties shall move ex parte for an order authorizing the Court to

destroy all Confidential and Attorneys' Eyes Only Material in the Court's possession.

## 14.    MODIFICATION OF THE PROTECTIVE ORDER BY THE COURT.

The Court may modify the terms and conditions of this Stipulation and Order for good

cause, or in the interest of justice, or on its own order at any time in these proceedings.

## 15.    RELATION TO ANY COURT OR LOCAL RULES.

Without separate court order, this Stipulation and Order and the Parties' stipulation does

not change, amend, or circumvent any court rule or local rule.

AGREED TO BY

HUGHES ELLZEY, LLP

By: _____
    Jarrett L. Ellzey
    Texas Bar No. 24040864

W. Craft Hughes

- 19 -

Deola T. Ali
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
E-Mail: craft@hughesellzey.com
jarrett@hughesellzey.com
Deola@hughesellzey.com

**Co-Lead Counsel For Plaintiff**

TURNER LAW OFFICES, LLC


By: _____
    Henry A. Turner
    Georgia Bar No. 719310
    (*pro hac vice*)


403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Telephone: (404) 378-6274
hturner@tloffices.com

**Co-Lead Counsel For Plaintiff**

SIRI & GLIMSTAD LLP


_____
Aaron Siri
NY Bar No. 4321790
(*pro hac vice* to be filed)


200 Park Avenue, 17th Floor
New York, New York 10166
Tel: (212) 532-1091
E-Mail: aaron@sirillp.com

**Co-Lead Counsel For Plaintiff**

WERMAN SALAS P.C.

_____
Douglas M. Werman
IL Bar No. 6204740
(*pro hac vice*)

77 West Washington, Suite 1402
Chicago, Illinois 60602
dwerman@flsalaw.com
(312) 419-1008                                              **Co-Counsel For Plaintiff**

MARK A. ALEXANDER P.C.

_____
Mark A. Alexander
TX Bar No. 01007500

5080 Spectrum, Suite 850E
Addison, Texas 75001
Ph: 972.364.9700
Fax: 972. 239.2244
E-Mail: mark@markalexanderlaw.com

                                                     **Co-Counsel For Plaintiff**

JONES DAY

_____
Lee A. Armstrong

250 Vesey Street
New York, New York 10281-1047
Phone: 212-326-8340
E-Mail: laarmstrong@jonesday.com

                                                     **Counsel for Defendant**

**IT IS SO ORDERED.**

Dated:_____          By: _____
                                    The Honorable Sidney A Fitzwater
                                    Judge, U.S. District Court

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| THOMAS BUCHANAN, on behalf of himself and all others similarly situated, | Case No.: |
| Plaintiff, | 17-cv-00728 |
| v. | |
| SIRIUS XM RADIO, INC., | |
| Defendant. | |

**Acknowledgment and Agreement to Be Bound**

I, _____, declare as follows:

1.   My address is _____.

2.   My present employer is _____.

3.   My present occupation or job description is _____.

4.   I have received a copy of the Stipulation and Order entered in this action on _____, 20___.

5.   I have carefully read and understand the provisions of this Stipulation and Order.

6.   I will comply with all provisions of this Stipulation and Order.

7.   I will hold in confidence, and will not disclose to anyone not qualified under the Stipulation and Order, any information, documents or other materials subject to this Stipulation and Order.

8.   I will use such information, documents or other materials subject to this Stipulation and Order only for purposes of this present action.

9.      Upon notification of termination of this action, or upon request, I will return and deliver all information, documents or other materials produced subject to this Stipulation and Order, and all documents or things which I have prepared that summarize or quote from the information, documents or other materials that are subject to the Stipulation and Order, to my counsel in this action, or to counsel for the party by whom I am employed or retained or from whom I received the documents.

10.     I hereby submit to the jurisdiction of this Court for the purposes of enforcing this acknowledgment and the Stipulation and Order in this action.

I declare under penalty of perjury under the laws of the United States that the following is true and correct.

Executed this _____ day of _____, 2016 at _____.

_____

QUALIFIED PERSON