**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |  |
|---|---|---|
| **THOMAS BUCHANAN, on behalf of himself and all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 3:17-cv-00728-D** |
| **v.** | ) ) ) | |
| **SIRIUS XM RADIO, INC.,** | ) ) | |
| **Defendant.** | ) ) | |

**DEFENDANT SIRIUS XM RADIO INC.'S**
**RESPONSE TO PLAINTIFF'S REQUEST FOR A 60-DAY EXTENSION OF**
**CLASS CERTIFICATION MOTION**

Plaintiff Thomas Buchanan ("Plaintiff") files this motion even though Plaintiff's counsel advised Sirius XM's counsel just last week that Plaintiff's motion for class certification was done and "ready to be filed."  (Demitrack Decl. ¶ 6.)[1]  Rather than file the long-awaited application, Plaintiff made this motion, the *fifth* motion for an extension of his deadline to file for class certification.  The Court has provided Plaintiff enough chances to prepare its class certification motion and, respectfully, should provide no more.

This fifth extension request follows Plaintiff's January 25, 2018 request, also for sixty additional days to file his class certification motion.  In seeking that motion, Plaintiff asserted (incorrectly) that an extension was needed because Sirius XM had only just informed Plaintiff that it had not yet produced certain documents.  Yet Plaintiff did nothing after filing that

---

[1] Citations to "Demitrack Decl." are to the Declaration of Thomas Demitrack, dated March 25, 2018, filed concurrently with this response.  Citations to "Waks Decl." are to the Declaration of Allison L. Waks, dated March 26, 2018, filed concurrently with this response.

motion—no call, no email, no communication with Sirius XM's counsel at all.  In fact, Plaintiff's silence began a week earlier, on January 19, when Plaintiff's counsel sent their final email concerning discovery.  (Waks Decl. ¶ 10.)  In short, between January 19 and March 7, 2018, Plaintiff **not once** contacted Sirius XM to resume negotiations of a protective order, to request documents or information from Sirius XM or any third-parties, or to notice any depositions.

For no apparent reason, Plaintiff waited until March 7 – over 40 days after seeking his fourth extension – to file, without first meeting and conferring, a motion to compel the production of "call logs" that Sirius XM largely ***offered to produce almost a half year ago.***  That unnecessary motion to compel was resolved informally last week by Sirius XM agreeing to produce exactly what it offered to produce in October 2017—a log of telephone numbers called and the number of calls to those numbers.  Plaintiff then waited until Saturday, March 24, 2018, three days before his deadline, to make this motion requesting a fifth extension.  (*See* ECF No. 47 (the "Motion").)  Far from the factually-contorted scenario presented in Plaintiff's Motion, the record instead shows a history of Sirius XM making offers and Plaintiff ignoring them, often for months.

### *History of Discovery*

On August 1, 2017, the Court set its original Scheduling Order, which required Plaintiff to file his motion for class certification by October 16, 2017, and set a discovery cutoff of April 20, 2018.  (*See* ECF No. 28.)  Plaintiff thereafter sought four extensions of the class certification schedule: to October 23, 2017, then to January 12, 2018, then January 26, 2018, again to March 27, 2018, and now, through the fifth and instant Motion, to May 28, 2018.  (*See* ECF Nos. 30, 32, 35, 38, 47.)  Sirius XM consented to the first three requests, and did not oppose the fourth.

There is no basis for a fifth extension.  Sirius XM's discovery positions have been clear since October 2017.  Plaintiff has known since October 16, 2017 that Sirius XM was prepared to offer a list of landline telephone numbers called and the number of telephone calls that were made on behalf of Sirius XM.  (Waks Decl. ¶ 5; Ex. B.)  This is precisely what Plaintiff finally accepted last week.  (Demitrack Decl. ¶ 5.)  Plaintiff has also known since as early as October 5, 2017 that Sirius XM would not produce consumer names and addresses without certain protections.  (Waks Decl. ¶ 5; Ex. A.)  The production of consumer names and addresses had been the primary sticking point in discovery; it was Plaintiff's request for this information that led to Sirius XM's insistence on a protective order designed to protect the personally identifiable information of consumers as early as last October.  Plaintiff agreed to defer production of names and addresses at the parties' meet and confer last week.  (Demitrack Decl. ¶ 5.)

Plaintiff also could have entered into a protective order by December 13, 2017, when Sirius XM offered to execute one that was simply silent on private person information ("PPI").  (Waks Decl. ¶ 9.)  That would have given Plaintiff (1) confidential documents, and (2) a list of the landline telephone numbers called and the number of such telephone calls made on behalf of Sirius XM.  Plaintiff will soon be receiving these materials because Plaintiff finally agreed last week to accept that protective order.  (Demitrack Decl. ¶ 5.)

### The Instant Motion

Plaintiff claims yet more time is needed because of the "significant amount of call data and documents previously withheld pending the parties' protective order disputes" and because "the parties anticipate taking at least three depositions in the next 60 days."  (ECF No. 47 at 1; ECF No. 47-1 ¶ 21.)  There is no basis for this Motion.

*First*, Plaintiff should not be granted another 60-day extension after he squandered the previous 60 days the Court provided.  (*See* ECF No. 42.)  *Second*, as to the "call data," which

was not a basis for Plaintiff's last extension request, Plaintiff waited 41 of the last 60 day

extension to file a wasteful motion to compel that particular data—they moved to obtain

discovery which Sirius XM has been willing to produce since October 16, 2017. *Third*, the fact

that depositions will occur after Plaintiff files his motion for class certification is built into the

discovery schedule and has always been contemplated by the parties and approved by the Court.

Most importantly, nothing stopped Plaintiff from noticing Sirius XM's deposition or several

third party depositions at any time since September 2017.

Plaintiff failed to seek Court intervention *months ago*, when the issue was ripe and the

time was appropriate.  Plaintiff has continually exhibited an unacceptable lethargy, and it is

readily apparent Plaintiff's lawyers are not serious as class counsel.

If Plaintiff does not file his motion for class certification by his current deadline, March

27, 2018, Sirius XM respectfully requests that the Court, in enforcing the existing Scheduling

Order, (a) decline to accept any subsequently filed motion for class certification, and (b) deem as

stricken the class allegations in Plaintiff's Complaint.

## ARGUMENT

Federal Rule of Civil Procedure 16 states that a scheduling order "may be modified only

for good cause."  Fed. R. Civ. Proc. 16(b)(4).  The Fifth Circuit has explained that "[t]he good

cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be

met *despite the diligence of the party needing the extension*.'"  *S & W Enters., L.L.C. v.*

*SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A CHARLES ALAN

WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990))

(emphasis added); *see Puig v. Citibank, N.A.*, 514 F. App'x 483, 488 (5th Cir. 2013) (in

determining whether the district court abused its discretion in finding no good cause to modify

- 4 -

its scheduling order, Fifth Circuit looked to the plaintiff's diligence in conducting discovery within the scheduling order's timeline).

As demonstrated herein, Plaintiff's conduct demonstrates a lack of diligence and there simply is no good cause for amending the Scheduling Order.

### Plaintiff has Always Known of But Never Sought any Confidential Documents

In July 2017, Plaintiff served 78 document requests on Sirius XM, which it later reduced to 9, effectively conceding its original requests were overbroad and unnecessary.  (Waks Decl. ¶ 3.)  Thereafter, the parties conferred on discovery issues for over four months, including attempting to negotiate a protective order to protect Sirius XM's and third-parties' confidential documents (the sought after data includes private consumer information that Sirius XM has obligations to protect under applicable law and contracts with third party suppliers of some of the information).  (*Id.* ¶¶ 3-7.)  Meanwhile, Sirius XM began a rolling production to Plaintiff of mostly non-confidential documents on November 14, November 15, November 20, November 27, and December 1, 2017.  (*Id.* ¶ 11.)  The November 14 production comprised select confidential documents produced pursuant to a special agreement to maintain them as "confidential—attorneys' eyes only" pending execution of a protective order that the parties were still negotiating.  (*Id.*)

In the ensuing months, Sirius XM continuously requested that Plaintiff sign a protective order to guard against dissemination of confidential information requested by Plaintiff (such as confidential contracts and other documents and consumer's private personal information).  Thus, Plaintiff has known for many months that there were confidential documents being withheld because of Plaintiff's failure to enter into a protective order.  Indeed, there were numerous communications from Sirius XM's counsel informing Plaintiff that Sirius XM had confidential documents to produce:

- September 13, 2017:  Sirius XM's Objections and Responses to Plaintiff's First Request for Production of Documents and Electronically Stored Information referenced the fact that it had information subject to confidentiality agreements in response to at least nine requests.  (*See* Waks Decl. ¶ 7.)

- October 5, 2017:  Sirius XM informed Plaintiff that "Sirius XM will agree to produce its service agreements with each of its outbound telemarketers … . Because these documents are subject to <u>confidentiality agreements</u> with the telemarketing vendors, Sirius XM will first need consent to produce them, and we are contacting those vendors to obtain such permission."  That email also referenced the existence of "quarterly compliance reports."  Finally, Sirius XM wrote:  "<u>Of course, before any documents are produced, we need to have our protective order entered</u>."  (*See* Exhibit A to Waks Decl. (emphasis added).)

- October 13, 2017:  Sirius XM informed Plaintiff that "[w]e are preparing documents for production but <u>nothing can be produced until we have a signed protective order</u>."  (*See* Exhibit C to Waks Decl. (emphasis added).)

- October 16, 2017:  Plaintiff acknowledged, "[a]s to the protective order, we will get back to you as soon as we can.  However, <u>at least some</u> of the documents we have requested do not require the AEO or other highly protected designation." (*See* Exhibit C to Waks Decl. (emphasis added).)

- October 16, 2017:  Sirius XM informed Plaintiff that "there are no documents that we can produce without at least a <u>confidential designation</u>.  Therefore, <u>until the protective order is entered</u>, we cannot make any production."  As to Sirius XM's service agreements with its telemarketing vendors, Sirius XM stated that it "will not subject itself to breach of contract claims brought by the vendors by its production of any MSAs [master service agreements] absent written consent from the vendors and the <u>execution of the protective order</u>."  As to other document requests, Sirius XM noted that "we are gathering for production as soon as we are able to upon <u>execution of a protective order</u>."  (*See* Exhibit B to Waks Decl. (emphasis added).)

- October 30, 2017:  After Sirius XM *offered* to seek consent of the telemarketing vendors to allow it to produce MSAs before the execution of a protective order and pursuant to a temporary "Attorneys' Eyes Only" agreement, Sirius XM informed Plaintiff via email that "we haven't heard <u>from all</u> of [the vendors]." (*See* Exhibit D to Waks Decl. (emphasis added).)

- November 17, 2017:  Plaintiff stated that "it appears that Sirius' first production did not include contracts for the following vendors" and asked Sirius XM why all of the MSAs had not been produced under the "AEO" agreement.  (*See* Exhibit E to Waks Decl.)

- November 20, 2017:  Sirius XM informed Plaintiff that "for those vendors for whom contracts were not provided, we were asked to <u>wait for execution of the governing protective order</u>."  (*See* Exhibit E to Waks Decl. (emphasis added).)

- December 13, 2017:  Sirius XM *offered*: "<u>In order to move things along, we suggest entering into a protective order</u> that is either silent on the issue of PPI [private person information] or specifically states that the issue of sharing PPI will be addressed separately to the extent it becomes necessary … and we can continue negotiating this point if needed."  (*See* Exhibit F to Waks Decl. (emphasis added).)

- December 15, 2017:  Plaintiff responded to Sirius XM's offer, stating "we appreciate your suggestion regarding the PO without the PPI."  Plaintiff *never* responded to this offer.  (*See* Exhibit F to Waks Decl.)

In short, Plaintiff has known *for many months* that Sirius XM needed a protective order before it could produce its and third party's confidential documents; indeed, Plaintiff sought these documents directly from the telemarketing vendors by issuing 12 third-party subpoenas to those telemarketing vendors seeking service contracts with Sirius XM.  (*See* Waks Decl. ¶ 4.) Those vendors all denied Plaintiff's discovery requests; Plaintiff never bothered himself to pursue the point further.  (*Id.*)

***Plaintiff Chose Not to Notice Any Depositions***

In addition, since discovery began in late Summer 2017, Plaintiff neglected to notice a single deposition.  Nothing has prevented Plaintiff from noticing Sirius XM's 30(b)(6) deposition.  *In particular, nothing has prevented Plaintiff from seeking deposition testimony on the "White Paper" Plaintiff has known about since September 13, 2017.*  (*See* ECF No. 47-4 ¶ 16.)  That Sirius XM served Amended Rule 26(a)(1) Initial Disclosures has no bearing on the issue.  Of the 26 individuals or entities added to Sirius XM's disclosures of which Plaintiff complains:

- 9 were already identified in Sirius XM's interrogatory responses in September 2017.

- 1 is Bob Tedford Chevrolet (the very dealership from which Plaintiff purchased his car).

- 1 is the generic disclosure of "[v]ehicle dealerships across the United States"—hardly a surprise.

- 2 are additional telemarketing vendors that made calls on behalf of Sirius XM during the purported class period—hardly prejudicial to Plaintiff who was aware of at least 12 other telemarketing vendors and declined to subpoena any of them for testimony or to pursue discovery from them (as noted above).

- 1 is an additional marketing vendor that provides services similar to 3 other such vendors from whom Plaintiff also neglected to seek discovery.

- 8 are Sirius XM employees who likely have knowledge about substantially the same information of those 15 individuals already disclosed; Plaintiff chose not to seek testimony from any of those 15.  (Waks Decl. ¶ 18.)

At most, Plaintiff is left with three arguably new entities: two TCPA compliance vendors and a vendor that assists Sirius XM in providing customer agreements to those subscribers with GM vehicles.  This hardly warrants an extension of the schedule, particularly where the record indicates Plaintiff would not have bothered to seek depositions or documents from these entities either and where Plaintiff has made no showing that he believes any of this discovery is needed for his class certification motion.

Plaintiff's repeated failures to engage in affirmative discovery are shocking.  The parties' discovery schedule never contemplated that all discovery would close before the Plaintiff's deadline to file for class certification.  Notably, it has *always* been a possibility that Sirius XM would choose to depose Plaintiff and his wife after Plaintiff filed his motion for class certification.[2]  That is of course a defendant's prerogative.  The fact that Plaintiff simply chose to first issue a deposition notice for April 19, 2017 is by no means a valid reason to seek another extension.

---

[2] In the Parties' first Joint Scheduling Order (ECF No. 26), "Plaintiff propos[ed] a deadline of March 1, 2018" for its class certification motion.  The Parties proposed an April 20, 2018 close of discovery.  (*Id.*)  On August 1, 2017, the Court's Scheduling Order set a deadline for class certification "no later than October 16, 2017."  (ECF No. 28.)  The deadline for the completion of discovery was April 20, 2018.  (*Id.*)  All subsequent scheduling orders tracked this sequence.

***Plaintiff Used Sirius XM's January 25th***
***Production as a Smokescreen for its Last Extension***

The instant Motion is not the first of its kind. On January 25, 2018, Sirius XM's counsel, continuing its review and rolling production of documents, made a fifth, "mop up" production of other non-confidential documents. Approximately 814 of the 844 documents (specifically identified to Plaintiff's counsel by Bates-number range) were responsive yet bland – additional copies of Sirius XM's sample mass marketing letters (envelope templates, order forms, channel brochures), all of which are substantially identical to hundreds of such samples that had already been produced. (Waks Decl. ¶ 12.) (Plaintiff admitted that these documents "appear to be similar to documents Defendant previously produced" (ECF No. 40).)[3]

That left approximately 30 other documents. Plaintiff complained about one of them – a "White Paper," but Sirius XM had identified that document, by name, 10 times in its document production response served on September 13, 2017. Sirius XM initially withheld the White Paper as confidential from the previous productions. (Waks Decl. ¶¶ 13-14.) In connection with supplementing its production, Sirius XM then reassessed and removed its confidentiality designation. Certainly there was no intention to sandbag Plaintiff with a document it specifically identified to Plaintiff (along with an explanation detailing how the White Paper fit into Defendant's established business relationship defense) over three months earlier and which it then assumed would be promptly produced upon execution of a protective order. Plaintiff never even asked why the document had not been produced. (*Id.*)

As to the other 29 documents in that "mop up" production (comprising only 55 pages), one was sent to Plaintiff, one was authored by Plaintiff, and many were identified and described

---

[3] A sample of one such document is attached as Exhibit D to the Declaration of Allison L. Waks, dated January 26, 2017, and filed in response to Plaintiff's January 25 motion (ECF No. 41-5).

last fall in Sirius XM's interrogatory answers and/or are documents publicly available at any vehicle dealership in the United States.  (*Id.* ¶ 15.)[4]  As noted in response to Plaintiff's prior motion, there was no conspiracy to identify documents and refuse to produce them.

### The March 21 Meet and Confer

After the Court struck Plaintiff's motion to compel (ECF No. 45), counsel for the parties met in-person on March 21, 2018 at the O'Hare Hilton Hotel at Chicago's O'Hare Airport to discuss the issues raised in Plaintiff's motion.  (*See* Demitrack Decl. ¶ 3.)  This meet and confer was ordered by Magistrate Judge Irma Carrillo Ramirez following the Court's striking of Plaintiff's March 7, 2018 Motion to Compel and Motion for Protective Order.  (*See* ECF No. 45.)  The meet and confer lasted for approximately two-and-a-half hours, with a break of approximately 15-20 minutes so that counsel could confer with their respective colleagues.  (*Id.* ¶ 5.)

At the meet and confer, counsel agreed to the following:

   a. Sirius XM will provide Plaintiff with a list of the landline telephone numbers that were called by Sirius XM's vendors during the class period and that are associated with consumers who are included in the national-do-not-call putative class definition, along with each of the calls to those numbers.  The information will also include the time of day for each call, the vendor that made each call and whether the consumer purchased a paid Sirius XM subscription during the call.  (*Id.* ¶ 5(a).)

   b. Sirius XM will provide Plaintiff with the total number of consumers whose landline telephone numbers are included in the list set forth in a, above, as well as the total number of calls to those consumers.  (*Id.* ¶ 5(b).)

   c. The parties will execute a protective order that excludes the heightened provisions on which Sirius XM had originally insisted, but that does include additional protections offered by Plaintiff's counsel.  (Since the meet and confer, the parties

---

[4] A description of these 29 documents was provided in Sirius XM's response to Plaintiff's last motion (*see* ECF No. 41), and copies were provided to the Court at Exhibit C to the Declaration of Allison L. Waks, dated January 26, 2017, ECF No. 41-4.

have made progress in that regard, exchanging drafts of a proposed protective order.)  (*Id.* ¶ 5(c).)

    d.   Following the entry of an agreed-upon protective order, Sirius XM will produce the additional documents that are subject to the protections in that protective order.  (*Id.* ¶ 5(d).)

    e.   Sirius XM will not produce the names and addresses (physical and email), except to the extent that Sirius XM takes a position in its brief in opposition to Plaintiff's class certification motion that puts that information at issue, and in that case Sirius XM will provide that information when it files its response to the class certification motion.  (*Id.* ¶ 5(e).)

During the meet and confer session, Plaintiff's counsel volunteered that Plaintiff's class certification motion was done and "ready to be filed."  (*Id.* ¶ 6.)  Nonetheless, Plaintiff's counsel asked whether Sirius XM would consent in the event that Plaintiff were to seek a "short extension" for the filing of Plaintiff's motion for class certification.  (*Id.*)  The discovery agreements set forth in paragraphs (a)-(e), above, were not conditioned on Sirius XM's agreement to an extension.  (*Id.*)  Indeed, Sirius XM's counsel informed Plaintiff's counsel that Sirius XM's offer set forth at the meet and confer session (described above), had been available for several months.  Plaintiff's counsel agreed to review the record and revert on whether Plaintiff's counsel would press their request for an extension.  Regardless of whether Plaintiff "understood that Defendant considered entry of a protective order to be a condition precedent to production of its call log," (ECF No. 47 at 5), the fact remains that, at least as recently as March 21, 2018, Plaintiff was "ready" to file his motion for class certification without this information. (Demitrack Decl. ¶ 6.)  Plaintiff's counsel then asked for a "brief extension" on March 22, 2018. (*Id.*; Ex. A.)  On March 23, 2018, counsel added that Plaintiff was seeking a 60 day extension unless Sirius XM was "willing to make a joint request," in which case Plaintiff was "willing to discuss a shorter time period."  (*Id.*; Ex. B.)

- 11 -

## CONCLUSION

For the foregoing reasons, Plaintiff's fifth last-minute request for an extension of his class certification motion must be denied.  Sirius XM's position on discovery has been clear since the beginning.  This last minute request for more time is the result of Plaintiff's own failure to exercise diligence in seeking discovery, and it should be denied.  Accordingly, if Plaintiff does not file his motion for class certification by his current deadline, March 27, 2018, Sirius XM respectfully requests that the Court decline to accept any subsequently filed motion for class certification and deem as stricken the class allegations in Plaintiff's Complaint.


Dated: March 26, 2018                           Respectfully submitted,

New York, New York                           */s/ Allison L. Waks*

                                                        Albert J. Rota
                                                        Texas Bar No. 24056233
                                                        Sidney S. McClung
                                                        Texas Bar No. 24083880
                                                        JONES DAY
                                                        2727 North Harwood Street
                                                        Dallas, Texas 75201
                                                        Tel: (214) 969-3698
                                                        Fax: (214) 969-5100
                                                        Email: ajrota@jonesday.com
                                                        Email: smcclung@jonesday.com

                                                        Thomas Demitrack (admitted *pro hac vice*)
                                                        JONES DAY
                                                        North Point
                                                        901 Lakeside Avenue
                                                        Cleveland, OH 44114-1190
                                                        Tel: (216) 586-3939
                                                        Fax: (216) 579-0212
                                                        Email: tdemitrack@jonesday.com

Lee A. Armstrong (admitted *pro hac vice*)
Allison L. Waks (admitted *pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York
Tel: (212) 326-3939
Fax: (212) 755-7306
Email: laarmstrong@jonesday.com
Email: awaks@jonesday.com

*Attorneys for Defendant Sirius XM Radio Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 26th day of March, 2018, I caused the foregoing to be electronically filed with the Clerk of Court for the U.S. District Court, Northern District of Texas, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Allison L. Waks*