IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THOMAS BUCHANAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  Case No. 3:17-cv-00728-D<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF ALLISON L. WAKS

I, ALLISON L. WAKS, state as follows:

1. I am an attorney with the firm of Jones Day, attorneys for defendant Sirius XM Radio Inc. ("Sirius XM").

2. I submit this declaration in response to Plaintiff Thomas Buchanan's ("Plaintiff") March 24, 2018 Motion for Sixty Day Extension of the Deadline to File Motion for Class Certification (the "Motion").

3. In July 2017, Plaintiff first served 78 document requests on Sirius XM. Sirius XM responded to those initial discovery requests on September 13, 2017. Thereafter, the parties conferred on discovery issues, and on September 29, 2017, Plaintiff reduced his 78 original requests to 9.

4. Between September 19 and October 6, 2017, Plaintiff subpoenaed 12 of Sirius XM's third-party telemarketing vendors. Those vendors produced little to no data in response.

5. The parties continued to confer on discovery issues for approximately four months. Plaintiff has also known since as early as October 5, 2017 that Sirius XM was objecting to the

production of consumer names and addresses. (Exhibit A is a true and correct copy of my October 5, 2017 email to J. Ellzey.) Plaintiff also has known since October 16, 2017 that Sirius XM was prepared to offer a list of landline telephone numbers called and number of telephone calls that were made on behalf of Sirius XM. (Exhibit B is a true and correct copy of my October 16, 2017 email to M. Barney.)

6. The parties also negotiated terms of a protective order during this time. Sirius XM had requested Plaintiff sign a protective order to guard against dissemination of confidential information requested by Plaintiff (such as confidential contracts and consumer personal information).

7. Sirius XM indicated that it had confidential documents as early as September 13, 2017, when, in its Objections and Responses to Plaintiff's First Request for Production of Documents and Electronically Stored Information, Sirius XM referenced at least nine times the fact that it had information subject to confidentiality agreements.

8. In addition, additional correspondence between the parties show that Sirius XM repeatedly informed Plaintiff that it had confidential documents to produce pending execution of a protective order:

      a. Exhibit C is a true and correct copy of the October 13 and October 16, 2017, email exchange between M. Barney, counsel for Plaintiff, and me.

      b. Exhibit D is a true and correct copy of an October 30, 2017 email from my colleague T. Demitrack to M. Barney.

      c. Exhibit E is a true and correct copy of a November 17 and November 20, 2017 email exchange between J. Ellzey and me.

      d. Exhibit F is a true and correct copy of the December 13 and December 15, 2017 email exchange between M. Barney and me.

9. Because the heightened protections that Sirius XM insisted upon in response to Plaintiff's request for private person information ("PPI") were the primary sticking point between the parties, we offered to Plaintiff to execute a protective order that would be silent on the treatment of PPI, but which would allow Sirius XM to being production of other confidential documents. (*See* Exhibit F.)

10. Between January 19 and March 7, 2018, counsel for Plaintiff never contacted us to resume negotiations of a protective order, to request documents or information from Sirius XM or any third parties, or to notice any depositions.

11. So far in discovery, in the absence of a protective order, Sirius XM has made six productions of mostly non-confidential documents on a rolling basis as follows: on November 14, November 15, November 20, November 27, December 1, 2017, and January 25, 2018. In November, we had offered to Plaintiff to seek permission from Sirius XM's telemarketing vendors to produce service agreements prior to the execution of a protective order if Plaintiff would agree to an "attorneys' eyes only" designation. Plaintiff agreed. Thus, our November 14 production comprised select confidential documents produced pursuant to a special agreement to maintain them "attorneys' eyes only" pending execution of a protective order.

12. On January 25, 2018, Sirius XM made a "mop up" production of 844 documents that I had discovered had not yet been produced. Of the 844 documents, 814 (specifically identified to Plaintiff's counsel by Bates-number range) were additional copies of Sirius XM's sample mass marketing letters (envelope templates, order forms, channel brochures), all of which are substantially identical to hundreds of such samples that had already been produced.

13. The production included only 30 documents arguably different in nature than those produced previously.

14. In the case of the so-called "White Paper," we initially planned to produce it with a "confidential" designation once the parties agreed to the terms of a protective order, and thus originally withheld it from the previous productions Sirius XM made to Plaintiff. Ultimately, we reassessed the nature of this document and removed our confidential designation. Between September 13, 2017 and January 25, 2018, Plaintiff never asked why the document had not been produced.

15. As to the 29 other documents in the "mop up" production, one was concededly sent to Plaintiff, one was authored by Plaintiff, many were identified and described last fall in Sirius XM's interrogatory answers and/or are documents publicly available at any vehicle dealership in the United States.

16. On March 13, 2018, Plaintiff first noticed a deposition of a Sirius XM representative for late April.

17. On March 19, 2018, Sirius XM served Plaintiff with Amended Rule 26(a)(1) Initial Disclosures. These amended disclosures were made upon Sirius XM's continued investigation of the claims and defenses in this case.

18. The amended disclosures included 26 new individuals or entities. Of these: nine were already identified in Sirius XM's September 2017 interrogatory responses; one is Bob Tedford Chevrolet (the very dealership from which Plaintiff purchased his car); one is the generic disclosure of "[v]ehicle dealerships across the United States;" two are additional telemarketing vendors that made calls on behalf of Sirius XM during the purported class period (Sirius XM had already disclosed 12 other such vendors); one is an additional marketing vendor that provides services similar to three other such vendors already disclosed; eight are Sirius XM employees who likely have knowledge about substantially the same information as the 15 individuals already disclosed, and, again, none of whom Plaintiff sought to depose; two are TCPA

compliance vendors; and one is a vendor that assists Sirius XM in providing customer agreements to those subscribers with GM vehicles.

19. I declare that the foregoing is true and correct to the best of my knowledge and belief.

| | |
|---|---|
| Executed in New York, New York<br>Dated: March 26, 2018 | <u>*/s/ Allison L. Waks*</u><br>Allison L. Waks |