## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| THOMAS BUCHANAN on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br><br>v.<br><br>SIRIUS XM RADIO, INC.,<br><br>Defendant. | Case No.:<br><br><br>3:17-cv-00728-D |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND SUPPORTING MEMORANDUM OF LAW[1]

COMES NOW Thomas Buchanan ("Plaintiff"), individually and on behalf of all others similarly situated, and files this Motion for Class Certification and Supporting Memorandum.

Jarrett L. Ellzey
W. Craft Hughes
Hughes Ellzey, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Tel: (713) 554-2377
Fax: (888) 995-3335
E-Mail: craft@hughesellzey.com
jarrett@hughesellzey.com

---

[1] Plaintiff has filed a redacted version with the Court and has submitted unredacted copies to the Court and Defendant. The redactions include evidence designated or deemed confidential by Defendant under the Stipulated Joint Protective Order (Dkt. No. 56). Pursuant to Section 12.4 of that Order, Plaintiff has informed Defendant of the content and Bates number of the protected material at issue. If the parties cannot reach an agreement, Plaintiff may file an application to file under seal no sooner than five business days from today.

Henry A. Turner*
Turner Law Offices, LLC
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Tel: (404) 378-6274
hturner@tloffices.com

Aaron Siri*
Siri & Glimstad LLP
200 Park Avenue, 17th Floor
New York, New York 10166
Tel: (212) 532-1091
aaron@sirillp.com

Douglas M. Werman*
Werman Salas P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
Tel: (312) 419-1008
dwerman@flsalaw.com

Mark A. Alexander
Mark A. Alexander P.C.
5080 Spectrum, Suite 850E
Addison, Texas 75001
Tel: 972.364.9700
Fax: 972. 239.2244
mark@markalexanderlaw.com

Jonathan D. Selbin*
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592
Email:  jselbin@lchb.com

Daniel M. Hutchinson*
Lieff, Cabraser, Heimann & Bernstein, LLP
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

*Admitted Pro Hac Vice

Attorneys for Plaintiff and the Proposed Classes

# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY ................................................................... 1

II.  BACKGROUND ............................................................................................. 3

    A.   The National Do-Not-Call and Internal Do-Not-Call
        Registries ............................................................................................ 3

    B.   Sirius's Classwide "Free Trial" Marketing Program ..................... 4

    C.   Sirius Called Millions of DNC Registrants .................................... 4

    D.   Common Evidence Establishes Sirius's Willfulness ...................... 6

    E.   Common Evidence Establishes that Sirius Has No Affirmative
        Defense for Its TCPA Violations. ................................................... 7

    F.   Plaintiff's Experience Is Typical of Other Class Members ............ 8

III. ARGUMENT AND AUTHORITIES ................................................................ 9

    A.   The Standard for Class Certification .............................................. 9

    B.   Plaintiff's Classes Are Ascertainable .......................................... 11

        1.   The National DNC Class Is Ascertainable ......................... 12

        2.   The Internal DNC Class Is Ascertainable .......................... 14

    C.   Plaintiff's Classes Meet The Numerosity Requirement ............... 14

    D.   Plaintiff's Classes Meet The Commonality Requirement ............ 15

    E.   Plaintiff's Classes Meet The Typicality Requirement ................. 16

    F.   Plaintiff Meets The Adequate Representation Requirement ........ 17

        1.   Buchanan Is an Adequate Representative ........................... 18

        2.   Class Counsel Is Adequate ................................................. 18

    G.   Rule 23(b)(3) Requirements .......................................................... 20

        1.   Common Questions of Law or Fact Predominate .............. 20

        2.   The Classes Satisfy the Superiority Requirement ............. 23

# TABLE OF CONTENTS
## (Continued)

    H.    Additional Topics Under LR 23.2 .................................................................. 24

        1.    The Basis for Determining Any Required Jurisdictional
             Amount .............................................................................................. 24

        2.    The Type and Estimated Expense of Notice ...................................... 24

        3.    Discovery Necessary for Class Certification Hearing ....................... 25

        4.    All Arrangements for Payment of Plaintiff's Attorneys'
             Fees .................................................................................................. 25

IV.    CONCLUSION AND PRAYER ............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackal v. Centennial Beauregard Cellular L.L.C.,*
   700 F.3d 212 (5th Cir. 2012) ........................................................................... 9

*Agne v. Papa John's Int'l,*
   286 F.R.D. 559 (W.D. Wash. 2012) ................................................................ 12

*Alea London Ltd. v. Am. Home Servs., Inc.,*
   638 F.3d 768 (11th Cir. 2011) ......................................................................... 3

*Alhassid v. Bank of America*, *N.A.,*
   307 F.R.D. 684 (S.D. Fla. 2015) .................................................................... 16

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ................................................................................. passim

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) ............................................................................ 11, 21

*AMP Automotive, LLC v. B F T, LP,*
   CV 17-5667, 2017 WL 5466817 (E.D. La. Nov. 14, 2017) ............................ 11

*Birchmeier v. Carribbean Cruise Line, Inc.,*
   302 F.R.D. 240 (N.D. Ill. 2014) .................................................................... 12

*Cole v. Livingston,*
   4:14-CV-1698, 2016 WL 3258345 (S.D. Tex. June 14, 2016),
   *aff'd sub nom. Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017) .......................... 11

*Comcast v. Behrend*,
   133 S. Ct. 1426 (2013) .................................................................................. 11

*Conrad v. Gen. Motors Acceptance Corp.,*
   283 F.R.D. 326 (N.D. Tex. 2012) .................................................................. 11

*Cordoba v. DirecTV, LLC,*
   320 F.R.D. 582 (N.D. Ga. 2017) ................................................................ 2, 16

*DeBremaecker v. Short,*
   433 F.2d 733 (5th Cir. 1970) ......................................................................... 10

*East Tex. Motor Freight Sys. v. Rodriguez,*
   431 U.S. 395 (1977) ....................................................................................... 18

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974).............................................................................................. 9

*EQT Production Co. v. Adair,*
   764 F.3d 347 (4th Cir. 2014) ............................................................................ 10

*Forbush v. JC Penney Co.,*
   994 F.2d 1101 (5th Cir. 1993) .......................................................................... 15

*Frey v. First Nat. Bank Sw.,*
   602 Fed.Appx. 164 (5th Cir. 2015)................................................................... 12

*G.M. Sign, Inc. v. Finish Thompson, Inc.,*
   No. 07 C 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009)............................ 15

*Glazer v. Whirlpool Corp.,*
   722 F.3d 838 (6th Cir. 2013) ............................................................................ 11

*Gulf Oil Co. v. Bernard,*
   452 U.S. 89 (1981)............................................................................................... 9

*Halverson v. Convenient FoodMart, Inc.,*
   69 F.R.D. 331 (N.D. Ill. 1974).......................................................................... 20

*Hooker v. Sirius XM Radio, Inc.,*
   4:13-cv-00003 (E.D. Va. 2013) .......................................................... 4, 6, 13, 16

*In re Chinese-Manufactured Drywall Products Liab. Litig.,*
   MDL 2047, 2014 WL 4809520 (E.D. La. Sept. 26, 2014)................................. 15

*In re Serzone Products Liab. Litig.,*
   231 F.R.D. 221 (S.D.W. Va. 2005) ................................................................... 23

*In re Vioxx Prods. Liab. Litig.,*
   2008 WL 4681368 (E.D. La. 2008) ................................................................... 11

*Ira Holtzman, C.P.A., & Assocs. v. Turza,*
   728 F.3d 682 (7th Cir. 2013) ................................................................. 2, 10, 21

*James v. City of Dallas,*
   254 F.3d 551 (5th Cir. 2001) ............................................................................ 16

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Kolinek v. Walgreen Co.,*
    311 F.R.D. 483 (N.D. Ill. 2015) ......................................................................... 17

*Krakauer v. Dish Network L.L.C.,*
    311 F.R.D. 384 (M.D.N.C. 2015) ............................................................... passim

*Latman v. Costa Cruise Lines, N.V.,*
    758 So. 2d 699 (Fla. 3d DCA 2000) ................................................................. 17

*Manno v. Healthcare Revenue Recovery Grp., LLC,*
    289 F.R.D. 674 (S.D. Fla. 2013) ....................................................................... 22

*Mims v. Arrow Fin. Servs. LLC,*
    132 S. Ct. 740 (2012) .......................................................................................... 3

*Mullen v. Treasure Chest Casino, LLC,*
    186 F.3d 620 (5th Cir. 1999) ............................................................... 14, 16, 18

*Pederson v. La. State Univ.,*
    213 F.3d 858 (5th Cir. 2000) ........................................................................... 14

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ........................................................................................... 24

*Regents of Univ. of Cali. v. Credit Suisse First Boston (USA),*
    482 F.3d 372 (5th Cir. 2007) ........................................................................... 20

*Sanchez-Knutson v. Ford Motor Co.,*
    310 F.R.D. 529 (S.D. Fla. 2015) ....................................................................... 19

*Sartin v. EKF Diagnostics, Inc.,*
    CV 16-1816, 2016 WL 7450471 (E.D. La. Dec. 28, 2016) ............................. 12, 13

*Sheinberg v. Sorensen,*
    606 F.3d 130 (3d Cir. 2010) ............................................................................. 18

*Sikes v. Teleline, Inc.,*
    281 F.3d 1350 (11th Cir. 2002) ......................................................................... 23

*Stillmock v. Weis Markets, Inc.,*
    385 F. App'x 267 (4th Cir. 2010) ..................................................................... 20

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Stirman v. Exxon Corp.*,
    280 F.3d 554 (5th Cir. 2002) ............................................................................. 18

*Talbott v. GC Servs. Ltd. P'ship*,
    191 F.R.D. 99 (W.D. Va. 2000).......................................................................... 20

*Unger v. Amedisys Inc.*,
    401 F.3d 316 (5th Cir. 2005) ............................................................................. 21

*Whitaker v. Bennett Law, PLLC*,
    13-CV-3145-L NLS, 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) .................... 17

*Whitten v. ARS Nat. Services, Inc.*,
    2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) ...................................................... 19

*Zapata v. Flowers Foods Inc.*,
    4:16-CV-676, 2016 WL 8739196 (S.D. Tex. Dec. 20, 2016) ............................. 10

**Statutes**

16 C.F.R. § 310.4(b)(3)(iv) ........................................................................................ 3

47 C.F.R. § 64.1200 ................................................................................................. 22

47 C.F.R. § 64.1200(c)(2) .......................................................................................... 3

47 C.F.R. § 64.1200(d) .............................................................................................. 3

47 C.F.R. § 64.1200(d)(3) .......................................................................................... 4

47 U.S.C. § 227 ......................................................................................................... 1

47 U.S.C. § 227(c)(5) ................................................................................................ 3

**Rules**

FED. R. CIV. P. 23(a) ............................................................................................... 10

FED. R. CIV. P. 23(a)(2) ........................................................................................... 15

FED. R. CIV. P. 23(a)(3) ........................................................................................... 16

FED. R. CIV. P. 23(a)(4) ........................................................................................... 17

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

FED. R. CIV. P. 23(a)(l) ............................................................................................. 14

FED. R. CIV. P. 23(b)(3) ................................................................................... 11, 20, 23

FED. R. CIV. P. 23(g)(1)(A) ...................................................................................... 18

FED. R. CIV. P. 23(h) ................................................................................................. 25

**Treatises**

Manual for Complex Litigation (Fourth) § 21.222 (2004) ........................................ 11

Rubenstein, *et al., Newberg on Class Actions* § 3:33 ................................................ 11

Wright, *et al.*, 7A *Fed. Practice & Proc.* § 1751 (3d ed. 2010) ................................... 9

Wright, *et al.*, 7A *Fed. Practice & Proc.* § 1760 (3d ed. 2010) ................................. 10

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
AND SUPPORTING MEMORANDUM OF LAW
CASE NO. 3:17-CV-00728-D

## I.   <u>**INTRODUCTION AND SUMMARY**</u>

Plaintiff Thomas Buchanan brings this Telephone Consumer Protection Act ("TCPA"),

47 U.S.C. § 227 *et seq*., action against Sirius XM Radio, Inc. ("Sirius" or "Defendant"), for

illegal telemarketing calls to consumers' telephones.  Although the TCPA grants an unqualified

right to avoid unwanted telemarketing calls, Sirius made marketing calls to persons registered on

the National Do Not Call Registry ("DNC Registry") and to those who specifically requested that

such calls end.

The DNC Registry means exactly what it says — Do Not Call.  It is a database

maintained by the federal government, listing the telephone numbers of residential telephone

subscribers who seek reprieve from telemarketers.  Once subscribers add their telephone

numbers to the list, the TCPA prohibits telemarketers from placing unsolicited calls to those

numbers.

With this motion, Plaintiff seeks certification of a class of persons who registered for the

DNC Registry, but nonetheless received repeated calls marketing Sirius's paid satellite radio

subscription.  Plaintiff also seeks certification of a second class of persons for whom Sirius did

not honor do-not-call requests.

This case is well-suited for class treatment.  Sirius admits that, in making these calls, it

had a common and class-wide practice of ignoring the DNC Registry.  Sirius extracts consumers'

data from car manufacturers, dealers, and other companies that sell new or used vehicles

preinstalled with a satellite radio. These are not people who requested or ordered a satellite radio;

rather, they just happened to buy a car that had such a satellite radio preinstalled at Sirius'

insistence.  Sirius admits to a uniform practice of calling these non-Sirius customers to sell them

satellite radio subscriptions.

The Supreme Court has held that the class certification requirements are "readily met" in consumer protection cases where, as here, common factual questions necessarily center upon the defendant's course of conduct. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Judge Easterbrook recently observed that "[c]lass certification is normal in litigation under [the TCPA]." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). In similar cases involving alleged do-not-call violations of the TCPA, courts have not hesitated to certify classes. *See, e.g.*, *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 387 (M.D.N.C. 2015) (certifying a nationwide TCPA DNC Registry class and a nationwide TCPA internal Do Not Call list class); *Cordoba v. DirecTV, LLC*, 320 F.R.D. 582, 600 (N.D. Ga. 2017) (same).

This case accords with those holdings. As detailed below, the proposed classes are ascertainable; satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy; and satisfy the Rule 23(b)(3) requirements of predominance and superiority. This case involves a straightforward inquiry. Liability can be determined on a class-wide basis, and class membership easily ascertained by ready reference to Sirius' telemarketing call logs, screening those telemarketing call logs against the list of DNC-registered telephone numbers for the class period, and removing numbers belonging to those with prior established business relationships with Sirius, *i.e.* those who are Sirius's paying subscribers. And, just like the National DNC list, Sirius' telemarketing call logs can be screened against its Internal Do Not Call ("IDNC") list for Plaintiff's second class.

Plaintiff respectfully seeks certification under Rule 23(b)(3) of two classes of persons who received Sirius telemarketing calls. Plaintiff also requests that the Court appoint him as Class Representative and that his counsel be appointed Class Counsel.

## II.    BACKGROUND

### A.    The National Do-Not-Call and Internal Do-Not-Call Registries

Congress enacted the TCPA more than twenty-five years ago to regulate the exploding intrusion of telemarketing into people's privacy by companies that escaped state invasion of privacy and nuisance statutes by operating interstate.  *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (2012).  "The TCPA is essentially a strict liability statute … [and] does not require any intent for liability except when awarding treble damages."  *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (citation omitted).

Under the TCPA, consumers who do not wish to receive telemarketing calls may register their telephone numbers on the DNC Registry. 47 C.F.R. § 64.1200(c)(2).  These registrations must be honored indefinitely, unless the consumer cancels the registration. 47 C.F.R. § 64.1200(c)(2).

The TCPA prohibits sellers from making more than one telephone solicitation within any twelve-month period to people who have registered their telephone numbers on the DNC Registry.  47 U.S.C. § 227(c)(5); *Krakauer*, 311 F.R.D. at 387.  Because a DNC registrant takes an affirmative step to register his phone number on the DNC Registry, a telemarketer seeking to avoid TCPA liability must likewise take an affirmative step to obtain the registrant's signed, written agreement to be contacted by the telemarketer. *Id*. § 64.1200(c)(2)(ii). The written agreement must also include the telephone number to which the calls may be placed. *Id*. Telemarketers who wish to avoid calling numbers listed on the DNC Registry can easily and inexpensively do so by scrubbing their call lists against the DNC database at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

Regulations implementing the TCPA also require entities to maintain IDNC Registries. 47 C.F.R. § 64.1200(d). Once an entity receives a request from a residential telephone subscriber

not to receive calls, the number must be placed on the entity's IDNC list within a reasonable

time, not to exceed thirty days from the date of the request. *Id.* at § (d)(3).

**B.**     **Sirius's Classwide "Free Trial" Marketing Program**

Sirius is the world's largest satellite radio provider.



EX. 2 (Dealer Authorization Form) (SXM_002234).

EX. 2 at SXM_002234.

Accordingly, through these same

agreements, Sirius also obtains car dealers' agreement "to extract and share with Sirius XM" the

dealer's dealer management system ("DMS") data.  EX. 2 at SXM_002235.

Consumers purchase a vehicle from a car dealership, not from Sirius.  After the purchase,

Sirius sends consumers a Welcome Kit offer for a trial satellite radio package. *See, e.g.*, EX. 3

(SXM_001059).  Courts have previously found that this Welcome Kit *does not* create any

contractual relationship between consumers and Sirius. *See Hooker v. Sirius XM Radio, Inc.*,

4:13-cv-00003 (E.D. Va. 2013) (Dkt. No. 56 at *9-10) (holding that the Sirius Welcome Kit did

not create a binding contract with regard to trial subscriptions).

**C.**     **Sirius Called Millions of DNC Registrants**

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
AND SUPPORTING MEMORANDUM OF LAW
CASE NO. 3:17-cv-00728-D



These vendors use the consumer telephone numbers extracted from car manufacturers'

and dealerships' DMSs.[2] ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Sirius extracted and called over 10 million unique landline telephone numbers during the

class period.  *See* EX. 4 (Supplemental Discovery Response email).

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████  EX. 1 (Rog.

Resp. Nos. 6, 13).[3]  In fact, Sirius' counsel conceded in its emails "that Sirius XM made phone

calls to the names on the federal DNC list[.]" EX. 6 (Jan. 2, 2018, 8:18 email).

████████████████████████████████████████████████████████████████████████████

████████████████████████████  Plaintiff's expert Anya Verkhovskaya[4] ████

---

[2] ████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

[3] ████████████████████████████████████████████████████████████████████████

[4] Ms. Verkhovskaya is the President of Class Experts Group, LLC (CEG), a litigation support provider that focuses
on data management, data analysis, and class action administration for Telephone Consumer Protection Act and
other consumer class action litigation.  Verkhovskaya Report, ¶ 11.  In over 19 years of expert and administration



Sirius's admissions and the call data confirm that Sirius did not have appropriate protocols and procedure in place to ensure compliance with regulatory requirements and the purpose of the DNC Registry.

### D.     Common Evidence Establishes Sirius's Willfulness

Complaints of TCPA violations are not new to Sirius.  Indeed, during the class period, over 6,975 consumers lodged formal complaints that Sirius violated the TCPA's do-not-call provisions.  EX. 8 (Ellzey Aff.) at ¶ 28.

Five years ago, Sirius faced another class action over its telemarketing practices to separate class of consumers who received calls to their cellular telephones, and ultimately settled the case barely a year ago. *See Hooker v. Sirius XM Radio*, Inc. (Dkt. No. 209).


[5]

---

work, Ms. Verkhovskaya has performed data analysis in hundreds of TCPA, consumer, employment, antitrust, securities fraud, ERISA, civil rights, discrimination, and other matters.  *Id.*, ¶ 12.

[5] Even though not TCPA-related, in 2014, Sirius XM also entered into an agreement with 45 states and the District of Columbia's attorneys general to "pay $3.8 million to the states, and provide restitution to eligible consumers to resolve claims that the satellite radio company engaged in misleading advertising and billing practices." (Arizona Attorney General Press Release) *available at* https://www.azag.gov/press-release/attorney-general-tom-horne-announces-38-million-multi-state-settlement-sirius-xm.).

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
AND SUPPORTING MEMORANDUM OF LAW
CASE NO. 3:17-cv-00728-D

**E.**   **Common Evidence Establishes that Sirius Has No Affirmative Defense for Its TCPA Violations.**

Common evidence likewise confirms that Sirius has no affirmative defense for its TCPA violations. ████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████

████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████

███████████████████████████████

████████████████████████████████

██████████████████████████ (SXM_013822-50). ████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

██████████ (SXM_013876) at SXM_013877-78. █████████████

███████████████████████████████

███████████████████████████████████████

████████████████████████████████

████████████████████████████████

(SXM_013918-21) at SXM_013919. █████████████████

███████████████████████████████████████

1564850.1

████████████████████████████████████████████████████████

████████████████████ (SXM_007076) ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

### F.   Plaintiff's Experience Is Typical of Other Class Members

Like most Americans, Mr. Buchanan values the serenity of his home. A retired IT consultant who once worked under David Gergen at the White House, he registered his home telephone number with the National DNC Registry almost ten years ago.

On or about May 2, 2016, Mr. Buchanan and his wife purchased a used minivan, a 2011 Honda Odyssey (the "Odyssey") from Bob Tedford Chevrolet Co. (the "Dealer") in Farmersville, Texas. *See* EX. 10 (Buchanan Declaration). ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████ Yet, following the purchase, the Dealer furnished Mr. Buchanan's home telephone number, ending 7761, to Sirius pursuant to the standard contract with the Dealer. *See* EX. 1 (Rog Response Nos. 3, 12).

Mr. Buchanan's number has been listed on the DNC Registry since 2008. Approximately one month after the Odyssey purchase, Sirius sent Mr. Buchanan a "Welcome Kit." Included in the "Welcome Kit" was a Free Trial Offer for Sirius XM Radio. The Welcome Kit states that Sirius XM Radio was installed as a component inside the vehicle and invites the vehicle purchaser to send a payment before the end of the trial period to "subscribe" to Sirius XM. *See*

*e.g.* EX. 3 (Sample Sirius Welcome Kit).  Mr. Buchanan ignored the "Welcome Kit" and took no

action whatsoever regarding it.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

During the stream of calls, on July 24, 2016, Mr. Buchanan sent Sirius a letter to reiterate his

request to stop the telemarketing calls and to put his 7761 number on its Internal Do-Not-Call

Registry. EX. 11 (Buchanan Ltr. to Sirius). The calls continued through August 4, 2016. ████

████████████████████████████████████████████████████ Those calls

are the subject of this lawsuit.

## III.   ARGUMENT AND AUTHORITIES

### A.   The Standard for Class Certification

The purpose of Rule 23 is to provide for the efficient administration of justice, as the

class action mechanism allows large numbers of claims involving the same core issues to

proceed in the aggregate, providing a path to relief where otherwise there would be none.  *See

Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); Wright, *et al.*, 7A *Fed. Practice & Proc.* § 1751

(3d ed. 2010) ("Class actions serve an important function in our system of civil justice.").  The

decision to certify is within the broad discretion of the court, but that discretion must be

exercised within the framework of Rule 23.  *Ackal v. Centennial Beauregard Cellular L.L.C.,*

700 F.3d 212, 215 (5th Cir. 2012).  Generally, at the certification stage, the movant is not

required to prove the merits of the class claim or even establish a probability that the action will

be successful.  *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974).

Consumer protection cases, like this one under the TCPA, which arise from a single

course of conduct that affects large numbers of consumers, are particularly amenable to class

treatment.  *Amchem*, 521 U.S. at 625.  Accordingly, "[c]lass certification is normal in litigation

under [the TCPA]." *Ira Holtzman, C.P.A.*, 728 F.3d at 684.  As a threshold matter, "[t]he Fifth

Circuit has held that a Rule 23 class must be 'adequately defined and clearly ascertainable.'"

*Zapata v. Flowers Foods Inc.*, 4:16-CV-676, 2016 WL 8739196, at *5 (S.D. Tex. Dec. 20, 2016)

(quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)).  "A class is ascertainable if

'the general outlines of the membership of the class are determinable at the outset of the

litigation.'" *Id.* (quoting Wright, *et al.*, 7A *Fed. Practice & Proc.* § 1760 (3d ed. 2010)).  To be

ascertainable a plaintiff need not show "that every potential member can be identified at the

commencement of the action" rather "a class is sufficiently ascertainable if it is circumscribed by

some objective set of criteria."  *Id.* (internal quotations omitted); *see also EQT Production Co. v.*

*Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (holding that Rule 23 requires "that the members of a

proposed class be readily identifiable" or "ascertainab[le]" (internal quotation marks omitted)).

Once the court has determined the movant has defined an ascertainable class, parties

seeking class action certification must also satisfy the four requirements of Federal Rule of Civil

Procedure 23(a).  *Amchem Prods.*, *Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  Specifically, the

four requirements of Rule 23(a) are: (1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class.  FED. R. CIV.

P. 23(a).  These four requirements are commonly referred to as numerosity, commonality,

typicality and adequacy of representation.

The proposed class must also satisfy the requirements in Rule 23(b)(3) by showing that

"the questions of law or fact common to class members predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for fairly

and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).  The Court must conduct a "rigorous analysis" of the Rule 23 prerequisites.  *Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).  Although in some circumstances this "rigorous analysis" may "entail some overlap with the merits of the plaintiff's underlying claim," *Dukes*, 131 S. Ct. at 2551, the Supreme Court "admonishes district courts to consider at the class certification stage only those matters relevant to deciding if the prerequisites of Rule 23 are satisfied." *Glazer v. Whirlpool Corp.*, 722 F.3d 838, 851-852 (6th Cir. 2013) (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013)); *Cole v. Livingston*, 4:14-CV-1698, 2016 WL 3258345, at *3 (S.D. Tex. June 14, 2016), *aff'd sub nom. Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017) ("'However, Rule 23 does not require a showing that the questions common to the class "will be answered, on the merits, in favor of the class.' . . . 'Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.'" (quoting *Amgen,* 133 S. Ct. at 1191, 1194-95)).

## B.     Plaintiff's Classes Are Ascertainable

"Ascertainability" simply asks whether the putative class can be properly identified through objective criteria.  *See In re Vioxx Prods. Liab. Litig.,* 2008 WL 4681368, at *9 (E.D. La. 2008) (citing Manual for Complex Litigation (Fourth) § 21.222 (2004)); *see also* Rubenstein, *et al.*, *Newberg on Class Actions* § 3:3; *Conrad v. Gen. Motors Acceptance Corp.,* 283 F.R.D. 326, 328 (N.D. Tex. 2012).  "The class definition must be sufficiently definite in that it is administratively feasible for the court to determine whether a particular individual is a member." *AMP Automotive, LLC v. B F T, LP*, CV 17-5667, 2017 WL 5466817, at *4 (E.D. La. Nov. 14, 2017).  However, "'the court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceedings.'" *Id.* (quoting *Frey v. First Nat. Bank Sw.*, 602 Fed.Appx. 164,

168 (5th Cir. 2015)).  "Thus, if the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist."  *Sartin v. EKF Diagnostics, Inc.*, CV 16-1816, 2016 WL 7450471, at *6 (E.D. La. Dec. 28, 2016) (internal quotations omitted); *see also* 7A Fed. Prac. & Proc. Civ. § 1760 (3d ed.) (stating same).

TCPA class actions are straightforward, and class members can almost always be identified through records in the defendant's or its vendors' possession.  *See, e.g., Birchmeier v. Carribbean Cruise Line, Inc.*, 302 F.R.D. 240, 248 (N.D. Ill. 2014) (holding that plaintiff's list of 930,000 phone numbers established a "sufficiently ascertainable" TCPA telemarketing class); *Agne v. Papa John's Int'l*, 286 F.R.D. 559, 566 (W.D. Wash. 2012) (finding TCPA telemarketing class ascertainable despite the defendant's argument that identifying class members "may be difficult").  The same is true in this case.

## 1.   <u>The National DNC Class Is Ascertainable</u>

Plaintiff asserts Count I of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All natural persons in the United States who, within four years preceding a class certification order in this case, received more than one telephone solicitation call in a 12-month period on their Residential Land Line telemarketing Sirius XM's satellite radio service more than 31 days after registering their telephone number with the National Do-Not-Call Registry and who did not have a prior established business relationship with Defendant and did not provide Defendant prior express written consent to receive such calls. Excluded from this class definition are any consumers who were enrolled as customers of Defendant at the time the calls were received, employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

In DNC cases such as this, these elements can be evaluated based entirely on objective criteria through a simple process to identify: (1) persons who received, (2) more than two calls within a

twelve-month period, (3) while registered on the National DNC Registry, and (4) were not Sirius

customers.  *See Krakauer*, 311 F.R.D. at 391.  As such, the proposed class is ascertainable.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████  All DNC class

members can be identified through two sources: (1) Call logs from Sirius and its vendors for the

relevant class period; and (2) the publicly available National Do-Not-Call Registry.  *Id.*  Here,

Sirius has already produced its call logs.  These "logs provide objective data that make it

possible to ascertain which" individuals on the DNC received phone calls.  *Sartin*, 2016 WL

7450471 at *6 (holding that a fax log provided objective data for ascertaining a TCPA class).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

     To exclude those with whom Sirius had a prior established business relationship, the

parties have excluded all numbers belonging to Sirius's paid subscribers.  This was the approach

adopted by the *Hooker* court, defining subscribing customers as those who paid money for a

subscription. *See Hooker v. Sirius XM Radio, Inc.* (Dkt. No. 209). The exclusion of subscribing

customers also addresses "prior express written consent" because *Sirius* has not presented any

information on customers' express written consent different from what it obtains from its

subscription enrollment process. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████  Therefore, the

DNC class is ascertainable by these steps.

### 2.    The Internal DNC Class Is Ascertainable

Plaintiff also asserts Count II of this action under Rule 23(b)(3) of the Federal Rules of

Civil Procedure on behalf of a class defined as:

> All natural persons in the United States who, from October 16, 2013 to the commencement of this litigation, received one or more telephone solicitation calls on their Residential Land Line telemarketing Sirius XM's satellite radio service after registering their telephone number with Defendant's Company-Specific Do-Not-Call Registry and did not provide Defendant prior express written consent to receive such calls. Excluded from this class definition are any employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

███████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████  EX. 1 (Rog. Resp. Nos. 6,

14).  A comparison of these electronic databases by Plaintiff's expert will identify everyone

listed on Sirius's IDNC, when the person was added to the IDNC or requested to be added, and

whether such person received a call from Sirius following the addition or request for addition.

*See Krakauer*, 311 F.R.D. at 391 (finding IDNC class ascertainable).  As a result, the IDNC class

is ascertainable by these steps.

### C.    Plaintiff's Classes Meet The Numerosity Requirement

There is no rigid standard for determining numerosity; however, the class must be so

numerous that joinder of all such persons is impracticable. *See* FED. R. CIV. P. 23(a)(l); *Pederson*

*v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000); *Mullen v. Treasure Chest Casino, LLC*,

186 F.3d 620, 624 (5th Cir. 1999).  Sirius has stipulated that both of Plaintiff's proposed classes

meet the numerosity requirement.  EX. 6 (Jan. 2, 2018, 8:18 email).

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
                                                                      AND SUPPORTING MEMORANDUM OF LAW
CASE NO. 3:17-cv-00728-D

### D.      Plaintiff's Classes Meet The Commonality Requirement

Rule 23(a) next requires that there be "questions of law and fact common to the class."

FED. R. CIV. P. 23(a)(2). Meeting this element requires that a plaintiff allege a "common

contention of such a nature that it is capable of class-wide resolution – which means that

determination of its truth or falsity will resolve an issue that is central to the validity of each one

of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011). "The

threshold for establishing commonality is not high since 'for purposes of Rule 23(a)(2) even a

single common question will do.'" *In re Chinese-Manufactured Drywall Products Liab. Litig.*,

MDL 2047, 2014 WL 4809520, at *11 (E.D. La. Sept. 26, 2014) (quoting *Dukes*, 131 S. Ct. at

2556).  And the bar for proving commonality is met when there is at least one issue whose

resolution will affect all or a significant number of the putative class members. *Forbush v. JC

Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993).  Because, by definition, calling programs are

carried out on a mass basis, a proposed TCPA class typically contains common issues of law and

fact. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *4

(N.D. Ill. Aug. 20, 2009) (collecting cases).

Sirius's liability to the DNC Class and IDNC Class members hinges on two key common

questions:

1.      Did Sirius (or its agents) place two or more calls to individuals' landline

numbers without their express written consent, within a year, while those

landlines were registered on the National Do-Not-Call Registry?

2.      Did Sirius (or its agents) place any calls to any consumer after he or she

requested Sirius place her number on its Internal Do-Not-Call Registry?

The first question (DNC class) will be determined on a class-wide basis by interpreting

the TCPA and its corresponding regulations, and reviewing Sirius's call logs and the publicly-

available DNC registry.  *See Cordoba v. DirecTV, LLC*, 320 F.R.D. 582, 600 (N.D. Ga. 2017)

(finding the commonality requirement met for two classes, one for calls made to people on the

DNC and the other for calls made to people on the company's IDNC) ███████████████

████████████████  Furthermore, by relying on Sirius's paid-subscriber information, the

existence of established business relationship and express written consent are dealt with on a

common basis.  Thus, Plaintiff's DNC class excludes paid subscribers, adopting the approach

applied by the Court in *Hooker.  See Hooker v. Sirius XM Radio, Inc.* (Dkt. No. 209).

The second question (the INDC Class) is similarly resolved on a common basis by cross-

referencing Sirius' telemarketing call logs with its IDNC(s).  *Cordoba*, 320 F.R.D. at 600; ███

█████████████████████████████  If the analysis of these records yields a list of

people who received calls, who match names on the INDC that post-date their addition, for

example, class-wide TCPA liability for INDC violation will be established.

Determination of these common issues resolves the material allegations of TCPA liability

for both classes in one stroke.  The commonality requirement is thus satisfied here.

### E.      Plaintiff's Classes Meet The Typicality Requirement

Typicality requires that "the claims or defenses of the representative parties are typical of

the claims or defenses of the class."  FED. R. CIV. P. 23(a)(3).  The test for typicality "focuses on

the similarity between the named plaintiff's legal and remedial theories and the theories of those

whom they purport to represent."  *Mullen* 186 F.3d at 625.  In contrast to commonality, "the

critical inquiry is whether the class representative's claims have the same essential characteristics

of those of the putative class." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001).  It is a

"permissive" requirement, and "representative claims are 'typical' if they are reasonably co-

extensive with those of absent class members; they need not be substantially identical." *Alhassid*

*v. Bank of Am., N.A.,* 307 F.R.D. 684, 697 (S.D. Fla. 2015) (citations omitted).

Here, Plaintiff's claims are coextensive with, and identical to, the claims of the Class members. All of the class members claims arise out of the same legal theories, as typicality requires. Like all other members of the putative Classes, Sirius uniformly violated all class members' rights under the TCPA in one of two ways, or both: (1) by calling the class member's DNC-registered landline more than once during a twelve-month period; and/or (2) by calling the class member after that individual requested to be placed on the INDC. Each class member is seeking — and is entitled to — statutory damages authorized by the TCPA. Therefore, there is nothing unique or atypical about Plaintiff's claims when compared to those of the proposed Classes – they are the same. Plaintiff's claims arise out of the same course of conduct, rely on the same legal theories, and resulted in the same injury as those of the proposed Classes.

Courts have found typicality where, as here, a defendant's practice of making the same unsolicited contact with plaintiff and the proposed class forms the basis of the class claim. *See Whitaker v. Bennett Law, PLLC,* 13-CV-3145-L NLS, 2014 WL 5454398, at *5 (S.D. Cal. Oct. 27, 2014) (finding typicality where each class member's claim "revolves exclusively around [the defendant's] conduct as it specifically relates to the alleged violations of the TCPA"); *Agne v. Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 491–92 (N.D. Ill. 2015) (plaintiff's claim that defendant violated the TCPA when it placed a prerecorded prescription reminder call to his cellular phone satisfies Rule 23(a)'s typicality requirement because the class consists of all persons who received such calls). The Court should reach the same conclusion in this case.

### F.   Plaintiff Meets The Adequate Representation Requirement

The "adequacy" prong of Rule 23 requires "the representative parties…fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To meet the requirement for adequacy of representation, Plaintiff must show (1) "the zeal and competence" of class counsel as well as (2) "the willingness and ability of the representatives to take an active role in

and control the litigation and to protect the interests of absentees." *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002) (internal citation and quotations omitted). Plaintiff and Counsel for the putative Class satisfy both prongs of the "adequacy" test.

### 1. Buchanan Is an Adequate Representative

With respect to adequacy of the class representative, Mr. Buchanan, the Court should make the following determinations (1) is the representative a member of the class, *East Tex. Motor Freight Sys. v. Rodriguez,* 431 U.S. 395, 403 (1977); (2) are the representative's interests in conflict with those of the class members, *Mullen,* 186 F.3d at 625-26; and (3) did the representative suffer generally the same injury as the class members? *East Tex.*, 431 U.S. at 403.

Here, Mr. Buchanan has already established the elements of commonality and typicality; Buchanan is a member of the proposed Classes, and he has suffered the identical injury suffered by each class member. Therefore, Mr. Buchanan can answer numbers 1 and 3 above in the affirmative. Finally, Mr. Buchanan has no conflicting interests with class members. In fact, by personally investigating, filing, and vigorously pursuing this case, he has demonstrated a desire and ability to protect Class members' interests. Mr. Buchanan's zeal is manifest, and his interests are in not in conflict with those of the class.

### 2. Class Counsel Is Adequate

The second prong of the adequacy element requires a showing that the representative's chosen counsel is competent. *Mullen,* 186 F.3d at 625. The court must consider the following criteria: (1) the work counsel has done in identifying and investigating potential claims in the action; (2) counsel's experience in handling class actions, complex litigation, and the types of claims asserted in this action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. FED. R. CIV. P. 23(g)(1)(A); *Sheinberg v. Sorensen,* 606 F.3d 130, 132 (3d Cir. 2010).

Plaintiff's counsel have regularly (and successfully) engaged in major class action litigation, and possess extensive experience in consumer class action lawsuits. *See* EX. 8, 12-15 (Declarations of Plaintiff's Counsel Jarrett L. Ellzey, Henry Turner, Aaron Siri, Douglas Werman, and Daniel M. Hutchinson).  Other courts have found each representative firm adequate as class counsel in other class action lawsuits.  "The fact that attorneys have been found adequate in other cases is persuasive evidence that they will be adequate again." *Whitten v. ARS Nat. Services, Inc.*, No. 00-6080, 2001 WL 1143238, at *4 (N.D. Ill. Sept. 27, 2001). Moreover, "[a]bsent specific proof to the contrary, the adequacy of class counsel is presumed." *Sanchez-Knutson v. Ford Motor Co.,* 310 F.R.D. 529, 539 (S.D. Fla. 2015).

Plaintiff's counsel, including five geographical and experience–diverse firms, spent multiple months conferring with Buchanan, reviewing his voluminous documents, and investigating all potential claims to file on behalf of the class.  Plaintiff's counsel carefully considered all possible claims to bring on behalf of the class, whether such claims were resolved by the *Hooker* settlement, and whether Sirius was continuing a similar course of conduct that led to *Hooker.*  Plaintiff's counsel has litigated dozens of TCPA cases combined.  Additional Plaintiff's counsel at Lieff Cabraser Heimann & Bernstein, LLP, who recently joined this case, have taken a leadership role in dozens of complex TCPA class actions that recovered more than $300 million for consumers across the country.  EX. 15 (Hutchinson Decl.) at ¶ 5.

Finally, Plaintiff's counsel is willing to dedicate the resources necessary to try this case to verdict and obtain a judgment.  All named counsel are experienced trial lawyers with sufficient staffing and financial means to develop a complex case from inception through appeal. Plaintiff's counsel has already committed substantial financial resources to this case and are prepared to

hire experts to assist with class notice and other issues if the matter proceeds to trial.

Accordingly, Plaintiff's counsel is competent and adequate to represent the proposed Classes.

### G.    Rule 23(b)(3) Requirements

In addition to satisfying the Rule 23(a) requirements, the proposed Class must satisfy the additional requirements in Rule 23(b). *Regents of Univ. of Cal. v. Credit Suisse First Bos. (USA)*, 482 F.3d 372, 295 (5th Cir. 2007). Rule 23(b)(3) is satisfied if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### 1.    Common Questions of Law or Fact Predominate

Predominance is "readily met" in certain consumer cases. *Amchem*, 521 U.S. at 625. The touchstone for predominance analysis is efficiency. An issue 'central to the validity of each one of the claims' in a class action, if it can be resolved 'in one stroke,' can justify class treatment. *Dukes*, 131 S. Ct. at 2551. This criterion is normally satisfied when there is an essential common factual link between all class members and the defendants, for which the law provides a remedy. *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 105 (W.D. Va. 2000) (*citing Halverson v. Convenient FoodMart, Inc.,* 69 F.R.D. 331, 334 (N.D. Ill. 1974)). There is predominance where the "qualitatively overarching issue" is the defendant's liability, such that "the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner." *Stillmock v. Weis Markets, Inc.,* 385 F. App'x 267, 273 (4th Cir. 2010) (addressing predominance in Fair Credit Reporting Act case seeking, like here, statutory damages for alleged class-wide violations).

In addition, as the Supreme Court has held, while Rule 23(b)(3) requires that *questions* common to the class predominate, it does not require proof that those questions will be

answered, on the merits, *in favor of* the class. *Amgen*, 133 S. Ct. at 1191. "[A] Rule 23(b)(3)

certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to

adjudication of the controversy 'fairly and efficiently.'" *Id.* Regardless of whether this case is

ultimately decided in favor of the class, the issue at class certification is whether its resolution

will be determined by answering questions common to all class members.

### a.    Common Issues Predominate for Plaintiff's TCPA Claims.

TCPA claims, by their nature, involve large numbers of plaintiffs who received

telemarketing calls using standard scripts, a single defendant, and a common course of conduct

that affected each plaintiff in the same way. *See Ira Holtzman, C.P.A.,* 728 F.3d at 684

(discussing how "[c]lass certification is normal in litigation under [the TCPA].").  Plaintiff

satisfies the predominance requirement because liability questions common to all members of the

proposed Classes substantially outweigh any possible issues that is individual to each member of

the Settlement Class.  Mr. Buchanan's and proposed class members' claims arise from the same

conduct, *i.e.* Sirius extracted their residential telephone numbers to:  (1) make two or more

telemarketing calls to Class Members' residential numbers within a 12-month period for

telemarketing, to a number was registered on the National DNC Registry for at least thirty (30)

days, and Sirius did not have an established business relationship with, or prior express written

consent from, those Class Members; and/or (2) make telemarketing calls to individuals after they

requested Defendant place their number on the IDNC list. *Unger v. Amedisys Inc.*, 401 F.3d 316,

320 (5th Cir. 2005) ("Predominance" is where questions of law or fact common to the class

members "predominate over any questions affecting only individual members.").

All of the material conduct or claim particular to Plaintiff were also practiced upon every

member of the classes in the same manner.  Plaintiff and the putative class members share

common questions of law involving the application of the TCPA. Accordingly, the common

issues of fact or law arising from Sirius's conduct predominate over any individual issues,

making class treatment appropriate. TCPA claims are well-suited to class treatment because they

concern a single uniform course of conduct – telemarketing calls – directed to consumers. *See,

e.g.*, *Krakauer*, 311 F.R.D. at 387. These are the type of cases that "the Advisory Committee

sought to cover[,] in which a class action would achieve economies of time, effort, and expenses,

and promote . . . uniformity of decision as to person similarly situated, without sacrificing

procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.

### b.      Common Issues Predominate for Sirius' Potential Affirmative Defenses.

Furthermore, this case will not raise any individual issues regarding consent. Under the

relevant FCC regulations, such prior express written consent "*must be* evidenced by a signed,

written agreement between the consumer and seller which states that the consumer agrees to be

contacted by this seller and includes the telephone number to which the calls may be placed."

47 C.F.R. § 64.1200 (emphasis added). ████████████████████████████

████████████████████████████████████████████ Moreover, because

the Class includes only consumers who, like Plaintiff, were never paid-subscribers of Sirius XM,

no prior express written consent exists. *See Manno v. Healthcare Revenue Recovery Grp., LLC*,

289 F.R.D. 674, 686 (S.D. Fla. 2013) (finding non-common issues regarding consent would not

predominate because the parties could remove individuals previously contacted "and, thus,

weeded out those individuals who may have consented to be called"). Members of the DNC Class

could not have consented to any calls from Sirius XM because they never had an agreement with

Sirius XM – the class definition excludes paying subscribers.

For the IDNC Class, no inquiry into consent is required; consent, if previously given, is

extinguished once a party requests placement on the company's IDNC. Given this complete lack

of evidence, the Court may determine on a classwide basis that Sirius cannot meet its burden of

establishing prior express written consent to make telemarketing calls to any class member.

All evidence regarding Sirius's potential preexisting business relationship is likewise

common and class-wide. ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

Common issues regarding Sirius' potential affirmative defenses of prior express written

consent and preexisting business relationship therefore predominate.

## 2. <u>The Classes Satisfy the Superiority Requirement</u>

The superiority inquiry tests whether resolving a dispute on a class basis will "achieve

economies of time, effort, and expense, and promote … uniformity of decision as to persons

similarly situated, without sacrificing procedural fairness or bringing about other undesirable

results." *In re Serzone Products Liab. Litig.*, 231 F.R.D. 221, 240 (S.D. W. Va. 2005) (quoting

*Amchem*, 521 U.S. at 615). Litigating this case as a class action will achieve significant

economies of time, effort and expense for the Classes and for the Court. *See Serzone*, 231

F.R.D. at 240. By contrast, litigating the claims in individual lawsuits would consume vastly

more judicial resources. *See id.* Resolving thousands of claims in one action is far superior to

individual lawsuits because it promotes consistency and efficiency of adjudication. *See* FED. R.

CIV. P. 23(b)(3). For these reasons, the Court should certify the Classes.

Such demonstrated predominance is also relevant to the second aspect of superiority

analysis, in that "[t]he inquiry into whether the class action is the superior method for a particular

case focuses on 'increased efficiency.'" *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir.

2002). Class actions are particularly appropriate where "it is necessary to permit the plaintiffs to

pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

Under the facts here, such "pooling" considerations are particularly compelling, as it is obviously not economically viable for Class members to pursue $500 to $1,500 claims against Sirius on an individual basis. *See Amchem Prods.*, 521 U.S. at 609 (discussing the merits of aggregating small claims). The instant class action provides redress for Class Members who individually may not have suffered the several thousands of dollars needed to prosecute an individual claim. A settlement in this lawsuit would potentially avoid individual cases that could be filed by millions of Class Members for the same claims asserted here.

As to the remaining three factors of superiority (*i.e.* other, already-commenced lawsuits, undesirability of forum, difficulties in management) these do not pose any issues. For these reasons, the class action device is the superior means of resolving this case.

### H.       Additional Topics Under LR 23.2

Finally, LR 23.2 requires the movant on a motion for class certification to address specific topics, many of which Plaintiff responds to herein under his Rule 23 analysis. For the remaining LR 23.2 topics, Plaintiff responds as follows:

#### 1.       The Basis for Determining Any Required Jurisdictional Amount

The TCPA does not include a required jurisdictional amount. Plaintiff's allegations satisfy the minimum jurisdictional requirements of this court.

#### 2.       The Type and Estimated Expense of Notice

Plaintiff's counsel has experience with class notice programs in dozens of TCPA class actions, including multiple classes larger than the proposed classes here. Ms. Verkhovskaya also has broad administration experience in hundreds of TCPA, consumer, employment, antitrust, securities fraud, ERISA, civil rights, discrimination and other claims. in various class action

matters, including hundreds of TCPA, consumer, employment, antitrust, securities fraud, ERISA, civil rights, discrimination and other litigation.  EX. 21 (Verkhovskaya Report) at ¶ 11.  Based on that experience, Ms. Verkhovskaya has concluded that it is both possible and administratively feasible to issue notice of class certification to individuals in this Action.

Plaintiff's counsel and Ms. Verkhovskaya believe that postcard and/or email notice will be the most effective.  Both options are also cost-effective.  If email addresses exist, class notice can occur for under $25,000.  EX. 15 (Hutchinson Decl.) at ¶ 20.  If only mailing addresses exist, economies of scale will permit postcard notice for less than $0.10 per class member.  *Id.*  ████

████████████████████████████████████████████████████████

████████████████████████████████  Once Sirius extracts this data, Plaintiff will discuss pricing options for alternative forms of notice with various class action administrators.

### 3.   Discovery Necessary for Class Certification Hearing

Although they have worked together to ensure production of Sirius' call data and completed depositions, the parties are still meeting and conferring regarding additional information and/or data to permit Ms. Verkhovskaya to perform additional analysis.  If such information or data is provided, Plaintiff anticipates that Ms. Verkhovskaya will submit a supplemental expert report as soon as practicable and prior to the class certification hearing.

### 4.   All Arrangements for Payment of Plaintiff's Attorneys' Fees

Upon application by Plaintiff, the Court may award attorneys' fees payable by Sirius after the class is certified.  *See* FED. R. CIV. P. 23(h).  Plaintiff's counsel has also agreed to take on this matter on a contingency basis.

## IV.   CONCLUSION AND PRAYER

For the reasons discussed above, Plaintiff respectfully requests that this Court certify the proposed Classes, appoint Class Counsel, and grant Plaintiff the requested relief.

Respectfully Submitted,


_____/s/ Jarrett L. Ellzey_____
W. Craft Hughes
craft@hughesellzey.com
Jarrett L. Ellzey
jarrett@hughesellzey.com
**HUGHES ELLZEY, LLP**
2700 Post Oak Blvd., Suite 1120
Houston, TX 77056
Phone (713) 554-2377
Facsimile (888) 995-3335

Mark A. Alexander
mark@markalexanderlaw.com
Mark A. Alexander P.C.
5080 Spectrum, Suite 850E
Addison, Texas 75001
Tel: 972.364.9700
Fax: 972. 239.2244

Henry A. Turner*
Turner Law Offices, LLC
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Tel: (404) 378-6274
hturner@tloffices.com

Aaron Siri*
Siri & Glimstad LLP
200 Park Avenue, 17th Floor
New York, New York 10166
Tel: (212) 532-1091
aaron@sirillp.com

Douglas M. Werman*
Werman Salas P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
Tel: (312) 419-1008
dwerman@flsalaw.com

Jonathan D. Selbin**
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592
Email:  jselbin@lchb.com

Daniel M. Hutchinson**
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
Email:  dhutchinson@lchb.com

*Admitted Pro Hac Vice*
*\*\* Pro Hac Vice Pending*

*Attorneys for Plaintiff and the Proposed Classes*

1564850.1

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system in accordance with the protocols for e-filing in the United States District Court for the Northern District of Texas, Dallas Division, on May 29, 2018 and will be served on all counsel of record who have consented to electronic notification *via* CM/ECF.


                                                      */s/ Jarrett L. Ellzey*
                                                  Jarrett L. Ellzey


## CERTIFICATE OF CONFERENCE

I certify on March 21, 2018, Jarrett L. Ellzey and Daniel Hutchinson, counsel for Plaintiffs met in person with Thomas Demitrack, counsel for Defendant.  Over the course of a two-and-a-half-hour meeting, counsel for Plaintiff and Defendant discussed outstanding discovery, scheduling matters, and the general substance of Plaintiff's motion for class certification.  Counsel for Defendant stated that Defendant is opposed to this motion.


                                                      */s/ Jarrett L. Ellzey*
                                                  Jarrett L. Ellzey