# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THOMAS BUCHANAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 3:17-cv-00728-D<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT SIRIUS XM RADIO INC.'S OBJECTIONS AND
RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Sirius XM Radio Inc. ("Sirius XM") hereby serves the following Objections and Responses to Plaintiff's First Set of Interrogatories.

**PRELIMINARY STATEMENT**

The following objections are given without prejudice to Sirius XM's right to produce evidence of any subsequently discovered fact or facts that Sirius XM may later recall. Sirius XM reserves the right to change any and all objections herein as additional facts are ascertained, analyses are made, legal research is completed, and contentions are made. The objections contained herein are made in a good-faith effort, but should in no way be to the prejudice of Sirius XM in relation to further discovery, research, or analysis. Sirius XM expressly reserves its right to supplement or modify these objections with relevant information as it may hereafter discover and will do so to the extent required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

Sirius XM's objections to the Interrogatories are based on its interpretation and understanding of the Interrogatories themselves. If Plaintiff subsequently asserts an interpretation of any Interrogatory that differs from Sirius XM's understanding, Sirius XM reserves the right to supplement or modify its objections to address that interpretation.

By responding to these Interrogatories, Sirius XM is not implicitly or explicitly agreeing with or otherwise adopting Plaintiff's characterizations or definitions contained in them, or admitting or conceding that the information sought is likely to lead to the discovery of admissible evidence.

In response to each Interrogatory, Sirius XM will set forth and explain its objections, if any, to that Interrogatory, and will then set forth the information that it is providing in response to the Interrogatory. Sirius XM is willing to discuss the scope of appropriate responses to any of these Interrogatories that will address its objections to the Interrogatories.

## GENERAL OBJECTIONS

The following General Objections apply to Sirius XM's responses to each of the Interrogatories, in addition to any specifically stated objections to a specific Interrogatory.

1. Sirius XM objects to each and every Interrogatory to the extent that it is inconsistent with or seeks to impose obligations beyond those imposed by the Federal Rules of Civil Procedure and the Local Civil Rules, any applicable orders of this Court, or any stipulation or agreement of the parties. As explained in the remainder of these General Objections, Sirius XM shall follow the Federal Rules of Civil Procedure and the Northern District of Texas' Local Civil Rules, applicable orders of this Court, and any stipulation or agreement of the parties.

2. Sirius XM objects to each and every Interrogatory to the extent that such Interrogatory seeks information that is subject to the attorney-client privilege, attorney work

product doctrine, and/or any other applicable privilege or immunity, or to a protective order and/or stipulation of confidentiality between a defendant and any third party. Sirius XM hereby asserts all such privileges, protections, or immunities from discovery.

3. Sirius XM objects to each and every Interrogatory to the extent that the Interrogatory, as construed in view of the applicable instructions and definitions, is unduly burdensome to the extent that it purports to require Sirius XM to undertake an unreasonable inquiry or review of information and materials outside Sirius XM's possession, custody, or control or not readily obtainable or accessible by Sirius XM. Sirius XM's responses will be based upon (1) a reasonable search, in view of the time permitted to respond to the Interrogatories, of an appropriate set of facilities and files reasonably expected to possess responsive, non-duplicative information, and (2) inquiries of an appropriate number of Sirius XM employees who could reasonably be expected to possess responsive, non-duplicative information. In responding to these Interrogatories, Sirius XM will not be making inquiry to, or reviewing information in the possession, custody, or control of, the independently-owned telemarketing vendors retained by Sirius XM to make telemarketing calls on its behalf. Nor will Sirius XM be producing documents from the files of those vendors, or from the files of vehicle manufacturers, vehicle dealers, and other third parties referenced in these responses, which can be subpoenaed by Plaintiff. Files maintained by those independent entities are not within Sirius XM's possession, custody or control.

4. Sirius XM objects to each and every Interrogatory, and instruction and definition therein, to the extent that an Interrogatory seeks information that is confidential or proprietary business information, trade secrets, intellectual property or other proprietary information, or commercially sensitive information of a third party to whom Sirius XM owes a legal obligation

of non-disclosure. Such information will only be provided pursuant to a court-entered protective order and with the consent of the affected third parties.

## SPECIFIC OBJECTIONS TO PLAINTIFF'S INSTRUCTIONS AND DEFINITIONS

1. Sirius XM objects to Plaintiff's Instruction II.1 as overbroad and unduly burdensome to the extent that it purports to seek the production of documents and the furnishing of information that came into existence after the filing of the Complaint in this action. Sirius XM instead will provide responsive documents and information for the period between October 16, 2013 (i.e., the date selected by the Plaintiff in his discovery requests) and the date of the filing of the Complaint.

2. Sirius XM objects to Plaintiff's Instruction II.3 because Plaintiff seeks documents "in the possession, custody or control of [Sirius XM] or its affiliates, or its merged and acquired predecessors, its present and former directors, officers, partners, employees, accountants, attorneys or other agents, its present and former independent contractors over which it has control, and any other PERSON acting on [Sirius XM's] behalf." Such an instruction is overbroad and unduly burdensome to the extent it asks Sirius XM to search for every document anywhere in the company having any relationship to any of these Interrogatories. Specifically, to the extent that Plaintiff intends to include within the definition of "possession, custody or control" documents or information of any independently-owned telemarketing vendors with which Sirius XM has entered into contractual relationships to provide telemarketing services on its behalf, Sirius XM objects to the Instruction as being overbroad. Such documents and information are not within Sirius XM's possession, custody, or control. Sirius XM will respond to these Interrogatories with respect to information known to Sirius XM Radio Inc. and not any other entity. As explained in General Objection No. 3, Sirius XM will search documents and

review information that is reasonably accessible and within its possession, custody, and control, and will identify for Plaintiff the Sirius XM employees (including their titles or functions) whose files Sirius XM will search for responsive documents and information. Sirius XM will produce documents from those Sirius XM employees based on a list of search terms to be agreed to by the parties.

3. To the extent that Plaintiff intends, through the definition of "You" and "Your" in Definition I.7, to include any independently-owned telemarketing vendors with which Sirius XM has entered into contractual relationships to provide telemarketing services on its behalf, Sirius XM objects to the definition as being overbroad and seeking information that is not within Sirius XM's possession, custody, and control. Sirius XM will respond to these Interrogatories with respect to information known to Sirius XM Radio Inc. and not any other entity.

4. Sirius XM objects to Plaintiff's Definition of "Identify" in I.15 as unduly burdensome and unreasonable and beyond the scope of the Federal Rules of Civil Procedure. To the extent that Sirius XM references a specific document in the responses to these Interrogatories, Sirius XM will sufficiently identify that document.

5. Sirius XM objects to Plaintiff's Definition of "Identify" in I.16 as unduly burdensome and unreasonable and beyond the scope of the Federal Rules of Civil Procedure. To the extent any individual is being identified in Sirius XM's Interrogatory Responses, but was not previously identified in Sirius XM's Rule 26(a)(2) Initial Disclosures, Sirius XM will provide information regarding that individual comparable to the information set forth in the Initial Disclosures.

6. Sirius XM objects to Plaintiff's ESI Instruction V.1 because, by its own terms, it is not limited to documents within the possession, custody, or control of Sirius XM.  Sirius XM will undergo a reasonable search of documents within its possession, custody, and control.

7. Sirius XM objects to Plaintiff's ESI Instruction V.2 to the extent it seeks documents that are "not reasonably accessible" and to the extent the instruction asks Sirius XM to search documents beyond the bounds of Federal Rule of Civil Procedure 26(b)(2)(B).

**SPECIFIC OBJECTIONS AND RESPONSES TO PLAINTIFF'S INTERROGATORIES**

<u>**NO. 1:**</u> IDENTIFY the name, address and phone number of each PERSON who answered these Interrogatories, supplied information used or intended to be used in answering these Interrogatories, or assisted, in any way, with the formulation and preparation of the answers to these Interrogatories.

**RESPONSE:** The following individuals were consulted in the course of preparing the responses to these Interrogatories:

1. Karina Dahir, Senior Director-Listener Care.  She is located at Sirius XM's office at 1290 Avenue of the Americas in New York, NY and can be contacted through Jones Day.

2. Jeffrey Myers, Vice President-Sales Operations.  He is located at Sirius XM's office at 1290 Avenue of the Americas in New York, NY and can be contacted through Jones Day.

3. Chaya Leder, Senior Manager-Sales and Marketing Analytics.  She is located at Sirius XM's office at 1290 Avenue of the Americas in New York, NY and can be contacted through Jones Day.

4. Gail Berger, Vice President-Automotive Remarketing.  She is located at Sirius XM's office at 27200 Haggerty Road, Suite B5, Farmington Hills, MI 48331 and can be contacted through Jones Day.

5. Richard Lawsky, Director-Marketing Operations.  He is located at Sirius XM's office at 1290 Avenue of the Americas in New York, NY and can be contacted through Jones Day.

<u>**NO. 2:**</u> IDENTIFY and describe all DOCUMENTS reviewed, referred to, or consulted, in the preparation of YOUR answers and responses to these Interrogatories, including the Bates number of each DOCUMENT.

**RESPONSE:** Any documents specifically identified in the individual responses below are described in sufficient detail, including Bates numbers to the extent that such numbers have already been assigned to an individual document, and those documents will be produced. Sirius XM objects to identifying any other documents that may have been reviewed, referred to, or consulted, in the course of responding to these Interrogatories on the ground of burden and overbreadth grounds.

**NO. 3:** Explain precisely how YOU obtained the PLAINTIFF'S telephone number (972) 437-8642.

**RESPONSE:** Plaintiff voluntarily provided his telephone number to Bob Tedford Chevrolet, the dealer from which Plaintiff purchased the Honda Odyssey Van referenced in the complaint (the "Honda"). Plaintiff did so at or around the time Plaintiff purchased the Honda. Pursuant to Sirius XM's Pre-Owned Vehicle Program, in which Bob Tedford Chevrolet agreed to participate, Bob Tedford Chevrolet then provided this information to Sirius XM (through an intermediary entity with which Sirius XM has a contractual relationship). The actual transfer of the information from Bob Tedford Chevrolet to the intermediary and then to Sirius XM occurred electronically. A copy of the Dealer Enrollment Authorization Form, signed by Bob Tedford Chevrolet, which, among other things, further describes this process. See also the response to Interrogatory No. 12 below.

**NO. 4:** IDENTIFY, list, and describe all the actions YOU took to determine whether PRIOR EXPRESS WRITTEN CONSENT had been obtained CONCERNING telephone numbers YOU called, or YOU attempted to call, from October 16, 2013 to the present.

**RESPONSE:** Sirius XM objects to this Interrogatory as overbroad and unduly burdensome, and as seeking irrelevant information that is not proportional to the needs of the case, to the extent it asks for a description of "all actions" taken respecting the topic covered by this Interrogatory. First, Sirius XM does not make any telemarketing calls. Sirius XM has

entered into contractual relationships with certain independent vendors to make telemarketing calls on Sirius XM's behalf. Second, this lawsuit concerns do-not-call claims, and calls placed by telemarketing vendors on Sirius XM's behalf to telephone numbers that are not on any do-not-call list are not relevant to any of the issues in this case. Third, to the extent that "prior express written consent" may have been necessary in order for one of Sirius XM's telemarketing vendors to dial, on behalf of Sirius XM, either a landline or a cellular phone number listed on a do-not-call list during the period October 16, 2013 to the present, the details of all of the steps taken to obtain such consent from the owners of all of the telephone numbers dialed during that period requires a detailed and individualized inquiry or review of information and materials, including information and materials within the possession, custody, and control of Sirius XM's contracted telemarketing vendors.

**NO. 5:** IDENTIFY the specific date and substance of each COMMUNICATION, contact, or attempted COMMUNICATION or contact, between YOU and PLAINTIFF from October 16, 2013 to the present.

**RESPONSE:** Sirius XM did not place any phone calls to Plaintiff. Rather, Sirius XM understands that iPacesetters LLC, an independent telemarketing vendor, placed calls on Sirius XM's behalf. Sirius XM believes that iPacesetters may have called Plaintiff fifteen times during the course of Plaintiff's Sirius XM subscription, although Plaintiff did not answer any of the calls. Other vendors engaged by Sirius XM contacted Plaintiff by direct mail (IWCO Direct, Inc.) and by e-mail (CheetahMail Inc.) on Sirius XM's behalf during the course of Plaintiff's subscription and shortly thereafter. All of those communications (i.e., the phone calls placed by iPacesetters and the mail and emails sent by IWCO Direct and CheetahMail) are listed below; the contacts occurred in 2016. To the extent that Sirius XM has copies of IWCO Direct's mailings to Plaintiff, or CheetahMail's emails to Plaintiff, Sirius XM will produce those materials in response to the document production requests.

1. iPacesetters's phone contacts: July 18, 21, 22, 23, 25, 26, 27, 28, 29, 30; August 1, 2 (twice); 3, 4

2. CheetahMail's email contacts: May 4, 6-8, July 13; July 2, 29; August 8

3. IWCO Direct's direct mail contacts: May 5; June 13, 30; July 11, August 5-6, 17.

Also, on August 15, 2016, Sirius XM contacted Plaintiff by direct mail in response to Mr. Buchanan's request for a copy of Sirius XM's do-not-call policy.

**NO. 6:** Describe and explain (1) how YOU determine whether a telephone number is registered with the DNC, and (2) the procedure YOU use to IDENTIFY whether a telephone number is registered with the DNC.

**RESPONSE:** Sirius XM objects to this Interrogatory to the extent that it seeks information that is not within its possession, custody, or control. Sirius XM will respond with respect to information within its possession, custody or control. In short, Sirius XM provides to its contracted telemarketing vendors various lists of those of its present and former subscribers that Sirius XM wants the telemarketing vendors to contact by telephone. Prior to providing those lists to the telemarketing vendors, Sirius XM electronically scrubs those lists against its own internal do-not-call list, that is, its list of consumers who have asked Sirius XM to place their names on Sirius XM's company-specific do-not-call list. Sirius XM suppresses such consumers in the lists that it then provides to the telemarketing vendors. Each of Sirius XM's telemarketing vendors then scrubs the lists provided by Sirius XM to suppress names that are on that vendor's individual do-not-call list or, to the extent required by state law, on an applicable state do-not-call list. Sirius XM's vendors use one of several available services to assist them in those scrubbing functions. Sirius XM updates its do-not-call list and understands that its telemarketing vendors also update their do-not-call lists consistent with regulations set forth by the United States Federal Trade Commission (the "FTC"), the United States Federal Communications Commission (the "FCC") and, to the extent applicable, various state regulatory entities.

**NO. 7:** IDENTIFY and list the names of all THIRD PARTIES utilized by YOU to make DIALED CALLS to YOUR customers, past customers, or prospective customers from October 16, 2013 to the present. This Interrogatory includes, but is not limited to, all call centers, telephone providers, telegraph providers, cable providers, telecommunication providers, and electronic communication providers, suppliers, servicers, and carriers.

**RESPONSE:** During the requested time period, Sirius XM had contractual relationships with the following outbound telemarketing vendors to dial present and former Sirius XM subscribers:

1. Career Horizon, Inc., d/b/a TeleServices Direct ("TSD"). TSD is located at 5305 Lakeview Parkway South Drive, Indianapolis, IN 46268.

2. Convergys Corporation f/k/a Stream International Inc. ("Convergys"). Convergys is located at 201 East Fourth Street, Cincinnati, Ohio 45202-4206.

3. DialAmerica Marketing, Inc. ("DialAmerica"). DialAmerica is located at 960 Macarthur Boulevard, Mahwah, NJ 07495.

4. iPacesetters LLC ("iPacesetters"). iPacesetters is located at 135 Chestnut Ridge Road, Montvale, NJ 07645.

5. Jnet Communications LLC, d/b/a Servicom ("Servicom"). Servicom is located at 25 Independence Boulevard, Suite 103, Warren, NJ 07059.

6. The Results Companies LLC ("Results"). Results is located at 100 NE Third Ave., Suite 200, Fort Lauderdale, FL 33301.

7. StraightForward of Wisconsin, Inc. ("StraightForward"). StraightForward is located at 855 Community Drive, Sauk City, WI 53583.

8. Afni, Inc. ("Afni"). Afni is located at 404 Brock Drive, Bloomington, IL 61701.

9. Global Telesourcing, LLC ("GTS"). GTS is located at 4301 N. Fairfax Drive, #320, Arlington, VA 22203.

10. Marketlink Inc., an Allied Global Company ("Marketlink"). Marketlink is located at 3600 Army Post Rd., Des Moines, IA 50321.

11. InfoCision, Inc., 325 Springdale Road, Akron, OH 44333.

12. Alorica, Inc., 5 Park Plaza, Suite 11, Irvine, CA 92614.

**NO. 8:** IDENTIFY each DIALED CALL that YOU made to PLAINTIFF'S telephone number (972) 437-8642 from October 16, 2013 to the present, including the specific date of each DIALED CALL.

**RESPONSE:** Sirius XM refers to and incorporates its response to Interrogatory No. 5 in response to this Interrogatory.

**NO. 9:** IDENTIFY all equipment YOU used to make each DIALED CALL to PLAINTIFF'S telephone number (972) 437-8642 from October 16, 2013 to the present, including the manufacturer's name, model number, and type of equipment.

**RESPONSE:** Sirius XM did not itself make any calls to Plaintiff's telephone number. Sirius XM otherwise objects to this Interrogatory on grounds of relevance, and because the requested information is not within Sirius XM's possession, custody or control.

**NO. 10:** IDENTIFY all software, software applications, software packages, software systems, and software programs YOU used to make each DIALED CALL to PLAINTIFF'S telephone number (972) 437-8642 from October 16, 2013 to the present.

**RESPONSE:** Sirius XM did not itself make any calls to Plaintiff's telephone number. Sirius XM otherwise objects to this Interrogatory on grounds of relevance, and because the requested information is not within Sirius XM's possession, custody or control.

**NO. 11:** IDENTIFY all DIALERS, hardware, computer systems, and other electronic or non-electronic devices YOU used to make each DIALED CALL to PLAINTIFF'S telephone number (972) 437-8642 from October 16, 2013 to the present.

**RESPONSE:** Sirius XM did not itself make any calls to Plaintiff's telephone number. Sirius XM otherwise objects to this Interrogatory on grounds of relevance, and because the requested information is not within Sirius XM's possession, custody or control.

**NO. 12:** Describe and explain how PLAINTIFF provided YOU with PRIOR EXPRESS WRITTEN CONSENT to make DIALED CALLS to his telephone number (972) 437-8642.

**RESPONSE:** As explained in the response to Interrogatory No. 3, Sirius XM enters into contractual relationships with original vehicle manufacturers and dealers as well as other third parties pursuant to which those parties agree to participate in Sirius XM's vehicle subscription program and provide certain consumer information to Sirius XM. In the case of participating dealers, Sirius XM sends them a program welcome kit, containing consumer brochures and

literature as well as other point of sale information and instructions for those dealers to use in communicating with customers (and Sirius XM, or an OEM on its behalf, periodically sends refresh point of sale materials to participating dealers).  As explained in the response to Interrogatory No. 3, Bob Tedford Chevrolet agreed to participate in one of those contractual relationships (i.e., Sirius XM's Pre-Owned Vehicle Program).

At or about the time that Plaintiff purchased his Honda, per Sirius XM's instructions and the contractual requirements, personnel at Bob Tedford Chevrolet with whom Plaintiff communicated in the course of purchasing his Honda were required to advise Plaintiff that his Honda came with a subscription to Sirius XM's satellite radio service, and they were required to place Sirius XM subscription materials in the vehicle.  In addition, per Sirius XM's instructions and Sirius XM materials provided to Bob Tedford Chevrolet, Sirius XM's subscription may have also been disclosed, among other places, in a Sirius XM-branded sticker on the vehicle window, in advertising, or on Bob Tedford Chevrolet's website which includes an inventory of available vehicles and their features and accessories.  In the course of purchasing his Honda, Plaintiff voluntarily provided his telephone number to Bob Tedford Chevrolet in writing.  Bob Tedford Chevrolet then provided that information to a vendor that, in turn, provided it to Sirius XM, consistent with Bob Tedford Chevrolet's agreement with Sirius XM.

Shortly after Plaintiff purchased his Honda, Plaintiff received a Welcome Kit from Sirius XM in the mail that contained a copy of the Sirius XM Customer Agreement that governed the parties' relationship and welcomed him as a subscriber to the Sirius XM service.  The Sirius XM Customer Agreement incorporates by reference Sirius XM's Privacy Policy, which confirms to consumers that by using Sirius XM's service they are agreeing that Sirius XM can contact them by phone regarding their subscriptions.

Plaintiff's Sirius XM subscription required Sirius XM to provide what was promised to the consumer—satellite radio service along with full Sirius XM customer service privileges.

**NO. 13:** For all DIALED CALLS that YOU placed from October 16, 2013 to the present to a telephone number registered with the DNC, please IDENTIFY and list each telephone number.

**RESPONSE:** Sirius XM did not itself make any calls to subscribers. To the extent that Sirius XM's telemarketing vendors placed calls on Sirius XM's behalf, they would have placed calls to telephone numbers associated with present or former subscribers with whom Sirius XM had established business relationships consistent with 16 CFR 310.4 and 47 CFR 64.1200. As stated in the response to Interrogatory No. 6, Sirius XM provides to its telemarketing vendors various lists of those of its present and former subscribers that Sirius XM wants the telemarketing vendors to contact by telephone. Prior to providing those lists to the telemarketing vendors, Sirius XM suppresses from those lists any telephone numbers on Sirius XM's do-not-call list. Once the telemarketing vendors receive those lists, they then take steps to suppress any telephone numbers on the vendors' own do-not-call lists and, to the extent required by state law, any applicable state do-not-call lists, prior to making calls to the remaining numbers on the Sirius XM-provided lists. Sirius XM does not maintain a list of telephone numbers on the national do-not-call registry that were provided to vendors and that the vendors thereafter called.

**NO. 14:** For all DIALED CALLS that YOU placed from October 16, 2013 to the present, state the total number of individuals listed on YOUR internal do-not-call list. This requests includes lists maintained by any party who placed DIALED CALLS on your behalf.

**RESPONSE:** As explained in the response to Interrogatory No. 6, Sirius XM maintains an internal do-not-call list, appropriately updated consistent with appropriate regulatory agency guidance, and suppresses numbers on that list from the list of numbers that Sirius XM provides to its contracted telemarketing vendors. As a result, Sirius XM does not believe that its

telemarketing vendors placed telephone calls on Sirius XM's behalf, in violation of appropriate regulatory guidance, to any telephone number contained on Sirius XM's internal do-not-call lists.

**NO. 15:** How many unique telephone numbers have been called by YOU, and THIRD PARTIES on your behalf, for TELEPHONE SOLICITATION purposes from October 16, 2013 to the present?

    **RESPONSE:** Sirius XM did not itself make any calls to its subscribers. Sirius XM otherwise objects to this Interrogatory on relevance and burden grounds.

**NO. 16:** How many total DIALED CALLS have been made by YOU, and THIRD PARTIES on your behalf, for TELEPHONE SOLICITATION purposes from October 16, 2013 to the present?

    **RESPONSE:** Sirius XM did not itself make any calls to its subscribers. Sirius XM objects to this Interrogatory on relevance and burden grounds.

**NO. 17:** IDENTIFY and list all PERSONS having possession, custody, or control of DOCUMENTS or ESI relevant to this suit, and a brief description of the DOCUMENTS or ESI over which they have possession, custody, or control. This Interrogatory specifically includes possession, custody, or control of ESI relevant to this suit.

    **RESPONSE:** Sirius XM objects to this Interrogatory on relevance and burden grounds. Sirius XM will provide to Plaintiff's counsel a list of individuals whose files Sirius XM proposes to search for purposes of responding to Plaintiff's document requests.

**NO. 18:** IDENTIFY any THIRD PARTY you have retained or outsourced to contact PERSONS via telephone since October 16, 2013, and indicate the period of time during which each identified THIRD PARTY was so retained and the type of calls, or category of calls, made by that THIRD PARTY.

    **RESPONSE:** See the response to Interrogatory No. 7 above.

**NO. 19:** IDENTIFY and list all the types of electronic formats in which YOU maintain outbound dial list(s) and/or reports of calls from October 16, 2013 to the present, identifying each by the dates YOU used it and the purpose for which it was used.

    **RESPONSE:** Sirius XM maintains contact history information and conversion information it receives electronically from vendors using secure FTP sites in its Marketing Database, for which Sirius XM utilizes a database solution provided by Teradata Operations, Inc.

**NO. 20:** Describe your, or any THIRD PARTY whom placed DIALED CALLS on your behalf's, procedures, from October 16, 2013 to the present, for recording the requests of individuals who asked that calls to that individual cease.

**RESPONSE:** Sirius XM does not itself make telemarketing calls. Sirius XM respects customer privacy, and therefore trains agents employed by its contracted telemarketing vendors to honor promptly all subscribers' requests not to be contacted by those vendors, recording and updating contact preferences upon subscribers' requests and advising subscribers regarding the timing of the subscribers' requests. Sirius XM provides regular training to agents employed by its vendors regarding this topic and audits the vendors' agents to confirm their compliance with Sirius XM's training. Sirius XM requires the telemarketing vendors to use two processes for purposes of recording and updating subscriber requests not to be contacted. First, a preference management tool is used by the vendors' agents to update, as necessary, a subscriber's contact preferences. Second, a back-up process posts do-not-call requests recorded by a vendor's agents daily to a secure FTP site that is managed by a third party, Possible Now, which then compares those requests to the subscribers' contact preferences to confirm that each subscriber's updated preferences have been appropriately recorded in that subscriber's contact preferences in the subscriber management tool.

## VERIFICATION

I, **Karina Dahir**, Senior Director, Listener Care, state that the averments of fact contained in Sirius XM Radio Inc's Objections and Responses to Plaintiff's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

*[signature]*
**Karina Dahir**

Dated:  September 13, 2017                              Respectfully submitted,

/s/  *Natalia Delaune*
Albert J. Rota
Texas Bar No. 24056233
Natalia O. Delaune
Texas Bar No. 24074831
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Phone: (214) 220-3939
Fax: (214) 969-5100
Email: ajrota@jonesday.com
Email: ndelaune@jonesday.com

Thomas Demitrack (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Tel: (216) 586-3939
Fax: (216) 579-0212
Email: tdemitrack@jonesday.com

Lee A. Armstrong (admitted *pro hac vice*)
Allison L. Waks (admitted *pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY 10281
Tel: (212) 326-3939
Fax: (212) 755-7306
Email: laarmstrong@jonesday.com
Email: awaks@jonesday.com

*Attorneys for Defendant Sirius XM Radio Inc.*

## CERTIFICATE OF SERVICE

I certify that on September 13, 2017, a copy of the foregoing was served via email and U.S. Mail upon the following:

**HUGHES ELLZEY, LLP**
W. Craft Hughes
Texas Bar No. 24046123
craft@hughesellzey.com
Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@hughesellzey.com
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335

**TURNER LAW OFFICES, LLC**
Henry A. Turner
Georgia Bar No. 719310
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Telephone: (404) 378-6274
hturner@tloffices.com

**SIRI & GLIMSTAD LLP**
Aaron Siri
NY Bar No. 4321790
Mason A. Barney
NY Bar No. 4405809
200 Park Avenue, 17th Floor
New York, New York 10166
Tel: (212) 532-1091
E-Mail: aaron@sirillp.com

**WERMAN SALAS P.C.**
Douglas M. Werman
IL Bar No. 6204740
77 West Washington, Suite 1402
Chicago, Illinois 60602
dwerman@flsalaw.com
(312) 419-1008

**MARK A. ALEXANDER P.C.**
Mark A. Alexander
TX Bar No. 01007500
5080 Spectrum, Suite 850E
Addison, Texas 75001
Ph: 972.364.9700
Fax: 972. 239.2244
E-Mail: mark@markalexanderlaw.com

/s/ *Natalia Delaune*