**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| THOMAS BUCHANAN on behalf of himself and all others similarly situated, | Case No.: |
| Plaintiff, | 3:17-cv-00728-D |
| v. | |
| SIRIUS XM RADIO, INC., | |
| Defendant. | |

**DECLARATION OF JARRETT L. ELLZEY IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare as follows:

1.      My name is Jarrett L. Ellzey.

2.      I am over twenty-one years of age.

3.      I am fully competent to make the statements included in this declaration.

4.      I have personal knowledge of the statements included in this declaration.

5.      I am a partner at Hughes Ellzey, LLP ("Hughes Ellzey").

6.      I am counsel for Thomas Buchanan ("Buchanan") and the class in this matter.

7.      I submit this declaration in support of Plaintiff's Motion for Class Certification.

8.      This declaration includes a rendition of certain procedural facts, as well as my firm's litigation and class action experience.

## RELEVANT PROCEDURAL HISTORY OF THIS CASE

9.     This class action concerns Plaintiff's claim that Defendant has systematically and repeatedly violated the Telephone Consumer Protection Act by, inter alia, making telemarketing calls to individuals who have registered with either the national do-not-call list, or placed their telephone numbers on Defendant's own internal do-not-call list. (Dkt. 1 at 1.)

10.     On August 1, 2017, the Court entered a Scheduling Order which, among other things, set the deadline to file a motion for class certification no later than October 16, 2017 (the "Scheduling Order").   (Dkt. 28.)   Plaintiff served its First Request for Production of Documents and First Set of Interrogatories on Defendant on August 7, 2017. Initially, Defendant's responses were due September 6, 2017, but at Defendant's request, Plaintiff granted Defendant an additional week to respond.   Given this extension, on September 11, 2017, the Court granted and entered the parties' agreed motion extending the deadline for filing the certification motion to October 23, 2017. (Dkt. 30.)

11.     Defendant served its responses and objections to Plaintiff's discovery requests on September 13, 2017.   Nevertheless, at that time Defendant did not produce any documents responsive to Plaintiff's request.   Instead, on September 25, 2017 the parties met and conferred regarding Defendant's discovery requests.   Thereafter, Defendant continued to object to producing most of the documents Plaintiff requested.   Through letters, emails and phone calls, the parties continued to negotiate the proper scope of discovery through October and November.

12.     Given that Defendant had yet to produce any documents, the parties made a joint request to the court to extend Plaintiff's deadline for filing its class certification

motion.  In an order entered on October 24, 2017, the Court granted the parties' agreed to motion, extending the deadline for filing the certification until January 12, 2018, and extending other deadlines set in the Scheduling Order.  (Dkt. 34.)

13.    Among other objections, Defendant insisted that Plaintiff agree to an unusual and onerous protective order.  Defendant insisted that the protective order must include a provision whereby anyone receiving any "private personal information" (which Defendant claims includes such common information as an individual's name, phone number, or address), agree to employ stringent digital data protection procedures, to limit who can see the data, and that anyone receiving the data agree to personally indemnify Defendant if any of the data is hacked, stolen or in any way misused.

14.    These highly unusual provisions, especially the requirement that data recipients like Plaintiff's counsel and its vendors agree to unlimited personal liability should anything go wrong, were entirely unacceptable to Plaintiff.  Plaintiff proposed several alternative ways of protecting Defendant's data, but these were rejected by Defendant.

15.    Defendant eventually made its first production of documents on November 14, 2017, but only after Plaintiff agreed in writing that it would treat certain of Defendant's agreements with its telemarketing vendors as attorneys-eyes-only material pending execution of the final protective order.

16.    Over the following two weeks, Defendant produced over 2,000 pages of documents, making its final production on December 1, 2017.  Following this production, Defendant did not state that it had any other additional non-confidential documents it intended to produce.

17.     At the same time, Plaintiff responded to Defendant's requests for production and interrogatories.  Plaintiff produced numerous responsive documents, making its final supplemental production on December 12, 2017.

18.     Throughout December, the parties continued to negotiate the terms for the protective order, both over email and on the phone.   Despite Plaintiff's objections, Defendant insisted on inclusion, inter alia, of the stringent data protection requirements and the personal indemnification provisions.  Plaintiff offered to agree to the data protection requirements (despite the significant cost it would impose), if Defendant would agree to drop the indemnification demands.  Plaintiff made this request because, inter alia, the one vendor that Plaintiff identified who could meet the stringent security requirements at a reasonable cost refused to agree to the indemnification.  Nevertheless, Defendant rejected this offer.

19.     On December 13, 2017, Defendant suggested that it not produce any documents with personal private information, which again included any documents with customer names, and that the parties agree to a simple protective order.  Again, however, Defendant did not state that it had additional non-confidential documents it was withholding and still intended to produce.

20.     In response, Plaintiff suggested that it could only agree to drop its demand for documents with so called personal information (such as Defendant's telemarketing call logs and its internal do-not-call list) if Defendant would agree to stipulate to certain elements of Rule 23 that Plaintiff is required to establish in its motion for class certification (e.g., numerosity, commonality, and ascertainability).  If Defendant did not agree to these stipulations, Plaintiff stated that it would need to move to compel production

of certain documents such as the call logs pursuant to a standard court ordered protective order.

21.     On January 2, 2018, Defendant agreed to stipulate only to numerosity, but continued to refuse to produce any call logs or its internal do-not-call list.   Following continuing discussions, the parties agreed that Plaintiff could state in its class certification motion that Defendant has the call logs, which can be produced following class certification, and provide a description of the data fields in those logs.  One of Plaintiff's issues since at least October was that in addition to producing phone numbers, Plaintiff also required Defendant to produce the names of the individuals it called.  Therefore, if Plaintiff was going to agree to not move to compel production of the call logs and internal do not call list, it told Defendant that it needed to know it was possible after class certification for Defendant to match the phone numbers in the logs to names and addresses of the individuals called.

22.     In order to allow Defendant time to look into this inquiry, the parties agreed to a two-week extension of Plaintiff's deadline to file his class certification motion.  On January 9, 2018, the court granted the parties' agreed to motion, setting the new deadline for class certification to January 26, 2018.  (Dkt. 36.)  Again, when agreeing to this extension, Defendant failed to state that it still had non-confidential documents it intended to produce.

23.     On January 18, 2018, Defendant responded to Plaintiff's request regarding matching individuals' names with their phone numbers, stating that it was possible and could be produced following class certification.   However, even during this last

communication, sent just a week before the class certification deadline, Defendant still did not state that it was withholding additional documents that it still intended to produce.

24.     It was not until January 24, 2018, at 6:02 P.M., that Defendant's counsel informed Plaintiff's counsel in an email that she wanted "to give you a heads up that a production of additional non-confidential documents will be coming tomorrow.   We of course have other documents to produce once we address/resolve confidentiality."   This was the first time that Defendant stated that it intended to produce additional non-confidential documents.

25.     In her email, Defendant's counsel stated that these documents include "a few documents related to marketing mailings" Defendant sent to Plaintiff.   She also stated that they would be producing a "White Paper" that it had described in its interrogatory responses as having been "prepared for the New York Department of State, Division of Consumer Protection, regarding Sirius XM's established business relationship with its subscribers."

26.     In addition to these non-confidential documents that Defendant chose to withhold until the last moment, Defendant's counsel also identified several categories of documents that it was withholding based on the need for a confidentiality agreement.   Even though Plaintiff was aware that Defendant was withholding a few documents based on the need for a protective order, the January 24, 2018 email was the first time Defendant identified the scope of what it was withholding.   For example, as noted, in November the parties entered into an attorneys-eyes-only agreement regarding Defendant's contracts with its telemarketing vendors.   Nevertheless, in her January 24th email Defendant's counsel

stated for the first time that it had withheld additional confidential "service agreements with telemarketing vendors."

27.     In light of the above, Plaintiff filed a motion to extend the January 26, 2018 deadline to file his motion for class certification.  The Court granted the motion and extended the deadline to March 27, 2018.  On March 7, 2018, Plaintiff filed a motion to compel production of Defendant's outstanding documents, including the call data he had sought since the previous fall.  The Court ordered the parties to a face-to-face conference, which was attended by myself, Daniel Hutchinson, and Defense counsel, Thomas Demitrack on March 20, 2018 in Chicago, Illinois.  The parties made substantial progress toward resolving their discovery dispute.

28.     While the parties were engaged in discovery negotiations, Plaintiff also conducted substantial discovery on third parties and sent requests to government agencies regarding consumer complaints against Defendant.   On or about March 23, 2018, in response to a Freedom of Information Act request, the Federal Communications Commission ("FTC") produced a spreadsheet containing a list of all the complaints it received against Sirius for violation of the National Do-Not-Call Registry between February 2010 and March 13, 2018.  This spreadsheet shows that between October 16, 2013, and March 13, 2018, the FTC received 6,975 complaints that Sirius violated the National Do Not Call Registry.  A copy of the spreadsheet can be provided upon request.

**EXPERIENCE OF HUGHES ELLZEY, LLP**

29.     Hughes Ellzey is a boutique litigation firm in Houston, Texas that specializes in consumer class actions, as well as commercial, individual consumer, personal injury, and employment litigation.  In addition to this matter, my firm has been appointed class counsel

in a number of class actions under the Telephone Consumer Protection Act ("TCPA") and consumer protection statutes. *See, e.g., Justin Mark Boise v. ACE American Ins. Co.*; Case No. 1:15-cv-21264 (S.D. Fla. Oct. 18, 2017) (TCPA); *Matthew Scott Robinson v. Paramount Equity Mortgage, LLC;* Case No. 2:14-cv-02359-TLN-CKD (E.D. Cal. July 13, 2017) (TCPA); *Teofilo Vasco, et al. v. Power Home Remodeling Group LLC*; Case No. 2:15-cv-04623 (E.D. Pa. Oct. 12, 2016) (TCPA); *John Colin Suttles, et al. v. Specialty Graphics, Inc.*; Case No. 1:14-cv-00505 (W.D. Tex. April 25, 2016) (TCPA); *Ludette Crisler, et al. v. Audi AG, Volkswagen AG, et al.*, Case No. 2:11-cv-01719 (C.D. Cal. Oct. 30, 2013) (products); *Gretchen Patch, et al. v. Millennium Products, Inc.*, Case No. BC448347 (Superior Court of California, Los Angeles County, April 3, 2012) (products).

30.     Multiple district courts have commented on my firm's useful knowledge and experience in connection with class action litigation.

31.     For example, in *Justin Mark Boise v. ACE American Ins. Co.*, Judge Marcia Cooke, U.S. District Judge for the Southern District of Florida, stated, "Class Counsel, Hughes Ellzey, LLP, has substantial experience in TCPA class action litigation and has often served as class counsel in similar cases." *See* Case No. 1:15-cv-21264 (S.D. Fla. Oct. 18, 2017) (Doc. 101, p. 8).

32.     Similarly, in *Matthew Scott Robinson v. Paramount Equity Mortgage, LLC;* Judge Troy L. Nunley, U.S. District Court Judge for the Eastern District of California, recently acknowledged that "Plaintiff's counsel [Hughes Ellzey] has extensive experience in TCPA class action litigation and has often served as class counsel in such cases." *See* Case No. 2:14-cv-02359 (E.D. Cal. July 13, 2017) (Doc. 27, p. 9).

33.      Similarly, in *Teofilo Vasco, et al. v. Power Home Remodeling Group LLC*, Judge Mark A. Kearney, U.S. District Court Judge for the Eastern District of Pennsylvania, found that "Vasco's counsel, W. Craft Hughes, is experienced in class action litigation under the [TCPA] Act" upon granting final approval to the TCPA class settlement at issue. *See* Case No. 2:15-cv-04623 (E.D. Pa. October 12, 2016) (Dkt. No. 43, pp. 7-8).

34.      Also, in *John Colin Suttles, et al. v. Specialty Graphics, Inc.*, U.S. District Judge Robert L. Pitman of the Western District of Texas found Hughes Ellzey to be "experienced counsel…that meets the requirements of Fed. R. Civ. P. 23" when certifying a nationwide TCPA class and appointing Hughes Ellzey class counsel. *See* Case No. 1:14-cv-00505 (W.D. Tex. April 25, 2016) (Dkt. No. 73, pp. 2-3).

35.      In appointing Hughes Ellzey as class counsel in the case of *Lebar, et al. v. Volkswagen Group of America, Inc.*, Hon. Kevin McNulty, U.S. District Court Judge for the District of New Jersey, found Hughes Ellzey "experienced in matters of this nature." *See* Case No. 2:10-cv-05126 (D. N.J. Oct. 30, 2013) (Doc. 100).

36.      And in *Gretchen Patch, et al. v. Millennium Products, Inc.*, Hon. John Shepard Wiley of the Superior Court of California, Los Angeles County, named Hughes Ellzey as class counsel and recognized that Hughes Ellzey "has been appointed class counsel in other similar consumer class actions." *See* Case No. BC448347 (Superior Court of California, Los Angeles County April 3, 2012).

37.      Additional information about my firm is available at www.hughesellzey.com.

## W. CRAFT HUGHES

38.      Mr. Hughes graduated from Texas Tech University in 2000 and from South Texas College of Law in 2004.

39.     He has extensive experience litigating consumer protection class actions, including those under the TCPA.

40.     Mr. Hughes is AV rated by Martindale Hubbell and was selected for inclusion in the 2013 "Texas Super Lawyers" list at the age of 35—one of the youngest lawyers in Texas to ever be selected, and have been selected every subsequent year through the present.

41.     In addition to his class action practice, Mr. Hughes has obtained at least seventeen jury verdicts as lead counsel in civil litigation matters. On November 10, 2015, Mr. Hughes obtained a unanimous jury verdict of $5.4 Million against Wells Fargo Bank for a client in a wrongful foreclosure matter.[1] In May of 2013, Mr. Hughes obtained a unanimous jury verdict of $125,000 for a machinist client who alleged his former employer wrongfully terminated him after he refused to help them illegally manufacture AK-47 machine gun silencers at defendant's warehouse during weekends.[2]

42.     Various newspapers and media publications have published articles discussing Mr. Hughes' verdicts. Law360 has published 19 news articles discussing Mr. Hughes' firm and 141 articles discussing cases we've filed in federal courts nationwide. I've been named "Litigator of the Week" by the Texas Lawyer magazine on several occasions, including an article published August 26, 2013 titled "Fast Weapon, Fast Results." The Houston Chronicle has published articles covering his verdicts as well, including "Texas Law Trips Up Bank" discussing the *Wolf* verdict on December 10, 2015;

---

[1] *Mary Ellen Wolf v. Wells Fargo Bank, N.A.*; Cause No. 2011-36476; In the 151st District Court of Harris County, Texas.

[2] *Darryl McKnight v. Team Industrial Services, Inc., et al*; Cause No. 2012-03767; In the 80th Judicial District Court of Harris County, Texas.

and "Whistle-blower Wins $125,000 in Suit Over AK-47 Silencers" discussing the *McKnight* verdict on June 1, 2013.

## JARRETT L. ELLZEY

43.     I graduated from Texas Tech University in 2000 and from South Texas College of Law in 2003.

44.     I have extensive experience litigating consumer protection class actions, including those under the TCPA. I was lead counsel in several TCPA class actions during the years 2016 and 2017 that resulted in combined settlements exceeding $15 million dollars. I litigated numerous class actions involving complex issues, many of which resulted in mediated settlements.

45.     I also have significant trial experience, having tried over ten cases to verdict since 2012. After a month-long trial in December of 2012, I obtained a unanimous jury verdict of $16.5 Million against several defendants (jointly and severally) on behalf of a commercial client in a breach of fiduciary duty and commercial real estate fraud lawsuit.[3] In recognition of obtaining the second largest fraud verdict in Texas for 2012, I was selected as and Honoree to the Texas Verdicts Hall of Fame.

46.     In September of 2015, I obtained a jury verdict of $285,000 for plaintiffs in a consumer mortgage dispute. *See Danielle Geoffrion and Darren Kasmir v. Nationstar Mortgage, LLC*; Case no. 4:14-cv-00350 (E.D. Tex. Sept. 14, 2015) (Hon. Amos Mazzant). The case was filed under the Real Estate Settlement Procedures Act, a trial under which is rare,

---

[3] *SSC Opportunity Partners, LLC v. L.S. "Trey" Halberdier, III, Robert D. Banzhaf, Bandier Realty Partners, LLC, et al.*; Cause No. 2011-43194; In the 215th Judicial District Court of Harris County, Texas.

and victory rarer for plaintiffs.  For this achievement, I was named "Litigator of the Week" by *Texas Lawyer* magazine, a state-wide publication.

47.      I have been named a Super Lawyer every year since 2014, and was selected as a Rising Star in 2013.  In 2016, the Texas Bar Foundation elected Mr. Ellzey as a fellow.  Only 1/3 of 1 percent of members of the State Bar of Texas hold this title.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 27, 2018.

     */s/ Jarrett L. Ellzey*
Jarrett L. Ellzey