# Exhibit 17

Decision and Order
(SXM_013876-81)
*See* Dkt. 60-17

State of New York
Consumer Protection Board

CASE #11 DNC 04 – In the Matter of the Alleged Violations of the Do Not Call Registry Against Sirius XM Radio, Inc.

DECISION AND ORDER

INTRODUCTION

By direction of the New York State Department of State (Department), Division of Consumer Protection, it has been determined that Sirius XM Radio, Inc. (Sirius) is liable for violating New York General Business Law (GBL) § 399-z (3) and 21 NYCRR § 4603.1 by making twenty-two (22) unsolicited telemarketing sales calls to consumers whose telephone numbers were validly registered on the Federal Trade Commission's national do-not-call registry (FTC Registry).

Sirius is liable for a penalty in the amount of $11,000 per violation, resulting in a total penalty of two hundred forty two thousand and 00/100 Dollars ($242,000). (GBL § 399-z (6) (a) and 21 NYCRR § 4603.4(j)).

THE LAW AND RULES

Pursuant to GBL Section 399-z(2)(b), the Department is authorized to have the FTC Registry established, managed and maintained by the Federal Trade Commission pursuant to 16 C.F.R. § 310.4 (b) (1) (iii) (B) to serve as the New York State no telemarketing sales calls statewide registry.

No telemarketer or seller may make or cause to be made any unsolicited telemarketing sales calls to any consumer more than thirty-one (31) days after the telephone number appears on the FTC Registry, pursuant to 16 C.F.R. Section 310.4(b)(1)(iii)(B). (GBL § 399-z (3) and 21 NYCRR § 4603.1).

Each call to a telephone number which validly appears on the FTC Registry for more than thirty-one (31) days shall be deemed a separate occurrence for purposes of the penalty and enforcement. (21 NYCRR § 4603.1).

The Department has authority, upon a complaint or upon its own initiative, to conduct an inquiry as to the sufficiency of any alleged violations. (21 NYCRR § 4603.4(a)).

The Department has the authority to assess a fine not to exceed eleven thousand dollars ($11,000) for each do-not-call violation. (GBL § 399-z (6) (a) and 21 NYCRR § 4603.1).

## DECISION

On or about July 10, 2013, the Department issued a Notice of Apparent Liability (NOAL) to Sirius for do-not-call violations pursuant to GBL § 399-z(3) and 21 NYCRR § 4603.1. Sirius was served with a NOAL which detailed the Department's determination that Sirius apparently violated GBL § 399-z(3) and 21 NYCRR § 4603.1 by causing twenty-two (22) unsolicited telemarketing sales calls to be made during the period March 2010 through July 2011 to telephone numbers that validly appeared on the FTC Registry. Accordingly, the NOAL stated Sirius is liable for a penalty of $11,000 per violation, resulting in a total penalty of two hundred forty-two thousand dollars ($242,000). (GBL § 399-z (3) and 21 NYCRR § 4603.4 (j)).

Sirius served its response to the Department on or about October 28, 2013. The response from Sirius included a copy of their records regarding the policies, procedures and training materials used by its "Authorized Telemarketers" and a memorandum in opposition to the Notice of Apparent Liability (NOAL).

In its memorandum, Sirius denies the allegations set forth in the NOAL and states that it is not liable for the twenty-two (22) alleged violations of the Do-Not-Call

CONFIDENTIAL
SXM_013877


("DNC") statute. Sirius claims that it is not liable under the existing business relationship (EBR) exception since an EBR exists between Sirius and the consumers based upon either a direct purchase of a subscription, consumers' trial subscription, or an initial subscription from the consumer's lease or purchase of a qualified vehicle. Sirius further states, in part, that it has arrangements with every major automaker for the installation of satellite radios in vehicles. Those consumers who lease or purchase a vehicle with a pre-installed satellite radio generally receive an initial free subscription to Sirius XM. Sirius notes that the subscriptions are generally included as a line item on the Monroney Label (i.e., Maroney Label is the window sticker required to be displayed on all new automobiles in the United States which includes information regarding the make, model, year and suggested retail price) of the consumer's vehicle. After the car is purchased or leased by the consumer, Sirius then sends the consumer a welcome kit which includes a welcome letter and customer agreement, along with other important information regarding their accounts, subscriptions, and services.

Sirius uses a number of companies to place the above noted calls to consumers on its behalf. Those companies include Dial America, The Results Companies, LLC (f/k/a Results Technologies, Inc.), Sykes Acquisition, LLC, Teleservices Direct, and Jnet/Servicom. All of the above noted telemarketers enter into executed agreements with Sirius to place the calls on its behalf.

The twenty-two complaints in question primarily involve consumers who purchased or leased a vehicle and as part of that purchase or lease received a free trial subscription for a period of three (3) or six (6) months. Approximately fourteen (14) of the twenty-two (22) consumer complaints filed with the Department involved the purchase or lease of a vehicle with a free trial subscription from Sirius. The eight (8) remaining consumer complaints involved consumers' who did not have an EBR with Sirius either

3

CONFIDENTIAL

SXM_013878

by leasing or purchasing a vehicle, purchasing a subscription directly from Sirius or having obtained a subscription as part of a trial.

To establish an existing business relationship, a telemarketer must show the following under 21 NYCRR §4603.2 (b):

> A prior or existing relationship formed by a voluntary two-way communication between a consumer and a telemarketer with or without an exchange of consideration, on the basis of the consumer's purchase or transaction with the telemarketer within the 18 months immediately preceding the date of the telephone call or on the basis of the consumer's inquiry or application regarding products or services offered by the telemarketer within the three months proceeding the date of the call, which relationship has not been previously terminated by either party.

Sirius has failed to establish an EBR with those consumers who purchased or leased vehicles with a free trial subscription to Sirius XM radio. The relationship with the consumer is not a communication between a consumer and telemarketer as that term is defined under the applicable regulation. The relationship that exists at the time of the lease or purchase of a vehicle is between the consumer and a car dealer who is selling the vehicle on behalf of a major automaker. Telemarketer is defined as "any person who, for financial profit or commercial purposes in connection with telemarketing, makes a telemarketing sales call to a consumer in this State or any person who directly controls or supervises the conduct of a telemarketer. Telemarketer shall also include any person, firm, or corporation acting as an agent or representative of such telemarketer" (see 21 NYCRR §4602.2(e)). While Sirius has arrangements with every major automaker to have the satellite radios installed in vehicles that will ultimately be offered for sale through a car dealer, Sirius has not entered into an arrangement with any of the major automakers to act as its agent in offering the Sirius XM free radio subscription to the

4

consumer at the time of purchase or lease of the vehicle. The first contact that Sirius has with the consumer, through its designated telemarketers, is after the consumer either leases or purchases the vehicle and Sirius sends the consumers their welcome kits, which includes a welcome letter and customer agreement.

In addition, the relationship between the consumer and Sirius is not a voluntary two-way communication. The consumer is not provided with the option to voluntarily cease communication with Sirius at the time of the purchase or lease of the vehicle since Sirius does not have a designated telemarketer or agent present when the transaction is being conducted. The consumer also does not have the option of opting out of the purchase or lease agreement as there is no opt out clause which would allow the consumer to decline the free subscription at the time of lease or purchase of the vehicle. Consumers who purchase or lease a vehicle with the free trial subscription cannot decline the free trial offer when they purchase or lease a vehicle and can only decline the continuation of the free subscription after Sirius contacts them with a welcome kit containing the welcome letter and customer agreement. In other words, the consumer is never afforded the opportunity to cease communication with Sirius at the time of the purchase or lease of the vehicle.

Thus, Sirius has not established an existing business relationship with the consumers that would allow them to contact consumers within the 18-month window for the EBR.

The eight (8) calls that were made by Sirius that were not associated with the purchase or lease of a vehicle involve calls that were made by Sirius to consumers who did not purchase a subscription directly from Sirius or did not obtain a subscription as part of a trial.

## CONCLUSION

The law and the record support the conclusion that Sirius is liable for making twenty-two (22) unsolicited telemarketing sales calls and is liable for a penalty of $11,000 per violation for a total of two hundred forty two thousand and 00/100 Dollars ($242,000). Sirius should remit two hundred forty-two thousand dollars ($242,000) paid to the order of the New York State Department of State along with a copy of this Decision and Order to:

> NYS Department of State
> One Commerce Plaza
> 99 Washington Avenue
> Attention: John E. Kenny
> 5th Floor
> Albany, New York 12231

Dated: 9/4/14

Albany, New York

John E. Kenny
Senior Attorney

CONFIDENTIAL                                                                                                         SXM_013881