IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THOMAS BUCHANAN on behalf of himself
and all others similarly situated,

                                                 Case No. 3:17-cv-00728-D

       Plaintiff,

v.

SIRIUS XM RADIO, INC.,

       Defendant.


**MOTION FOR ORDER PRELIMINARILY APPROVING SETTLEMENT AND
CONDITIONALLY CERTIFYING THE RULE 23 SETTLEMENT CLASS**

## TABLE OF CONTENTS

I.     **INTRODUCTION** ................................................................................................. 1

II.    **BACKGROUND** .................................................................................................. 1

III.   **SUMMARY OF SETTLEMENT TERMS** ....................................................... 4

      A.    Settlement Class Definition ................................................................. 4

      B.    Settlement Benefits ............................................................................. 5

      C.    Scope of Release ................................................................................. 7

      D.    Opportunity to Opt Out ...................................................................... 7

      E.    Class Counsel's Application for Fees, Costs, and Expenses ............... 7

IV.   **ANALYSIS & AUTHORITIES** ........................................................................ 7

      A.    Standards Governing Approval of Class Action Settlements ............... 7

      B.    The Settlement is Fair, Reasonable, and Adequate ............................ 9

            (1)   Class Representatives and Class Counsel Have and Continue
                  to Zealously Represent the Class. ............................................. 9

            (2)   The Settlement is the Product of Good Faith, Informed, and
                  Arm's-Length Negotiations. ..................................................... 9

            (3)   The Settlement Provides Significant Benefits in Exchange for
                  the Compromise of Strong Claims. ......................................... 10

                   i.    The Settlement Mitigates the Risks, Expenses, and
                        Delays the Class Would Bear with Continued
                        Litigation. ...................................................................... 10

                   ii.   Class Members Are Eligible for Relief Through a
                        Straightforward Claims Process ..................................... 11

                   iii.  Counsel Will Seek Reasonable Attorneys' Fees and
                        Costs .............................................................................. 12

            (4)   The Proposed Settlement Treats All Class Members Equitably
                  Relative to One Another. ......................................................... 14

      C.    Certification of the settlement class is appropriate ........................... 14

i

## TABLE OF CONTENTS

(1)    Rule 23(a)(1) Numerosity Requirement ............................................................ 15

(2)    Rule 23(a)(2) Commonality Requirement ..................................................... 15

(3)    Rule 23(a)(3) Typicality Requirement ........................................................ 17

(4)    Rule 23(a)(4) Adequacy Requirement ........................................................ 17

      i.     Buchanan is an Adequate Representative ........................................... 17

      ii.    Class Counsel is Adequate .................................................... 18

(5)    Rule 23(b)(3) Requirements ..................................................................... 19

      i.     Common Questions of Law or Fact Predominate ............................. 20

      ii.    The Settlement Class Satisfies the Superiority Requirement ................................................................................. 21

D.    Appointment of Class Counsel ................................................................. 22

E.    The proposed notice procedure should be approved .............................. 22

F.    The Court Should Schedule the Final Approval Hearing ........................ 27

V.    CONCLUSION & PRAYER ........................................................................ 27

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

<u>**Cases**</u>

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................. 14, 21

*Ayers v. Thompson*,
  358 F.3d 356 (5th Cir. 2004) ........................................................................ 10, 14

*Buettgen v. Harless*, No. 3:09-CV-00791-K, 2013 WL 12303143, at
  *13 (N.D. Tex. Nov. 13, 2013) ...................................................................... 13

*Burford v. Cargill, Inc.*, No. CIV.A. 05-0283, 2012 WL 5471985, at
  *6 (W.D. La. Nov. 8, 2012) ......................................................................... 14

*Cabiness v. Educ. Fin. Sols., LLC*, No. 16-cv-01109-JST, 2019 U.S.
  Dist. LEXIS 50817, at *7 (N.D. Cal. Mar. 26, 2019) ............................................. 25

*Cordoba v. DirecTV, LLC*, 320 F.R.D. 582, 600 (N.D. Ga. 2017) ................................... 16

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ....................................................................... 8

*DeBremaecker v. Short*,
  443 F.2d 733 (5th Cir. 1970) ....................................................................... 14

*East Tex. Motor Freight Sys. v. Rodriguez,* 431 U.S. 395, 403 (1977) ............................ 17

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................................. 23

*Fairway Med. Ctr., L.L.C. v. McGowan Enterprises, Inc.*, No. CV 16-
  3782, 2018 WL 1479222, at *3 (E.D. La. Mar. 27, 2018) ......................................... 13

*Forbush v. JC Penney Co.*,
  994 F.2d 1101 (5th Cir. 1993) ...................................................................... 15

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL
  2581324, at *4 (N.D. Ill. Aug. 20, 2009) ......................................................... 15

*Hooker v. Sirius XM Radio Inc.,* Civil Action No. 4:13-cv-00003 (E.D.
  Va. 2013) ........................................................................................... 4, 16

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ........................................................... 23

*In re Pool Prod. Distribution Mkt. Antitrust Litig.*, No. MDL 2328,
   2015 WL 4528880, at *22 (E.D. La. July 27, 2015) ........................... 13

*In re Serzone Products Liab. Litig.*,
   231 F.R.D. 221 (S.D.W. Va. 2005) ...................................................... 21

*Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ............................................. 20

*James v. City of Dallas*,
   254 F.3d 551 (5th Cir. 2001) ............................................................... 17

*Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 310 (S.D. Miss.
   2014) ................................................................................................... 13

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th
   Cir. 1974) ............................................................................................ 13

*Jones v. Singing River Services Foundation*, 865 F.3d 385, 295-96 (5th
   Cir. 2017) ............................................................................................ 10

*Krakauer v. Dish Network, L.L.C.*, 311 F.R.D. 384, 387 (M.D.N.C.
   2015) ................................................................................................... 21

*Mohamed v. Off Lease Only, Inc.*, No. 15-cv-23352-Civ-
   COOKE/TORRES, 2018 U.S. Dist. LEXIS 5600, at *3 (S.D. Fla.
   Jan. 12, 2018) ..................................................................................... 26

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................ 23

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) ............................................... 15, 17, 18

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) ....................................................... 8, 10

*Pederson v. La. State Univ.*,
   213 F.3d 858 (5th Cir. 2000) ............................................................... 15

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985).................................................................................................... 23

*Regents of Univ. of Cali. v. Credit Suisse First Boston (USA)*, 482 F.3d
    372 (5th Cir. 2007) ................................................................................................ 19

*Reid v. I.C. Sys.*, No. CV-12-02661-PHX-ROS, 2018 U.S. Dist.
    LEXIS 125663, at *9 n.2 (D. Ariz. July 26, 2018)................................................ 25

*Sanchez- Knutson v. Ford Motor Co.,* 310 F.R.D. 529, 539 (S.D. Fla.
    2015)....................................................................................................................... 19

*Sheinberg v. Sorensen,* 606 F.3d 130, 132 (3d Cir. 2010) .......................................... 18

*Smith v. Crystian*,
    91 Fed. Appx. 952 (5th Cir. 2004)........................................................................... 8

*Stirman v. Exxon Corp.*,
    280 F.3d 554 (5th Cir. 2002) ................................................................................. 17

*Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) ...................................... 20

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ......................................................................... 13, 14

*Whitten v. ARS Nat. Services, Inc.*, No. 00-6080, 2001 WL 1143238, at
    *4 (N.D. Ill. Sept. 27, 2001) .................................................................................. 19

**Statutes**

47 C.F.R. § 64.1200(d)(3)............................................................................................... 1

47 U.S.C. § 227, *et seq*.................................................................................................... 1

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................ 1

Fed. R. Civ. P. 23(a) ............................................................................................... 16, 17

Fed. R. Civ. P. 23(a)(1) ................................................................................................ 17

Fed. R. Civ. P. 23(a)(2)................................................................................................. 18

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

FED. R. CIV. P. 23(a)(3) ........................................................................................ 20

FED. R. CIV. P. 23(a)(4) ........................................................................................ 20

FED. R. CIV. P. 23(b)(1) ........................................................................................ 27

FED. R. CIV. P. 23(b)(2) ........................................................................................ 27

FED. R. CIV. P. 23(b)(3) ................................................................................... passim

FED. R. CIV. P. 23(c) ............................................................................................. 8

FED. R. CIV. P. 23(e)(1) ..................................................................................... 8, 27

FED. R. CIV. P. 23(e)(2) .................................................................................. passim

FED. R. CIV. P. 23(g) ................................................................................. 22, 26, 27

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004) .......................................... 7

MANUAL FOR COMPLEX LITIGATION § 21.312 (4th ed. 2004) ...................................... 21

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004) .................................. 7, 13

MANUAL FOR COMPLEX LITIGATION § 21.633 (4th ed. 2004) ..................................... 13

## I.     INTRODUCTION

Following substantial litigation, Plaintiff Thomas Buchanan ("Plaintiff") on behalf of himself and all others similarly situated, and Defendant Sirius XM Radio Inc. ("Defendant" or "Sirius XM"), have reached a preliminary settlement agreement regarding Plaintiff's claims under the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C. § 227, *et seq*. This settlement allows the over 14 million potential class members to choose between receiving either a cash payment or three months of Sirius XM's best service package (that is, the package containing every channel available on Sirius XM's satellite radios, including access to over 150 Channels plus Sirius XM Streaming). The agreement also calls for Sirius XM to make a number of changes to its business practices. The parties believe this is a fair, reasonable, and adequate settlement, and therefore, Plaintiff moves this Court for an Order preliminarily approving a settlement reached in this action and conditionally certifying a FED. R. CIV. P. 23 Settlement Class under the TCPA.[1]

## II.     BACKGROUND

On March 13, 2017, Plaintiff filed a Class Action Complaint in the United States District Court of the Northern District of Texas, alleging that Defendant made illegal telemarketing calls to individuals who had registered with either the national do-not-call list, or placed their telephone numbers on Defendant's own internal do-not-call list in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)(3). In its Class Action

---

[1] Plaintiff and Defendant are collectively referred to herein as the "Parties." The Parties' Settlement Agreement is attached hereto as Exhibit 1 ("Settlement Agreement"). The Parties' proposed form of the Legal Notice and Individual Claim form is attached as Exhibit 2, and the proposed Website Notice is attached as Exhibit 3 (collectively the "Notice"). The Declaration of Plaintiff's counsel Jarrett L. Ellzey is attached hereto as Exhibit 4 ("Ellzey Decl."). The Declaration of the settlement administrator, Class Experts Group LLC is attached hereto as Exhibit 5. The Declarations of Plaintiff's and the Proposed Class' counsel are attached as Exhibits 4, 6-9. All exhibits and documents attached to this joint motion are incorporated herein for all purposes.

Complaint, Plaintiff alleged Count I, violation of 47 U.S.C. §227(c) on behalf of a class defined

as:

**National Do-Not-Call Registry Class:**

All natural persons in the United States who, from October 16, 2013 to the commencement of this litigation, received more than one telephone solicitation call in a 12-month period on their Residential Land Line telemarketing Sirius XM's satellite radio service more than 31 days after registering their telephone number with the National Do-Not-Call Registry and who did not have a prior established business relationship with Defendant and did not provide Defendant prior express written consent to receive such calls. Excluded from this class definition are any employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

In its Class Action Complaint, Plaintiff also alleged Count II, violation of 47 C.F.R.

§ 64.1200(d)(3), on behalf of a class defined as:

**Internal Do-Not-Call Registry Class:**

All natural persons in the United States who, from October 16, 2013 to the commencement of this litigation, received one or more telephone solicitation calls on their Residential Land Line telemarketing Sirius XM's satellite radio service after registering their telephone number with Defendant's Company-Specific Do-Not-Call Registry and did not provide Defendant prior express written consent to receive such calls. Excluded from this class definition are any employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

*See* Plaintiff's Original Class Action Complaint, Dkt. No. 1 at ¶ 39 and ¶ 41.

Plaintiff's Original Class Action Complaint alleges that Defendant made telemarketing

calls to the residential land lines of Plaintiff and the Members of the National Do-Not-Call Registry

Putative Class without the prior express written consent or permission of Plaintiff or the Members

of the National Do-Not-Call Registry Putative Class in violation of the TCPA, 47 U.S.C. §227(c).

Plaintiff alleges that he and each National Do-Not-Call Registry Putative Class Member is entitled

to recover $500.00 in statutory damages for each violation and up to $1,500.00 in the event that

Defendant is found to have knowingly or willfully violated the TCPA.

Plaintiff's Original Class Action Complaint also alleges that Defendant made telemarketing calls to Plaintiff and the Internal Do-Not-Call Registry Putative Class after they were listed on Defendant's Internal Do-Not-Call Registry in violation of 47 C.F.R. § 64.1200(d)(3). Plaintiff alleges that he and each Internal Do-Not-Call Registry Putative Class Member is entitled to recover $500.00 in statutory damages for each violation and up to $1,500.00 in the event that Defendant is found to have knowingly or willfully violated the TCPA.

The parties to the Action conducted settlement discussions over the course of several months and ultimately engaged in a full-day mediation with Randall Wulff (a well known and a highly regarded mediator) in Oakland, California on January 31, 2019. Exhibit 4, Ellzey Decl. ¶ 12. The settlement discussions were conducted at arm's length and involved vigorous negotiations on all issues. Exhibit 4, Ellzey Decl. ¶ 12-13. Both parties have concluded that it is in their best interests to settle the claims of Plaintiff and the Sirius XM Settlement Class.

Plaintiff and Class Counsel have concluded that settlement of the Action, on the terms set forth in the Settlement Agreement, is fair, reasonable, and adequate, and that the settlement is in the best interests of the Sirius XM Settlement Class. This conclusion was a result of, among other things, Plaintiff's knowledge of the facts relating to the matters alleged in the Action and Class Counsel's investigation, review, and analysis of the facts and law relating to the matters alleged in the Action, and having weighed carefully the benefits to the Sirius XM Settlement Class of a prompt settlement of the Action for the consideration being offered by Sirius XM against the significant cost, risk, and delay that continued prosecution of the Action would involve, Exhibit 4, Ellzey Decl. ¶ 13.

Sirius XM denied any liability and believes, among other things, that Sirius XM's practices with respect to calling individuals have at all times been lawful and proper. Sirius XM asserts a

defense of "established business relationship," or "EBR," and has asserted various other defenses and vigorously opposed the pending class certification motion; and further denies that any of the challenged conduct caused Plaintiff or any putative class member any injury or damage. Sirius XM has concluded, however, that it is in its best interests to settle the Action on the terms set forth in the Stipulation of Settlement in order to avoid further expense, inconvenience, and interference with ongoing business operations.  The parties have concluded, however, that, in order to facilitate settlement and the fair and efficient administration of the settlement, the Sirius XM Settlement Class should be formed.

## III.    SUMMARY OF SETTLEMENT TERMS

### A.    SETTLEMENT CLASS DEFINITION

The Settlement Class is a nationwide class of all natural persons in the United States who, from October 16, 2013 to the date of this Agreement: (a) received more than one telephone solicitation call in a 12-month period made by or on behalf of Sirius XM more than 31 days after registering the landline, wireless, cell or mobile telephone number on which they received those calls with the National Do-Not-Call Registry, or (b) received one or more calls after registering the landline, wireless, cell, or mobile telephone number on which they received the calls with Sirius XM's internal Do-Not-Call list.

Excluded from the class definition are: (a) natural persons who were or had been paid subscribers to Sirius XM's service at the time of the first call; natural persons who were members of the class settled in *Hooker v. Sirius XM Radio Inc.,* Civil Action No. 4:13-cv-00003 (E.D. Va. 2013), who did not exclude themselves from that class, and who did not receive more than one telephone solicitation call after July  5, 2016, the date of the *Hooker* settlement; and (c) any

employees, officers, directors of Sirius XM, and attorneys appearing in this case, and any judge

assigned to hear this case as well as their immediate family and staff.

## B.   SETTLEMENT BENEFITS

In exchange for a narrowly drafted release of claims, Plaintiff and Class Members are

entitled to a *pro rata* distribution of a settlement fund valued at $25,000,000.00, following

deductions for the costs of notice and claims administration, reasonable attorneys' fees, and other

expenses. Additionally, for each Class Member who elects to receive it, in lieu of cash (and thus

who does not receive a cash distribution from the Settlement Fund), Sirius XM shall provide (3)

three months of free access to Sirius XM's All Access Subscription package, which contains every

channel available on Sirius XM's satellite radios, including access to over 150 Channels plus Sirius

XM Streaming (or any subsequently-named satellite radio service that contains substantially the

same programming as the All Access service) (the "Free Service"). *See* Exhibit 1, Settlement

Agreement at ¶ 3 b.  According to Sirius XM, the monthly retail price of its All Access Subscription

package, including taxes and fees, is currently approximately $27.00, meaning the fair market

value of the 3 months of free service will be $81.  Plaintiff reasonably calculates the fair market

value of the Free Service to be at minimum $32,000,000.00.[2]  Plaintiff believes that this Free

---

[2] Plaintiff's counsel calculated the fair market value of the Free Service by making a number of reasonable assumptions based on expert opinions in this case and Sirius XM's experience in the recent *Hooker* class action settlement.  In this case, the settlement administrator, Class Experts Group LLC, has opined that it expects at least a 10% response rate.  Exhibit 4 at ¶ 54.  Therefore, assuming there are approximately 14,400,000 potential class members as the parties believe, and that at least 10% of those respond to the class notice, that means there will be at least 1,440,000 participating class members.  In *Hooker*, the settlement agreement offered each class member a similar (though less valuable) free Sirius XM service option as an alternative to receipt of a cash payment.  *Hooker v. Sirius XM Radio Inc.*, Civil Action No. 4:13-cv-00003 (E.D. Va. 2013) Dkt. No. 186-2 at ¶3(b) (defining the free service in that case as being "free access to Sirius XM's *Select service*" (emphasis added)).  Counsel for Sirius XM has represented that in *Hooker* approximately 28% of the class members who submitted claims selected the Free Service option.  In the instant matter, 28% of 1,440,000 participating class members equals 403,200 class members.  As noted, Sirius XM values the free service at $27 per month, yielding a value of $81 for the 3 months of free service.  As a result, to calculate the total fair market value of the Free Service on these assumptions, Plaintiff's counsel multiplied $81 times 403,200 class members, and the result is a fair market value of $32,659,200.

---

Service represents a significant value for class members and a very valuable alternative form of remuneration for the class members who accept that form.  The availability of the three (3)-month Free Service option will not diminish the $25,000,000.00 common fund.

The settlement fund and value of the Free Service option represent a significant percentage of the estimated total potential recovery if the Class prevailed at every stage of this litigation— including class certification, trial and appeals—without applying any discounts for the significant uncertainties, risks, and costs of this litigation.  Importantly, the Rule 23 claims are brought under the TCPA, and class members who choose to participate in this Settlement will receive a monetary payout or free service irrespective of any actual loss.

In addition to the settlement fund and the Free Service guaranteed by the settlement, Sirius XM has agreed to meaningful business practice changes in its communications to its trial subscribers.  First, Sirius XM has agreed to implement changes in its internal practices to bolster its existing practices to ensure that trial subscribers who ask Sirius XM to put them on Sirius XM's internal do-not-call ("DNC") list are promptly placed on Sirius XM's internal DNC list and not called more than 31 days after the request. Sirius XM has also agreed to implement changes in its communications with all of its trial subscribers, including the following: (1) include notices contained in its Customer Agreement, glove box materials and welcome kit to explain that consumers may be contacted and explaining how consumers can take steps to place themselves on Sirius XM's internal DNC list; and (2) ensure that it does not make calls to trial subscribers until a reasonable period of time after the mailing of the welcome kit. Plaintiffs agree that Sirius XM has taken substantial steps to communicate its calling practices to trial subscribers and that in so doing Sirius XM has enhanced its EBR defense upon which it relies in calling trial subscribers to market

paid subscriptions.  These business practice changes represent a further benefit to class members that will come from the Settlement Agreement.

### C.    SCOPE OF RELEASE

The Settlement Class members who do not timely request exclusion from the settlement will release any and all claims, known or unknown, against the Released Parties based in any manner on the allegations giving rise to this matter. *See* Exhibit 1, Settlement Agreement at ¶ 5.

### D.    OPPORTUNITY TO OPT OUT

The Parties have agreed on release language which is narrowly tailored and will not result in a waiver of any TCPA claims for those individual class members who timely request exclusion from the Settlement Class.  All individual class members who opt out of the settlement will preserve their rights. *See* Exhibit 1, Settlement Agreement at ¶ 11.

### E.    CLASS COUNSEL'S APPLICATION FOR FEES, COSTS, AND EXPENSES

The Settlement Agreement contemplates that Class Counsel shall make an application to the Court for an award of attorneys' fees, costs and other expenses for their representation of Thomas Buchanan, the named plaintiff and the Settlement Class, to be paid out of the Settlement Fund and after deduction of any class administration and notice costs and expenses.  *See* Exhibit 1, Settlement Agreement at ¶ 16.  Plaintiffs intend to seek a fee that will not exceed 20% of the total value of the settlement, which includes both the value of the cash settlement fund and the fair market value of the Free Service.

## IV.    ANALYSIS & AUTHORITIES

### A.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Federal Rule of Civil Procedure 23(e) governs a district court's analysis of the fairness of a proposed class action settlement and creates a multistep process for approval. First, a court must

determine that it is likely to (i) approve the proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in Rule 23(e)(2), and (ii) certify the settlement class after the final approval hearing. *See* Fed. R. Civ. P. 23(e)(1)(B); *see also* 2018 Advisory Committee Notes to Rule 23 (standard for directing notice is whether the Court "likely will be able both to approve the settlement proposal under Rule 23(e)(2) and . . . certify the class for purposes of judgment on the proposal"). Second, a court must direct notice to the proposed settlement class, describing the terms of the proposed settlement and the definition of the proposed class, to give them an opportunity to object to or to opt out of the proposed settlement. *See* Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(1), (5). Third, after a hearing, the court may grant final approval of the proposed settlement on a finding that the settlement is fair, reasonable, and adequate, and certify the settlement class. Fed. R. Civ. P. 23(e)(2).

In the Fifth Circuit, there is a presumption in favor of settlement recognizing that "litigants should be encouraged to determine their respective rights between themselves." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). This presumption in favor of settlement is of particular force in the class action context. *Id*. ("Particularly in class action suits, there is an overriding public interest in favor of settlement.") Because of the "strong judicial policy favoring resolving disputes through settlement," a district court's approval of settlement is afforded "great deference." *Smith v. Crystian*, 91 Fed. Appx. 952, 955 (5th Cir. 2004) (internal quotations omitted).

The Court's grant of Preliminary Approval will allow all members of the Settlement Class to receive notice of the proposed Settlement's terms, and of the date and time of the Final Approval Hearing at which members of the Settlement Class may be heard, and at which the parties may present further evidence and argument concerning the fairness, adequacy and reasonableness of the Settlement. *See* MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) §§ 13.14, 21.632. Neither

formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id*. § 13.14.

> **B.**     **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

Rule 23(e)(2) identifies criteria for the Court to use in deciding whether to grant preliminary approval of a proposed class settlement and direct notice to the proposed class. The Class Settlement proposed here satisfies each one.

> **(1)     Class Representatives and Class Counsel Have and Continue to Zealously Represent the Class.**

The Class Representative and Class Counsel have prosecuted this action on behalf of the Class with vigor and dedication for two years. *See* Fed. R. Civ. P. 23(e)(2)(A). Class Counsel engaged in significant motion practice and massive offensive discovery efforts to prosecute the Class claims. Exhibit 4, Ellzey Decl. ¶ 14.  Counsel defended against a motion for judgment on the pleadings or, in the alternative, partial summary judgment and moved for and extensively litigated class certification and attendant expert issues. See *id.* The Settlement Class Representative was likewise actively engaged—he produced numerous documents, sat for a lengthy deposition (along with his wife as a non-party witness), and regularly communicated with counsel up to and including evaluating and approving the proposed Settlement. See *id.*

> **(2)     The Settlement is the Product of Good Faith, Informed, and Arm's-Length Negotiations.**

The proposed Settlement Agreement arises out of serious, informed, and non-collusive negotiations facilitated by Randall Wulff, a nationally-recognized mediator in California with experience mediating cases under the TCPA. A settlement process facilitated by a neutral mediator weighs heavily in favor of approval. *See Jones v. Singing River Services Foundation*, 865 F.3d

385, 295-96 (5th Cir. 2017).  Mr. Wulff's assistance in the mediation process was an integral part of the negotiations here. The procedurally fair manner in which this Settlement was reached weighs strongly in favor of granting preliminary approval.

> **(3)     The Settlement Provides Significant Benefits in Exchange for the Compromise of Strong Claims.**

The Settlement provides substantial relief to the Class, considering (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed distribution plan; and (iii) the fair terms of the separately-negotiated proposed award of attorney's fees. *See* Fed. R. Civ. P. 23(e)(2)(C). The monetary recovery, free service option, and Sirius XM's commitments involving its TCPA policies are significant given the complexity of the Action and the significant barriers that lay ahead for Plaintiff and the Settlement Class. Exhibit 4, Ellzey Decl. ¶ 15.  By any reasonable measure, this recovery is a significant achievement given the extraordinary obstacles Plaintiff and the Settlement Class faced in the litigation. *Id.*  The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Sirius XM's available defenses and the challenging and unpredictable path of litigation Plaintiff would have faced absent a settlement. *Id.*

> **i.     *The Settlement Mitigates the Risks, Expenses, and Delays the Class Would Bear with Continued Litigation.***

The Settlement secures significant benefits, even in the face of the uncertainties of litigation. Compromise in exchange for certain and timely benefits under the Settlement is an unquestionably reasonable outcome. The Fifth Circuit has observed that settlement is an appropriate outcome where the likelihood of success is difficult to assess, and the plaintiffs face substantial challenges. *Parker*, 667 F.2d at 1209-10. "[S]ettling now avoids the risks and burdens of potentially protracted litigation." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).

This is a risky case. Defendant chose to fight, not concede. Defendant's motion for judgment on the pleadings or, in the alternative, for partial summary judgment remains pending. The outcome of this motion could have a significant impact on the Class' prospects of a favorable resolution. Plaintiff's Class Certification motion is also challenged and undecided. If the Court denied certification, the case would be over from a class standpoint and the Class Members would receive nothing. Even if a class were certified and upheld on appeal, the Class would face the risk, expense, and delay of trial and a potentially lengthy appellate process, likely delaying any recovery for years.

Because of the costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue litigation. Avoiding years of additional litigation in exchange for the immediate economic certainty of this Settlement favors preliminary approval.

### ii.      *Class Members Are Eligible for Relief Through a Straightforward Claims Process*

The Settlement gives the Class Members a choice.  The Settlement framework provides either monetary compensation or a free service option to the Class Members through a straightforward claims process designed to be as convenient to Class Members and as cost effective as possible. *See* Exhibit 1, Settlement Agreement ¶¶ 3-13; *see also* Exhibit 4.

The Parties have selected Class Experts Group, LLC ("CEG") to serve as the settlement administrator who will manage the notice and claims process.  Through CEG, each Class Member will receive information about the Settlement options through the proposed Notice Program. *See* Exhibit 1, Settlement Agreement ¶¶ 3-13; *see also* Exhibit 4.  Plaintiff's counsel and CEG have created a detailed notice plan to notify the class members about the settlement and to assist them

in signing up for the class.  Exhibit 4.  The notice plan includes sending emails to up to five different email addresses for each class member, and then sending direct millings to class members whose emails "bounce" (i.e., are undeliverable) or who do not have an email address.  CEG will additionally conduct a detailed targeted advertising campaign to supplement the email and direct mail notice.  *Id.* at ¶¶ 36-45.

CEG will also establish, administer and maintain a website for Class Members who have not opted out of the Settlement. Class Members may visit the Settlement Website for purposes of (i) confirming and/or updating their contact information to be used in connection with notifications, or (ii) electing whether to receive a cash distribution from the escrow account or free service.  After a claim is reviewed for completeness and eligibility, CEG will either (1)  mail checks to the Class Members who elected the cash option or (2) provide Sirius XM with a list of the Class Members who registered at the Settlement Website and provided the required information to receive the free service. See Exhibit 1, Settlement Agreement ¶¶ 3-13.  In addition to the website CEG will establish a toll-free interactive voice response ("IVR") phone number for class members to hear answers to questions about the settlement.

### iii.      *Counsel Will Seek Reasonable Attorneys' Fees and Costs*

To cover their attorneys' fees and costs, Class Counsel intends to seek an award of not more than 20% of the total combined value of the Settlement Fund and the total fair market value of the Free Service, for work performed on behalf of Plaintiff and the Class.  This amount will be paid out of the Settlement Fund and after deduction of any class administration and notice costs and expenses. Exhibit 4, Ellzey Decl. ¶ 16.  These attorneys' fees and costs were negotiated separately after the settlement was negotiated on behalf of the class. *Id.*  The reasonableness of the requested fee may be considered in light of the fund obtained on behalf of the Class.

The Fifth Circuit has approved the use of the "percentage method" to award attorneys' fees in a common-fund settlement as long as the percentage award is cross-checked with the factors set out in the Fifth Circuit's decision in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated by *Blanchard v. Bergeron*, 489 U.S. 87 (1989). *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-44 (5th Cir. 2012). In the percentage method, "the court awards fees as a reasonable percentage of the common fund." *Id.* at 642. The percentage method also "brings certain advantages," the Fifth Circuit explained in *Dell*, when it "allows for easy computation, . . . aligns the interests of the class counsel with those of class members, and. . . [is] the method . . . chose[n] in the [plaintiff's] retainer agreement." *Id.*

In this case, this attorney fee award is reasonable in light of the result obtained by Class Counsel, the complexity of the issues raised in this action, and the duration of the litigation (approximately two years). Exhibit 4, Ellzey Decl. ¶ 17. Since the Fifth Circuit endorsed the percentage method in *Dell*, numerous district courts have awarded attorneys' fees without feeling the need to perform a lodestar cross-check. *See, e.g., Buettgen v. Harless*, No. 3:09-CV-00791-K, 2013 WL 12303143, at *13 (N.D. Tex. Nov. 13, 2013) (awarding 30 percent of fund in securities class action without a lodestar cross-check); *Fairway Med. Ctr., L.L.C. v. McGowan Enterprises, Inc.*, No. CV 16-3782, 2018 WL 1479222, at *3 (E.D. La. Mar. 27, 2018) (awarding one-third of common fund in TCPA class action without a lodestar cross-check); *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, No. MDL 2328, 2015 WL 4528880, at *22 (E.D. La. July 27, 2015) (awarding 30 percent of common fund in antitrust class action without a lodestar cross-check); *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 310 (S.D. Miss. 2014) (awarding one-third of common fund in overdraft charge class action without a lodestar cross-check); *Burford v. Cargill, Inc.*, No.

CIV.A. 05-0283, 2012 WL 5471985, at *6 (W.D. La. Nov. 8, 2012) (awarding one-third of common fund in fraud class action without a lodestar cross-check).

> **(4)** **The Proposed Settlement Treats All Class Members Equitably Relative to One Another.**

The proposed Settlement fairly and reasonably allocates benefits among Class Members without any unwarranted preferential treatment of certain segments of the Class. *See* Fed. R. Civ. P. 23(e)(2)(D).   In fact, all members of the Settlement Class are eligible to receive the same benefits. No Class Member is receiving greater or different relief than another.

### C.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The certification requirements of Federal Rule of Civil Procedure 23 apply even when certification is solely for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 597 (1997).   To determine whether a proposed settlement meets the requirements for certification under Rule 23(a) and (b)(3), a district court in the Fifth Circuit must conduct a four-part inquiry.   First, the court must determine whether the putative class is "adequately defined and clearly ascertainable." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (quoting *DeBremaecker v. Short*, 443 F.2d 733, 734 (5th Cir. 1970) (per curiam)).   Second, the court must address whether the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation have been satisfied.   Third, if the action meets these threshold requirements, the court must determine whether the specific Rule 23(b)(3) requirements of predominance and superiority have been satisfied. *Union Asset*, 669 F.3d at 639.   Fourth, if the action satisfies each of these standards, the district court has discretion to approve a settlement that it determines is fair, reasonable, and adequate within the meaning of Rule 23(e)(2). *Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004).

Certification of a multistate class for settlement purposes permits notice of the proposed settlement to inform class members of the existence and terms of the proposed settlement, of their right to be heard on its fairness, of their right to opt out, and of the date, time and place of the formal fairness hearing. *See* MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) §§ 21.632, 21.633. For purposes of this settlement only, Defendant Sirius XM does not oppose class certification.  The Settlement Class is adequately defined and clearly ascertainable and certification is appropriate under Rule 23(a) and (b)(3) as discussed below. Exhibit 4, Ellzey Decl. ¶ 18.

### (1)    Rule 23(a)(1) Numerosity Requirement

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of millions of people and joinder of all such persons is impracticable. *See* FED. R. CIV. P. 23(a)(l); *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (numerosity satisfied where it would be difficult or inconvenient to join all of the class members).  Based on Sirius XM's records, the parties estimate that the proposed class in this case will consist of approximately 14,400,000 individuals. Exhibit 4, Ellzey Decl. ¶ 19.   Accordingly, the numerosity requirement is satisfied.

### (2)    Rule 23(a)(2) Commonality Requirement

The commonality requirement for class certification requires that there must be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2).  The bar for proving commonality is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members.  *Forbush v. JC Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993). Because, by definition, calling programs are carried out on a mass basis, a proposed TCPA class typically contains common issues of law and fact. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *4 (N.D. Ill. Aug. 20, 2009) (collecting cases).

Rule 23(a)(3)'s commonality requirement is met in the case of the National DNC Class and Internal Do-Not-Call list ("IDNC") Class based on at least two key common questions:

1.  Did Sirius XM (or its agents) place two or more calls within a year to landline or cell phone numbers of individuals who were not and had not been paid subscribers to Sirius XM's services at the time of the first call, while those numbers were registered on the National Do-Not-Call Registry?

2.  Did Sirius XM (or its agents) place any calls to any consumer after he or she requested Sirius XM place his or her number on its Internal Do-Not-Call Registry?

For the DNC class, the first question (DNC class) could be determined on a class-wide basis by interpreting the TCPA and its corresponding regulations and reviewing Sirius XM's call logs and the publicly-available DNC registry. *See Cordoba v. DirecTV, LLC*, 320 F.R.D. 582, 600 (N.D. Ga. 2017)- (finding the commonality requirement met for two classes, one for calls made to people on the DNC and the other for calls made to people on the company's IDNC).  Further, Plaintiff's DNC class excludes paid subscribers, adopting the approach applied by the Court in *Hooker. See Hooker v. Sirius XM Radio Inc.,* Civil Action No. 4:13-cv-00003 (E.D. Va. 2013).

For the IDNC Class, the second question (the INDC Class) could be similarly resolved on a common basis by cross-referencing Sirius XM's telemarketing call logs with its IDNC(s). *Cordoba*, 320 F.R.D. at 600. If the analysis of these records yields a list of people who received calls, who match names on the INDC that post-date their addition, for example, class-wide TCPA liability for INDC violation would have been established.

Determination of these common issues can resolve the material allegations of TCPA liability for both classes in one stroke. The commonality requirement is, thus, satisfied here.

### (3)     Rule 23(a)(3) Typicality Requirement

Similarly, Plaintiff's claims are coextensive with those of the absent class members, such that the action satisfies the Rule 23(a)(3) typicality requirement.  The test for typicality "focuses on the similarity between the named plaintiff's legal and remedial theories and the theories of those whom they purport to represent."  *Mullen*, 186 F.3d at 625.  In contrast to commonality, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001).

Mr. Buchanan is typical of the absent Settlement Class members because he was subjected to the same Sirius XM practices and claims, he suffered from the same injuries, and because both he and the Settlement Class will benefit from the relief provided by the Settlement.

### (4)     Rule 23(a)(4) Adequacy Requirement

Rule 23(a)(4)'s adequacy requirement is met where, as here, "the representative parties will fairly and adequately protect the interest of the class." FED. R. CIV. P. 23(a)(4).  To meet the requirement for adequacy of representation, Plaintiff must show (1) "the zeal and competence" of class counsel as well as (2) "the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees."  *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002) (internal citation and quotations omitted).  In this case, Plaintiff and the putative Class satisfy both prongs of the "adequacy" test.

### i.     *Buchanan is an Adequate Representative*

With respect to adequacy of the class representative, Mr. Buchanan, the Court should make the following determinations: (1) is the representative a member of the class, *East Tex. Motor Freight Sys. v. Rodriguez,* 431 U.S. 395, 403 (1977); (2) are the representative's interests

in conflict with those of the class members, *Mullen,* 186 F.3d at 625-26; and (3) did the representative suffer generally the same injury as the class members? *East Tex.*, 431 U.S. at 403.

Here, Mr. Buchanan has already established the elements of commonality and typicality; Mr. Buchanan is a member of the proposed Classes, and he has suffered the identical injury suffered by each class member. Therefore, Mr. Buchanan can answer numbers 1 and 3 above in the affirmative. Finally, Mr. Buchanan has no conflicting interests with class members. In fact, by personally investigating, filing, and vigorously pursuing this case, he has demonstrated a desire and ability to protect Class members' interests. Mr. Buchanan's zeal is manifest, and his interests are in not in conflict with those of the class.

## ii.      *Class Counsel is Adequate*

The second prong of the adequacy element requires a showing that the representative's chosen counsel is competent. *Mullen,* 186 F.3d at 625. The court must consider the following criteria: (1) the work counsel has done in identifying and investigating potential claims in the action; (2) counsel's experience in handling class actions, complex litigation, and the types of claims asserted in this action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. FED. R. CIV. P. 23(g)(1)(A); *Sheinberg v. Sorensen,* 606 F.3d 130, 132 (3d Cir. 2010).

Plaintiff's counsel have regularly (and successfully) engaged in major class action litigation, and possess extensive experience in consumer class action lawsuits. *See* Exhibit 4, 6-9, (Declarations of Plaintiff's Counsel Jarrett L. Ellzey, Henry Turner, Aaron Siri, Douglas Werman, and Daniel M. Hutchinson).   Other courts have found each representative firm adequate as class counsel in other class action lawsuits. "The fact that attorneys have been found adequate in other cases is persuasive evidence that they will be adequate again." *Whitten v. ARS*

*Nat. Services, Inc.*, No. 00-6080, 2001 WL 1143238, at *4 (N.D. Ill. Sept. 27, 2001). Moreover, "[a]bsent specific proof to the contrary, the adequacy of class counsel is presumed." *Sanchez-Knutson v. Ford Motor Co.,* 310 F.R.D. 529, 539 (S.D. Fla. 2015).

Plaintiff's counsel, including five geographically diverse firms, spent multiple months conferring with Mr. Buchanan, reviewing his voluminous documents, and investigating all potential claims to file on behalf of the class. Plaintiff's counsel carefully considered all possible claims to bring on behalf of the class, whether such claims were resolved by the *Hooker* settlement, and whether Sirius XM was continuing a similar course of conduct that led to *Hooker*. Plaintiff's counsel has litigated dozens of TCPA cases combined. Additional Plaintiff's counsel at Lieff Cabraser Heimann & Bernstein, LLP, who joined this case approximately one year into its life, have taken a leadership role in dozens of complex TCPA class actions that recovered more than $300 million for consumers across the country. Exhibit 7, Hutchinson Decl. at ¶ 5.

Finally, if it had been necessary, Plaintiff's counsel was ready and able to dedicate the resources needed to try this case and obtain a judgment. All named counsel are experienced trial lawyers with sufficient staffing and financial means to develop a complex case from inception through appeal. Plaintiff's counsel committed substantial financial resources to this case and had already retained experts who could have testified if the matter had proceeded to trial. Accordingly, Plaintiff's counsel is competent and adequate to represent the proposed Class.

### (5)     Rule 23(b)(3) Requirements

In addition to satisfying the Rule 23(a) requirements, for settlement purposes the proposed Class must satisfy the additional requirements in Rule 23(b).  *Regents of Univ. of Cal. v. Credit Suisse First Bos. (USA)*, 482 F.3d 372, 295 (5th Cir. 2007).  Rule 23(b)(3), which pertains to a

class seeking monetary relief (as is the case here), is satisfied if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### i.    *Common Questions of Law or Fact Predominate*

Plaintiff satisfies the predominance requirement because liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class. TCPA claims, by their nature, involve large numbers of plaintiffs who received telemarketing calls using standard scripts, a single defendant, and a common course of conduct that affected each plaintiff in the same way. *See Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (discussing how "[c]lass certification is normal in litigation under [the TCPA]."). Plaintiff satisfies the predominance requirement because liability questions common to all members of the proposed Classes substantially outweigh any possible issue that is individual to each member of the Settlement Class.

Mr. Buchanan's and proposed class members' claims arise from the same conduct, i.e. Sirius XM extracted their telephone numbers to: (1) make two or more telemarketing calls to Class Members' numbers within a 12-month period for telemarketing, to a number that was registered on the National DNC Registry for at least thirty (30) days, and (Buchanan argued in its class briefing, although disputed by Sirius XM and unresolved at the time of settlement) Sirius XM did not have an established business relationship with, or prior express written consent from, those Class Members; and/or (2) make telemarketing calls to individuals after they requested Defendant place their number on the IDNC list. *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005)

("Predominance" is where questions of law or fact common to the class members "predominate over any questions affecting only individual members.").

As Buchanan argued in his class briefing, all of the material conduct or claims particular to Plaintiff were also done to every member of the class in the same manner. Plaintiff and the putative class members share common questions of law involving the TCPA. Accordingly, the common issues of fact or law arising from Sirius XM's conduct predominate over any individual issues, making class treatment appropriate. TCPA claims are well-suited to class treatment because they concern a single uniform course of conduct – telemarketing calls – directed to consumers. *See, e.g., Krakauer v. Dish Network, L.L.C.*, 311 F.R.D. 384, 387 (M.D.N.C. 2015). These are the type of cases that "the Advisory Committee sought to cover[,] in which a class action would achieve economies of time, effort, and expenses, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.

### ii.      *The Settlement Class Satisfies the Superiority Requirement*

The superiority inquiry tests whether resolving a dispute on a class basis will "achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Serzone Products Liab. Litig.*, 231 F.R.D. 221, 240 (S.D. W. Va. 2005) (quoting *Amchem*, 521 U.S. at 615). Settling this case as a class action will achieve significant economies of time, effort and expense for the Class and the Court. *See Serzone*, 231 F.R.D. at 240. By contrast, litigating the claims in individual suits would consume many more judicial resources. *Id.*

Resolving millions of claims in one action is superior to individual lawsuits because it promotes consistency and efficiency.  *See* FED. R. CIV. P. 23(b)(3).  As such, superiority is met here. For all of the reasons detailed above, the Court should certify the Settlement Class.

### D.   APPOINTMENT OF CLASS COUNSEL

Rule 23(g) requires this Court to appoint class counsel to represent the Settlement Class. *See* FED. R. CIV. P. 23(g). Plaintiff, on behalf of the putative class, seeks the appointment of Hughes Ellzey, LLP, Turner Law Offices, LLC, Siri Glimstad LLP, and Werman Salas P.C., as Class Counsel.  In determining whether to appoint class counsel, the court must consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. FED. R. CIV. P. 23(g).

Class Counsel, and their respective law firms, have undertaken an enormous amount of work, effort, and expense in this litigation and demonstrated their willingness to devote whatever resources were necessary to see it through to a successful outcome. *See* Exhibit 4, Ellzey Decl. ¶ 20.  As set out in more detail above, Class Counsel have more than demonstrated their ability to represent the interests of the Settlement Class. *See supra* Part IV.C.(4)(ii). They should be appointed as Settlement Class Counsel under Rule 23(g)(3) and confirmed under 23(g)(1) upon final approval.

### E.   THE PROPOSED NOTICE PROCEDURE SHOULD BE APPROVED

"Rule 23(e)(1) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3) MANUAL FOR

COMPLEX LITIGATION (4th ed. 2004) § 21.312 (internal quotation marks omitted).   The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also* Exhibit 5, Verkhovskaya Decl.   The law is clear that individual notice by first-class mail is sufficient to meet the notice requirements of due process.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977).   So is email notice, especially where postal notice will be used as a backup to the extent necessary.

The proposed Notice Program in this case satisfies all of these criteria. Exhibit 5, Verkhovskaya Decl.  The Parties created this proposed notice program, including both the content and the distribution plan, with CEG, an experienced firm specializing in comprehensive noticed settlement management in complex class action litigation.   CEG's principal is Anya Verkhovskaya, whose decades of relevant experience can be found in the declaration she is submitting in connection with this motion.  *Id*.  The Parties' proposed Notice fully complies with Rule 23(e) and the requirements of Due Process.

Pursuant to the settlement agreement, the parties will provide CEG a class member list with the available relevant pieces of contact information for each class member (e.g., phone numbers, email addresses, and physical addresses).  Defendant estimates that it will be able to provide approximately 10,000,000 email addresses associated with the potential class members, along with millions of phone numbers and street addresses.

According to Ms. Verkhovskaya, research has shown that most individuals have multiple functional email addresses (*e.g.*, a work email, a personal email, a junk email, etc.).  Exhibit 5,

Verkhovskaya Decl. ¶ 26.   If notice can be sent to as many of those addresses as can be identified, that will increase the chances that the notice email will arrive in the class member's primary email account, and therefore, will increase the chances of it being read and acted upon.   *Id.* at ¶¶ 26-31. To identify as many email addresses as possible, CEG will use a nationally recognized reverse append service maintained by one of the major credit bureaus and data aggregators/processors. The reverse append analysis will take the information already known about the class members and cross reference that against a large national database to identify up to five different email addresses associated with that information.   *Id.*   Ms. Verkhovskaya estimates that this reverse append analysis will, on average, result in approximately three unique valid email addresses appended per class member for a total of approximately 43,200,000 email addresses.   *Id.*   CEG will then send class notifications to all of these email addresses.  Each email notice will contain a link to the case-specific website, SiriusXMdncTCPAsettlement.com, where online claims filing will be available via computers, mobile phones, and/or all other portable electronic devices.   *Id.*

The email notices will be tracked for their status as "bounced," "delivered," and/or "opened," etc.  *Id.* at ¶ 31.   CEG will then use this information to identify those class members who are believed to have not received notice via email.  *Id.*  It will then send those individuals a double-sided postcard notice with detachable claim form via First- Class Mail.  *Id.* at ¶ 32.   If any of these mailings are returned as undeliverable-as-addressed, CEG will coordinate advanced address updating through a skip-trace system and will re-mail notices to those Class Members for whom updated mailing addresses are identified.  *Id.* at ¶¶ 33-34.

CEG will also conduct a detailed targeted advertising campaign to supplement the email and direct mailing notice efforts.  CEG will use a variety of targeting tools, industry resources and media expertise to target potential class members across multiple devices, such as desktop, laptop,

mobile phone, and tablets, and are all based on defined parameters using data points extracted through trusted industry leaders, such as Google Ad, Facebook, Twitter, Experian, Adobe, and Amazon marketing services, among others.   Furthermore, each one of the email addresses identified above, will be utilized in order to micro-target the media notice campaign in order to reach as many valid class members as possible. For example, based upon how many individuals have Gmail, Outlook, Yahoo!, or other email domains, online impressions can be targeted to websites known to be visited by those specific users.  Each ad will link to the case-specific website, SiriusXMdncTCPAsettlement.com, where online claims filing will be available. *Id.* at ¶¶ 36-44.

Using multiple email addresses and an aggressive digital media notice campaign will increase the Notice Program's effective reach through these platforms, and therefore, decrease the need for direct mailed notice.  Among other benefits, this proposal will result in a significant reduction of postage costs (potentially representing a savings of over $1 million), which will result in additional funds being available to distribute to class members.  Numerous other courts around the country have approved similar notice programs that rely primarily on email notice and/or reverse append processes to identify email addresses. *See, e.g., Cabiness v. Educ. Fin. Sols., LLC*, No. 16-cv-01109-JST, 2019 U.S. Dist. LEXIS 50817, at *7 (N.D. Cal. Mar. 26, 2019) (noting that the court previously approved a notice plan in a TCPA class action where notice would be sent by email to "email addresses for the . . . class members" which were identified by "using a 'reverse lookup' process based on Defendants' records"); *Reid v. I.C. Sys.*, No. CV-12-02661-PHX-ROS, 2018 U.S. Dist. LEXIS 125663, at *9 n.2 (D. Ariz. July 26, 2018) (approving a notice plan in a TCPA class action that "called for the publication of banner ads on targeted websites, the issuance of a press release, the establishment of a website and toll-free number, and the sending of targeted emails to potential class members' email addresses identified through a 'reverse lookup' of

telephone numbers belonging to suspected class members."); *Mohamed v. Off Lease Only, Inc.*, No. 15-cv-23352-Civ-COOKE/TORRES, 2018 U.S. Dist. LEXIS 5600, at *3 (S.D. Fla. Jan. 12, 2018) (approving TCPA action notice plan where notice would be sent via email for all those class members with email addresses, and physical mailings would only be used for those class members without email addresses or who's emails bounced).

The Notices are written in plain English and include: (1) a description of the Settlement class; (2) a description of the proposed Settlement; (3) the names of counsel for the class; (4) a fairness hearing date; (5) a statement of the deadlines for filing objections to the Settlement, for submitting a claim, and for filing requests of exclusion; (6) the consequences of such exclusion; (7) the consequences of remaining in the Settlement class; and (8) information on how to obtain further information. Exhibit 5, Verkhovskaya Decl. at ¶¶ 49-51, Exs. B - C.  The notice plan also calls for an IVR phone system to assist class members in answering questions they may have about the settlement and the process.  Exhibit 5, Verkhovskaya Decl. at ¶¶ 47-48.

The form and content of the Notices, together with the manner of dissemination set forth above is reasonably calculated to reach all Class Members.  Exhibit 5, Verkhovskaya Decl. ¶¶ 52-55.  It is the "best notice practicable" under the circumstances and more than satisfies the requirements of Due Process and Rule 23.  *Id.*  The Notice Program is designed to reach as high a percentage of the Settlement Class as possible.  *Id*.  Ms. Verkhovskaya estimates that the notice plan is consistent with the 70-95% reach guideline set forth in the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language* Guide. *Id*.  Further, based on her experience with similar notice plans, Ms. Verkhovskaya anticipates a greater than 10% response rate, an impressive response rate for any class action settlement.  *Id*.  As this shows, the

proposed notice plan exceeds the requirements of constitutional due process. Therefore, the Court should approve the Notice Program and the form and content of the Notices attached.

### F.    THE COURT SHOULD SCHEDULE THE FINAL APPROVAL HEARING

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear all evidence and argument necessary to make its final evaluation of the Settlement. Proponents of the Settlement may explain the terms and conditions of the Settlement and argue in support of Final Approval. The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter a final order and judgment under Rule 23(e); and whether to approve Class Counsel's application for attorneys' fees and reimbursement of costs and expenses and request for a Service Award for the Plaintiff in the amount of $10,000.

Plaintiff and Class Counsel request the Court schedule the Final Approval Hearing for a date no sooner than October 15, 2019 at 10:00am, if convenient for the Court. Plaintiff and Class Counsel are submitting a proposed Preliminary Approval Order containing a suggested agreed upon schedule, subject to the Court's approval, leading to the Final Approval hearing.

## V.    CONCLUSION & PRAYER

WHEREFORE, PREMISES CONSIDERED, the parties respectfully request that the court (1) determine under Rule 23(e)(1) that it is likely to approve the settlement and certify the class; (2) direct notice to the class through the proposed notice program; and (3) schedule the final approval hearing under rule 23(e)(2). The Parties request this Court issue an Order in the form attached and submitted contemporaneously herewith.[3]

---

[3] For the convenience of the Court, the proposed Order shall also be sent in MS Word version to Chambers *via* electronic mail.

Respectfully submitted,


**HUGHES ELLZEY, LLP**


By: *Jarrett L. Ellzey*
     W. Craft Hughes
     Texas Bar No. 24046123
     Jarrett L. Ellzey
     Texas Bar No. 24040864
     1105 Milford Street
     Houston, TX 77006
     Telephone (713) 322-6387
     Facsimile (888) 995-3335


**TURNER LAW OFFICES, LLC**
Henry A. Turner
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia  30030
(440) 378-6274


**SIRI & GLIMSTAD LLP**
Aaron Siri
200 Park Avenue, 17th Floor
New York, NY  10166
(212) 532-1091


**WERMAN SALAS P.C.,**
Douglas M. Werman
77 West Washington, Suite 1402
Chicago, IL  60602
(312) 419-1008

**LIEFF, CABRASER, HEIMAN & BERNSTEIN, LLP**
Jonathan D. Selbin
250 Hudson Street, 8th Floor
New York, NY  10013
(212) 355-9500

Daniel M. Hutchinson
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
(415) 956-1000


Local Counsel for Plaintiff:

Mark A. Alexander
5080 Spectrum, Suite 850E
Addison, TX  75001
(972) 364-9700


**COUNSEL FOR PLAINTIFF AND THE PROPOSED CLASS**

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing document was filed in accordance with the protocols for e-filing in the United States District Court for the Northern District of Texas, Dallas Division, on May 1, 2019 and served on all counsel of record who have consented to electronic notification *via* CM/ECF.

*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey

## CERTIFICATE OF CONFERENCE

I certify that counsel for Plaintiff and the Proposed Class conferred extensively with counsel for Defendant throughout the process of drafting this motion and all corresponding materials, as well as the settlement agreement upon which this settlement is based.  Defendant is unopposed to the relief sought herein.

*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey