
# IN THE UNITED STATES COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION



**THOMAS BUCHANAN, on behalf of himself and all others similarly situated,**

**Plaintiff,**

**v.**

**SIRIUS XM Radio, Inc.,**

**Defendant.**

**Case No. 3:17-cv-00728-D**

## PATRICK MAUPIN'S OPPOSED MOTION TO INTERVENE AND BRIEF IN SUPPORT THEREOF

Movant Patrick Maupin ("Movant") respectfully moves the Court for permission to intervene in this case, pursuant to FRCP 24(a)(2) because the proposed settlement does not adequately protect his interests; or, alternatively, pursuant to FRCP 24(b)(1)(B), because his claim shares common questions of law and fact with that of Lead Plaintiff.

This motion is opposed by both Lead Plaintiff and Defendant.

# BACKGROUND

1. Movant is an absent class member.  He could easily opt-out and pursue his own claim against Defendant, but there is a potential that this class action could protect his (and other absent class members') broader interests much better than an individual action possibly could.

2. Unfortunately, the proposed settlement does not come close to living up to that potential.

3. Movant's broader interests include sending a message to other would-be violators that the National DNC Registry has teeth, and that they violate it at their peril.

4. A settlement that costs Defendant less than one percent of its subscriber acquisition costs over the five and a half year Settlement Period, and costs Defendant approximately 2.1% of its net income for the single most recent calendar year, does not send a message that violations will be an onerous cost of doing business.

5. A settlement that provides a roadmap of how to manufacture a purported established business relationship (EBR), that does not even require Defendant to avoid scrubbing against the National DNC Registry, and that allows Defendant to keep making that first call to DNC registrants, sends a definite message to Defendant, and other would-be violators of the National DNC registry, that the registry is a legal nullity -- that anyone can make a first call to people who have registered in exactly the same fashion as they can to people who have not registered, as long as they first offer a free sample and send some junk mail.

6. Movant submits that he, and other absent class members, are entitled to a ruling on whether Defendant had established business relationships with us.  A ruling for the class would send a message beneficial to all class members; a ruling for Defendant would provide Movant and other class members with a clear rationale for requesting FCC or Congressional action to restore the viability of the National DNC Registry.  This is by far the most important question in the lawsuit, yet it is the very question that Class Counsel has punted on.

7. Movant understands that most class actions settle, and is not opposed to settlement per se.  But the currently proposed settlement does not provide any meaningful benefit to class members, or any meaningful detriment to Defendant.  It simply insures that other entities will call class members with impunity, and even that Defendant itself will call them again the first time they buy a new car after five years have elapsed and they are no longer on Defendant's internal do-not-call list.

8. Movant cannot, on his own, force a significant change in Defendant's behavior. Any individual lawsuit that Movant files would easily be satisfied with $3000 and an injunction specific to Movant, with no court having ever ruled on the validity of Defendant's purported EBR with Movant.

9. It is only within the context of a class action that the consequences afforded Defendant for its behavior could be made severe enough for it and other would-be DNC violators to start treating the DNC registry as a no-go zone rather than just another cost of doing business, but Class Counsel has agreed to a settlement that does not offer any

meaningful relief to class members, or any meaningful deterrant effect against Defendant.

10. Class Counsel offers the rationale that this Court's answer to the EBR question is in doubt, so it is better to settle. The proposed settlement may be in Class Counsel's best interest, it may be in the Lead Plaintiff's best interests, and it is certainly in Defendant's best interest, but it is not in Movant's best interests.

11. It may be that Class Counsel is correct -- that the possibility this Court might answer this question in Defendant's favor is too risky for them. But all Movant and other absent class members have to go by on this question is Class Counsel's conclusory declarations about a battle well-fought to a draw. There is insufficient information at the settlement website and in the publicly available court documents for Movant or other absent class members to determine whether their interests are best served by objecting or opting out.

12. If the Court permits Movant to intervene, Movant intends to do one or more of the following:

(a) attempt to negotiate favorable amendments to the settlement with the parties;

(b) view protected filings and discovery, so that he may gather enough information to determine whether to object or opt-out;

(c) ask the Court, after viewing such documents, to unseal and unredact those which have insufficient cause for sealing and/or redaction, so that other absent

class members may make their own informed decisions about opting out or objecting (such documents should presumptively be made public in any case);

(d) review discovery materials, and conduct a reasonable amount of additional discovery related to Movant's own claims against Defendant and Defendant's financial situation; and/or

(e) Move for Partial Summary Judgment on at least his own claims about the EBR and about whether Defendant's conduct was knowing and willful.

## ARGUMENT

13. This motion was served on the Parties as required by Rule 5, as shown by the Certificate of Service filed with it.

14. As shown above, the grounds for intervention are that the relief sought by Movant is substantially greater than that agreed upon by Defendant and Lead Plaintiff. Movant wants clarity on the scope of the EBR exemption, wants the cost of Defendant's past conduct to be high enough to deter future bad conduct by Defendant and other similarly situated companies, and at a minimum, wants to be sufficiently informed to know whether to opt-out or object.

15. The ability to object does not obviate the need for the ability to intervene.

> As one leading treatise explains, SEECO's proposed reading of Rule 24 "is surely wrong: it would mean a class member could never intervene in a (b)(3) class action (since she can always opt out), yet both Rule 23 and the history of Rule 24 explicitly envision intervention as a means of securing

adequacy of representation." ... Rule 23(c)(2)(B)(iv), applicable to Rule 23(b)(3) classes like this one, states that notice to class members must explain "that a class member may enter an appearance through an attorney if the member so desires." When Rule 24 on intervention was amended in 1966, the advisory committee specifically contemplated that "a member of a class should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court." Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment. These provisions and notes would be unnecessary if intervention as of right could be rejected simply because a class member may opt out and litigate separately. Accord 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1799 (3d ed. 2005) ("Intervention in class actions is governed by the same principles that apply in any other proceeding."); cf. *In re Comm. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005). We therefore vacate that portion of the district court's order denying Thomas's motion to intervene based on her interest in adequacy of representation and remand for further consideration of the motion.

*Connie Smith v. SEECO, Inc.*, 16-2798 (8th Cir. 2017)

16. Movant has attached his complaint against Defendant to this motion. This pleading shows that, as an absent class member, Movant has Article III standing to intervene.

17. This motion is timely, and Movant has not been sitting on his rights:

    (a) it is only slightly over three months since Defendant made the calls that injured Movant.

    (b) Movant sent a claim for damages to Defendant's general counsel on the morning of March 28th this year, one day after the second call was made.

(c) Defendant did not respond until April 25th, when Mr. Tyler Theis sent an email offering a settlement, but requiring a confidentiality agreement.

(d) Movant responded to Mr. Theis the same day, explaining that he was not willing to agree to confidentiality.

(e) When Defendant had not responded a month later, Movant did some web research, in preparation for deciding his next steps, and found that he was an absent member of this class.

(f) Movant then emailed Defendant on May 25th, explaining that he had discovered he might be a class member, again offering to settle, and offering new terms.

(g) Defendant, via Mr. Theis, finally emailed Movant (the second ever legal communication from Defendant to Movant) a proposed settlement agreement on June 6th, less than one month ago.

(h) Subsequent to that, Movant and Mr. Theis made significant progress in negotiations, but the putative EBR remained a sticking point.

(i) On June 11th, Movant broke off negotiations, and started working on this motion in his spare time.

(j) It appears to be still early in the case. No trial is scheduled, and the next hearing is scheduled over four months away.

(k) To the extent that the existing parties might argue they are prejudiced by Movant's entry into the case at this particular point in time, Movant contends that is an own-goal caused by the extension of the end of the Class Period to a date over two years after the initiation of the lawsuit, and only slightly over two months ago.

18. As shown in preceding paragraphs of this motion, Movant has an interest relating to this action.

19. Also as shown in those paragraphs, Movant's interest may be impaired if he is not allowed to intervene.

20. Finally, as shown by Movant's conference with Class Counsel, and inability to conference with Defendant, neither existing party in this case will adequately represent Movant's interests.

## RELIEF SOUGHT

For the foregoing reasons, Movant asks this Court to (a) allow him to intervene in this action; (b) allow him to view original, unredacted versions of all case filings; and (c) order parties to share all discovery with him so that he may determine his best course of action.

Dated this July 1st, 2019

Respectfully submitted,

*/s/ Patrick Maupin*
Patrick Maupin
*Pro Se*
2206 Southern Oaks Drive
Austin, Texas 78745
(512) 743-8620
pmaupin@gmail.com

# IN THE UNITED STATES COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

**THOMAS BUCHANAN, on behalf of himself and all others similarly situated,**

**Plaintiff,**

**v.**

**SIRIUS XM Radio, Inc.,**

**Defendant.**

**Case No. 3:17-cv-00728-D**

## PATRICK MAUPIN'S COMPLAINT IN SUPPORT OF OPPOSED MOTION TO INTERVENE

Movant Patrick Maupin ("Movant"), by way of this Complaint in Support of his Motion to Intervene, alleges on personal knowledge the following claims against Defendant Sirius XM Radio, Inc. ("Defendant"):

## STATEMENT OF CLAIMS

1. Defendant or its agents injured Movant by willfully and/or knowingly telephoning him twice, on his residential phone line, with telemarketing solicitations, invading his privacy and intruding upon his solitude, despite the fact that Movant is

registered on the national DNC registry and the fact that no exception to the law permitted Defendant to do this.

2. Movant's right to be left alone by telemarketers, by adding his number to the National Do-Not-Call registry, is codified in 47 USC 227(c) and its implementing regulations 47 CFR 64.1200(c) et seq.

3. Movant's right to be left alone by telemarketers is also codified in Tex. Bus and Comm. Code Sec. 305.053.

4. Each call is a separate claim, and each call is a violation of both the state and federal statutes.

5. The federal statute allows for a private right of action for each call, once at least two calls have been made.

6. The state statute enables and mirrors the federal statute, but allows for a private right of action for each call independent of the number of calls made, and allows for recovery of statutory damages of $500 per call, rather than "a maximum" of $500 per call.

## DEFINITIONS

7. Terms in this complaint have the same meaning as those terms are defined in the Class Action Settlement Agreement and Release, Document 105-1, filed May 1st, 2019 in this case.

## JURISDICTION AND VENUE

8. Movant is a Class Member, because he is a natural person in the United States who, during the Class Period, received more than one telephone solicitation call in a 12-month period made by or on behalf of Sirius XM more than 31 days after registering his landline telephone number on which he received the calls with the National DNC Registry.

9. As described in Class Counsel's original complaint, this Court has original subject matter jurisdiction of this action as one arising under the laws of the United States.

10. Venue is proper in this Court. Defendant agreed to the venue, insofar as its calls made to Movant are concerned, by its action of negotiating an extension of the Class Period to April 26, 2019, thus covering the calls it made to Movant on March 25th and March 27th, 2019, more than two years after Class Counsel's original complaint was filed.

### FACTS SHOWING TWO VIOLATIONS OF 47 USC 227(c) AND TEX. BUS AND COMM. CODE Sec. 305.053

11. Defendant or its agent called Movant's residential landline 512-743-8620 on or about 5:55 PM on Monday, March 25, 2019.

12. Movant answered, and the caller attempted to sell a subscription to Defendant's satellite service to Movant.

13. Movant explained that he was on the National DNC list and that Defendant should not be calling him.

14. Caller argued with Movant, and Movant hung up.

15. Movant checked his caller ID, and noted that the call appeared to originate from (877) 201-7415.

16. Defendant or its agent again called Movant's residential landline 512-743-8620 on or about 5:59 PM on Wednesday, March 27, 2019.

17. Movant again answered, and the caller again attempted to sell a subscription to Defendant's satellite service to Movant.

18. Movant shouted epithets at caller, and hung up.

19. Movant again checked his caller ID, and noted that the call appeared to originate from the same (877) 201-7415 number.

20. Movant believes that at one time, he may have subscribed to XM Radio on behalf of his late wife, possibly in 2004 or 2005.

21. Movant has not voluntarily communicated with Defendant or its agents or affiliates since at least 2006.

22. Movant is the subscriber to the 512-743-8620 number: it is registered in his name, he pays the associated monthly telephone bill to Google Fiber for service at his residence, and he lives by himself.

23. Movant acquired the 512-743-8620 number in June of 2008.

24. Movant registered the 512-743-8620 number with the National DNC Registry on July 14, 2016, and it has been registered continuously since then.

25. Movant ported the 512-743-8620 number to his current provider, Google Fiber, some time in the summer of 2016, and has used it continuously since then as his residential landline.

26. Movant never gave Defendant the 512-743-8620 number.

27. Movant never gave Defendant explicit permission to call the 512-743-8620 number.

28. Movant does not have a personal relationship with Defendant or its agents.

29. Defendant's calls to Movant were not made to collect a bill or for any emergency purposes.


## FACTS SHOWING THAT DEFENDANT'S DNC PROCEDURES WERE NON-EXISTENT OR INADEQUATE AND THAT DEFENDANT'S VIOLATIONS AGAINST MOVANT WERE KNOWING AND/OR WILLFUL

30. Defendant entered into a Consent Agreement with the State of New York in 2015 regarding purported violations of the National DNC Registry.

31. As a broadcaster, Defendant is well-acquainted with the FCC's rulemaking process. A search for Defendant's filings on the FCC's website on June 27, 2019 returned 584 results.

32. Defendant has participated in the FCC's rulemaking process regarding the TCPA, by submitting comments, opposing petitions, and conducting ex parte meetings with FCC officials.

33. Defendant has not asked the FCC to clarify whether Defendant's expansive interpretation of "established business relationship" is correct.

34. But Defendant has asked the FCC, multiple times, both in comments and in ex parte meetings, to insure that any allowed call blocking implemetations should not be allowed to block calls made by Defendant.

35. Defendant admitted, in discovery responses to Class Counsel, that it does not scrub calls against the National DNC list.

36. Defendant admitted, in discovery responses to Class Counsel, that it does not maintain good per-number records that show its basis for claiming an established business relationship for each number.

37. Defendant's calls to Movant occurred more than two years after the initial complaint in this lawsuit, and more than 21 months after Defendant filed its answer.

38. Defendant negotiated an extension to the end-date for the Class Period to make the period cover all calls made over two years after the initiation of this lawsuit.

39. Defendant has settled multiple federal cases regarding its purported violations of 47 USC 227.

40. In one of those settled cases, Elikman v. Sirius XM Radio, Inc., an allegation was made that "Defendants' conduct violated the TCPA, 47 U.S.C. § 227(c)(5) and its implementing regulations 47 C.F.R. 64.1200(c)(2) and 47 C.F.R. 64.1200(e)" in the second amended complaint, on April 1, 2015.

41. In another of those settled cases, Martinez v. Sirius XM Radio Inc., an allegation was made that "Sirius is in violation of 47 CFR 64.1200(c)(2), entitling Mr. Pine to an additional award of up to $1,500 per call pursuant to 47 U.S. Code §227(c)(5)" in the original complaint, filed on Feb. 7, 2017.

42. In yet another settled case, Knutson v. Sirius XM Radio, Inc., Defendant argued that, under facts similar to those in this case, its mailing of a "Welcome Kit" to Plaintiffs created a shrink-wrap contract that bound Plaintiffs to arbitration.

43. The 2017 Form 10-K, filed with the SEC by Defendant's parent company, Sirius XM Holdings, Inc. in January of 2018, approximately 14 months before Defendant's calls to Movant, states that:

> *Telephone Consumer Protection Act Suits.* On March 13, 2017, Thomas Buchanan, individually and on behalf of all others similarly situated, filed a class action complaint against us in the United States District Court for the Northern District of Texas, Dallas Division. The plaintiff in this action alleges that we violated the Telephone Consumer Protection Act of 1991 (the "TCPA") by, among other things, making telephone solicitations to persons on the National Do-Not- Call registry, a database established to allow consumers to exclude themselves from telemarketing calls unless they consent to receive the calls in a signed, written agreement, and making calls to consumers in violation of our internal Do-Not-Call registry. The plaintiff is seeking various forms of relief, including statutory damages of $500 for each violation of the TCPA or, in the alternative, treble damages of up to $1,500 for each knowing and willful violation of the TCPA and a permanent injunction prohibiting us from making, or having made, any

calls to land lines that are listed on the National Do-Not-Call registry or our internal Do-Not-Call registry. We believe we have substantial defenses to the claims asserted in this action, and we intend to defend this action vigorously.

44. The 2018 10-K, filed in January of this year, contains substantially the same language.

## RELIEF SOUGHT

Movant prays that, pursuant to 47 USC 227(c)(5) and Tex. Bus. and Comm. Code Sec. 305.053, the Court (a) enjoin Defendant from ever calling Movant again; (b) award Movant $1000 plus costs, calculated at the maximum statutory damages of $500 for each of the two claimed calls; (c) increase the award in (b) to $3000 plus costs because each of the the two claimed calls were made knowingly and/or willfully; and (d) provide any further relief to which Movant may be entitled.

## DEMAND FOR JURY TRIAL

Movant demands a trial by jury on all issues so triable.

Dated this July 1st, 2019

Respectfully submitted,

_/s/ Patrick Maupin_____
Patrick Maupin
*Pro Se*
2206 Southern Oaks Drive
Austin, Texas 78745
(512) 743-8620
pmaupin@gmail.com

## UNSWORN DECLARATION

I declare under penalty of perjury under the laws of the United States of America that the facts stated in the foregoing motion and complaint, and in the attached certificates, are true and correct. Executed on July 1st, 2019.

/s/ *Patrick Maupin*

Patrick Maupin


## CERTIFICATE OF CONFERENCE

This motion is opposed by both Lead Plaintiff and Defendant.

Movant conferred telephonically with Class Counsel Mr. Jarrett Ellzey on June 28th, 2019. Mr. Ellzey appears to believe that the EBR question is so difficult and risky that the current settlement is the best that can be done on behalf of the class. As discussed in the body of the Motion, Movant believes that either the EBR issue should be litigated, or the consideration by Defendant for not litigating it should be much higher, so Movant and Lead Plaintiff have a genuine disagreement that will require the Court's help to sort out.

Movant emailed Defendant's Lead Counsel Mr. Albert Rota on June 21st, requesting a discussion, and received an auto-vacation response.

Movant then sent an email to several of Defendant's counsel -- Mr Albert Rota, Mr. Sidney McClung, Mr. Thomas Demitrack, Mr. Lee Armstrong, and Ms. Allison Waks -- at 10:30 on Monday June 24th. This email specifically mentioned Movant's

intention to file the instant motion, and specifically asked for an appointment to

conference.

Movant did not receive any answer, so on the morning of Thursday, June 27th,

Movant reiterated his request, emailing the five counsel he previously wrote to, and

including Defendant's in-house counsel Mr. Patrick Donnelly and Mr. Tyler Theis.

In response to this email, Ms. Allison Waks responded:

> Mr. Maupin,
>
> Sirius XM does not consent to your motion to intervene. The Court has
> already directed notice of the proposed class settlement and has set forth the
> options for the proposed class members, which is either to object or opt-out.
> Intervention is not one of the options.
>
> Pursuant to the terms of the settlement, if you as an absent class member
> have questions about the settlement, you need to discuss that with the class
> counsel; they represent your interests, we do not.
>
> Sincerely,
> Allison

Movant recognizes that he has not successfully conferenced with Defendant. If

the Court so orders, Movant is willing to try again, but Movant believes the likelihood of

such conference leading to a successful resolution of his issues to be approximately zero,

and the likelihood of Defendants even talking to him (absent an order of the Court to do

so) to be even smaller.

Movant is also mystified by Defendant's apparent assertion that Movant's Article

III standing automatically disqualifies him from intervening, since the Supreme Court's

decision in *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017) seems to imply that Movant's Article III standing may actually be a prerequisite to intervention.

/s/ *Patrick Maupin*
Patrick Maupin


## CERTIFICATE OF SERVICE

I certify that on July 1st, 2019, I served this motion and attached complaint and certificates to Class Counsel via email to mark@markalexanderlaw.com, dwerman@flsalaw.com, aaron@sirillp.com, hturner@tloffices.com, jarrett@hughesellzey.com, and craft@hughesellzey.com.

I further certify that on July __1ˢᵗ__, 2019, I served this motion and attached complaint and certificates to Defendant via first class US postal service, addressed to:

Albert J. Rota
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201

/s/ *Patrick Maupin*
Patrick Maupin

**Patrick Maupin**
**2206 Southern Oaks Drive**
**Austin, Tx 78745**
**(512) 743-8620**
**pmaupin@gmail.com**

**Clerk's Office**
**United States District Court**
**1100 Commerce Street, Room 1452**
**Dallas, TX 75242**

July 1, 2019

Dear sir or madam:

Enclosed please find the filing copy and the judge's copy of my motion to intervene in **Case No. 3:17-cv-00728-D,  Buchanan v. Sirius XM, Inc.**

Please let me know if there are any errors in this filing, so that I may correct them expeditiously.

Thank you and best regards,

*/s/ Patrick Maupin*
Patrick Maupin

To reuse, cover or mark through any previous shipping information.

Align top of FedEx Express® shipping label here.

ORIGIN ID:AUSA   (512) 743-8620
PATRICK MAUPIN

2206 SOUTHERN OAKS DR

AUSTIN, TX 78745
UNITED STATES US

TO CLERK'S OFFICE
UNITED STATES DISTRICT COURT
1100 COMMERCE ST STE 1452

DALLAS TX 75242
(000) 000-0000          REF:

SHIP DATE: 01JUL19
ACTWGT: 0.80 LB
CAD: 6897551/SSF02002

BILL CREDIT CARD

RECEIVED

JUL - 2 2019

U.S. DISTRICT COURT
DISTRICT OF TEXAS

FedEx
Express

**E**

Reusal pe

TRK#
0201   7882 0550 3291

TUE - 02 JUL 3:00P
STANDARD OVERNIGHT

AD KIPA

75242
TX-US  DFW

Align bottom of peel-and-stick airbill or pouch here.

Express