# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| **THOMAS BUCHANAN, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SIRIUS XM RADIO INC.,**<br><br>**Defendant.** | **Civil Action No. 3:17-cv-00728-D** |

## DEFENDANT SIRIUS XM RADIO INC.'S MEMORANDUM IN OPPOSITION TO PATRICK MAUPIN'S MOTION TO INTERVENE

Albert J. Rota
  Texas Bar No. 24056233
Sidney S. McClung
  Texas Bar No. 24083880
JONES DAY
2727 North Harwood Street
Dallas, TX 75201
Tel: (214) 969-3698
Fax: (214) 969-5100
Email: ajrota@jonesday.com
Email: smcclung@jonesday.com

Thomas Demitrack (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Tel: (216) 586-3939
Fax: (216) 579-0212
Email: tdemitrack@jonesday.com

Lee A. Armstrong (admitted *pro hac vice*)
Allison L. Waks (admitted *pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY
Tel: (212) 326-3939
Fax: (212) 755-7306
Email: laarmstrong@jonesday.com
Email: awaks@jonesday.com

*Counsel for Defendant Sirius XM Radio Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................i

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................1

    A.    The parties agree to settle the case..........................................................................2

    B.    Buchanan asks this Court for preliminary approval of the settlement ......................2

    C.    This Court grants preliminary approval ...................................................................3

    D.    Maupin moves to intervene......................................................................................4

ARGUMENT...........................................................................................................................5

I.    Maupin is not entitled to intervene as of right under Rule 24(a)(2).............................5

    A.    Maupin's interests will not be impaired by this litigation ........................................6

        1.    Maupin's legally protectable interests are fully protected................................6

        2.    The interests Maupin points to are not legally protectable..............................8

    B.    Maupin's interests are adequately represented in this litigation .................................10

II.    This Court should deny permissive intervention under Rule 24(b)(1)(B) .............................13

CONCLUSION......................................................................................................................15

CERTIFICATE OF SERVICE ...............................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alaniz* v. *Cal. Processors, Inc.*,
 73 F.R.D. 269 (N.D. Cal. 1976) ............................................................................................7

*Am. Ass'n of People with Disabilities* v. *Herrera*,
 257 F.R.D. 236 (D.N.M. 2008) ...........................................................................................15

*Barnes* v. *District of Columbia*,
 274 F.R.D. 314 (D.D.C. 2011) ............................................................................................10

*Benjamin* v. *Dep't of Pub. Welfare*,
 267 F.R.D. 456 (M.D. Pa. 2010), *aff'd*, 432 F. App'x 94 (3d. Cir. 2011) ..........................14

*Bradley* v. *Milliken*,
 828 F.2d 1186 (6th Cir. 1987) ................................................................................11, 12, 14

*Brewer* v. *Republic Steel Corp.*,
 513 F.2d 1222 (6th Cir. 1975) .............................................................................................14

*Bush* v. *Viterna*,
 740 F.2d 350 (5th Cir. 1984)...........................................................................................10, 14

*Chiglo* v. *City of Preston*,
 104 F.3d 185 (8th Cir. 1997)................................................................................................11

*Davis* v. *J.P. Morgan Chase & Co.*,
 775 F. Supp. 2d 601 (W.D.N.Y. 2011)..................................................................................7

*Edwards* v. *City of Houston*,
 78 F.3d 983 (5th Cir. 1996)..................................................................................................10

*Entergy Gulf States La., L.L.C.* v. *EPA*,
 817 F.3d 198 (5th Cir. 2016) ..........................................................................................10, 11

*Gonzales* v. *Wyatt*,
 157 F.3d 1016 (5th Cir. 1998) ..............................................................................................9

*Haspel & Davis Milling & Planting Co. Ltd.* v. *Bd. of Levee Comm'rs*,
 493 F.3d 570 (5th Cir. 2007)..................................................................................................5

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Head* v. *Jellico,*
 870 F.2d 1117 (6th Cir. 1989) ..............................................................................14

*Hopwood* v. *Texas,*
 21 F.3d 603 (5th Cir. 1994)........................................................................... 13, 15

*In re Domestic Air Transp. Antitrust Litig.,*
 148 F.R.D. 297 (N.D. Ga. 1993)............................................................................10

*In re Katrina Canal Breaches Litig.,*
 628 F.3d 185 (5th Cir. 2010)..................................................................................13

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.,*
 716 F.3d 1057 (8th Cir. 2013) ...............................................................................10

*Jenkins ex rel. Jenkins* v. *Missouri,*
 78 F.3d 1270 (8th Cir. 1996)...................................................................... 8, 10, 11

*Jordan* v. *Mich. Conferences of Teamsters Welfare Fund,*
 207 F.3d 854 (6th Cir. 2000)..................................................................................11

*Korioth* v. *Brisco,*
 523 F.2d 1271 (5th Cir. 1975) ...............................................................................14

*Lamar* v. *Lynaugh,*
 12 F.3d 1099 (5th Cir. 1993)..................................................................................11

*League of United Latin Am. Citizens, Council No. 4434* v. *Clements,*
 884 F.2d 185 (5th Cir. 1989)...................................................................... 10, 13, 14

*League of United Latin Am. Citizens* v. *Wilson,*
 131 F.3d 1297 (9th Cir. 1997) ...............................................................................11

*Lelsz* v. *Kavanagh,*
 710 F.2d 1040 (5th Cir. 1983) ...............................................................................10

*McFadden* v. *Lucas,*
 713 F.2d 143 (5th Cir. 1983)..................................................................................12

*Mothersill D.I.S.C. Corp.* v. *Petroleos Mexicanos, S.A.,*
 831 F.2d 59 (5th Cir. 1987)...................................................................................8, 9

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*New Orleans Pub. Serv. Inc.* v. *United Gas Pipe Line Co.,*
732 F.2d 452 (5th Cir. 1984)..................................................................................6

*Ross* v. *Marshall,*
426 F.3d 745 (5th Cir. 2005), *reh'g denied,* 456 F.3d 442 (2006) ......................6, 8

*Ruiz* v. *Collins,*
981 F.2d 1256 (5th Cir. 1992) ........................................................................ 12, 13

*Smith* v. *SEECO, Inc.,*
865 F.3d 1021 (8th Cir. 2017) ..............................................................................7

*Texas* v. *United States,*
805 F.3d 653 (5th Cir. 2015).................................................................................13

*Waudby* v. *Verizon Wireless Servs., LLC,*
248 F.R.D. 173 (D.N.J. 2008).................................................................................7

*Woolen* v. *Surtran Taxicabs, Inc.,*
684 F.2d 324 (5th Cir. 1982)....................................................................6, 7, 8, 10

## OTHER AUTHORITIES

3 Newberg on Class Actions § 9 (5th ed. June 2019) ...........................................*passim*

5th Cir. R. 47.5.3 ...................................................................................................11

Fed. R. Civ. P. 23 ............................................................................................*passim*

Fed. R. Civ. P. 24 ............................................................................................*passim*

7B Wright & Miller, Federal Practice & Procedure § 1799 (3d ed. Apr. 2019) ........................................7

## INTRODUCTION

Sirius XM and Plaintiff Thomas Buchanan have reached a settlement, and this Court has provisionally approved it, pending a hearing. Patrick Maupin, an absent class member, now moves to intervene because he is dissatisfied with the settlement. He took this step after sending a series of strident emails that, among other things, taunted Sirius XM and accused it of abusive conduct following his receipt of two phone calls. But there is no legal basis for his motion, and allowing him to intervene would serve no purpose. The motion should be denied.

Maupin is not entitled to intervene as of right under Rule 24(a) for two reasons. First, he cannot show that his interests would be impaired absent intervention. To the contrary, he can protect his interests in several ways: he can opt out, he can object to the settlement and participate in the settlement hearing, and he can even enter an appearance through an attorney if he wishes. Second, his interests are adequately represented by Buchanan and his counsel. Indeed, this Court has already provisionally concluded that Buchanan and his counsel adequately represent the interests of the class. In any event, Maupin's objections to their performance are nothing more than quibbling over legal tactics—and courts have uniformly held that such tactical disputes cannot demonstrate inadequate representation. This principle is all the more crucial in the class action context. After all, if the millions of class members in this case could intervene simply by disagreeing with class counsel's legal strategy, the case would rapidly become unmanageable.

For much the same reasons, this Court should deny permissive intervention under Rule 24(b). Maupin has ample alternative means of protecting his interests, and he is adequately represented by Buchanan and his counsel in any event. Allowing Maupin to intervene would yield no benefit, and would serve only to delay the proceedings and make them more costly.

## BACKGROUND

In March 2017, Plaintiff Thomas Buchanan filed a class action complaint against Sirius XM, alleging violations of the Telephone Consumer Protection Act. The parties then engaged in substantial discovery and motions practice. Buchanan filed a motion for class certification, Dkt. 60, and Sirius XM

filed a motion for judgment on the pleadings and for partial summary judgment, Dkt. 87. Both of those motions remain pending.

### A.    The parties agree to settle the case

On April 26, 2019, the parties entered into a settlement agreement. Dkt. 105-1 at 1. The agreement noted that the parties had engaged in "good faith, arm's length settlement negotiations over many months, including an in-person mediation session before Randall W. Wulff, an experienced and well regarded mediator." *Id.* at 3. After submitting "detailed mediation memoranda to Mr. Wulff," the parties "engaged in an all-day mediation before Mr. Wulff," which resulted in a memorandum of understanding relating to the settlement of the case. *Id.*

Pursuant to the agreement, Sirius XM would pay $25 million into a settlement fund. *Id.* at 7. Class members would be entitled to receive either a cash distribution from the settlement fund or three months of free access to Sirius XM's best service package. *Id.* at 8. In addition, Sirius XM agreed to change certain business practices. *Id.* The agreement specified that any member of the settlement class would have the right to opt out of the settlement. *Id.* at 9-10, 23-25. Class members who chose to opt out would not be entitled to the benefits provided under the settlement agreement, but would be free to pursue their own claims against Sirius XM. *Id.*

### B.    Buchanan asks this Court for preliminary approval of the settlement

On May 1, Buchanan filed a motion seeking preliminary approval of the settlement agreement, and conditional certification of the settlement class. Dkt. 105. Sirius XM did not oppose the motion.

The motion argued that preliminary approval was warranted for several reasons, including the fact that the proposed agreement arose out of lengthy settlement discussions which were ultimately facilitated by a nationally recognized neutral mediator. *Id.* at 3, 9-10. The motion further noted that the settlement would provide substantial benefits to class members. *Id.* at 3-7. The value of these benefits "represent[ed] a significant percentage of the estimated total recovery if the Class prevailed at every stage of this litigation—including class certification, trial and appeals—without applying any discounts for the significant uncertainties, risks, and costs of this litigation." *Id.* at 6. Accordingly, the

settlement offered a "fair and reasonable recovery for the Settlement Class in light of Sirius XM's available defenses and the challenging and unpredictable path of litigation Plaintiff would have faced absent a settlement." *Id.* at 10.

The motion also urged that both Mr. Buchanan and his counsel had zealously represented the interests of the class. *Id.* at 17-19. The motion reviewed the significant effort expended by both Mr. Buchanan and his counsel on behalf of the class, and noted that Mr. Buchanan's counsel were experienced and successful in the field of consumer class-action litigation. *Id.*

In light of this, the parties asked the Court (1) to give its preliminary approval to the settlement and to conditionally certify the class; (2) to approve the notice procedure proposed by the parties; and (3) to schedule a final approval hearing. *Id.* at 27.

### C.    This Court grants preliminary approval

Five days later, this Court granted the relief the parties sought. Dkt. 106. The Court found that "it will likely be able to approve the proposed Settlement … as being fair, reasonable and adequate to the Settlement Class … subject to further consideration at the Final Approval Hearing." *Id.* at 2. The Court noted that the settlement "appears to be the product of intensive, thorough, serious, informed, and non-collusive negotiations overseen by mediator Randall Wulff; has no obvious deficiencies; and does not improperly grant preferential treatment to Plaintiff or any Settlement Class Member." *Id.* The Court further found that "the prerequisites for class action certification under Rules 23(a), 23(b)(2) and 23(b)(3) … are likely to be found as satisfied." *Id.* at 3-4. Accordingly, for purposes of effectuating the settlement, this Court appointed Buchanan as a representative for the settlement class, and appointed his counsel as counsel for the class. *Id.* at 4.

The Court announced that it would hold a settlement hearing on November 7 to determine whether the proposed settlement is fair, reasonable, and adequate to the settlement class, and should be approved. *Id.* at 2. The Court also directed the parties to provide notice to members of the class in the manner contemplated by the settlement agreement. The Court concluded that the method the

parties had agreed upon would provide "due, adequate and sufficient notice" to class members, and that it "satisfie[d] the requirements of Rule 23." *Id.* at 5.

The Court's order also set out the options that would be available to class members who were dissatisfied with the agreement. First, they could opt out of the class by requesting exclusion in writing. *Id.* at 6-7. Alternatively, class members could file written objections, and appear at the settlement hearing (either *pro se* or through counsel). *Id.* at 8-9.

### D.    Maupin moves to intervene

In the spring and early summer of this year, Patrick Maupin—who had received two phone calls from Sirius XM, *see* Dkt. 109 at 10—sent a series of strident emails to Sirius XM and its counsel. For example, he accused Sirius XM of "obnoxious conduct," Ex. A, and stated his intention to "induce you to clean up your misbegotten marketing strategies," Ex. B at 1. He also wrote that SiriusXM had "probably been cautioned about mud-wrestling with pigs; I'm the pig," *id.*; compared counsel's communications with him to "raising a red flag in front of a bull," Ex. C; and suggested that "[y]ou will have to decide for yourselves how much trouble I have already made for you, and how much additional trouble I might be able to make for you," Ex. D at 2. *See also id.* at 3 ("The more I have learned ... the more I want to get my pound of flesh.").

On July 2, Maupin moved to intervene in the case. Dkt. 109. He claimed that he was entitled to intervene as a matter of right under Rule 24(a)(2), and also sought permissive intervention under Rule 24(b)(1). *Id.* at 1. Maupin asserted that he was an "absent class member" who "could easily opt-out and pursue his own claim against Defendant." *Id.* at 2. He wished to intervene, however, because "there is a potential that this class action could protect his (and other absent class members') broader interests much better than an individual action possibly could." *Id.* Accordingly, he asked this Court to allow him to intervene, to view unredacted versions of all case filings, and to order the parties to share all discovery with him. *Id.* at 8.

**ARGUMENT**

Maupin's motion to intervene should be denied. Maupin is not entitled to intervene as of right under Rule 24(a)(2) because the disposition of this case will not impair his interests, and because he is adequately represented by Buchanan and his counsel. And this Court should deny permission to intervene under Rule 24(b)(1) for similar reasons. Intervention would serve no purpose, and would only cause unnecessary delay and expense.

**I.     Maupin is not entitled to intervene as of right under Rule 24(a)(2)**

To intervene as of right under Rule 24(a)(2), Maupin "must meet four requirements: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit." *Haspel & Davis Milling & Planting Co. Ltd.* v. *Bd. of Levee Comm'rs*, 493 F.3d 570, 578 (5th Cir. 2007) (citation omitted). "Failure to satisfy any one requirement precludes intervention of right." *Id.* (citation omitted). Here, Maupin has failed to satisfy two of the requirements.

First, he has not established that any of his relevant interests could be impaired by this litigation. To the contrary, his interests are protected in three ways: he can opt out of the class; he can object to the agreement and participate in the settlement hearing; and he can "enter an appearance through an attorney if [he] so desires." Fed. R. Civ. P. 23(c)(2)(B)(iv).

Second, Maupin has not established that his interests are inadequately represented by Buchanan and his counsel. Indeed, this Court has already provisionally found that "the interests of all Settlement Class Members are adequately represented by Plaintiff and Class Counsel." Dkt. 106 at 4. And in any event, Maupin's only arguments for inadequacy turn on disagreements over litigation tactics and the precise details of the remedy. These quibbles are insufficient to establish inadequacy of representation—especially given that this is a class action case, and that allowing any member of the class to intervene on such a flimsy basis would make the case unadministrable.

### A.    Maupin's interests will not be impaired by this litigation

The Fifth Circuit has made clear that a Rule 24(a)(2) intervenor must point to a "legally pro-
tectable" interest—that is, an interest "which the *substantive* law recognizes as belonging to or being
owned by the applicant." *Ross* v. *Marshall*, 426 F.3d 745, 757 (5th Cir. 2005) (citation omitted), *reh'g
denied*, 456 F.3d 442 (2006); *see also, e.g.*, *New Orleans Pub. Serv. Inc.* v. *United Gas Pipe Line Co.*, 732 F.2d
452, 464 (5th Cir. 1984). If Maupin has such an interest in this case, it is his individual interest in his
rights under the TCPA. He has not shown that his ability to protect that interest will be in any way
impaired by this litigation. Accordingly, he is not entitled to intervene as of right. Fed. R. Civ. P.
24(a)(2).

### 1.   Maupin's legally protectable interests are fully protected

**a.** Maupin can protect his interests in several ways. To begin, he is entitled to opt out of the
settlement agreement and pursue his own claims. (Both the agreement and the Court's order grant
him that right, and in any event Rule 23(b)(3) classes are required by rule to allow class members to
opt out. Dkt. 105-1 at 9-10, 23-25; Dkt. 106 at 6-7; Fed. R. Civ. P. 23(c)(2)(B)(v).) Indeed, Maupin
himself notes that he could "easily opt-out and pursue his own claim." Dkt. 109 at 2. In other words,
Maupin is free to file his own lawsuit and obtain all the relief he is entitled to under the TCPA. So, for
example, if he is interested in pursuing a settlement on his modest claims or in seeking partial summary
judgment on them, *id.* at 5, nothing in the class settlement prevents him from doing so.

The opportunity to opt out is widely recognized as a key factor in the impairment analysis. As
the Fifth Circuit has put it, "[t]he problem of intervention within a class action would appear to arise
most likely in a class certified under 23(b)(1) or (b)(2), rather than under a class certified under
23(b)(3)." *Woolen* v. *Surtran Taxicabs, Inc.*, 684 F.2d 324, 332 (5th Cir. 1982). That is because a Rule
23(b)(3) class member "who does not consider that he is being represented adequately has the op-
tion … to opt out under 23(c)(2)" and avoid being "bound" by the judgment. *Id.* By contrast, "the

concept of intervention within a class certified under 23(b)(2) balances the *more likely impairment of the individual's interest* since he is unable to opt out of his class." *Id.* (emphasis added).[1]

Other authorities take the same view. *See, e.g.*, 3 Newberg on Class Actions § 9:35 (5th ed. June 2019) ("enabling [absent class members] to use their voice in the current case is … particularly pressing" "in non-opt-out class actions" where the absent class members "do not have an exit option"); 7B Wright & Miller, Federal Practice & Procedure § 1799 (3d ed. Apr. 2019) (giving every class member an opportunity to be heard is "especially important in the class-action context because the members of the class will be bound by the judgment, except when the action is brought under Rule 23(b)(3) and the member has opted out of the action" (footnote omitted)); *Davis* v. *J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) (denying intervention because, among other things, "any class members who believe that their interests will not be fully protected by the proposed settlement will have the opportunity to opt out of the settlement and pursue their own separate claims"); *Waudby* v. *Verizon Wireless Servs., LLC*, 248 F.R.D. 173, 175 (D.N.J. 2008) (denying intervention because, among other things, "Movant can opt out of any class that may ultimately be certified in order to pursue his claims independently"); *Alaniz* v. *Cal. Processors, Inc.*, 73 F.R.D. 269, 289 (N.D. Cal. 1976) ("[T]he ability to opt out precludes the Intervenors from satisfying the impairment-of-interest test.")

In short, Maupin's ability to opt out—and thereby fully vindicate all of his legally protectable interests—strongly suggests that he cannot satisfy the impairment prong of the Rule 24(a)(2) analysis. And the out-of-circuit case he cites does not rehabilitate his position. In *Smith* v. *SEECO, Inc.*, 865 F.3d 1021, 1024-25 (8th Cir. 2017), the Eighth Circuit held only that intervention of right cannot be

---

[1] Buchanan's motion for preliminary approval of the settlement sought certification of a settlement class only under Rule 23(b)(3). Dkt. 105 at 14, 19-22. His complaint, however, did allege a 23(b)(2) class, Dkt. 1 at 11, and this Court's order reflects that, Dkt. 106 at 3. But the named plaintiff in this case did not seek only damages under Rule 23(b)(3); instead, he also sought changed business practices, and his counsel bargained strongly for changes in SiriusXM's practices during the settlement negotiations, including before the mediator. *See* Dkt. 105-1 at 8-9. And crucially, Maupin is entitled to opt out of the settlement and pursue his own individual relief, *id.* at 23-25, although any request by him for an injunction not to be called anymore would be mooted by the fact that his phone number has been placed on Sirius XM's internal do-not-call list—meaning that he will never be called again.

automatically rejected simply because a class member has the right to opt out. It did not suggest that opt-out rights cannot be a significant factor in the analysis.

**b.** In addition to opting out, Maupin can also protect his interests in two other important ways. First, this Court's order gives him the right to file a written objection ahead of the final approval hearing, and then to appear at the hearing itself. Dkt. 106 at 7-9. This is a valuable opportunity to ensure that the settlement properly reflects Maupin's interests. *See, e.g., Jenkins ex rel. Jenkins* v. *Missouri*, 78 F.3d 1270, 1273, 1275 (8th Cir. 1996) (affirming district court's rejection of intervention as of right where, among other things, the proposed intervenors could "seek permission to testify on any issue before the court").

Second, under Rule 23(c)(2)(B)(iv), Maupin is entitled to "enter an appearance through an attorney if [he] so desires." This option—which "allows a class member to have representation by her own attorney in the class action without going the full length of becoming a party through intervention," 3 Newberg on Class Actions § 9:37 (footnote omitted)—can serve to protect Maupin's interests even more fully. *See Woolen*, 684 F.2d at 332 (intervention is less necessary in the Rule 23(b)(3) context in part because class members can "enter an appearance through counsel of [their] choosing").

In short, Maupin simply does not need to intervene in order to vindicate his legally protectable rights. He can either defend those rights in a separate lawsuit, or take advantage of his ample opportunities to participate in this proceeding. *See Jenkins*, 78 F.3d at 1273, 1275 (affirming denial of intervention because the district court correctly "found that there was no impairment of the interests of the [proposed intervenors] because of the other avenues available to [them]").

**2.   The interests Maupin points to are not legally protectable**

While Maupin purports to identify a variety of interests that could potentially be impaired absent intervention, those interests are not legally protectable—that is, they are not recognized by substantive law as belonging to Maupin. *Ross*, 426 F.3d at 757. Maupin "advances no theory that establishes a legal interest" as to these objectives, and his motion must be denied for that reason as well. *Mothersill D.I.S.C. Corp.* v. *Petroleos Mexicanos, S.A.*, 831 F.2d 59, 62 (5th Cir. 1987).

- 8 -

A number of the interests mentioned by Maupin are not even *his* interests. Instead, they belong to other class members. For example, he seeks to defend the "broader interests" of "other absent class members[,]" Dkt. 109 at 2; he worries that "other entities will call class members with impunity," *id.* at 3; and he aims to allow "other absent class members [to] make their own informed decisions about opting out or objecting," *id.* at 4-5. To state the obvious, the interests of other class members do not legally belong to Maupin, and therefore are not legally protectable interests of Maupin. Maupin is not a class representative and it is not his province to vindicate the interest of the entire class. Instead, it is this Court that "protects the absent class members' interests by ensuring that they are adequately represented at all times," 3 Newberg on Class Actions 9:30—a responsibility reflected in the Court's appointment of Buchanan as class representative and his counsel as class counsel. Dkt. 106 at 4.[2]

The other objectives mentioned by Maupin also do not constitute legally protectable interests. He seeks, for example, to (1) send a message to other would-be violators; (2) obtain a ruling on whether SiriusXM had an established business relationship with him, which may provide him with "a clear rationale for requesting FCC or Congressional action"; and (3) force Sirius XM "to start treating the DNC registry as a no-go zone rather than just another cost of doing business." Dkt. 109 at 2-3. Maupin "advances no theory," however, as to why he has a legal interest in any of these outcomes. *Mothersill D.I.S.C. Corp.*, 839 F.2d at 62. Maupin may have rights under the TCPA, but he has no right to send any particular message to Sirius XM or obtain any particular ruling from this Court (and of course, he is free to attempt to send his preferred message or obtain his desired rulings by opting out and pursuing his own claims).

In short, to the extent Maupin has legally protectable interests, they are fully protected in the current action. He is therefore not entitled to intervene of right.

---

[2] Maupin, by contrast, cannot represent anyone but himself for the further reason that "in federal court a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer." *Gonzales* v. *Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998).

**B.      Maupin's interests are adequately represented in this litigation**

Maupin's attempt to intervene under Rule 24(a)(2) also fails for another reason: Buchanan and his counsel adequately represent Maupin's interests. "The burden of establishing inadequate representation is on the applicant for intervention." *Edwards* v. *City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996). This burden "cannot be treated as so minimal as to write the requirement completely out of the rule." *Bush* v. *Viterna*, 740 F.2d 350, 355 (5th Cir. 1984). Accordingly, the proposed intervenor "must 'produce something more than speculation as to the purported inadequacy.'" *League of United Latin Am. Citizens, Council No. 4434* v. *Clements*, 884 F.2d 185, 189 (5th Cir. 1989) (citation omitted). Maupin cannot meet this burden.

**1.** To begin, this Court has already provisionally determined—for purposes of effectuating the proposed settlement—that "the interests of all Settlement Class Members are adequately represented by Plaintiff and Class Counsel." Dkt. 106 at 4; *see also id.* at 2 (noting that the Court "will likely be able to approve the proposed Settlement" and that the parties had engaged in "intensive, thorough, serious, informed and non-collusive negotiations"). To be sure, the adequacy of representation inquiries under Rule 23(a)(4) and Rule 24 are not "necessarily equivalent." *Woolen*, 684 F.2d at 331. But the Fifth Circuit has also noted the "overlapping character of the [two] inquiries into adequacy of representation." *Lelsz* v. *Kavanagh*, 710 F.2d 1040, 1044 (5th Cir. 1983); *see also, e.g.*, *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1066 (8th Cir. 2013) (stating that adequate representation should be presumed when attempted intervenor is a class member); *Jenkins*, 78 F.3d at 1275; *Barnes* v. *District of Columbia*, 274 F.R.D. 314, 319 (D.D.C. 2011).

But Maupin's argument would fail even on a blank slate. The Fifth Circuit has recognized that a presumption of adequate representation "arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Entergy Gulf States La., L.L.C.* v. *EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (citation omitted). That presumption applies here, as both Buchanan and Maupin seek to fully vindicate their own rights and those of other class members. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 337 (N.D. Ga. 1993) ("Here the interests of Public Citizen are the same as that

of the named parties, to obtain a settlement that is fair, reasonable, and adequate for the class."). Accordingly, Maupin can prevail only by showing "adversity of interest, collusion, or nonfeasance on the part of the existing party." *Entergy*, 817 F.3d at 203 (internal quotation marks omitted). He has not seriously attempted to show any of those.

**2.** Instead, Maupin attempts to show inadequacy of representation solely by focusing on his tactical disagreements with class counsel. At bottom, his objection is simply that the settlement is not good enough. Specifically, he "believes that either the [established business relationship] issue should be litigated, or the consideration by Defendant for not litigating it should be much higher." Dkt. 109 at 18; *see id.* at 2 (suggesting that the settlement is insufficiently costly to Sirius XM).

It is well established, however, that this sort of disagreement over legal tactics, or the particulars of the remedy, cannot demonstrate inadequate representation. *See, e.g., Bradley* v. *Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) ( "A mere disagreement over litigation strategy … does not, in and of itself, establish inadequacy of representation."); *Lamar* v. *Lynaugh*, 12 F.3d 1099, *1 n.4 (5th Cir. 1993) (quoting *Bradley* on this point);[3] *Jenkins*, 78 F.3d at 1275-76 ("A difference of opinion concerning litigation strategy or individual aspects of a remedy does not overcome the presumption of adequate representation. … While the Jenkins class may not have completely satisfied all of its members, there is no showing that its conduct has been so deficient as to render its representation inadequate."); *League of United Latin Am. Citizens* v. *Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997) ("courts have been hesitant to accord the applicant full-party status" when the applicant "has vested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics"); 3 Newberg on Class Actions § 9:35. In short, it is not enough for Maupin to wish that class counsel had obtained a better deal; he must point to a "dereliction of duty"—and he has not done so. *Chiglo* v. *City of Preston*, 104 F.3d 185, 188 (8th Cir. 1997); *see Jordan* v. *Mich. Conferences of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000) (it is not

---

[3] Under Fifth Circuit Rule 47.5.3, unpublished opinions issued before January 1, 1996, are precedential.

enough for an intervenor to argue that it "would be more vigorous in pursuing its claim" where intervenor "does not identify a single argument that [it] would have made" that the named party did not).

**3.** This point holds all the more strongly in the class action context. After all, if any class member could intervene simply by asserting that class counsel should employ a more aggressive legal strategy, settlements would be discouraged if they could easily be unwound by an unhappy absent class member; class actions would become unadministrable; and the very point of certifying the class would be defeated.

The Fifth Circuit has recognized this point. In *Ruiz* v. *Collins*, 981 F.2d 1256, *1 (5th Cir. 1992), a class member sought to intervene and alleged inadequate representation. The proposed intervenor argued "that class counsel is inadequate because it will not make all the arguments [the proposed intervenor] would make if he had his druthers." *Id.* at *2. The Fifth Circuit emphatically rejected that argument, concluding that the proposed intervenor was "simply attempting to force his own agenda on counsel representing the class." *Id.* The court observed that "[c]hanneling complaints through class counsel is the process by which the issues may be consolidated and relief most effectively provided." *Id.* The court approvingly cited the district court's conclusion that "'mass confusion' and 'no effective action' would result if thousands of interveners were each allowed to control the litigation." *Id.*

All of the same conclusions apply here. Indeed, they apply far more forcefully, given that the class is vastly larger: while the *Ruiz* class consisted of approximately 60,000 members, *id.* at *1, the class in this case is estimated to include *over 14 million people*, Dkt. 105 at 15.

In short, it is far from sufficient for Maupin to express disagreement with class counsel's tactics. To establish inadequate representation, Maupin would have to show that class counsel's approach would "so harm members of the plaintiff class and the proposed intervenors that the class representatives have failed to fulfill their duty." *Bradley*, 828 F.2d at 1193; *cf. McFadden* v. *Lucas*, 713 F.2d 143, 147 (5th Cir. 1983) (rejecting intervention in the class action context where the proposed intervenor was a class member, counsel had been appointed for the class, and the class action would address the issue the intervenor sought to present). He has not done so.

**4.** Finally, despite Maupin's strident attacks on SiriusXM and its counsel, it is worth noting that Maupin's objections to class counsel's tactics are tepid at best. He admits that he has yet to settle on the "best course of action." Dkt. 109 at 8. And he even acknowledges that class counsel "may be … correct" in their calculation that litigating the case is too risky and that the settlement is preferable. *Id.* at 4. At bottom, then, his objection is simply that "the settlement website and … the publicly available court documents" (which include the bulk of the parties' briefing on summary judgment and class certification) do not provide enough information for him "to determine whether [his] interests are best served by objecting or opting out." *Id.*

In other words, Maupin's inadequacy-of-representation argument ultimately rests on his dissatisfaction with the contents of the notice he has received as an absent class member. But this Court has already approved that notice. Dkt. 106 at 5. Maupin does not—and could not—suggest that the Court erred in finding the notice to be sufficient. *See In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (stating that notice of a class settlement need only contain "information reasonably necessary for [class members] to make a decision whether to object to the settlement").

Nor does Maupin explain *what* additional information he needs to make his decision. His complaints instead amount to a fishing expedition, rather than the sort of concrete and specific objections that could potentially demonstrate inadequacy of representation. *See Clements*, 884 F.2d at 189 ("speculation" is not sufficient to show inadequacy (citation omitted)); *Texas* v. *United States*, 805 F.3d 653, 662 (5th Cir. 2015) (noting that proposed intervenors must "connect the allegedly divergent interests with … concrete effects on the litigation"); *Hopwood* v. *Texas*, 21 F.3d 603, 606 (5th Cir. 1994) (denying intervention where the proposed intervenors had not "shown that they have a separate defense of the … plan that the State has failed to assert"); *Ruiz*, 981 F.2d 1256, at *2 (rejecting an inadequacy argument based on "conclusory statements").

## II.    This Court should deny permissive intervention under Rule 24(b)(1)(B)

Rule 24(b)(1)(B) allows this Court to permit anyone to intervene who (1) files a timely motion and (2) "has a claim or defense that shares with the main action a common question of law or fact."

- 13 -

The decision whether to grant permissive intervention is "wholly discretionary with the district court" even if "the requirements of Rule 24(b) are … satisfied." *Bush* v. *Viterna*, 740 F.2d 350, 359 (5th Cir. 1984). This Court should deny Maupin's motion essentially for the reasons stated above: Maupin can protect his rights in several other ways, his interests are adequately represented in any event, and therefore allowing him to intervene would only cause unnecessary cost and delay.

First, as discussed in Part I.A, Maupin can protect his interests by opting out of the settlement, by objecting, or by having an attorney enter an appearance. And as the Fifth Circuit has explained, "[w]hen an appellant has other adequate means of asserting its rights, a charge of abuse of discretion in the denial of a motion for permissive intervention would appear to be almost untenable on its face." *Korioth* v. *Brisco*, 523 F.2d 1271, 1279 n.25 (5th Cir. 1975); *see Head* v. *Jellico*, 870 F.2d 1117, 1124-25 (6th Cir. 1989). Indeed, courts have consistently rejected permissive intervention under such circumstances. *Bradley*, 828 F.2d at 1194 (denying permissive intervention where "the district court ha[d] already taken steps to protect the proposed intervenors' interests"); *Brewer* v. *Republic Steel Corp.*, 513 F.2d 1222, 1225 (6th Cir. 1975) (affirming denial of permissive intervention where proposed intervenor could achieve the same goals by participating as amicus curiae); 3 Newberg on Class Actions § 9:36 (noting that "permissive intervention may be denied when objection to a settlement would serve the same purpose as intervention or when a putative intervenor has adequate means of asserting her rights in another manner" (footnotes omitted)).

Second, as discussed in Part I.B, Maupin's interests are adequately represented by Buchanan and his counsel. This means that allowing Maupin to intervene would add little to the litigation. *See Clements*, 884 F.2d at 189 ("When acting on a request for permissive intervention, a district court should consider, among other factors, whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues."); *Benjamin* v. *Dep't of Pub. Welfare*, 267 F.R.D. 456, 465 (M.D. Pa. 2010) (denying permissive intervention "because the Applicants' interests are already represented in the litigation, and

their appearance as intervenors would not sufficiently add anything to the litigation"), *aff'd*, 432 F. App'x 94 (3d. Cir. 2011).

The only consequence of allowing intervention, then, would be to delay the proceedings and make them more costly. That is an additional reason to deny intervention: Rule 24(b)(3) expressly provides that, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Unsurprisingly, courts routinely deny permissive intervention where there is adequate representation, and therefore intervention would only slow the case down and add unnecessary expense. *See, e.g.*, *Hopwood*, 21 F.3d at 606 (affirming denial of permissive intervention where district judge had found that there was adequate representation and that "adding the [proposed intervenors] to the lawsuit would needlessly increase costs and delay disposition of the litigation"); *Am. Ass'n of People with Disabilities* v. *Herrera*, 257 F.R.D. 236, 259 (D.N.M. 2008) ("Given that the Court finds that the Defendant is adequately representing any interests the prospective intervenors have in the litigation, it would be inappropriate to allow them to intervene permissively, with the delays to the resolution of the case such intervention would entail."); 3 Newberg on Class Actions § 9:36 (noting that permissive intervention is likely to be denied where the intervenor is "adequately represented and her presence will just slow things down").

In sum, there is no reason for this Court to allow permissive intervention here.

## CONCLUSION

Maupin's motion to intervene should be denied.

July 23, 2018                                    Respectfully submitted,

                                                 */s/ Lee A. Armstrong*
                                                 Lee A. Armstrong (admitted *pro hac vice*)
                                                    New York Attorney No. 2580793
                                                 JONES DAY
                                                 250 Vesey Street
                                                 New York, NY
                                                 Tel: (212) 326-3939
                                                 Fax: (212) 755-7306
                                                 Email: laarmstrong@jonesday.com
                                                 *Counsel for Defendant Sirius XM Radio Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of July, 2019, I electronically filed a true and correct copy of Defendant Sirius XM Radio Inc.'s Memorandum in Opposition to Patrick Maupin's Motion to Intervene with the Clerk of the Court by using the CM/ECF system, which will send notification of such filing to Patrick Maupin and all counsel of record.

*/s/ Lee A. Armstrong*
Lee A. Armstrong