IN THE UNITED STATES COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THOMAS BUCHANAN, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SIRIUS XM Radio, Inc.,<br><br>    Defendant. | Case No. 3:17-cv-00728-D |

PATRICK MAUPIN'S REPLY BRIEF IN SUPPORT OF
HIS OPPOSED MOTION TO INTERVENE

**INTRODUCTION**

This reply brief addresses the responses of both parties.  Between them, the parties argue that Movant does not meet any of the four FRCP 24(a)(2) factors for intervention as of right, that permissive intervention is not timely, that Movant's final demand email (sent to both parties before commencing litigation) was somehow improper, and that Movant used mean words.

This reply first addresses the argument that Movant's demands and language were improper, then takes the four FRCP 24(a)(2) factors in order.

## MOVANT'S DEMANDS WERE PROPER

Both Plaintiff and Defendant have attached, to their responses, pre-litigation emails from Movant. These communications are inadmissible pursuant to FRE 408(a), and the parties' arguments involving them are prejudicial to Movant.

Movant presumes the Court will impartially ignore these emails and any arguments deriving from them. However, Movant offers a brief rebuttal the Court may find useful in the unlikely event it finds it difficult to un-see such arguments.

Movant's final demand email to the parties (Dkt. 111-3, Dkt. 112-4) simply attempted to explain his intention to attempt to intervene unless the settlement was improved, give enough background information (since Movant is not an attorney) to try to convince the parties that he was serious about, and capable of, such an intervention attempt, and explain that, if he was successful in intervention, Movant might be able to drive towards either a trial or a much better settlement. So Plaintiff's characterization of this email as extortionate misses the mark. In fact, the ratio of a $100,000 incentive award to the $250 million class settlement Movant proposed is the same as the ratio of Plaintiff's own proposed $10,000 incentive award to its proposed $25 million settlement, and a comparative bargain, to boot, as Movant's lack of representation prevents him from petitioning the Court for any attorney's fees.

Plaintiff and Defendant also both indignantly describe the language used by Movant. Defendant even includes Plaintiff's initial demand letter (Dkt. 112-2) in order to point out that Movant used phrases like "misbegotten marketing strategies" and "mud-wrestling with pigs." But this email merely explained that Movant was more than willing to litigate unless Defendant paid $500 and promised never to call again. Movant is only here because Defendant was unwilling to meet such cheap and simple terms without demanding significant constraints on Movant's own future behavior.

Movant's demands were permissible, if colorful, speech, and the fact that he has actually moved to intervene moots any possible complaint that his demands were made in bad faith with no intention to actually litigate.

**MOVANT'S INTERVENTION IS TIMELY**

Defendant argues that Movant's intervention is not timely for permissive intervention, and Plaintiff argues that it is not even timely for intervention as of right.

Plaintiff cites, but misconstrues, both the Stallworth factors and subsequent caselaw. It is worth noting that, in Stallworth itself, the motion for intervention was found to be timely, even for purposes of permissive intervention, even after the trial cout's final judgment. *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir.

1977)  In the instant case, Movant was not even made a class member until the May 6th order, and it is currently far earlier in the case – apparently class notices have recently been mailed out, although Movant has yet to receive one (a circumstance he intends to fully investigate if allowed to intervene, to determine how many other class members may be adversely affected by lack of notice).

Plaintiff argues that "The Fifth Circuit has held that a would-be intervenor's delay of only seventeen days between discovering his interests were not adequately represented and filing a motion to intervene was too long. *Piambino v. Bailey*, 610 F.2d 1306, 1325 (5th Cir. 1980). Maupin's delay in this case was far longer, and it occurred after the significant events of preliminary approval and initiation of class administration." Dkt. 111 p. 6.

Plaintiff is simply wrong, both about what the *Piambino* decision says and what it means for Movant.  The decision holds the opposite of what Plaintiff claims: "This delay of a mere seventeen days cannot rationally be denominated as unreasonable." *Piambino* at 1325, and the decision held that "[intervenor] was entitled to intervention as a matter of right." *Piambino* at  1334.  Recent caselaw bolsters this interpretation of reasonableness.  "We hold that HK's decision to wait 45 days before seeking to intervene was not unreasonable and that HK's motion was timely under the circumstances of this case." *Swoboda v. Manders*, No. 16-30074 (5th Cir. 2016)

Although Movant did not become fully convinced that Plaintiff was not going to protect his interests until June 7, even the 38 days between May 25th, when Movant discovered this case, and July 2nd, when he moved to intervene, is a week less than the time allowed in *Swoboda*.

### MOVANT HAS AN INTEREST IN THE CASE

Plaintiff asserts that Movant has not adequately alleged that he has a protectable interest in the case, but Movant's motion refers to and incorporates his complaint, which (a) asserts he is a class member; (b) meets the Twombly/Iqbal minimal pleading standard; (c) is signed in conformance to Rule 11; and (d) is supported by an unsworn declaration under penalty of perjury.

Also, and fatal to Plaintiff's argument, is that Defendant's response to this same motion admits that Movant is "an absent class member"  Dkt. 112 p. 1.

### MOVANT'S INTERESTS MAY BE IMPAIRED

Defendant argues that (a) Movant's interests are not legally protectable; (b) Movant's interests do not diverge from those of class; (c) Movant is only urging different litigation tactics than those employed by Plaintiff; and (d) Movant could object to the settlement.  Both parties also argue that (e) Movant could opt out and pursue his own litigation.

### (a) MOVANT'S INTERESTS ARE LEGALLY PROTECTABLE

Defendant argues that Movant has no protectable interest, or alternatively, that some of the interests that Movant identifies are not his, and he cannot protect them. But if Movant proves his complaint, he has a statutory right to an injunction against Defendant; the fact that others may also benefit if this right is upheld through a class action does not mean that it is not Movant's right.

> Similarly, it is elementary that, "The 'real party in interest' is the party who, by substantive law, possesses the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." Barron and Holtzoff, Federal Practice and Procedure, § 482 (Wright ed. 1961). *United States v. 936.71 Acres of Land*, State of Fla., 418 F.2d 551 (5th Cir., 1969)

### (b) MOVANT'S INTERESTS ARE ALREADY BEFORE THE COURT

Defendant states that "In short, to the extent Maupin has legally protectable interests, they are fully protected in the current action."

Movant agrees that his interests are, in fact, practically identical to those of the National DNC subclass, but does not agree they are fully protected. The parties have thrown this subclass under the bus and negotiated a settlement that only offers injunctive relief to the internal DNC subclass, despite the fact that injunctive relief for the National DNC subclass was demanded in paragraph 56 of the original complaint.

Movant's claims are already in front of the Court, and if the Court finds for Plaintiffs, injunctive relief is practically automatic under this statute, so judicial economy supports intervention.  "The 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562 (5th Cir., 2016) quoting  *Nuesse v. Camp* , 385 F.2d 694, 700 (D.C. Cir. 1967).

As an aside, this congruence of interests additionally means that Movant fully satisfies the FRCP 24(b)(1)(B) commonality requirements for permissive intervention.

**(c) MOVANT DEMANDS  RELIEF, NOT DIFFERENT TACTICS**

Defendant argues that Movant's difference with Plaintiff is only about tactics.  But this rings hollow.

The proposed settlement pays lip service to the idea of a National DNC Registry subclass, but offers no relief specific to that subclass.  Movant demands that Defendant be enjoined from calling people, such as himself, who have subscribed to the National DNC Registry, and who have not voluntarily contacted Defendant.

Make no mistake -- even Defendant's first call to National DNC registry subscribers is a violation of public law, one that the FTC, the FCC, and state

attorneys general could address if they had the time and manpower.  But it is only after the second call that a federal private right of action accrues.  The class has the ability to force an injunction that would be beneficial to itself and the general public.

People do not sign up for the National DNC registry in order to have random $12.00 checks show up every few years.  Rather, they do so because they are tired of telephone solicitations.  The proposed settlement does not offer any real relief related to the National DNC registry.  In fact, it is likely that discovery will show that early (e.g. 2013 ,2014) National DNC subclass members who have recently purchased new automobiles have again been solicited by Defendant this year, after they aged out of Defendant's internal DNC list.

### (d) OBJECTING IS NOT THE SOLUTION

Defendant argues that "[Movant] can protect his interests in several ways: he can opt out, he can object to the settlement and participate in the settlement hearing, and he can even enter an appearance through an attorney if he wishes."

But Movant has received very little information from the parties, and still does not possess a detailed analysis of why the parties believe that the settlement is fair to the National DNC Class.  The parties have explained that they have no intention of assisting Movant in unsealing court documents, and no intention of

sharing discovery with him. All Movant has received is conclusory statements about the risk and the negotiation. This lack of information would greatly hamper his ability to object, or the ability of his attorney to argue for him, and the extra cost of hiring an attorney would, as a "practical matter," impair his ability to protect his interests.

> Lastly, the applicants were allowed to argue their objections to the court, but did so without the benefit of any discovery. In fact, the objectors were given access to the challenged exam questions and answers, which were previously subject to a confidentiality order issued by the district court, only two days prior to the fairness hearing. The perfunctory process employed in this case belittles our notion of fairness. That these applicants were deprived not only of the opportunity to participate in this proceeding with the rights and privileges of full parties, but also of the opportunity to adequately prepare and present objections to the proposed decree, precludes us from concluding that the district court's denial of intervention was harmless. 27 *Edwards v. City of Houston*, 78 F.3d 983 (5th Cir., 1996)

**(e) OPTING OUT IS NOT THE SOLUTION.**

Both parties make much of Movant's admission that he could opt out and pursue his own litigation, but that does not cut against Movant's right to intervene. "The impairment requirement does not demand that the movant be bound by a possible future judgment, and the current requirement is a great liberalization of the prior rule. 6 MOORE'S § 24.03[3][a], at 24-41; *Edwards*, 78 F.3d at 1004-05." *Brumfield v. Dodd* (5th Cir., 2014)

In any case, the class should be managed so as to protect all subclasses, and reduce the necessity to opt out. Movant is not injecting new issues into the case; rather he is only pointing out that one subclass is not being handled fairly in the settlement. Judicial economy suggests he should be heard in this case.

Parties warn of an upcoming discovery battle if Movant is allowed to intervene, but they cannot even avoid that battle if he opts out, because they both possess information that he would be entitled to for his own use, and he would have to start the discovery process over in a different court.

## MOVANT'S INTERESTS ARE NOT ADEQUATELY REPRESENTED

Courts have found that the showing required for this test is minimal. Movant readily meets it: the parties are unwilling to modify the proposed settlement agreement to provide for the injunctive remedy Movant is entitled to.

> The existing parties here—LULAC and the city—oppose the relief that Morton seeks; thus, they do not adequately represent his interest. *League of United Latin Am. Citizens v. City of Boerne*, 659 F.3d 421, 80 Fed.R.Serv.3d 871 (5th Cir., 2011)

## CONCLUSION

Movant's intervention is not made for any improper motive; he satisfies all the conditions for either intervention of right or for permissive intervention; and

the Court may find his input useful when deciding whether any settlement is fair to all subclasses and the general public.

> The inquiry under Rule 24(a)(2) "is a flexible one, which focuses on the particular facts and circumstances surrounding each application," and "intervention of right must be measured by a practical rather than technical yardstick." *Edwards v. City of Hous.*, 78 F.3d 983, 999 (5th Cir.1996). The rule "is to be liberally construed," with "doubts resolved in favor of the proposed intervenor." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir.2009). *Entergy Gulf States La., L.L.C. v. U.S. Envtl. Prot. Agency*, 817 F.3d 198 (5th Cir., 2016)

Movant has attached to this reply (1) his proposed order for the underlying motion (which did not have such order attached, as it was submitted on paper), and (2) his agreement to be bound by the Protective Order stipulated to by the original parties.

Dated this August 1st, 2019

Respectfully submitted,

/s/ *Patrick Maupin*
Patrick Maupin
*Pro Se*
2206 Southern Oaks Drive
Austin, Texas 78745
(512) 743-8620
pmaupin@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of August, 2019, I electronically filed a true and correct copy of my Reply Brief in support of my Motion to Intervene with the Clerk of the Court by using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Patrick Maupin*
Patrick Maupin