IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THOMAS BUCHANAN, | § |
| | § |
| Plaintiff, | § |
| | § Civil Action No. 3:17-CV-0728-D |
| VS. | § |
| | § |
| SIRIUS XM RADIO, INC., | § |
| | § |
| Defendant. | § |

MEMORANDUM OPINION
AND ORDER

In this class action involving alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, Patrick Maupin ("Maupin") moves *pro se* to intervene as of right under Fed. R. Civ. P. 24(a)(2), or, alternatively, to intervene permissively under Rule 24(b)(1)(B). Plaintiff Thomas Buchanan ("Buchanan") and defendant Sirius XM Radio, Inc. ("Sirius XM"), who have entered into a settlement that has received preliminary court approval, oppose the motion. For the reasons that follow, the court denies Maupin's motion to intervene.

I

In March 2017 Buchanan filed a class action complaint against Sirius XM, alleging that it had violated the TCPA by placing telemarketing calls to individuals who had registered either with the National Do Not Call ("DNC") Registry or Sirius XM's internal DNC list. Sirius XM raised as a defense the "established business relationship" ("EBR") exception to the TCPA. The EBR exception permits businesses to call members of the

National DNC Registry with whom they have an existing business relationship.[1] In April 2019—before the merits of the EBR defense was litigated—the parties reached a settlement pending final court approval.

On May 6, 2019 the court granted preliminary approval of the settlement and certified a settlement class. The settlement defines the class as members of the National DNC Registry or Sirius XM's internal DNC list who received more than one call from Sirius XM in a 12-month period between October 16, 2013 and April 26, 2019. If the settlement is given final approval, class members will be entitled to a pro rata distribution of a settlement fund of $25 million or three free months of Sirius XM subscription services. Sirius XM also agreed to alter some of its telemarketing practices, including providing notice to trial subscribers of how to opt out of further communications with the company. In his motion for preliminary settlement approval and class certification, Buchanan agreed that this change in business practices would bolster Sirius XM's EBR defense to a TCPA claim. But the settlement agreement does not explicitly require Sirius XM to refrain from contacting members of the National DNC Registry.

In late May 2019 Maupin discovered that he was a member of the class. Maupin alleges that on March 25, 2019 and March 27, 2019 he received two calls from Sirius XM

---

[1]*See* 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(5) ("The term established business relationship for the purposes of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without the exchange of consideration[.]").

soliciting subscriptions.[2] He avers that, at the time of the calls, he was a member of the National DNC Registry. He also maintains that, despite having paid for Sirius XM services in the past, he has had no recent voluntary communication with Sirius XM that would, in his view, place the calls within the EBR exception. Following the second call, Maupin sent a claim for damages to Sirius XM's counsel, but the parties were unable to resolve his claim.[3]

During the parties' negotiations, Maupin reviewed the proposed class settlement. He maintains that the proposed settlement does not adequately protect his interests because the settlement cost is insufficient to deter Sirius XM from future violations of the TCPA. He also avers that the settlement provides ways for Sirius XM to establish an EBR without requiring Sirius XM to scrub against the National DNC Registry or otherwise prohibiting Sirius XM from contacting members of the National DNC Registry. Despite acknowledging class counsel's statement that the EBR issue is a risk to litigate, Maupin posits that the EBR issue should be litigated, and he intends to ensure that a ruling is made on this issue if he is

---

[2]The court notes that these facts were alleged within Maupin's proposed TCPA complaint attached to his motion to intervene. Because Maupin is a *pro se* movant, the court reads the attached complaint and motion to intervene together as a whole, including the facts alleged in both. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that *pro se* complaints are to be liberally construed and held to "less stringent standards than formal pleadings drafted by lawyers."); *see also Hernandez v. Maxwell*, 905 F.2d 94, 96 (5th Cir. 1990); *Simmons v. Jackson*, 2016 WL 2646738, at *2 (N.D. Tex. May 10, 2016) (Fitzwater, J.).

[3]Buchanan and Sirius XM attached Maupin's email exchanges with Sirius XM to their respective responsive pleadings. Maupin objects to the inclusion of these emails on the ground that they are inadmissible settlement negotiations under Fed. R. Evid. 408(a). Because the court has not considered the emails in reaching its decision, it need not address this objection.

permitted to intervene.

II

The court turns first to Maupin's motion to intervene as of right.

A

A party is entitled to intervene as of right under Rule 24(a)(2) if (1) the motion to intervene is timely, (2) the interest asserted by the potential intervenor is related to the action, (3) the interest may be impaired or impeded by the action, and (4) the interest is not adequately represented by the existing parties. *See, e.g., In re Oil Antitrust Litig.*, 570 F.3d 244, 247 (5th Cir. 2009); *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994) (citing *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc) ("*NOPSI*")). "Failure to satisfy any one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. v. Bd. Of Levee Comm'rs*, 493 F.3d 579, 578 (5th Cir. 2007).

The court will assume *arguendo* that Maupin is a member of the class and that he has satisfied the first two elements of intervention as of right—timeliness and an interest related to the action—and will therefore focus its analysis on the remaining two elements—impairment and inadequate representation.

B

The court turns first to the impairment prong.

1

The impairment prong requires the movant to demonstrate that he has a "legally protectable interest" related to the action and that denial of intervention "may, as a practical matter, impair or impede the movant's ability to protect that interest." *Brumfield v. Dodd*, 749 F.3d 339, 343, 344 (5th Cir. 2014) (quoting 6 James Moore, et al., *Moore's Federal Practice* § 24.03[3][a], at 24-41 (3d ed. 2008)) (citing *Espy*, 18 F.3d at 1207). Although the impairment requirement "does not demand that the movant be bound by a possible future judgment," the impairment must be "'practical' . . . and not merely 'theoretical.'" *Id.* (quoting 6 Moore, *supra*, § 24.03[3][a], at 24-42).

2

Maupin alleges two interests that may be impaired if he is not permitted to intervene. He asserts an interest in ensuring that the cost of the settlement is sufficiently high to deter Sirius XM from future violations of the TCPA. And he asserts that he and other class members are entitled to a ruling on the question whether Sirius XM had an EBR with class members at the time the calls were made. Relying on *Smith v. SEECO, Inc.*, 865 F.3d 1021, 1024-25 (8th Cir. 2017), Maupin also posits that his ability to opt out or object to the settlement does not prevent him from intervening as of right.

Sirius XM responds that some of Maupin's alleged interests are not legally protectable and those that are, including his individual rights under the TCPA, are not impaired because

he can opt out of the class action, file a written objection to the proposed settlement, or enter an appearance through an attorney. Sirius XM asserts that Maupin misreads the Eighth Circuit's holding in *SEECO*, and, even if he properly interprets it, the opinion is not binding on this court.

Maupin replies that because the Fifth Circuit does not require a showing that he will be bound by a future judgment, he cannot be precluded from intervening merely because he can opt out. He also maintains that, as a practical matter, the expense of hiring an attorney impairs his ability to otherwise protect his interests.

3

Assuming *arguendo* that the interests Maupin alleges are legally protectable, the court nevertheless concludes that Maupin has not demonstrated that these interests will be impaired. This is so because Maupin can opt out of the class action, object to the settlement, or enter an appearance through an attorney.

This court has held that the impairment prong is not satisfied "where [the class member] will have the opportunity to object to any settlement or opt out of its preclusive effect," because, as a practical matter, the class member's interests suffer little to no injury. *Izzio v. Century Partners Golf Mgmt., L.P.,* 2015 WL 5472845, at *5 (N.D. Tex. Sept. 15, 2015) (Solis, C.J.). This holding is in accord with the Fifth Circuit's suggestion in *Woolen v. Surtran Taxicabs, Inc.* that impairment is less likely in a Rule 23(b)(3) class action because "[a] class member who does not consider that he is being represented adequately has the option in a (b)(3) action to opt out under [Rule] 23(c)(2) or enter an appearance through

- 6 -

counsel of his choosing." *Woolen v. Surtran Taxicabs, Inc.*, 684 F.2d 324, 332 (5th Cir. 1982); *see also United States v. City of Jackson, Miss.*, 519 F.2d 1147, 1151 (5th Cir. 1975) (holding that impairment prong was not satisfied where, by its terms, consent decree permitted employees to reject back pay and bring suit for greater amount). To the extent that other circuits have held otherwise, these decisions are not binding on this court.[4]

In this case, Maupin has several options to prevent his interests from being impaired or impeded: he can opt out of the class action, object to the settlement, or enter an appearance through counsel. Maupin's argument that these options are prohibitively expensive and therefore impair his interests as a practical matter are unavailing. In this case, the cost of hiring an attorney and the general challenges of litigating an individual action do not of themselves satisfy the impairment prong. *See, e.g., Gilyard v. Texas Laurel Ridge Hosp. LP*, 2009 WL 10670038, at *3 (W.D. Tex. Feb. 18, 2009) (holding that cost and inconvenience of litigating separate action were insufficient to satisfy third prong of intervention as of right) (citing *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977)). Maupin has not demonstrated

---

[4]*See SEECO*, 865 F.3d at 1024-25 (reversing district court's holding that class members were not entitled to intervention as of right when they could opt out, and reasoning that the liberalization of Rule 24 in the 1966 amendments would be unnecessary if this were the case); *see also Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 696-97 (11th Cir. 2017) (holding that "the risk that the movants will be bound by an unsatisfactory class action settlement satisfies Rule 24(a)(2)'s third prong"). Several district court opinions outside the Eighth and Eleventh Circuits, however, are in accord with this court's holding. *See, e.g., Davis v. J.P. Morgan Chase & Co.*, 775 F.Supp.2d 601, 605-06 (W.D.N.Y. 2011); *Doe v. Cin-Lan, Inc.*, 2011 WL 37970, at *2-4 (E.D. Mich. Jan. 5, 2011); *Bailey v. AK Steel Corp.*, 2008 WL 148941, *7 (S.D. Ohio Jan. 14, 2008); *In re DHP Indus., Inc. Class Action Litig.*, 2007 WL 2907262, *2 (E.D.N.Y. Sept. 30, 2007); *Ruggles v. Bulkmatic Transport Co.*, 2007 WL 496671, *3 (S.D. Ohio Feb.7, 2007); *Thompson v. Metro. Life. Ins. Co.*, 216 F.R.D. 55, 70 (S.D.N.Y. 2003).

that his interests will be impaired if he is unable to intervene.

C

The court now turns to the inadequate representation prong.

1

The burden of establishing inadequate representation is on the movant. *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (en banc). "Although the applicant's burden of showing inadequate representation is minimal, 'it cannot be treated as so minimal as to write the requirement completely out of the rule.'" *Id.* (quoting *Cajun Elec. Power Coop., Inc. v. Gulf States Utils., Inc.*, 940 F.2d 117, 120 (5th Cir. 1991)). "The potential intervenor need only show that the representation *may* be inadequate." *John Doe #1 v. Glickman*, 256 F.3d 371, 380 (5th Cir. 2001) (emphasis in original) (quoting *Espy*, 18 F.3d at 1207). A presumption of adequate representation, however, arises "when the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Edwards*, 78 F.3d at 1005. To rebut this presumption, "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party." *Id.* (citing *United States v. Franklin Parish Sch. Bd.*, 47 F.3d 755, 757 (5th Cir. 1995)).

2

For the same reasons that Maupin maintains that his interests would be impaired, he posits that his interests are not adequately represented. Maupin contends that the settlement that class counsel negotiated is insufficient to deter Sirius XM from future violations of the TCPA. He also maintains that class counsel's decision to settle rather than litigate the EBR

defense and failure to explicitly require Sirius XM to scrub against the National DNC Registry demonstrate inadequacy of representation.

Sirius XM and Buchanan respond that Maupin's interests are adequately protected as a member of the class. Sirius XM and Buchanan assert that the presumption of adequate representation applies because Maupin has not set forth an interest that is different from that of the class. Sirius XM posits that Maupin has not overcome the presumption because Maupin's allegations amount to a disagreement over legal tactics and the particulars of a remedy, not the required showing of adversity of interest, collusion, or nonfeasance on the part of the existing party.

Maupin replies that he seeks different relief, not different legal tactics. He asserts that the settlement agreement does not provide an adequate remedy for members of the National DNC Registry because it does not enjoin Sirius XM from calling its members. Relying on *League of United Latin American Citizens, District 19 v. City of Boerne* ("*LULAC*"), Maupin maintains that class counsel's unwillingness to modify the settlement to include an injunction specific to the National DNC Registry subclass demonstrates inadequate representation. *See LULAC*, 659 F.3d at 421, 435 (5th Cir. 2011) ("The existing parties here—LULAC and the city—oppose the relief that [movant] seeks; thus, they do not adequately represent his interest.").

3

The court concludes that Maupin and the existing parties share the same ultimate objective. Both Maupin and Buchanan seek a remedy for Sirius XM's violations of the

- 9 -

TCPA, including its calls to members of the National DNC Registry, and seek a change in Sirius XM's telemarketing practices to avoid future violations of the TCPA. For this reason, the presumption of adequate representation applies. Neither Maupin's dissatisfaction with class counsel's decision to settle rather than litigate the EBR issue nor Maupin's desire for a larger settlement and explicit language constraining Sirius XM's engagement with the National DNC Registry demonstrates a difference in ultimate objectives, much less shows inadequate representation.

"A mere disagreement over litigation strategy . . . does not, in and of itself, establish inadequacy of representation." *Lamar v. Lynaugh*, 12 F.3d 1099, 1099 n.4 (5th Cir. 1993) (per curiam) (unpublished table decision) (quoting *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987)). Likewise, class counsel is not "inadequate because it will not make all the arguments [the proposed intervenor] would make if he had his druthers." *Ruiz v. Collins*, 981 F.2d 1256, 1256 (5th Cir. 1992) (per curiam) (unpublished table decision). Other district courts in this circuit have also held that "representation is not inadequate [where] 'the applicant would insist on more elaborate . . . pre-settlement procedures or press for more drastic relief, or where the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy.'" *Izzio*, 2015 WL 5472845, at *3 (quoting *Altier v. Worley Catastrophe Response, LLC*, 2012 WL 161824 (E.D. La. Jan. 18, 2012)). The court concludes in this case that disagreement with class counsel over whether to litigate an issue and the particulars of the settlement achieved do not evidence a different objective or inadequate representation.

The authority Maupin cites is distinguishable. *LULAC* involved a consent decree between an organization and a city that would change the way city council members were elected. *See LULAC*, 659 F.3d at 430. Because the proposed intervenor and the existing parties advocated for mutually exclusive, adverse outcomes—single-member electoral districts and cumulative voting—they did not share the same ultimate objective. *See id.* The consent decree would also have altered the intervenor's "pre-existing right to vote for certain elected officials," leaving him with "no other possible procedural vehicle for his attempt to persuade the courts that the modified consent decree should be vacated." *Id.* at 428, 434.

Here, the objectives Maupin and Buchanan seek are not adverse like those of the intervenor and the organization in *LULAC*. Indeed, the interests Maupin advances are the very ones that class counsel advocates—a monetary remedy for Sirius XM's alleged violations of the TCPA and changed telemarketing practices to prevent future violations. The settlement that class counsel has reached in fact provides a monetary remedy for members of the National DNC Registry whom Sirius XM called. The agreement also works towards changed practices to increase the likelihood that Sirius XM will have an EBR with those whom the company calls in the future so that such calls are less likely to be made in violation of the National DNC Registry and the TCPA. Maupin's demands for a better deal do not demonstrate differences in ultimate objectives or show inadequate representation; instead, they evidence a "[movant] . . . simply attempting to force his own agenda on counsel representing the class." *Ruiz*, 981 F.2d at 1256.

Because Maupin and the existing parties share the same ultimate objective, the presumption of adequate representation applies and must be rebutted with evidence of adversity of interest, collusion, or nonfeasance on the part of the existing party. *Edwards*, 78 F.3d at 1005. Maupin has not pleaded any allegations of adversity of interest, collusion, or nonfeasance outside of that which the court has concluded is mere disagreement over legal strategy. For this reason, Maupin has failed to rebut the presumption of adequate representation.

D

Accordingly, because Maupin has failed to satisfy two of the four essential elements for demonstrating intervention as of right, his motion to intervene as of right is denied. *See, e.g., Haspel & Davis*, 493 F.3d at 578 ("Failure to satisfy any one requirement precludes intervention of right.").

III

The court now turns to the question whether Maupin has demonstrated that he should be allowed to intervene permissively under Rule 24(b)(2).

A

The decision to grant or deny a motion to intervene permissively "is wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *NOPSI*, 732 F.2d at 471 (quoting Wright & Miller, *Federal Practice and Procedure: Civil* § 1913 at 551).

Rule 24(b)(2) permits intervention when: "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989); *Siesta Vill. Mkt., LLC v. Perry*, 2006 WL 1880524, at *1 (N.D. Tex. July 7, 2006) (Fitzwater, J.).

The court will assume *arguendo* that Maupin can satisfy the first two elements of permissive intervention and will focus its analysis on the third element: undue delay and prejudice to the original parties.

B

Maupin contends that permissive intervention will not unduly delay the resolution of this case or prejudice the right of the original parties because he is not inserting any new issues into the case. Sirius XM responds that Maupin's interests are adequately represented and, therefore, that the only result of Maupin's intervention would be delay and increased costs. Maupin replies that he does not intend to delay resolution of the case but merely intends to ensure that members of the class who are also members of the National DNC Registry obtain an adequate remedy.

C

The court concludes that granting Maupin leave to intervene permissively in this case will unduly delay its resolution and prejudice the rights of the original parties. Buchanan and Sirius XM have undertaken two years of litigation and recently completed mediation to arrive

at the proposed settlement. The class, estimated to include over 14 million people, has already begun to receive notices of the preliminarily approved settlement. Any remedy to which the class will be entitled if the case is settled now or litigated later will inevitably be delayed if intervention is permitted.

The sheer size of the class and the delay that litigating or renegotiating issues the existing parties have already settled militate against permissive intervention. This is especially so where, as here, the court has already concluded that the putative intervenor's interests are adequately protected by the existing parties, and the movant has the option to advocate for his specific interests by other means. *See United States v. Texas E. Transmission Corp.*, 923 F.2d 410, 416 (5th Cir. 1991) (affirming denial of permissive intervention where there was a "fully negotiated a complex settlement" and the putative intervenor could protect its rights by bringing its own action).

D

Accordingly the court denies Maupin's alternative motion to intervene permissively.

\* \* \*

For the foregoing reasons, Maupin's July 2, 2019 opposed motion to intervene is denied.

**SO ORDERED**.

August 28, 2019.

                                                                    _____
                                                                    SIDNEY A. FITZWATER
                                                                    SENIOR JUDGE

- 14 -