IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THOMAS BUCHANAN on behalf of himself
and all others similarly situated,

                                               Case No. 3:17-cv-00728-D

        Plaintiff,

v.

SIRIUS XM RADIO, INC.,

        Defendant.


**MOTION FOR FINAL ORDER APPROVING SETTLEMENT AND CERTIFYING THE
RULE 23 SETTLEMENT CLASS**

## TABLE OF CONTENTS

I.  INTRODUCTION ...........................................................................................................1

II.  BACKGROUND ............................................................................................................2

III.  SUMMARY OF SETTLEMENT TERMS ....................................................................4

    A.  Settlement Class Definition ...............................................................................4

    B.  Settlement Benefits............................................................................................5

    C.  Scope of Release................................................................................................6

    D.  Opportunity to Opt Out .....................................................................................6

    E.  Class Counsel's Application for Fees, Costs, and Expenses...............................7

IV.  CLASS NOTICE HAS BEEN DISSEMINATED ........................................................7

    A.  Direct Mail and Email Notice............................................................................7

    B.  Internet Notice ...................................................................................................8

    C.  Settlement Website and Toll-Free Number ........................................................8

    D.  CAFA Notice.....................................................................................................8

    E.  Class Members' Responses ................................................................................8

V.  ANALYSIS & AUTHORITIES ....................................................................................9

    A.  Standards Governing Approval of Class Action Settlements...............................9

    B.  Notice Satisfies Rule 23 and Due Process........................................................10

    C.  The Settlement is Fair, Reasonable, and Adequate ..........................................13

        (1)  Class Representatives and Class Counsel Have and Continue
            to Zealously Represent the Class. ....................................................14

        (2)  The Settlement is the Product of Good Faith, Informed, and
            Arm's-Length Negotiations. ............................................................14

        (3)  The Settlement Provides Significant Benefits in Exchange for
            the Compromise of Strong Claims....................................................15

## TABLE OF CONTENTS

i.    The Settlement Mitigates the Risks, Expenses, and Delays the Class Would Bear with Continued Litigation. ............................................................................15

ii.   Class Members Will Receive Relief Through a Straightforward Claims Process .........................................................16

iii.  Counsel Will Seek Reasonable Attorneys' Fees and Costs ......................................................................................17

(4)   The Proposed Settlement Treats All Class Members Equitably Relative to One Another. ..................................................18

(5)   The Opinions of Class Counsel, the Class Representative, and Absent Class Members. ....................................................18

D.    The Court Should Certify the Settlement Class .......................................................20

E.    Appointment of Class Counsel..............................................................................20

VI.   **CONCLUSION**.....................................................................................................21

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Cases**

*Ayers v. Thompson,*
358 F.3d 356 (5th Cir. 2004)........................................................................12, 15

*Champs Sports Bar & Grill Co. v. Mercury Payment Sys., LLC,* 275 F.
Supp. 3d 1350, 1355 (N.D. Ga. 2017)..........................................................20

*Cotton v. Hinton,*
559 F.2d 1326 (5th Cir. 1977)......................................................................9, 18

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) ........................................................................................10

*Erica P. John Fund, Inc. v. Halliburton Co.,* No. 3:02-CV-1152-M,
2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) ...................................19

*Hooker v. Sirius XM Radio Inc.,* Civil Action No. 4:13-cv-00003 (E.D.
Va. 2013) ..........................................................................................................5

*In re Microstrategy, Inc. Sec. Litig.,* 150 F. Supp. 2d 896, 906 (E.D.
Va. 2001) ........................................................................................................19

*In re Nissan Motor Corp. Antitrust Litig.,*
552 F.2d 1088 (5th Cir. 1977)......................................................................10

*In re Oil Spill by Oil Rig Deepwater Horizon,* 2013 WL 144042 at *39 ...................19

*Jones v. Singing River Services Foundation,* 865 F.3d 385, 295-96 (5th
Cir. 2017)........................................................................................................14

*Klein v. O'Neil, Inc.,* 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010); ...............................18

*Mullane v. Cent. Hanover Bank & Trust Co.,*
339 U.S. 306 (1950) ........................................................................................10

*Parker v. Anderson,*
667 F.2d 1204 (5th Cir. 1982).....................................................................9, 15

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985) ........................................................................................10

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Quintanilla v. A & R Demolition Inc.*, 2008 WL 9410399, *5 (S.D.
Tex. May 7, 2007) ............................................................................................... 19

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ............................... 13, 18

*Smith v. Crystian*,
91 Fed. Appx. 952 (5th Cir. 2004) ......................................................................... 9

*Turner v. Murphy Oil USA, Inc.,* 472 F. Supp. 2d 830, 852 (E.D. La.
2007)), .................................................................................................................. 18

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ................................................................................ 13

*Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex.
2007); .................................................................................................................. 19

**Statutes**

28 U.S.C. § 1715 ..................................................................................................... 8

47 C.F.R. § 64.1200(d)(3) ........................................................................................ 2

47 U.S.C. § 227, *et seq* ............................................................................................ 1

**Rules**

Fed. R. Civ. P. 23(b)(1) ........................................................................................... 10

Fed. R. Civ. P. 23(b)(2) ........................................................................................... 10

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 10

Fed. R. Civ. P. 23(c) ................................................................................................. 9

FED. R. CIV. P. 23(e)(1) ........................................................................................ 9, 10

FED. R. CIV. P. 23(e)(2) ........................................................................... 9, 14, 15, 18

FED. R. CIV. P. 23(g) ............................................................................................... 21

**Other Authorities**

### TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

MANUAL FOR COMPLEX LITIGATION § 21.312 (4th ed. 2004)........................................................10

## I.    INTRODUCTION

Following substantial litigation, Plaintiff Thomas Buchanan ("Plaintiff") on behalf of himself and all others similarly situated, and Defendant Sirius XM Radio Inc. ("Defendant" or "Sirius XM"), reached a settlement regarding Plaintiff's claims under the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C. § 227, *et seq.*  This settlement allows the over 14 million potential class members to choose between receiving either a cash payment or three months of Sirius XM's best service package (that is, the package containing every channel available on Sirius XM's satellite radios, including access to over 150 extra channels available on Sirius XM's streaming service).  The agreement also calls for Sirius XM to make a number of changes to its business practices.  This is a fair, reasonable, and adequate settlement, to which the Court granted preliminary approval on May 6, 2019. Dkt. No. 106.

The overwhelmingly positive reaction from Class Members since preliminary approval underscores the value the Class places on the Settlement relief obtained.  Per the Court-approved notice plan, direct individual notice of the Settlement was disseminated to Class Members.  To date, some 433,528 have submitted claims forms, while just 129 persons have timely asked to be excluded.  Plaintiff respectfully submits that the robust number of claims speaks to the effectiveness of the notice plan, the ease and efficiency of the claims administration program, and the quality of settlement relief negotiated by Class counsel.  Plaintiffs respectfully submit that this result is outstanding, particularly in view of the risks and delays involved in litigating the substantive merits of these claims, and the difficulties inherent in pursuing these claims for the overwhelming majority of Class Members.

For the foregoing reasons, and as detailed below, Plaintiff respectfully submits that the Settlement meets the standards for, and warrants, final approval.

## II.    BACKGROUND

The factual and procedural background of this litigation was set forth in detail in Plaintiffs' Memorandum in Support of Motion for Preliminary Approval (Dkt. No. 105). For the Court's convenience, Plaintiff provides a short summary of the relevant facts below.

On March 13, 2017, Plaintiff filed a Class Action Complaint in the United States District Court of the Northern District of Texas, alleging that Defendant made illegal telemarketing calls to individuals who had registered with either the national do-not-call list, or placed their telephone numbers on Defendant's own internal do-not-call list in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)(3).

Specifically, Plaintiff's Class Action Complaint alleged that Defendant made telemarketing calls to residential land lines of Plaintiff and Class Members without their prior express written consent or permission in violation of the TCPA, 47 U.S.C. §227(c).Plaintiff also alleged that Defendant made telemarketing calls to Plaintiff and Class Members after they were listed on Defendant's Internal Do-Not-Call Registry in violation of 47 C.F.R. § 64.1200(d)(3).

The parties conducted settlement discussions over the course of several months and ultimately engaged in a full-day mediation with Randall Wulff (a well-known and highly regarded mediator) in Oakland, California on January 31, 2019. Dkt. No. 105-4 at ¶ 12. The settlement discussions were conducted at arm's length and involved vigorous negotiations on all issues. Dkt. No. 105-4 at ¶ 12-13. Both parties concluded that it is in their best interests to settle the claims of Plaintiff and the Sirius XM Settlement Class.

Plaintiff and Class Counsel have concluded that Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Sirius XM Settlement Class. This conclusion was a result of, among other things, Plaintiff's knowledge of the relevant facts; Class Counsel's investigation,

review, and analysis of the relevant facts and law; and a careful weighing of the benefits of prompt settlement for the considerable consideration offered by Sirius XM against the significant cost, risk, and delay that continued prosecution of the Action would involve. Dkt. No. 105-4 at ¶ 13.

The risks in this matter are substantial.  Sirius XM has denied any liability and believes, among other things, that its practices have at all times been lawful and proper. Sirius XM asserts various defenses, including a defense of "established business relationship," or "EBR."  Sirius XM vigorously opposed the pending class certification motion, and denied that any of the challenged conduct caused Plaintiff or any putative class member any injury or damage. Despite these risks, Sirius XM agreed to settle the Action on the terms set forth in the Settlement Agreement (Dkt. XX) in order to avoid further expense, inconvenience, and interference with its ongoing business operations.

As such, on May 1, 2019, the parties filed a motion seeking preliminary approval of the Settlement Agreement. Dkt. No. 105. On May 6, 2019, the Court issued an order (the "Notice Approval Order") granting the motion, and conditionally certified the proposed class as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). Dkt. No. 106. The Notice Approval Order appointed Buchanan as class representative, and also appointed Hughes Ellzey, LLP, Mark A. Alexander P.C., Turner Law Offices, LLC, Siri & Glimstad LLP, Werman Salas P.C., and Lieff Cabraser Heimann & Bernstein, LLP, as Class Counsel (hereinafter "Class Counsel"). By further agreement of the parties and with the approval of the Court, Class Experts Group, LLC ("CEG") was designated as the Settlement Administrator to supervise and administer the notice program, under the supervision of Class Counsel and pursuant to the Settlement Agreement. Finally, the Notice Approval Order also approved the notice forms agreed to by the parties; instructed the

parties to comply with the Settlement Agreement; and set the final fairness hearing to be held on November 7, 2019.

Conforming to the terms of the Notice Approval Order and the Settlement Agreement, CEG sent e-mail notices, direct mail Postcard notices, electronic notice in the form of links to the case-specific website, SiriusXMdncTCPAsettlement.com, as well as a detailed targeted advertising campaign to supplement the email and direct mailing notice efforts.

Thereafter, the Parties learned that certain potential class members had inadvertently not received individual class notice. Therefore, on October, 4, 2019, the Parties filed a motion requesting the Court to order that notice be directed to the new potential class members, that the deadline for such recently identified potential class members to elect cash or free service, object, or opt out be set as December 22, 2019, and that the final approval hearing be set for a date of the Court's choosing in late January 2020. Dkt. No. 118. The Court granted the motion on October 8, 2019 (Dkt. No. 120), and on October 9, 2019, the Court reset the date for the final approval hearing to January 28, 2019 at 1:30 p.m. Dkt. No. 121.

## III.   SUMMARY OF SETTLEMENT TERMS

### A.   SETTLEMENT CLASS DEFINITION

The Settlement Class is a nationwide class of all natural persons in the United States who, from October 16, 2013 to the date of the Settlement Agreement: (a) received more than one telephone solicitation call in a 12-month period made by or on behalf of Sirius XM more than 31 days after registering the landline, wireless, cell or mobile telephone number on which they received those calls with the National Do-Not-Call Registry, or (b) received one or more calls after registering the landline, wireless, cell, or mobile telephone number on which they received the calls with Sirius XM's internal Do-Not-Call list.

Excluded from the class definition are: (a) natural persons who were or had been paid subscribers to Sirius XM's service at the time of the first call; natural persons who were members of the class settled in *Hooker v. Sirius XM Radio Inc.,* Civil Action No. 4:13-cv-00003 (E.D. Va. 2013), who did not exclude themselves from that class, and who did not receive more than one telephone solicitation call after July  5, 2016, the date of the *Hooker* settlement; and (c) any employees, officers, directors of Sirius XM, and attorneys appearing in this case, and any judge assigned to hear this case as well as their immediate family and staff.

### B.   SETTLEMENT BENEFITS

In exchange for a narrowly drafted release of claims, Plaintiff and Class Members are entitled to a *pro rata* distribution of a $25,000,000.00 settlement fund, following deductions for the costs of notice and claims administration, reasonable attorneys' fees, and other expenses. *See* Dkt. No. 105-1 at ¶ 3 a. Additionally, Class Members could alternatively elect to receive, in lieu of cash, (3) three months of free access to Sirius XM's All Access Subscription package, which contains every channel available on Sirius XM's satellite radios, including access to over 150 Channels plus Sirius XM Streaming (or any subsequently-named satellite radio service that contains substantially the same programming as the All Access service) (the "Free Service"). *See* Dkt. No. 105-1 at ¶ 3 b.  The monthly retail price of its All Access Subscription package is approximately $27.00, meaning the fair market value of the 3 months of free service will be $81. Plaintiff believes that this Free Service represents a significant value for class members and a very valuable alternative form of remuneration for the class members who elect that option.  Based on the Class Members who elected Free Service, the fair market value of Free Service is $7,436,772. The availability of the three (3)-month Free Service option is in addition to the $25,000,000.00 common fund, which results in a total settlement value of $32,436,772.

In addition to the settlement fund and the Free Service guaranteed by the settlement, Sirius XM has agreed to meaningful business practice changes in its communications to its trial subscribers.  First, Sirius XM has agreed to implement changes in its internal practices to bolster its existing practices to ensure that trial subscribers who ask Sirius XM to put them on Sirius XM's internal do-not-call ("DNC") list are promptly placed on Sirius XM's internal DNC list and not called more than 31 days after the request. Sirius XM has also agreed to implement changes in its communications with all of its trial subscribers, including the following: (1) include notices contained in its Customer Agreement, glove box materials and welcome kit to explain that consumers may be contacted and explaining how consumers can take steps to place themselves on Sirius XM's internal DNC list; and (2) ensure that it does not make calls to trial subscribers until a reasonable period of time after the mailing of the welcome kit. Plaintiffs agree that Sirius XM has taken substantial steps to communicate its calling practices to trial subscribers and that in so doing Sirius XM has enhanced its EBR defense upon which it relies on calling trial subscribers to market paid subscriptions.  These business practice changes represent a further benefit to class members that come from the Settlement Agreement.

### C.   SCOPE OF RELEASE

The Settlement Class members who do not timely request exclusion from the settlement will release any and all claims, known or unknown, against the Released Parties based in any manner on the allegations giving rise to this matter. *See* Dkt. No. 105-1 at ¶ 5.

### D.   OPPORTUNITY TO OPT OUT

The parties agreed on release language which is narrowly tailored and will not result in a waiver of any TCPA claims for those individual class members who timely request exclusion from

the Settlement Class.  All individual class members who opt out of the settlement will preserve their rights. *See* Dkt. No. 105-1 at ¶ 11.

E.    CLASS COUNSEL'S APPLICATION FOR FEES, COSTS, AND EXPENSES

The Settlement Agreement contemplates that Class Counsel shall make an application to the Court for an award of attorneys' fees, costs and other expenses for their representation of Thomas Buchanan, the named plaintiff and the Settlement Class, to be paid out of the Settlement Fund and after deduction of any class administration and notice costs and expenses.  *See* Dkt. No. 105-1 at ¶ 16.  Plaintiffs intend to seek a fee that will not exceed 20% of the total value of the settlement, which includes both the value of the cash settlement fund and the fair market value of the Free Service.

IV.    CLASS NOTICE HAS BEEN DISSEMINATED

The notice program approved by the Court (Dkt. No. 106) has been fully and successfully implemented by the parties and the Court-approved Settlement Administrator, CEG, in accordance with the Court's direction.  (*See* Exhibit 1, Declaration of Anya Verkhovskaya at ¶¶ 15-74, attached hereto and incorporated by reference.)

A.    DIRECT MAIL AND EMAIL NOTICE

CEG disseminated 14,244,824 notices via email to potential Settlement Class Members. (Verkhovskaya Decl., ¶ 63)  CEG also disseminated 5,811,926 postcard notices via first class mail to potential Settlement Class Members.  (Verkhovskaya Decl., ¶ 64.)  A total of 14,244,824 Class records received Email Notice successfully. This represents approximately 89% of the 15,996,518 Class Records.  (Verkhovskaya Decl., ¶ 63.) A total of 5,811,926 Class records that received postcard notices that have been mailed or re-mailed via First Class Mail without being returned

UAA.   This represents approximately 97% of the 5,972,958 Postcard Notice records. (Verkhovskaya Decl., ¶ 64.)

## B.   INTERNET NOTICE

Internet banner notices ran on the websites identified by CEG's media experts as likely to be visited by Class Members.  (Verkhovskaya Decl., ¶ 43)  The internet banner notices contained a hyperlink which lead users to the official Settlement Website. In addition, CEG optimized retrieval of the Settlement Website from internet search engines such as by purchasing certain keywords relevant to the case.  (Verkhovskaya Decl., ¶ 49-51.)

## C.   SETTLEMENT WEBSITE AND TOLL-FREE NUMBER

CEG established a Settlement Website where Class Members may go for information, to submit a claim electronically, and access important case documents.  (Verkhovskaya Decl., ¶ 57.) To date, the website had received 323,399 unique visitors.  (Verkhovskaya Decl., ¶ 61.)

In addition, CEG established a toll-free telephone number dedicated to answering telephone inquiries from Class Members.  (Verkhovskaya Decl., ¶62.)  To date, CEG had received 6,658 calls and responded to 1, 222 voice mail messages.  (Verkhovskaya Decl., ¶ 62.)  Class counsel have also responded to inquiries from Class Members regarding the Settlement.

## D.   CAFA NOTICE

CEG provided notice of the Settlement to the officials designated pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.  There have been no objections from any of the Attorneys' Generals.

## E.   CLASS MEMBERS' RESPONSES

Following notice, some 437,528 Settlement Class Members submitted claims. (Verkhovskaya Decl., ¶ 72.)   Some 346,716 class members elected to receive *pro rata* cash

payments from the $25 million settlement fund, and 90,812 chose Free Service valued at an additional $7,436,772.

In contrast, only 129 people opted out of the Settlement.  (Verkhovskaya Decl., ¶ 66.)

## V.   ANALYSIS & AUTHORITIES

### A.   STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Federal Rule of Civil Procedure 23(e) governs a district court's analysis of the fairness of a proposed class action settlement and creates a multistep process for approval. First, a court must determine that it is likely to (i) approve the proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in Rule 23(e)(2), and (ii) certify the settlement class after the final approval hearing. *See* Fed. R. Civ. P. 23(e)(1)(B); *see also* 2018 Advisory Committee Notes to Rule 23 (standard for directing notice is whether the Court "likely will be able both to approve the settlement proposal under Rule 23(e)(2) and . . . certify the class for purposes of judgment on the proposal"). Second, a court must direct notice to the proposed settlement class, describing the terms of the proposed settlement and the definition of the proposed class, to give them an opportunity to object to or to opt out of the proposed settlement. *See* Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(1), (5). Third, after a hearing, the court may grant final approval of the proposed settlement on a finding that the settlement is fair, reasonable, and adequate, and certify the settlement class. Fed. R. Civ. P. 23(e)(2).

In the Fifth Circuit, there is a presumption in favor of settlement recognizing that "litigants should be encouraged to determine their respective rights between themselves." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).  This presumption in favor of settlement is of particular force in the class action context. *Id*. ("Particularly in class action suits, there is an overriding public interest in favor of settlement.")  Because of the "strong judicial policy favoring resolving disputes

through settlement," a district court's approval of settlement is afforded "great deference." *Smith v. Crystian*, 91 Fed. Appx. 952, 955 (5th Cir. 2004) (internal quotations omitted). Indeed, "[s]ettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). Class settlements minimize the litigation expenses of the Parties and reduce the strain that litigation imposes upon already scarce judicial resources. The Settlement Agreement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

**B.     NOTICE SATISFIES RULE 23 AND DUE PROCESS**

"Rule 23(e)(1) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also* Dkt. No. 105-5. The law is clear that individual notice by first-class mail is sufficient to meet the notice requirements of due process. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977). So is email notice, especially where postal notice will be used as a backup to the extent necessary.

The Notice Program in this case satisfied all of these criteria. (*See* Verkhovskaya Decl. ¶¶ 33-64). This Court previously reviewed and approved the notice plan that the Parties proposed.

Dkt No. 106 at ¶ 8. As set forth in more detail below, the Settlement Administrator, CEG, has executed that plan.

First, the Parties worked closely with CEG to develop and publish the Settlement Website and telephone assistance program. Furthermore, on May 9, 2019, CEG delivered notice to all federal and state attorneys general pursuant to the Class Action Fairness Act of 2005. The Parties also provided CEG with a data file containing 14,796,913 records for potential class members. Dkt. No. 110 at ¶ 6. CEG conducted its due diligence, processed the data files, and used a reverse-append process to identify up to five additional email addresses per record. It then used this data to prepare an email notice list. *Id*. at ¶ 7.

Second, utilizing this email notice list, CEG began disseminating the Court-approved class notice by email to each valid email address for the previously identified potential class members. Dkt. No. 110 at ¶ 8 & n.2. CEG tracked and monitored each email to determine if it was delivered and opened. *Id*. at ¶ 9. For example, if the receiving email server could not deliver the message, a "bounce code" was returned along with a unique tracking code. *Id.* For each message that was not deliverable initially, CEG made at least two additional delivery attempts to each validated email address. *Id.* at ¶ 9.

Third, for each record without a delivered email notice, CEG sent the Court-approved Postcard Notice. *See* Dkt. No. 110 at ¶14. CEG implemented industry-standard best practices to use accurate, updated, and validated mailing addresses, including using the United States Postal Service's National Change of Address database, the Coding Accuracy Support System, and Delivery Point Validation. *Id.* at ¶¶ 15- 16. For any undeliverable mailed notice, CEG researched updated addresses and re-mailed Postcard Notice if updated addresses could be identified. *See id.* at ¶ 19.

Fourth, CEG implemented an extensive media notice plan. *See* Dkt. No. 110 at ¶ 21. To date, approximately 15 million digital advertisement impressions have been directed to potential class members. Likewise, with Class Counsel's encouragement and assistance, CEG engaged in a publicity campaign that ultimately resulted in the information regarding the settlement, and how to file a claim, being featured on various websites and in several news publications, including USA Today. (see "Getting money you're owed from class-action lawsuits has never been easier", USA Today, https://www.usatoday.com/ story/tech/columnist/2019/09/05/class-action-settlements-find-out-if-you-are-owed- money/2209550001/.)

Finally, the Notices were written in plain English and included: (1) a description of the Settlement class; (2) a description of the proposed Settlement; (3) the names of counsel  for  the class; (4) t h e  fairness hearing date; (5) a statement of the deadlines for filing objections to the Settlement, for submitting a claim, and for filing requests of exclusion; (6) the consequences of such exclusion; (7) the consequences of remaining in the Settlement class; and (8) information on how to obtain further information. Dkt. No. 105-5 at ¶¶ 49-51, Exs. B - C.

The form and content of the Notices, together with the manner of dissemination set forth above was reasonably calculated to reach all Class Members.  Dkt. No. 105-5 at ¶¶ 52-55. It was the "best notice practicable" under the circumstances and more than satisfied the requirements of Due Process and Rule 23.  *Id.*  These multiple channels afforded the Settlement Class ample notice, allowing class members the opportunity to exercise their rights to file claims, opt out, or object.

In sum, the notice plan approved by the Court, which was executed in accordance with the Court's directives, satisfies Rule 23 and Due Process considerations. Both in its design and implementation, the class notice plan supports final approval of the settlement.

### C.    The Settlement is Fair, Reasonable, and Adequate

This Court has discretion to approve a class action settlement under Rule 23(e) if the settlement is "fair, adequate, and reasonable." *Ayers*, 358 F.3d at 368. Over the years, the various circuits developed their own criteria for assessing whether a class settlement was "fair, adequate, and reasonable." The Fifth Circuit, for instance, identified six key points of analysis, known as the "*Reed* factors." *Union Asset Management Holding A.G. v. Dell, Inc*., 669 F.3d 632, 639 (5th Cir. 2012) (citing *Reed v. General Motors Corp*., 703 F.2d 170 (5th Cir. 1983)). These six factors are:

(1) the existence of fraud or collusion behind the settlement;

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the probability of plaintiffs' success on the merits;

(5) the range of possible recovery; and

(6) the opinions of the class counsel, class representatives, and absent class members.

*Dell*, 669 F.3d at 639 n.11 (quoting *Reed*, 703 F.2d at 172).

In an effort to unify the criteria considered by the various circuits, Congress recently amended Rule 23(e) to specifically articulate the criteria. The amended Rule 23(e)(2) took effect on December 1, 2018, and states that courts may approve a proposed settlement as "fair, reasonable, and adequate" only after a hearing and after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

---

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

An analysis of these criteria, which are substantively similar to the Fifth Circuit's *Reed* factors, show this Settlement to be eminently fair, reasonable, and adequate.

> **(1)    Class Representatives and Class Counsel Have and Continue to Zealously Represent the Class.**

The Class Representative and Class Counsel have prosecuted this action on behalf of the Class with vigor and dedication for two years. *See* Fed. R. Civ. P. 23(e)(2)(A). Class Counsel engaged in significant motion practice and massive offensive discovery efforts to prosecute the Class claims. Dkt. No. 105-4 at ¶ 14.  Counsel defended against a motion for judgment on the pleadings or, in the alternative, partial summary judgment and moved for and extensively litigated class certification and attendant expert issues. *See id.* The Settlement Class Representative was likewise actively engaged—he produced numerous documents, sat for a lengthy deposition (along with his wife as a non-party witness), and regularly communicated with counsel up to and including evaluating and approving the proposed Settlement. *See id.*

> **(2)    The Settlement is the Product of Good Faith, Informed, and Arm's-Length Negotiations.**

The Settlement Agreement arose out of serious, informed, and non-collusive negotiations facilitated by Randall Wulff, a nationally-recognized mediator in California with experience mediating cases under the TCPA. A settlement process facilitated by a neutral mediator weighs heavily in favor of approval. *See Jones v. Singing River Services Foundation*, 865 F.3d 385, 295-

96 (5th Cir. 2017).  Mr. Wulff's assistance in the mediation process was an integral part of the negotiations here. The procedurally fair manner in which this Settlement was reached weighs strongly in favor of granting preliminary approval.

> (3)   **The Settlement Provides Significant Benefits in Exchange for the Compromise of Strong Claims.**

The Settlement provides substantial relief to the Class, considering (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed distribution plan; and (iii) the fair terms of the separately-negotiated proposed award of attorney's fees. *See* Fed. R. Civ. P. 23(e)(2)(C). The monetary recovery, free service option, and Sirius XM's commitments involving its TCPA policies are significant given the complexity of the Action and the significant barriers that lay ahead for Plaintiff and the Settlement Class. Dkt. No. 105-4 at ¶ 15.  By any reasonable measure, this recovery is a significant achievement given the extraordinary obstacles Plaintiff and the Settlement Class faced in the litigation. *Id.*  The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Sirius XM's available defenses and the challenging and unpredictable path of litigation Plaintiff would have faced absent a settlement. *Id.*

> i.   ***The Settlement Mitigates the Risks, Expenses, and Delays the Class Would Bear with Continued Litigation.***

The Settlement secures significant benefits, even in the face of the uncertainties of litigation. Compromise in exchange for certain and timely benefits under the Settlement is an unquestionably reasonable outcome. The Fifth Circuit has observed that settlement is an appropriate outcome where the likelihood of success is difficult to assess, and the plaintiffs face substantial challenges.  *Parker*, 667 F.2d at 1209-10. "[S]ettling now avoids the risks and burdens of potentially protracted litigation." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).

This is a risky case. Defendant chose to fight, not concede. Defendant's motion for judgment on the pleadings or, in the alternative, for partial summary judgment remained pending at the time of settlement. The outcome of this motion could have had a significant impact on the Class' prospects of a favorable resolution. Plaintiff's Class Certification motion was also challenged and undecided at the time of settlement. If the Court denied certification, the case would be over from a class standpoint and the Class Members would receive nothing. Even if a class were certified and upheld on appeal, the Class would face the risk, expense, and delay of trial and a potentially lengthy appellate process, likely delaying any recovery for years.

Because of the costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue litigation. Avoiding years of additional litigation in exchange for the immediate economic certainty of this Settlement favors preliminary approval.

### ii.   *Class Members Will Receive Relief Through a Straightforward Claims Process*

The Settlement gave the Class Members a choice.  The Settlement framework provides either monetary compensation or a free service option to the Class Members through a straightforward claims process designed to be as convenient to Class Members and as cost effective as possible. *See* Dkt. No. 105-1 at ¶¶ 3-13; *see also* Dkt. No. 105-5.

The Parties selected Class Experts Group, LLC ("CEG") to serve as the settlement administrator to manage the notice and claims process.  Through CEG, each Class Member received information about the Settlement options through the Court approved Notice Program. *See* Dkt. No. 105-1 at ¶¶ 3-13; *see also* Dkt. No. 105-5; Dkt. No. 106 at ¶ 8.  Plaintiff's counsel and CEG created a detailed notice plan to notify the class members about the settlement and to

assist them in signing up for the class.  *See* Dkt. No. 105-5.  The notice plan included sending emails to up to five different email addresses for each class member, and then sending direct mailings to class members whose emails "bounce" (i.e., were undeliverable) or who did not have an email address.  CEG additionally conducted a detailed targeted advertising campaign to supplement the email and direct mail notice.  *Id.* at ¶¶ 36-45.

CEG also established, and continues to administer and maintain, a website for Class Members who have not opted out of the Settlement. Class Members may visit the Settlement Website for purposes of (i) confirming and/or updating their contact information to be used in connection with notifications, or (ii) electing whether to receive a cash distribution from the escrow account or free service.  After a claim is reviewed for completeness and eligibility, CEG will either (1) mail checks to the Class Members who elected the cash option or (2) provide Sirius XM with a list of the Class Members who registered at the Settlement Website and provided the required information to receive the free service. *See* Dkt. No. 105-1 at ¶¶ 3-13.  In addition to the website CEG also established a toll-free interactive voice response ("IVR") phone number for class members to hear answers to questions about the settlement.

### iii.   *Counsel Will Seek Reasonable Attorneys' Fees and Costs*

To cover their attorneys' fees and costs, Class Counsel intends to seek an award of not more than 20% of the total combined value of the Settlement Fund and the total fair market value of the Free Service, for work performed on behalf of Plaintiff and the Class.  This amount will be paid out of the Settlement Fund and after deduction of any class administration and notice costs and expenses. Dkt. No. 105-4 at ¶ 16.  These attorneys' fees and costs were negotiated separately after the settlement was negotiated on behalf of the class.  *Id.*  The reasonableness of the requested fee may be considered in light of the fund obtained on behalf of the Class.

(4)     **The Proposed Settlement Treats All Class Members Equitably Relative to One Another.**

The proposed Settlement fairly and reasonably allocates benefits among Class Members without any unwarranted preferential treatment of certain segments of the Class. *See* Fed. R. Civ. P. 23(e)(2)(D).  In fact, all members of the Settlement Class are eligible to receive the same benefits. No Class Member is receiving greater or different relief than another.

(5)     **The Opinions of Class Counsel, the Class Representative, and Absent Class Members.**

The Advisory Committee Note to the amended Rule 23(e) provides that courts may continue to consider factors previously used to assess the fairness of a settlement in addition to those specifically enumerated. Because the Parties' counsel are the Court's main source of information about the fairness, adequacy, and reasonableness of a proposed class settlement (*Turner v. Murphy Oil USA, Inc.,* 472 F. Supp. 2d 830, 852 (E.D. La. 2007)), "[t]he Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight." *Klein v. O'Neil, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010); *Cotton*, 559 F.2d at 1330 ("the trial court is entitled to rely upon the judgment of experienced counsel for the parties."). "Class counsel's opinion should be presumed reasonable because they are in the best position to evaluate fairness due to an intimate familiarity with the lawsuit." *Murphy Oil*, 472 F. Supp. 2d at 852.

Class Counsel strongly recommend the Settlement as an excellent result for the Settlement Class. Dkt. No. 105-4 at ¶¶ 13-15. Indeed, Class Counsel endorse the Settlement as fair, reasonable, and adequate based upon (i) their experience with litigating other class actions, including those involving similar allegations and issues concerning TCPA violations, (ii) their hands-on involvement in this litigation, (iii) their knowledge of the extensive discovery that they reviewed and analyzed, (iv) the opinions and guidance they received from their expert, and (v)

their participation in arms-length and adversarial negotiations under the supervision of Mr. Wulff. *Cf. Reed*, 703 F.2d at 175 (noting that "adequacy of representation and adequacy of settlement are different sides of the same question," such that competent counsel's approval is an indicator of reasonableness).

The named Plaintiff, Mr. Buchanan, also agrees that the settlement is a fair, adequate, and reasonable compromise. Dkt. No. 105-4 at ¶ 13.

Moreover, every indication is that collectively the absent Settlement Class members also support the Settlement. The objection and opt out deadline has passed and only 1 Class member has objected and 129 Class members have opted out. *See* Verkhovskaya Decl. ¶¶66-69. Considering that the Settlement Class comprises over 14,796,913 members, this response is overwhelmingly favorable, strengthening the argument that the Settlement should be approved. Indeed, it is settled "that one indication of the fairness of a settlement is the lack of or small number of objections." *In re Oil Spill by Oil Rig Deepwater Horizon*, 2013 WL 144042 at *39; *also, e.g., Quintanilla v. A & R Demolition Inc*., 2008 WL 9410399, *5 (S.D. Tex. May 7, 2007) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement"); *Vaughn v. Am. Honda Motor Co*., 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007); *In re Microstrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 906 (E.D. Va. 2001) ("perhaps the most significant factor" in determining whether a settlement is adequate is the class's reaction to it); *Erica P. John Fund, Inc. v. Halliburton Co*., No. 3:02-CV-1152-M, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) ("Receipt of few or no objections can be viewed as indicative of the adequacy of the settlement").

Similarly, to date, approximately 437,528 Class members have already filed claims. Verkhovskaya Decl. ¶ 72. This response rate provides even more evidence the Class approves the

Settlement. Indeed, this claims rate already exceeds that for the claims period in most other settlements. *E.g., In re Pool Products Distribution Market Antitrust Litig*., 2016 WL 235781, *6 (E.D. La. Jan. 20, 2016) (approving settlement with 5% claims rate); *Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813, *22 (S.D. Fla. Sept. 14, 2015), appeal dismissed, 2016 WL 3896231, *1 (11th Cir. May 23, 2016) (noting that typical approved claims-made settlements have claims rates that "rarely" exceed 7 percent, "even with the most extensive notice campaigns") (citation omitted).

All of the new Rule 23(e)(2) factors, as well as the Fifth Circuit's *Reed* factors, support a finding that the Settlement is fair, reasonable, and adequate.

### D.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

This Court has previously found that the Settlement Class is adequately defined and clearly ascertainable and that all requirements of Rule 23(a) and 23(b)(3) are satisfied in this Action in a settlement posture. *See* Notice Approval Order Dkt. No. 106 at ¶ 5; *see also* Brief in Support of Motion for Preliminary Approval, pp. 14-21 Dkt. No. 105. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons already considered by the Court and stated in Plaintiff's Brief in Support of Motion for Preliminary Approval (Dkt. No. 105), Plaintiff requests that the Court confirm its preliminary decision and finally certify the Settlement Class. *E.g., Champs Sports Bar & Grill Co. v. Mercury Payment Sys., LLC*, 275 F. Supp. 3d 1350, 1355 (N.D. Ga. 2017).

### E.    APPOINTMENT OF CLASS COUNSEL

Rule 23(g) requires this Court to appoint class counsel to represent the Settlement Class. *See* FED. R. CIV. P. 23(g). Plaintiff, on behalf of the putative class, seeks the appointment of Hughes Ellzey, LLP, Mark A. Alexander P.C., Turner Law Offices, LLC, Siri & Glimstad LLP, Werman

Salas P.C., and Lieff Cabraser Heimann & Bernstein, LLP, as Class Counsel.  In determining whether to appoint class counsel, the court must consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. FED. R. CIV. P. 23(g).

Class Counsel, and their respective law firms, have undertaken an enormous amount of work, effort, and expense in this litigation and demonstrated their willingness to devote whatever resources were necessary to see it through to a successful outcome. *See* Dkt. No. 105-4 at ¶ 20. As set out more fully in Plaintiff's Motion for Preliminary Approval, Class Counsel have more than demonstrated their ability to represent the interests of the Settlement Class. *See* Dkt. No. 105 at pp. 18-19. They should be appointed as Settlement Class Counsel under Rule 23(g)(3) and confirmed under 23(g)(1) upon final approval.

## VI.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the parties respectfully request that the Court find that the Notice Program, as implemented, met the requirements of due process and Rule 23, finally approve the Settlement, and certify the Settlement Class. The Parties request this Court issue a Final Order in the form attached and submitted contemporaneously herewith.[1]

Respectfully submitted,

**HUGHES ELLZEY, LLP**

By: *Jarrett L. Ellzey*

---

[1] For the convenience of the Court, the proposed Order shall also be sent in MS Word version to Chambers via electronic mail.

W. Craft Hughes
Texas Bar No. 24046123
Jarrett L. Ellzey
Texas Bar No. 24040864
1105 Milford Street
Houston, TX 77006
Telephone (713) 322-6387
Facsimile (888) 995-3335


**TURNER LAW OFFICES, LLC**
Henry A. Turner
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
(440) 378-6274

**SIRI & GLIMSTAD LLP**
Aaron Siri
Mason A. Barney
200 Park Avenue, 17th Floor
New York, NY  10166
(212) 532-1091

**WERMAN SALAS P.C.,**
Douglas M. Werman
77 West Washington, Suite 1402
Chicago, IL  60602
(312) 419-1008


**LIEFF, CABRASER, HEIMAN &
BERNSTEIN, LLP**
Jonathan D. Selbin
250 Hudson Street, 8th Floor
New York, NY  10013
(212) 355-9500

Daniel M. Hutchinson
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
(415) 956-1000

Local Counsel for Plaintiff:
Mark A. Alexander

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**                                   **PAGE 22 OF 23**

\\ctxprofiles\ctxprofiles$\2016\FolderRedirection\JP640751\Documents\Custom Office Templates\redlined final approval brief.docx

5080 Spectrum, Suite 850E
Addison, TX 75001
(972) 364-9700

**COUNSEL FOR PLAINTIFF AND THE
PROPOSED CLASS**

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing document was filed in accordance with the protocols for e-filing in the United States District Court for the Northern District of Texas, Dallas Division, on January 14, 2020 and served on all counsel of record who have consented to electronic notification *via* CM/ECF.

*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey

## CERTIFICATE OF CONFERENCE

I certify that counsel for Plaintiff and the Proposed Class conferred extensively with counsel for Defendant throughout the process of drafting this motion and all corresponding materials, as well as the settlement agreement upon which this settlement is based. Defendant is unopposed to the relief sought herein.

*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey