# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| THOMAS BUCHANAN on behalf of himself and all others similarly situated, | Case No.: |
| Plaintiff, | 3:17-cv-00728-D |
| v. | |
| SIRIUS XM RADIO, INC., | |
| Defendant. | |

## PLAINTIFF'S *UNCONTESTED* MOTION FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES, AND FOR A SERVICE AWARD AND SUPPORTING MEMORANDUM OF LAW

COMES NOW Thomas Buchanan ("Plaintiff"), individually and on behalf of all others similarly situated, and files this Motion for Approval of Attorneys' Fees and Expenses, and for a Service Award and Supporting Memorandum.

Jarrett L. Ellzey
W. Craft Hughes
Hughes Ellzey, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Tel: (713) 554-2377
Fax: (888) 995-3335
E-Mail: craft@hughesellzey.com
jarrett@hughesellzey.com

Henry A. Turner*
Turner Law Offices, LLC
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030

Tel: (404) 378-6274
E-Mail: hturner@tloffices.com

Aaron Siri*
Mason A. Barney*
Siri & Glimstad LLP
200 Park Avenue, 17th Floor
New York, New York 10166
Tel: (212) 532-1091
E-Mail: aaron@sirillp.com

Douglas M. Werman*
Werman Salas P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
Tel: (312) 419-1008
E-Mail: dwerman@flsalaw.com

Mark A. Alexander
Mark A. Alexander P.C.
5080 Spectrum, Suite 850E
Addison, Texas 75001
Tel: 972.364.9700
Fax: 972. 239.2244
E-Mail: mark@markalexanderlaw.com

Jonathan D. Selbin*
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
Email: jselbin@lchb.com

Daniel M. Hutchinson*
Lieff, Cabraser, Heimann & Bernstein, LLP
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Admitted Pro Hac Vice

ATTORNEYS FOR PLAINTIFF
AND THE CLASS

# TABLE OF CONTENTS

Page

I.  INTRODUCTION AND SUMMARY ........................................................................ 1

II.  BACKGROUND ............................................................................................... 2

   A.  The Litigation Was Hard Fought .................................................................. 2

   B.  Class Counsel Secured a Very Significant Recovery as Part of the Settlement ......... 6

   C.  Class Counsel Expended Significant Time and Effort to Conduct Notice to More Than 15.9 Million Potential Class Members ........................................................ 8

   D.  Class Counsel Seek a Reasonable Fee Given Their Success in this Action ............. 11

III.  ARGUMENT .................................................................................................. 11

   A.  The Court Should Apply the Percentage Fee Method ....................................... 11

   B.  The Requested Fee of 25.884% of the Cash Fund is Reasonable .......................... 13

   C.  Calculating the Benchmark Fee under the Percentage Method .............................. 14

   D.  Application of the *Johnson* Factors Supports the Requested Fee ........................... 16

      1.  Substantial Time and Labor Was Required ............................................... 17

      2.  The Issues Involved Were Novel and Difficult .......................................... 18

      3.  Class Counsel Possessed the Necessary Skill to Effectively Litigate the Case ............................................................................ 19

      4.  Class Counsel was Precluded from Taking on Other Legal Employment ......... 21

      5.  The Requested Fee is at the Low End or Even Below What is Customary ..... 22

      6.  Class Counsel Prosecuted this Action on a Contingent Fee Basis ................. 23

      7.  Time Pressures Were Not an Issue in this Action ....................................... 24

      8.  The Amount Involved and the Results Obtained ........................................ 24

      9.  Class Counsel are Highly Experienced and Well Respected ........................ 25

      10.  The Case Qualifies as "Undesirable" .................................................... 26

      11.  Class Counsel has a Professional Relationship with the Client ..................... 26

      12.  The Requested Fee is Less than Awards in Similar Cases ............................. 27

      13.  The Court Should Award the Requested Award ......................................... 28

   E.  Reimbursement of Expenses ....................................................................... 29

   F.  Service Award ......................................................................................... 30

IV.  CONCLUSION ............................................................................................... 30

# TABLE OF AUTHORITIES

Page

**Cases**

*Abante Rooter and Plumbing, Inc. v. Birch Communications, Inc.,*
No. 1:15-CV-03562, Dkt. 96 (N.D. Ga. 2017) ........................................ 22

*Al's Pals Pet Care v. Woodforest Nat'l Bank,*
No. 4:17-CV-3852, 2019 WL 387409 (S.D. Tex. 2019)...................... 13, 14

*Billitteri v. Sec. Am., Inc.,*
No. 3:09-CV-01568-F, 2011 WL 3585983 (N.D. Tex. 2011)........................ 23, 29

*Boeing Co. v. Van Gernert,*
444 U.S. 472 (1980)........................................................................ 11

*Braud v. Transport Serv. Co.,*
Civil Action No. 05–1898, 2010 WL 3283398 (E.D. La. 2010) ...................... 26, 28

*Burford v. Cargill, Inc.,*
No. 05-0283, 2012 WL 5471985 (W.D. La. 2012) .......................... 13, 26, 27

*Collins v. Sanderson Farms, Inc.,*
568 F. Supp. 2d 714 (E.D. La. 2008).................................................. 27

*DeHoyos v. Allstate Corp.,*
240 F.R.D. 269 (W.D. Tex. 2007) .............................................. 22, 27, 29

*Deposit Guar. Nat'l Bank v. Rope,*
445 U.S. 326 (1980)........................................................................ 12

*Dyson v. Stuart Petroleum Testers, Inc.,*
No. 1-15-CV-282 RP, 2016 WL 815355 (W.D. Tex. 2016) ...................... 15

*Fairway Med. Ctr., L.L.C. v. McGowan Enterprises, Inc.,*
No. CV 16-3782, 2018 WL 1479222 (E.D. La. 2018)...................... 13, 22

*Gibbs v. Centerplate, Inc.,*
No. 8:17-CV-2187-EAK-JSS, 2018 WL 6983498 (M.D. Fla. 2018) ...................... 19

*Hooker v. Sirius XM Radio, Inc.,*
No. 4:13-CV-003, 2017 WL 4484258 (E.D. Va. 2017) ...................... 27, 28

*In re Bayou Sorrel Class Action,*
No. 6:04CV1101, 2006 WL 3230771 (W.D. La. 2006) ...................... 14, 27

*In re Capital One TCPA Litig.,*
80 F. Supp. 3d 781 (N.D. Ill. 2015) .................................................. 24

*In re Catfish Antitrust Litig.,*
939 F. Supp. 493 (N.D. Miss. 1996)............................................. 24, 30

*In re Combustion,*
968 F. Supp. 1116 (W.D. La. 1997)................................................ 27

*In re Pool Products Distribution Mkt. Antitrust Litig.*,
  MDL No. 2328, 2015 WL 4528880 (E.D. La. 2015)....................................... 13, 29

*Jenkins v. Trustmark Nat. Bank*,
  300 F.R.D. 291 (S.D. Miss. 2014) ...................................................................... 27

*Johnson v. Georgia Hwy. Express, Inc*,
  488 F. 2d 714 (5th Cir. 1974) .................................................................... passim

*Jones v. Dominion Res. Servs.*,
  601 F. Supp. 2d 756 (S.D. W.Va. 2009).............................................................. 25

*Kemp v. Tower Loan of Mississippi, LLC*,
  No. 3:15-CV-499-CWR-LRA, 2017 WL 6522323 (S.D. Miss. 2017).................................... 16

*Kemp v. Unum Life Ins. Co. of Am.*,
  No. 14-0944, 2015 WL 8526689 (E.D. La. 2015) ........................................... passim

*King v. United SA Fed. Credit Union*,
  744 F. Supp. 2d 607 (W.D. Tex. 2010)................................................................ 19

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010) ................................................... 15, 22, 29

*Knutson v. Schwan's Home Serv., Inc.*,
  No. 3:12–CV–00964–GPC, 2014 WL 3519064 (S.D. Cal. 2014)................................ 25

*Lopez v. STS Consulting Servs. LLC*,
  No. 6:16-CV-00246-RWS, 2018 WL 3301683 (E.D. Tex. 2018)................................ 14

*Martin v. JTH Tax, Inc.*,
  No. 13-CV-6923, Dkt. 86 (N.D. Ill. 2015) .......................................................... 23

*Mashburn v. Nat'l Healthcare, Inc.*,
  684 F. Supp. 660 (M.D. Ala. 1988) .................................................................... 12

*Muehler v. Land O'Lakes, Inc.*,
  617 F. Supp. 1370 (D. Minn. 1985).................................................................... 12

*Prater v. Medicredit, Inc.*,
  No. 4:14-CV-00159-ERW, 2015 WL 8331602 (E.D. Mo. 2015) ............................ 22

*Rodriguez v. Stage 3 Separation, LLC*,
  No. 5:14-CV-00603-RP, 2015 WL 12866212 (W.D. Tex. 2015) ..................... 15, 22

*Schwartz v. TXU Corp.*,
  No. 3:02-CV-2243-K (lead case), 2005 WL 3148350 (N.D. Tex. 2005) ............... 13, 21, 23, 29

*SEC v. Stanford Intl. Bank, Ltd.*,
  No. 3:09-CV-0298-N, 2019 WL 289370 (N.D. Tex. 2019).............................. 12, 13

*Shaw v. CAS, Inc.*,
  No. 5:17-CV-142, 2018 WL 3621050 (S.D. Tex. 2018) ...................................... 14

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
  91 F. Supp. 2d 942 (E.D. Tex. 2000)............................................................ 20, 30

*Sistrunk v. TitleMax, Inc.*,
No. 5:14-CV-628-RP, 2018 WL 1773307 (W.D. Tex. 2018) ................................. 15

*Spicer v. Chi. Bd. Options Exchange, Inc.*,
844 F. Supp. 1226 (N.D. Ill. 1993) ........................................................................ 30

*Torregano v. Sader Power, LLC*,
No. 14-293, 2019 WL 969822 (E.D. La. 2019) ......................................... 13, 14, 16

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F. 3d 632 (5th Cir. 2012) ........................................................................ passim

*Vela v. City of Houston*,
276 F. 3d 659 (5th Cir. 2001) ............................................................................... 15

*Welsh v. Navy Fed. Credit Union*,
No. 5:16–CV–1062–DAE, 2018 WL 7283639 (W.D. Tex. 2018) ......................... 22

**Statutes**

47 U.S.C. § 227 ................................................................................................... 1, 3

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... 9

**Treatises**

5 *Newberg on Class Actions* § 15:83 (5th ed.) ...................................................... 13

*Manual for Complex Litig.* (Fourth) § 14.121 (2010) ..................................... 22, 27

**Regulations**

18 FCC Rcd. at 14,080 ........................................................................................... 18

18 FCC Rcd. at 14083 ............................................................................................ 18

47 C.F.R. § 64.1200 .................................................................................... 3, 5, 6, 18

Plaintiff, Thomas Buchanan ("Plaintiff"), on behalf of himself and all others similarly situated, by and through the undersigned counsel ("Class Counsel") respectfully submits this memorandum of law in support of his request for (1) an award of attorneys' fees in the amount of $6,471,000.00 which is 25.884% of the total value of the $25 million cash fund and equal to 20%[1] of the total value of the $32,355,772.00 settlement,[2] (2) approval of a reimbursement to Class Counsel of expenses in the amount of $137,667.22, and (3) approval of a service award to the class representative, Thomas Buchanan, of $10,000.00.

## I.     <u>INTRODUCTION AND SUMMARY</u>

Nearly three years ago, Plaintiff Thomas Buchanan brought this Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*., action against Sirius XM Radio, Inc. ("Sirius XM" or Defendant), alleging illegal telemarketing calls to consumers' telephones.  Although the TCPA grants an unqualified right to avoid unwanted telemarketing calls, Plaintiff alleged that Sirius XM made marketing calls to persons registered on the National Do Not Call ("DNC") Registry and to people who specifically requested that such calls end.

The litigation required Class Counsel to devote significant resources, including conducting extensive document discovery, briefing multiple discovery motions, taking and defending multiple depositions, engaging an expert to analyze the call data, and fully briefing both a motion for class

---

[1] The requested attorneys' fee of $6,471,000.00 is actually 19.999% of the total value of the settlement (*i.e.,* $32,355,772.00).  For ease of reference herein, Plaintiff shall refer to this as 20%.
[2] In their preliminary approval motion, Class Counsel agreed that they would not seek attorneys' fees exceeding "20% of the total value of the settlement, which includes both the value of the cash settlement fund and the fair market value of the Free Service."  Dkt. 105 at § 3. E.  *See also*, Postcard Notice and Claim Form (Dkt. 105-2) and the Long Form Notice (Dkt. 105-5 p. 12). Herein Class Counsel seeks attorneys' fees of $6,471,000.00, the equivalent of 20% of the "total value of the settlement, which includes both the value of the cash settlement fund and the fair market value of the Free Service."

certification and a motion for summary judgment.  Following these and the other efforts detailed below, the parties were able to reach a mediated settlement.  The settlement agreement established a common fund of $25,000,000 and provided class members the option to receive either a cash payment or three months of Sirius XM's best service package (the "Free Service").  The total value of the Free Service elected by 90,812 Class Members to-date is $7,355,772.00, for a total settlement value of $32,355,772.00.  The agreement also required Sirius XM to make a number of changes to its business practices.  This Court preliminarily approved the settlement, and a final fairness hearing is scheduled for January 28, 2019. *See* Dkt. 121.

As compensation for their successful efforts, Class Counsel ask the Court to approve their request for a combined award of attorneys' fees of $6,471,000.00, which is equal to 25.884% of the value of the cash fund and 20% of the total value of the settlement.  This fee represents reasonable and appropriate compensation for the significant work expended by Class Counsel and the risks they took on as part of the litigation.  Class Counsel also respectfully request reimbursement for their expenses in the amount of $137,667.22 and an award of $10,000 for the Class Representative, Thomas Buchanan, in accordance with the Settlement, as the award is reasonable and justified.

## II.  <u>BACKGROUND</u>

### A.  <u>The Litigation Was Hard Fought</u>

This was a hard-fought litigation, where both sides were ably represented.  In order to obtain the current substantial recovery for the class, Class Counsel had to expend significant time and resources over a multi-year period as detailed in this section.

On March 13, 2017, Plaintiff filed this Class Action Complaint alleging that Sirius XM made illegal telemarketing calls to individuals who had registered with either the national do-not-

call list or placed their telephone numbers on Sirius XM's own internal do-not-call list in violation of the TCPA.  Dkt. 1.  Plaintiff's Class Action Complaint alleged two counts.  In Count I, Plaintiff alleged that Sirius XM made telemarketing calls to the residential landlines of Plaintiff and the members of the National Do-Not-Call Registry Putative Class without the prior express written consent or permission of Plaintiff or the members of the National Do-Not-Call Registry Putative Class in violation of the TCPA, 47 U.S.C. §227(c).  In Count II, Plaintiff alleged that Defendant made telemarketing calls to Plaintiff and the Internal Do-Not-Call Registry Putative Class after they were listed on Defendant's Internal Do-Not-Call Registry in violation of 47 C.F.R. § 64.1200(d)(3).

Prior to filing this complaint, Class Counsel conducted a significant pre-complaint investigation regarding Sirius XM's activities and reviewed Sirius XM's previous TCPA litigations to determine what claims, if any, could still be brought.  Class Counsel then drafted the complaint based on that investigation.  *E.g.,* HT Decl. ¶ 9.[3]

After filing the action, the parties exchanged discovery demands, including both document requests and interrogatories.  Class Counsel then engaged in months of negotiations with Sirius XM regarding both the scope of discovery and the appropriate protections for the information Sirius XM planned to produce.  *E.g.,* DH Decl. ¶ 28; AS Decl. ¶ 14.  Ultimately, Class Counsel was forced to file a Motion to Compel and for a Protective Order because the parties could not agree on the scope of discovery or the proper protections.  Dkt. 43.  It was only after Class Counsel filed that motion, and the parties met at the Court's direction in Chicago, Illinois, that the parties

---

[3] References herein to "JE Decl." are to the Declaration of Jarrett Ellzey, to "DH Decl." are to the Declaration of Daniel Hutchinson, to "AS Decl." are to the Declaration of Aaron Siri, to "HT Decl." are to the Declaration of Henry Turner, to "DW Decl." are to the Declaration of Douglas Werman, and to "AV Decl." are to the Declaration of Anya Verkhovskaya, all of which are filed herewith.

were able to agree on an appropriate order regarding those issues. Dkt. 43, 53. During this time, Sirius XM twice refused to agree to extend the deadline to file a class certification motion; therefore, Class Counsel had to make contested motions twice to secure sufficient time to conduct appropriate discovery before filing the class certification motion. Dkt. 38, 47.

In discovery, Class Counsel reviewed over 16,000 pages of documents produced by Sirius XM. AS Decl. ¶ 14. In addition, Sirius XM produced a call log with more than 217 million calls that had to be reviewed and analyzed. Dkt. 60-21. Given the sensitive nature of the call log data, Sirius XM insisted on a protective order that required Plaintiff to maintain substantial data security protocols on any computer that stored the call log. Dkt. 56 at ¶ 12.5. The required data security obligated Class Counsel to identify and retain (at a substantial cost) an outside data storage company that could offer sufficient protections to host the call log data securely. AS Decl. ¶ 14. Class Counsel further retained a well-regarded expert, Anya Verkhovskaya, to review and analyze the call logs and related data produced by Sirius XM. Dkt. 56 at ¶ 12.5. Ms. Verkhovskaya, with Class Counsel's assistance, produced three reports, one for each class and a rebuttal report.

In addition to the document discovery, Class Counsel defended the deposition of Plaintiff Mr. Buchanan. JE Decl. ¶ 14. Class Counsel also defended a separate deposition of Mr. Buchanan's wife in Texas. *Id.* Class Counsel further took the full-day deposition in New York of Sirius XM's representative. Each deposition required significant preparation, time, and travel. DH Decl. ¶ 28.

Class Counsel also engaged in third party discovery. Class Counsel subpoenaed twelve telemarketing contractors that Sirius XM identified as making the relevant calls on its behalf, requesting call data and contract information from each vendor. AS Decl. ¶ 14. Class Counsel also learned that multiple state entities had investigated or questioned Sirius XM's calling practices

over the past decade, including New York, Wyoming, Tennessee, Florida, Kansas, and North Carolina. *Id.* Class Counsel undertook efforts to collect documents regarding those investigations, both through Sirius XM and through freedom of information requests to relevant state entities. Class Counsel also sought and received information from the Federal Trade Commission regarding complaints made by consumers concerning Sirius XM's calling practices. *Id.*

Following discovery, Plaintiff filed a motion for class certification in May 2018. Dkt. 60. Plaintiff utilized the information generated by its extensive first-party and third-party discovery in making this motion. *E.g.,* Dkt. 60 p. 6; Dkt. 77 pp. 12-13. Nevertheless, Sirius XM aggressively opposed that motion, which required Class Counsel to expend significant time and effort. Among other things, Sirius XM included over 1,700 pages of exhibits with its opposition and filed a surreply that Plaintiff had to further reply to. Dkts. 70, 80, 82. In these papers, Sirius XM raised several complicated and novel defenses to class certification, including whether Plaintiff had standing to bring this action, whether Sirius XM had an established business relationship ("EBR") with many class members, and whether common issues of fact predominated over individual issues. As part of its predominance argument, Sirius XM relied on a variety of arguments to support, among other things, that individualized issues existed respecting whether consumers purchasing a SiriusXM-equipped vehicle engaged in a "purchase or transaction with" SiriusXM under the EBR regulation, 47 C.F.R. § 64.1200(f)(5), or at a minimum that individualized issues existed respecting whether consumers made inquiries or applications for purpose of that regulation. Among other things, Sirius XM claimed that third-party car dealers acted as the company's agents and that through those dealers, Sirius XM established a business relationship with consumers who purchased vehicles equipped with a Sirius XM radio. Dkt. 80 § II.B. Class Counsel carefully analyzed Sirius XM's arguments and expended considerable effort to refute them. Dkt. 70 pp. 11-

25; Dkt. 77 pp. 4-13. After extensive briefing and litigation regarding these issues, the outcome of these issues still remained uncertain when the parties reached a settlement.

Sirius XM also filed a Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment. Dkt. 87. That motion sought to dismiss Count II. Sirius XM presented the argument that its internal-do-not-call procedures insulated it from Count II, and that, based on the facts presented, Mr. Buchanan could not allege a violation of 47 C.F.R. § 64.1200(d)(3). Class Counsel opposed this motion as well. The outcome of the motion for class certification remained uncertain at the time the parties reached a settlement.

### B. **Class Counsel Secured a Very Significant Recovery as Part of the Settlement**

During this motion practice, the parties discussed the potential for settlement. DH Decl. ¶ 30. However, the parties were not able to reach agreement on settlement terms on their own. Therefore, after the summary judgment briefing was completed, the parties retained a well-regarded mediator (Randall Wulff) to assist them in reaching a final agreement. *Id.* Class Counsel prepared a mediation brief and then attended a full-day mediation session in Oakland, California, at the end of which the parties reached the basic terms of a settlement. *Id.*

Even though the parties left the mediation with the basic terms of an agreement, it then took Class Counsel an additional four months of negotiations to prepare the 92-page settlement agreement and exhibits and to prepare and file the motion for preliminary class approval. Dkt. 105-1. The terms of the settlement agreement were complex and required substantial negotiations.

Under the ultimate settlement agreement, Plaintiff and Class Members are entitled to a *pro-rata* distribution of a $25,000,000.00 cash fund, following deductions for the costs of notice and claims administration, reasonable attorneys' fees, and other expenses. *See* Dkt. 105-1 at ¶ 3 a. Additionally, for each Class Member who elects to receive it, in lieu of cash (and thus who does

not receive a cash distribution from the settlement fund), Sirius XM shall provide three (3) months of free access to Sirius XM's All Access Subscription package, which contains every channel available on Sirius XM's satellite radios, including access to over 150 Channels plus Sirius XM Streaming (or any subsequently-named satellite radio service that contains substantially the same programming as the All Access service) (the "Free Service"). *See* Dkt. 105-1 at ¶ 3 b. The $7,355,772.00 of Free Service secured by Class Counsel represents a significant value for class members and a very valuable alternative form of remuneration for the 90,812 class members who chose it over the cash option. The $7,355,772.00 of Free Service option is in addition to, and will not diminish, the $25,000,000.00 common fund. Accordingly, the total value of the Settlement is $32,355,772.00.

In addition to the settlement fund and the Free Service guaranteed by the settlement, Sirius XM also agreed to meaningful business practice changes in its communications to its trial subscribers. Dkt. 105-1 at ¶ 4. First, Sirius XM has agreed to implement changes in its internal practices to bolster its existing practices to ensure that trial subscribers who ask Sirius XM to put them on Sirius XM's internal do-not-call ("DNC") list are promptly placed on Sirius XM's internal DNC list and not called more than 31 days after the request. Sirius XM has also agreed to implement changes in its communications with all of its trial subscribers, including the following: (1) include notices contained in its Customer Agreement, glove box materials and welcome kit to explain that consumers may be contacted and explaining how consumers can take steps to place themselves on Sirius XM's internal DNC list; and (2) ensure that it does not make calls to trial subscribers until a reasonable period after the mailing of the welcome kit. Plaintiff agrees that Sirius XM has taken substantial steps to communicate its calling practices to trial subscribers and that in so doing Sirius XM has enhanced its EBR defense upon which it relies on calling trial

subscribers to market paid subscriptions. Class Counsel's efforts in creating Sirius XM's changed business practices have benefited not only class members but also the general public. While Class Counsel have not attempted to monetize the value of these hard-fought practice changes, there can be no doubt that they provide significant additional value for Class Members.

## C. Class Counsel Expended Significant Time and Effort to Conduct Notice to More Than 15.9 Million Potential Class Members

Through work with its expert and settlement discussions, Class Counsel learned that the two classes in this action consist of approximately 15.9 million potential class members. AV Decl. ¶ 63. All these members needed to be provided with notice. Therefore, Class Counsel conducted a nationwide search for an appropriate settlement administrator. Class Counsel compared 10 proposals from 8 different settlement administrators. AS Decl. ¶ 19. Ultimately, Class Counsel retained the services of Class Experts Group ("CEG"). Dkt. 105 pp. 11-12. Not only did CEG possess the requisite experience to take on the enormous notice required here, but they also prepared an innovative notice plan. *Id.* They proposed to provide notice through a combination of email and traditional postcard notice, along with detailed targeted advertising. *Id.* By conducting notice in this manner, Class Counsel was able to save a significant amount of money when compared to proposals from other settlement administrators.

The Court preliminarily approved the settlement and the class in an order entered on May 6, 2019. Dkt. 106. In that preliminary motion, Plaintiff laid out the proposed notice plan. As set forth in more detail below, CEG, as the Settlement Administrator, executed that plan.

First, the Parties worked closely with CEG to develop and publish the Settlement Website and telephone assistance program. The Parties provided CEG with a data file containing 14,796,913 records for potential class members. Dkt. 110 at ¶ 6. CEG conducted its due diligence, processed

the data files, and used a reverse-append process to identify up to five additional email addresses per record. It then used this data to prepare an initial email notice list. *Id*. at ¶ 7.

Second, CEG disseminated the Court-approved class notice by email to each valid email address for the previously identified potential class members. Dkt. 110 at ¶ 8 & n.2. Third, for each record without a delivered email notice, CEG sent the Court-approved Postcard Notice. *See* Dkt. 110 at ¶14.

Fourth, CEG implemented an extensive media notice plan. *See* Dkt. 110 at ¶ 21. Approximately 15 million digital advertisement impressions were directed to potential class members. Likewise, with Class Counsel's encouragement and assistance, CEG engaged in a publicity campaign that ultimately resulted in the information regarding the settlement and how to file a claim, being featured on various websites and in several news publications, including USA Today. (see "Getting money you're owed from class-action lawsuits has never been easier", USA Today, https://www.usatoday.com/story/tech/columnist/2019/09/05/class-action-settlements-find-out-if-you-are-owed- money/2209550001/.)

Class Counsel worked with the Settlement Administrator, at times daily, to monitor the settlement notice program and ensure the best notice practicable under the circumstances. *See* Fed. R. Civ. P. 23(c)(2)(B). Class Counsel provided feedback and suggestions to improve the settlement notice program, where possible. *E.g.*, DH Decl. ¶ 34; AS Decl. ¶ 20.  For example, although the Court's Order and the Settlement Agreement did not require that potential class members receive multiple emails, Class Counsel negotiated and authorized more than 6.2 million additional email notices be sent to potential class members – at no additional cost to the class.

Due in part to Class Counsel's active role in the notice process, after the notice program began, the parties learned that certain potential class members had not received individual class

notice (although those class members may have been aware of the Settlement via the Settlement Agreement's publication notice plan). *E.g.*, AS Decl. ¶ 20. With the assistance of the Settlement Administrator, Class Counsel researched and communicated potential issues to Sirius XM, which queried its data sources and performed its own investigation. The parties met and conferred to explore all potential sources of class member data and ensure that each potential class member record had been located. Dkt. 118 p. 5. Sirius XM conducted a further review of its data sources and informed Class Counsel in mid-September 2019 that it would provide records identifying additional potential class members. *Id.* The Settlement Administrator subsequently received approximately 1,199,605 records from Sirius XM. This represented a 7.5% increase in the size of the total class. AV Decl. ¶ 28.

Class Counsel, with Sirius XM's consent, filed a motion in early October 2019 asking the Court to extend the notice deadlines to ensure that these new class members received adequate notice. Dkt. 118. The Court granted this motion on October 8, 2019. Dkt. 120. Thereafter, Class Counsel worked with CEG to ensure that these new class members received appropriate notice.

Ultimately, 437,528 potential class members submitted claims. AV Decl. ¶ 72. Out of these, 346,716 class members registered for cash payments, and 90,812 registered for the Free Service. *Id.* at ¶¶ 72-73. In contrast, only 129 people opted out of the settlement. *Id.* at ¶ 66. Perhaps most remarkably, given the size of this class, no-one filed an objection to the requested fee award. *Id.* at ¶ 69, Ex. J (not objecting to fee award). This is a testament to the high quality of the settlement Class Counsel obtained for the class.

According to Sirius XM, and as explained to the class members as part of the notice communications, the monthly retail price, including taxes and fees, of its All Access Subscription package that it is providing for free as a result of the settlement is approximately $27.00. Hence,

the fair market value of the three months of free service is $81. Dkt. 105 p. 5; Dkts. 105-1, 105-2, 105-3, 105-5. Thus, the total value of the Free Service the class members will actually receive as a result of the settlement is $7,355,772.00 (*i.e.,* $81 x 90,812 = $7,355,772.00). Therefore, the total value of the settlement is $32,355,772.00 (the sum of the $25 million cash fund plus the $7,355,772.00 value of the Free Service). Dkt. 105 p. 7.

D. **Class Counsel Seek a Reasonable Fee Given Their Success in this Action**

In the preliminary approval motion, and the notices provided to the class, Plaintiff stated that Class Counsel "intend[ed] to seek a fee that will not exceed 20% of the total value of the settlement, which includes both the value of the cash settlement fund and the fair market value of the Free Service." Dkt. 105 p. 7. The class notice similarly advised the class that Class Counsel would seek this amount. *See* Postcard Notice and Claim Form (Dkt. 105-2, Ex. B) and the Long Form Notice (Dkt. 105-5, Ex. C, p 12). Class Counsel believes this amount is fair and reasonable, especially given the results achieved for the class. Therefore, Class Counsel asks that the Court approve an attorney award of $6,471,000.00. Furthermore, for his exemplary services to the class, Plaintiff himself seeks a service award of $10,000.00 in connection with his role as the sole class representative.

III. **ARGUMENT**

A. **The Court Should Apply the Percentage Fee Method**

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Boeing Co. v. Van Gernert*, 444 U.S. 472, 478 (1980). In cases where a common settlement fund is established, courts have recognized that appropriate fee awards encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature. *See*, *e.g.*, *Mashburn v. Nat'l*

*Healthcare, Inc.*, 684 F. Supp. 660, 687 (M.D. Ala. 1988); *see also Deposit Guar. Nat'l Bank v. Rope*, 445 U.S. 326, 338-39 (1980). Further, courts have recognized that adequate compensation promotes the availability of counsel for aggrieved persons:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear … We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law. It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action suit. It is an experience in which few of us have participated. The dimensions of undertaking are awesome.

*Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985).

In common fund settlement cases, such as this one, "when considering fee awards . . . 'district courts in [the Fifth] Circuit regularly use the percentage method blended with a *Johnson* reasonableness check.'" *SEC v. Stanford Intl. Bank, Ltd*., No. 3:09-CV-0298-N, 2019 WL 289370, at *2 (N.D. Tex. 2019) (quoting *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F. 3d 632 (5th Cir. 2012) (citing *Johnson v. Georgia Hwy. Express, Inc*, 488 F. 2d 714 (5th Cir. 1974))). "While the Fifth Circuit has also permitted analysis of fee awards under the lodestar method, both the Fifth Circuit and district courts in the Northern District [of Texas] have recognized that the percentage method is the preferred method of many courts." *Id.* In fact, in a case decided just this year, a court in this District "observed that the percentage method is 'vastly superior to the lodestar method for a variety of reasons, including the incentive [under the lodestar method] for counsel to "run up the bill" and the heavy burden that calculation under the lodestar method places upon the court.' . . . The court also observed that, because it is calculated based on the number of attorney-hours spent on the case, the lodestar method deters early settlement of disputes. . . . Thus, there is a 'strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of

the recovery.'"[4] *Id.* (quoting *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K (lead case), 2005 WL 3148350, at *25-*26 (N.D. Tex. 2005)); *see also Fairway Med. Ctr., L.L.C. v. McGowan Enterprises, Inc.*, No. CV 16-3782, 2018 WL 1479222, at *2 (E.D. La. 2018) (stating that "[g]iven the sound policy considerations for applying the percentage method, as well as the trend in this district for adopting this method, this Court likewise adopts the percentage method in this case" and awarding attorneys 33% of the common fund without lodestar cross-check).

Given sound policy considerations for applying the percentage method, as well as the trend in this district for adopting that method, it is appropriate to apply the percentage method in this case and to apply the *Johnson* cross-check factors to determine that the requested fee is reasonable. *See*, *Al's Pals Pet Care v. Woodforest Nat'l Bank*, No. 4:17-CV-3852, 2019 WL 387409 at *10-*12 (S.D. Tex. 2019) (awarding 33% without conducting a lodestar cross-check); *Torregano v. Sader Power, LLC*, No. 14-293, 2019 WL 969822 (E.D. La. 2019) (awarding a percentage of the common fund without a lodestar cross-check); *Burford v. Cargill, Inc.*, No. 05-0283, 2012 WL 5471985, at *1 (W.D. La. 2012) (awarding 20% without performing lodestar cross-check); *In re Pool Products Distribution Mkt. Antitrust Litig.*, MDL No. 2328, 2015 WL 4528880, at *23 (E.D. La. 2015) (same).

### B.  The Requested Fee of 25.884% of the Cash Fund is Reasonable

No general rule exists regarding a reasonable percentage of a common fund; however, "attorney fees awarded as percentages of a common fund usually range between 20[%] and 30%, with 50% as an upper limit." *Kemp v. Unum Life Ins. Co. of Am.*, No. 14-0944, 2015 WL 8526689, at *8 (E.D. La. 2015) (citing 5 *Newberg on Class Actions* § 15:83 (5th ed.)). "In the Fifth Circuit,

---

[4] Furthermore, "the United States Supreme Court has approved the percentage method in common fund cases, but has never formally adopted the lodestar method in common fund cases." *Torregano v. Sader Power, LLC*, No. 14-293, 2019 WL 969822 (E.D. La. 2019) (citation omitted).

the average percent awarded as attorneys' fees is 29.5%." *Id.* "Furthermore, it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third." *Id.* (internal quotations omitted) (awarding one-third of the common fund without a lodestar cross-check); *see e.g.*, *Al's Pals Pet Care*, 2019 WL 387409 (awarding one-third (1/3) of the $15 million settlement fund without conducting a lodestar cross-check and stating that "this is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Torregano,* 2019 WL 969822 (stating that "awards in this circuit in the range of 33% are commonplace"); *In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771 (W.D. La. 2006) (36% without lodestar cross-check).

Here, Class Counsel requests a fee of only 25.884% of the cash fund, which equals 20% of the total settlement amount, both of which fall on the low end of reasonable attorneys' fees and well within the accepted range. *Kemp,* 2015 WL 8526689, *8 (setting the benchmark at 1/3 and ultimately awarding a 1/3 percentage after conducting a *Johnson* analysis).

### C. <u>Calculating the Benchmark Fee under the Percentage Method</u>

"Under the percentage method, the Court must first establish a benchmark percentage fee, which is then evaluated with reference to similar court-approved settlement agreements in the circuit." *Shaw v. CAS, Inc*., No. 5:17-CV-142, 2018 WL 3621050, at *2 (S.D. Tex. 2018). "The Court then evaluates the benchmark percentage using the factors outlined in *Johnson v. Georgia Highway Exp., Inc*., . . . to determine if a deviation from the benchmark percentage is appropriate." *Id*.

"In cases where the litigants propose a percentage calculation for fees, although not explicitly adopted by the Fifth Circuit, district courts generally begin by looking to the parties' proposed percentage as the starting point to determine the benchmark fee." *Lopez v. STS Consulting Servs. LLC*, No. 6:16-CV-00246-RWS, 2018 WL 3301683, at *2 (E.D. Tex. 2018)

(citing *Dyson v. Stuart Petroleum Testers, Inc.,* No. 1-15-CV-282 RP, 2016 WL 815355, at *4 (W.D. Tex. 2016)).

After negotiating the amount of the common fund, the free services, and the process changes that Sirius XM would undertake, the parties reached an agreement on the payment of attorneys' fees that Class Counsel would request. They agreed that Class Counsel would seek attorney fees equal to 20% of the total settlement amount. Dkt. 105-1 pp. 30-31, 63, 75. This amounts to 25.884% of the value of the cash fund or $6,471,000.00. Thus, Class Counsel respectfully submits that the appropriate benchmark, in this case, is 25.884%.

A review of Fifth Circuit precedent indicates a 25.884% benchmark fee is not only reasonable but is less than the typical amount often awarded in this Circuit.[5] For example, this Court stated in *Klein v. O'Neal, Inc.*, that a benchmark of approximately 25%, was a "presumptively reasonable" range for a settlement of 90-110 million dollars.[6] *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 676 (N.D. Tex. 2010) (also noting that The *Manual for Complex Litigation* indicates appropriate attorney fees are between 25% and 30% of the common fund). *See also*, *Sistrunk v. TitleMax, Inc.*, No. 5:14-CV-628-RP, 2018 WL 1773307 (W.D. Tex. 2018) (noting that the Fifth Circuit's benchmark in common-fund cases is 30%).

---

[5] *See, e.g.*, *Vela v. City of Houston*, 276 F. 3d 659, 681 (5th Cir. 2001) (approving 30% fee award); *Dyson*, 2016 WL 815355 at *5 (stating that 30% award was supported by 5th Circuit precedent); *Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-CV-00603-RP, 2015 WL 12866212, at *5 (W.D. Tex. 2015) (collecting 5th Circuit precedent supporting a benchmark fee of 30%).

[6] In *Klein*, this court noted that, at the time, the Fifth Circuit had not yet endorsed the percentage method for awarding attorneys' fees in common fund cases, and the law in that area was "at best unclear". 705 F. Supp. 2d at 674. As a result, this Court applied both the percentage method and the lodestar cross-check, just to be safe. *Id.* As discussed above, since that case was decided in 2010, the Fifth Circuit decided the *Dell* matter formally endorsing the percentage method, and now the trend among courts is to apply just the percentage method with the *Johnson* cross-check.

While the fee request of 25.884% of the cash fund is alone reasonable, its reasonableness is further supported by the fact that the $6,471,000.00 equals only 20% of the total settlement value. *See Kemp v. Tower Loan of Mississippi, LLC,* No. 3:15-CV-499-CWR-LRA, 2017 WL 6522323 (S.D. Miss. 2017) (noting that the requested fee award equaled approximately 25% of the benefit projected to be provided to the Settlement Class Members, and this percentage was within the range commonly approved).

### D.  __Application of the *Johnson* Factors Supports the Requested Fee__

As discussed above, courts in the Fifth Circuit utilize the percentage method and apply the twelve factors outlined in *Johnson v. Georgia Highway Exp., Inc.* to cross-check the reasonableness of the percentage. The *Johnson* factors are applied to the benchmark percentage to determine if an upward or downward adjustment is warranted. *See Kemp*, 2015 WL 8526689 at *8.

The Johnson factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Torregano*, 2019 WL 969822 (citing *Johnson,* 488 F. 2d at 718). As explained below, a review of the *Johnson* factors establishes that the 25.884% benchmark is both fair and reasonable.

### 1. **Substantial Time and Labor Was Required**

Hours spent on a case should not be the sole basis for determining a fee; however, the time invested in a class action is a necessary ingredient to be considered. *Kemp*, 2015 WL 8526689 at *9. This action was commenced in March of 2017 and has proceeded for more than two and a half years. Class Counsel has managed and funded this case for its entirety and have invested the substantial and consistent workload required by this litigation to obtain the beneficial results for class members. Professionals working for Class Counsel have spent 2,998.25 hours in total working on this case and will continue to expend time on this matter. JE Decl. ¶ 38; DH Decl. ¶ 45; AS Decl. ¶ 32; HT Decl. ¶ 23; DW Decl. ¶ 16. Moreover, counsel diligently pursued this action, spending considerable time engaging in, *inter alia*, the following on behalf of the class members:

- conducting significant pre-complaint investigation;
- researching and drafting the complaint and other necessary court documents;
- researching various legal issues that affected the merits of the case;
- engaging in extensive motion practice, including researching, drafting, and preparing a motion to compel and for protective order (Dkt. 43);
- preparing and answering discovery demands, including document requests and interrogatories;
- reviewing over 16,000 pages of materials produced by Sirius XM
- retaining an expert witness to analyze the call log containing more than 217 million calls and assisting the expert in producing two expert reports and a rebuttal report;
- preparing, traveling to, and conducting/defending several depositions;
- conducting third-party discovery with twelve telemarketing contractors and undertaking efforts to collect information from state regulatory agencies and the Federal Trade Commission;
- preparing for and attending mediation, negotiating and drafting settlement agreement, obtaining preliminary approval; and

- working with the Settlement Administrator on the notice and claims program and responding to inquiries from Settlement Class members.

Additionally, to see the Settlement through to the conclusion will require Class Counsel to continue representing and assisting the class members as the claim process concludes. Given the complexity of the issues involved and the massive size of the potential class, this case has required and continues to require a great deal of time and labor, both before and after the preliminary approval — all of which was essential to achieving the positive results for the class members. Consequently, this factor supports the requested award.

## 2. The Issues Involved Were Novel and Difficult

The Fifth Circuit has held that where a case involves unusual or complicated issues of law or fact, a more substantial attorneys' fee award is warranted. *Johnson*, 488 F. 2d at 718. This action presented novel and challenging legal issues involving complex questions relating to class certification—including Sirius XM's various arguments in support of its EBR defense in its opposition to Class Counsel's Motion for Class Certification. Dkt. 80. Among its various arguments, Sirius XM explained that, when an individual purchases or leases a vehicle, aware of the SiriusXM equipment and subscription, she purchases SiriusXM products, or at the very least "transact[s]" with SiriusXM, for purposes of the EBR regulation; dealer personnel acting as SiriusXM's agents often complete the "voluntary two-way communication" between SiriusXM and vehicle buyers and lessees, who consequently "could expect to receive a call from" SiriusXM. Dkt. 70 pp. 15-16 (citing 2003 TCPA Order, 18 FCC Rcd. at 14,080; 18 FCC Rcd. at 14083 n.382). The FCC's regulations, Sirius XM argued, supported the same result. 47 C.F.R. § 64.1200(f)(5). Class Counsel vigorously disputed these and other arguments, and argued that the case law did not support the existence of an EBR. Dkt. 82 p. 3. *Kemp*, 2015 WL 8526689 at *9 (finding that the

second *Johnson* factor weighed in favor of a substantial award because even though the overall issues were not matters of first impression, the defendants raised new and more complex arguments that had to be addressed by counsel); *see also Gibbs v. Centerplate, Inc.*, No. 8:17-CV-2187-EAK-JSS, 2018 WL 6983498, at *6 (M.D. Fla. 2018) (holding that even though the FCRA claims were not matters of first impression, the second *Johnson* factor still weighed in favor of a 30% award because the plaintiff faced novel issues regarding her standing).   The EBR issue was highly contentious because it represented a significant risk factor in that, if Sirius XM had prevailed in its class arguments, it could have resulted in the class not being certified.  Dkt. 60, 77, 82.  Therefore, this factor supports a substantial attorneys' fees award and weighs in favor of the requested award.

### 3.  Class Counsel Possessed the Necessary Skill to Effectively Litigate the Case

The third *Johnson* factor can be assessed by close observation of the attorneys' work product, preparation, and general ability before the court.  *Kemp*, 2015 WL 8526689, at *10.  "This factor is evidenced where 'counsel performed diligently and skillfully, achieving a speedy and fair settlement, distinguished by the use of informal discovery and cooperative investigation to provide the information necessary to analyze the case and reach a resolution.'" *King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 614 (W.D. Tex. 2010).

This complex litigation required Class Counsel highly trained in class action law and procedure and knowledgeable about the TCPA.  Class Counsel includes five geographically diverse firms that brought different and varied experience to the litigation, all of which was utilized in prosecuting this action.

Among other things, the scope of this litigation presented challenges that required experienced and skilled class action attorneys to resolve.  For example, Sirius XM produced a call log with over 217 million call records, and ultimately there were approximately 15.9 million

potential class members identified. The logistics for handling such large amounts of sensitive data and for efficiently providing notice to such a large class offered numerous challenges. For example, the data security requirements demanded by Sirius XM were extensive and necessitated Class Counsel to undertake substantial research to meet. Dkt. 47 p. 2.

Furthermore, to address some of Sirius XM's defenses, Class Counsel sought data from several third-party sources, including from state and federal agencies that had investigated Sirius XM. This informal discovery provided important evidence that Plaintiff was later able to use in arguing against Sirius XM's EBR defense.

Ultimately, Class Counsel effectively and efficiently negotiated a settlement that provides enormous benefits to the class members. Indeed, Class Counsel have regularly and successfully engaged in major class action litigation and possess extensive experience in consumer class action lawsuits.[7] Class Counsel was ready and able to dedicate the resources needed to try this case and obtain a judgment. All named counsel are experienced trial lawyers with sufficient ability to develop a complex case from inception through appeal. Class Counsel committed substantial financial resources to this case and retained experts who could have testified if the matter had proceeded to trial. Accordingly, Class Counsel effectuated a speedy and fair settlement, evidencing that they possess the necessary skill to litigate the case effectively.

The Court should also consider the skill of opposing counsel in evaluating the quality of representation by Class Counsel. *See Shaw v. Toshiba Am. Info. Sys.*, *Inc.*, 91 F. Supp. 2d 942, 970 (E.D. Tex. 2000) (finding the presence of "very skilled [opposing] counsel" as relevant to a *Johnson* analysis). Sirius XM's counsel is extremely capable and proved to be highly skilled

---

[7] *See* Dkt. 105-4, 105-6 – 105-9 (discussing class counsel's past experience and skill in class action litigation).

adversaries, making the terms of the settlement even more remarkable. *See Schwartz*, 2005 WL 3148350, at \*30 ("The standing of opposing counsel should be weighed in determining the fee, because such standing reflects the challenge faced by plaintiffs' attorneys").

Consequently, Class Counsel possesses the necessary skill to litigate the case effectively, and this factor weighs in favor of the requested award.

### 4. Class Counsel was Precluded from Taking on Other Legal Employment

This factor involves the dual consideration of otherwise available business, which is foreclosed because of conflicts of interest that occur from the representation and the fact that once the employment is undertaken, the attorney is not free to use the time spent on the client's behalf for other purposes. *Kemp,* 2015 WL 8526689 at \*10.

At various times throughout this litigation, this matter required Class Counsels' exclusive attention. *E.g.*, SG Decl. ¶ 22; DH Decl. ¶ 35; JE Decl. ¶ 18. Furthermore, Class Counsel maintains that their representation in this class action substantially infringed upon, and at times restricted, their ability to accept other employment, and reduced the time available for their regular practices and participation in other litigation. *E.g.* SG Decl. ¶ 23. Finally, the matters involved in this litigation often required immediate attention and completion within a very short period.[8] Thus far, Class Counsel has devoted more than 2,998.25 hours to this litigation—time that it could have devoted to other matters. *See Schwartz*, 2005 WL 3148350.

Additionally, four of the firms that served as Class Counsel, Hughes Ellzey, LLP, Siri & Glimstad, LLP, Turner Law Offices, LLC, and Werman Salas P.C., are firms consisting of only a

---

[8] For example, one day prior to the deadline for Class Counsel to file the class certification motion, Defendant produced 844 documents spanning 1,167 pages. Dkt. 47 p. 3. Sirius XM then refused to agree to extend Plaintiff's time to file its class certification, forcing Plaintiff to make a motion for the extension the following day. *Id*.

few full-time attorneys. *E.g.,* AS Decl. ¶ 22. During this litigation, those firms have turned down multiple cases because of the time and attention that this case required. *Id. See also*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 328 (W.D. Tex. 2007) (finding the small size of class counsel's firm and the time necessary to successfully litigate the case left "no doubt [other] cases were not accepted because of this ongoing litigation, especially cases requiring immediate attention").

While this factor may not carry great weight, to the extent that it factors into the Court's decision, it weighs in favor of maintaining the benchmark of 25.884%.

### 5. The Requested Fee is at the Low End or Even Below What is Customary

As noted, the customary contingency fee for common-fund class actions in the Fifth Circuit is 20% to 30%. *Welsh v. Navy Fed. Credit Union*, No. 5:16–CV–1062–DAE, 2018 WL 7283639 (W.D. Tex. 2018) (stating that "fee awards commonly fall between 20% at the low end and 50% at the upper end"); *Klein*, 705 F. Supp. 2d at 675 (finding that "[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund" and awarding 30% fee for a $110 million settlement (citing *Manual for Complex Litig.* (Fourth) § 14.121 (2010)); *Rodriguez v. Stage 3 Separation, LLC*, No. 5:14–CV–00603–RP, 2015 WL 12866212 at *5 (W.D. Tex. 2015) (finding that a 30% benchmark fee is common in the Fifth Circuit);

Importantly, this analysis does not differ when limited to TCPA class actions, if anything attorneys' fee percentages in TCPA cases are frequently on the higher end of the spectrum. *E.g., Fairway Med. Ctr.*, 2018 WL 1479222, at *3 (awarding 33% of common fund in TCPA class action without a lodestar cross-check); *Abante Rooter and Plumbing, Inc. v. Birch Communications, Inc.,* No. 1:15-CV-03562, Dkt. 96 (N.D. Ga. 2017) (awarding a fee in a TCPA action of 33% plus costs); *Prater v. Medicredit, Inc.*, No. 4:14-CV-00159-ERW, 2015 WL 8331602, at *3 (E.D. Mo. 2015) (same); *Martin v. JTH Tax, Inc.*, No. 13-CV-6923, Dkt. 86 (N.D.

Ill. 2015) (awarding 38% of TCPA class settlement fund exclusive of expenses and administration costs).   Additional examples of fees awarded in TCPA class actions can be found in a table prepared by Plaintiff, which accompanies this motion. Appendix A.

Accordingly, Class Counsel's request for 25.884% of the cash fund is at the low end or even below the typical contingency fee percentage that most law firms seek in complex class action litigation; therefore, this factor weighs in favor of at the least maintaining the requested award

### 6.   Class Counsel Prosecuted this Action on a Contingent Fee Basis

The sixth *Johnson* factor is "whether the fee is fixed or contingent." *Dell*, 669 F. 3d at 642 n. 25. Class Counsel prosecuted this case with substantial risk by undertaking the representation on a contingency fee basis.  *E.g.*, AS Decl. ¶¶ 23-25; DH Decl. ¶¶ 36-38.   An evaluation of the risks undertaken by Class Counsel in prosecuting this action supports the reasonableness of the fee request. "Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees." *Schwartz*, 2005 WL 3148350. In taking on this case, Class Counsel assumed the risk that they would receive no compensation for years of work performed and no repayment for their costs.  Each of the firms serving as Class Counsel can attest to multiple TCPA contingency fee cases that they have lost, and therefore, received no fee. *E.g.*, AS Decl. ¶ 25; DH Dec. ¶ 38.

Therefore, considering the legal hurdles and substantial out-of-pocket expenses required to prosecute this action effectively, Class Counsel faced a true financial risk in taking on this action. *Billitteri v. Sec. Am., Inc.*, No. 3:09-CV-01568-F, 2011 WL 3585983, at *7 (N.D. Tex. 2011) (finding the contingency fee arrangement of a class action "particularly relevant" to the *Johnson* analysis "considering the difficulty presented by the facts and legal questions in [such] case[s] and the very real risk of obtaining no recovery at all").   Hence, this factor also supports the requested award.

### 7.  **Time Pressures Were Not an Issue in this Action**

The seventh *Johnson* factor is the "time limitations imposed by the client or the circumstances." As the Fifth Circuit explained, "priority work that delays the lawyer's other legal work is entitled to some premium." *Johnson*, 488 F. 2d at 718. Here, there was not a specific time pressure to have this case resolved.  However, Class Counsel coordinated their efforts efficiently to obtain the best possible result for the class.  To the extent the Court weighs this factor, it supports maintaining the 25.884% benchmark.  *See*, *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 502 (N.D. Miss. 1996) (finding that this factor "has no application" in a class action lawsuit).

### 8.  **The Amount Involved and the Results Obtained**

The eighth *Johnson* factor is "the amount involved, and the results obtained." *Dell*, 669 F. 3d at 642 n. 25. The most critical factor in determining a fee award is the degree of success obtained. *Kemp,* 2015 WL 8526689 at *10. An exceptional result has been achieved in this case. Class Counsel was successful in obtaining a settlement that allows each class member the option of claiming an award that he or she finds most valuable.  They may choose between a *pro-rata* cash payment from the $25,000,000 common fund *or* three months of Sirius XM's best service package for free.  Given the claims actually made in this action, Class Counsel estimates the cash payments will be approximately $42.40 per class member, and as discussed above, the three months of Free Service has a market value of $81 per class member.  AV Decl. ¶ 72.  As such, the actual value that Class Counsel obtained for the class is  $32,355,772.00.  This is an excellent payment for a TCPA matter, especially when compared to other TCPA class actions.  *E.g, In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (providing a $34.60 recovery per claiming class member); *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12–CV–00964–GPC,

2014 WL 3519064, at *4–*5 (S.D. Cal. 2014) (approving TCPA settlement where each class member was eligible for a $20 settlement check).

Additionally, the importance of equitable relief can also not be overlooked.  As previously noted, Sirius XM agreed to implement a number of changes to its business practices that will not only serve to help the class members but also the general public as well.  *Supra* II.B.; Dkt. 105-1, ¶ 4.  These hard-fought practice changes are extremely valuable to class members, many of whom informed Class Counsel that ending the calling practices at the heart of this lawsuit was the most important part of this Settlement.

It is notable that, out of the approximately 15.9 million potential class members, no member filed an objection to the requested fee.  AV Decl. ¶ 63. The lack of objections further supports the reasonableness of the requested fee.  *See, e.g*, *Jones v. Dominion Res. Servs*., 601 F. Supp. 2d 756, 763 (S.D. W.Va. 2009) (holding that "very low incidence of objections, . . . not only demonstrates the Class Members' satisfaction with the settlement result, but also shows their implicit approval of its terms, including the attorneys' fee provision").

Based on this excellent result, if anything, this *Johnson* factor weighs in favor of a higher benchmark than the 25.884% of the cash fund that Class Counsel is requesting here.

### 9.  <u>Class Counsel are Highly Experienced and Well Respected</u>

The ninth *Johnson* factor is "the experience, reputation, and ability of the attorneys." *Dell*, 669 F. 3d at 642 n. 25. Class Counsels' Declarations previously filed in this matter provide evidence of the experience reputation and ability of counsel. Dkts. 105-4, 105-6 – 105-9.  Class Counsel are experienced and skilled class action attorneys with significant experience prosecuting TCPA class actions. *Id*.  Class Counsel achieved this excellent Settlement after hard-fought and extensive motion practice and significant amounts of discovery but without trial and extended

litigation, which would only have increased the costs ultimately borne by the Class. Class Counsels' knowledge and experience were essential in reaching the Settlement, and this factor weighs in favor of maintaining the benchmark.

## 10. <u>The Case Qualifies as "Undesirable"</u>

The tenth *Johnson* factor is "the undesirability of the case." *Dell*, 669 F. 3d at 642 n. 25. A case may be deemed "undesirable" under this factor where "the defendant is a large corporation with substantial resources, financial and otherwise, for a vigorous defense; and the legal and factual issues presented risks to recover absent settlement." *Burford,* 2012 WL 5471985, at *5. The "risk of non-recovery" and "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee" has been held to make a case undesirable, warranting a higher fee. *Braud v. Transport Serv. Co.,* Civil Action No. 05–1898, 2010 WL 3283398, at *13 (E.D. La. 2010).

This case qualifies as undesirable. Sirius XM is a large company with significant resources, and it hired a large and well-respected law firm to defend it. Class Counsel assumed the risk of handling this matter on a contingency basis and faced multiple complex defenses and challenges. *E.g.,* AS Decl. ¶¶ 23-25. For these reasons, this factor weighs in favor of the requested fee.

## 11. <u>Class Counsel has a Professional Relationship with the Client</u>

The eleventh *Johnson* factor is "the nature and length of the professional relationship with the client." *Dell*, 669 F. 3d at 642. Although Class Counsel did not have a prior relationship with Plaintiff, Class Counsel has represented the class representative in this matter for nearly three years. During this period, Class Counsel worked with Plaintiff to obtain evidence in support of his case and provided him with updates, answers, and assurance. JE Decl. ¶ 14. Class Counsel also fielded numerous questions from potential class members. *E.g.* DH Decl. ¶ 34. Where counsel is

responsive to class members who need explanations, assistance, and assurances. *Burford*, 2012 WL 5471985, at *5 (citing *In re Bayou Sorrel*, 2006 WL 3230771, at *6). For these reasons, this factor weighs in favor of maintaining the benchmark.

## 12. <u>The Requested Fee is Less than Awards in Similar Cases</u>

The twelfth *Johnson* factor is the "awards in similar cases." *Dell*, 669 F. 3d at 642. "The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit." *Johnson*, 488 F. 2d at 719. "Courts often look at fees awarded in comparable cases to determine if the fee requested is reasonable." *DeHoyos*, 240 F.R.D. at 333 (citing *Johnson*, 488 F. 2d at 719).

Attorneys' fees awarded under the "percentage of recovery" method are generally between 20% and 30% of the fund. *Manual for Complex Litig.* § 14.121. A review of similar precedent indicates that an award of 25.884% is well within or even below the usual range. *See*, *Jenkins v. Trustmark Nat. Bank,* 300 F.R.D. 291, 311 (S.D. Miss. 2014) (one-third of $4 million settlement fund); *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 729 (E.D. La. 2008) ("it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third"); *In re Combustion*, 968 F. Supp. 1116, 1156 (W.D. La. 1997) (awarding 36% of $127,396,000).

Class Counsel has attached a table of additional TCPA cases from around the country that awarded percentages well above what Class Counsel is now requesting. Appendix A. It reflects that courts frequently award attorneys' fees greater than 25.884% of the settlement fund in TCPA cases. Accordingly, awarding attorneys' fees of 25.884% of the cash fund here would be lower than fee awards in other class actions and TCPA litigation in this Circuit and around the country.

Finally, to further highlight the reasonableness of their fee request, in *Hooker v. Sirius XM Radio, Inc.*, No. 4:13-CV-003, 2017 WL 4484258 (E.D. Va. 2017), claimants could choose

between a cash payment from a $35 million fund or three months of a free basic radio package valued at $62.97 per class member. Given the additional value afforded to class members by the free service option, the Court awarded attorneys' fees of $12.25 million, equaling 35% of the value of the $35 million cash fund (this sum included a 10% "bonus" to compensate counsel for the nonmonetary benefits secured for class members). *Hooker*, 2017 WL 4484258, at *5.

Here, Class Counsel has secured a better service package for claimants, and the Settlement requires substantial changes to Sirius XM's business practices that benefit not only class members but also the general public; therefore, Class Counsel is arguably entitled to a higher "bonus" percentage. Nonetheless, applying the logic set forth by the court in *Hooker*, a reasonable award for Class Counsel is 35% of the value of the $25 million cash fund or $8.75 million. However, Class counsel is only seeking $6,471,000.00. Therefore, a fee of 25.884% is less than what is typical for TCPA cases in this Circuit and is less than the 35% fee award granted in *Hooker*. Therefore, this factor weighs in favor of the requested award.

### 13. <u>The Court Should Award the Requested Award</u>

The final step in applying the percentage method is to determine whether the Court should adjust the benchmark in light of the *Johnson* factors. Each of the twelve *Johnson* factors supports the requested award of attorneys' fees or is neutral; none of the factors supports a negative adjustment of the benchmark percentage. Therefore, the resulting fee award under the percentage method, with no need for a *Johnson* factors adjustment, is 25.884% of the cash fund (equaling 20% of the value of the total settlement), or $6,471,000.00.

Alternatively, if the Court sets a benchmark below 25.884%, which it should not, the benchmark should be adjusted upward to 25.884% because many, if not all, of the *Johnson* factors, support such an increase. *See*, e.g., *Braud*, 2010 WL 3283398, at *10 (setting initial benchmark of

30% and adjusting upward after conducting the *Johnson* analysis for a total fee percentage of 37%); *In re Pool Products*, 2015 WL 4528880, at *23 (setting the initial benchmark at 27% and adjusting upward to one-third requested by counsel when adding costs to common fund).

### E. <u>Reimbursement of Expenses</u>

Class Counsel request reimbursement of all unreimbursed litigation costs and expenses incurred during this litigation, currently totaling $137,667.22. SG Decl. ¶ 36; JE Decl. ¶ 47; DH Decl. ¶ 49; HT Decl. ¶ 25; DW Decl. ¶ 18. The requested sum represents specific and necessary out-of-pocket expenses incurred while prosecuting and settling the litigation. *Id.*

Expenses and administrative costs expended by class counsel are recoverable in a common fund class action. *Billitteri*, 2011 WL 3585983; *Klein*, 705 F. Supp. 2d at 682; *Schwartz*, 2005 WL 3148350. The requested sum represents specific out-of-pocket expenses incurred while prosecuting and settling the litigation and includes expert fees, data storage, mediator fees, travel costs, computer research, document processing, and necessary administrative expenses. SG Decl. ¶ 36; JE Decl. ¶ 47; DH Decl. ¶ 49; HT Decl. ¶ 25; DW Decl. ¶ 18. Attorneys typically bill these expenses to paying clients. *Schwartz*, 2005 WL 3148350 (reimbursing expenses such as "expert fees, transportation, meals and lodging, in-house and outsourced photocopying, computerized and on-line research, court reporting fees and deposition transcripts, telephone and facsimile, overnight courier service, statutory notice publication, postage"); *see also DeHoyos*, 240 F.R.D. at 334-35 (costs typically billed to fee-paying clients are compensable in a class action, including "cost for filing fees, expert witnesses and consultants, photocopies, mailing and travel" as well as "costs for computerized factual and legal research"); *Billitteri,* 2011 WL 3585983 (same).

The fact that Class Counsel were willing to expend their own money, where reimbursement was entirely contingent on succeeding in this litigation, evidences that the expenditures were reasonable and necessary.

### F.  Service Award

Service awards are an efficient and productive way to encourage members of a class to become class representatives. *See, In re Catfish Antitrust Litigation*, 939 F. Supp. at 503-504.  *See also*, *Shaw,* 91 F. Supp. 2d at 973 (approving incentive awards of $25,000 to each of the two named plaintiffs); *Spicer v. Chi. Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (reviewing cases where incentive awards range from $5,000.00 to $100,000.00, and approving $10,000.00 to each named plaintiff).

Plaintiff acted as the lone class representative and attended numerous meetings with Class Counsel during the pendency of the lawsuit.  He and his wife also sat for lengthy depositions. JE Decl. ¶ 14.  Plaintiff played a significant role in achieving a substantial settlement that benefitted a large class of people. The requested service award of $10,000.00 is reasonable.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff prays that this Court: (1) award attorneys' fees in the amount of $6,471,000.00, which is twenty percent (20%) of the settlement value or twenty-five point eighteen percent (25.884%) of the cash fund, (2) approve reimbursement to Class Counsel of expenses in the amount of $137,667.22, and (3) approve a service award to the class representative, Thomas Buchanan, of $10,000.00.

Respectfully submitted,

**SIRI & GLIMSTAD LLP**

By:  _/s/ Mason A. Barney_ ___

    Aaron Siri, _admitted pro hac_
    Mason A. Barney, _admitted pro hac_
    200 Park Avenue, 17th Floor
    New York, NY  10166
    Telephone (212) 532-1091

**HUGHES ELLZEY, LLP**

W. Craft Hughes
Texas Bar No. 24046123
Jarrett L. Ellzey
Texas Bar No. 24040864
1105 Milford Street
Houston, TX 77006
Telephone (713) 322-6387
Facsimile (888) 995-3335

**TURNER LAW OFFICES, LLC**
Henry A. Turner, _admitted pro hac_
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia  30030
(404) 378-6274

**WERMAN SALAS P.C.,**
Douglas M. Werman, _admitted pro hac_
77 West Washington, Suite 1402
Chicago, IL  60602
(312) 419-1008

**LIEFF, CABRASER, HEIMAN & BERNSTEIN, LLP**
Jonathan D. Selbin, _admitted pro hac_
250 Hudson Street, 8th Floor
New York, NY  10013

(212) 355-9500

Daniel M. Hutchinson, *admitted pro hac*
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
(415) 956-1000


Local Counsel for Plaintiff:

Mark A. Alexander
5080 Spectrum, Suite 850E
Addison, TX  75001
(972) 364-9700


**COUNSEL FOR PLAINTIFF AND THE CLASS**

**Appendix A**
**Exemples of Attorneys' Fee Awards in TCPA Cases**

| Case Name | Citation | District | Date | Attorneys' Fee Award Amount |
|---|---|---|---|---|
| Holtzman v. CCH | 1:07-cv-7033, Dkt. No. 33 | N.D. Ill. | September 30, 2009 | awarding 33%, inclusive of costs |
| Locklear Elec., Inc. v. Norma L. Lay | 3:09-cv-00531, Dkt. No. 67 | S.D. Ill. | September 8, 2010 | awarding 33-1/3%, plus costs |
| CE Design Ltd. v. Cy's Crab House N., Inc. | 1:07-cv-5456, Dkt. No. 424 | N.D. Ill. | October 21, 2011 | awarding 33%, plus costs |
| AllianceOne Receivables Mgmt., Inc. | 3:08-cv-00248-JAH-WVG | S.D. Cal. | September 28, 2012 | awarding 30% of the TCPA settlement fund |
| Desai v. ADT Sec. Servs., Inc. | 1:11-cv-1925, Dkt. No. 243 | N.D. Ill. | June 21, 2013 | awarding 33%, inclusive of costs |
| Hanley v. Fifth Third Bank | 1:12-cv-01612, Dkt. No. 86 | N.D. Ill. | December 23, 2013 | awarding 33%, inclusive of costs |
| Martin v. Dun & Bradstreet, Inc. et al | 1:12-cv-00215, Dkt. No. 63 | N.D. Ill. | January 16, 2014 | awarding more than 33-1/3% |
| Vandervort v. Balboa Capital Corp. | 8 F. Supp. 3d 1200, 1210 | C.D. Cal. | March 27, 2014 | finding "a 33% award of fees and costs is warranted" |
| Cummings v Sallie Mae | 1:12-cv-9984, Dkt. No. 91 | N.D. Ill. | May 30, 2014 | awarding 33%, inclusive of costs |
| Ritchie v. Van Ru Credit Corp. | 2:12-CV-01714-PHX-SM, 2014 WL 3955268, at *6 | D. Ariz. | August 13, 2014 | awarding 28% of the settlement fund in TCPA class action |
| Hageman v. AT&T Mobility LLC, et al. | 1:13-cv-50, Dkt. No. 68 | D. Mont. | February 11, 2015 | awarding 33%, inclusive of costs |
| Guarisma v. ADCAHB Med. Coverages, Inc. | 13-cv-21016, Dkt. No. 95 | S.D. Fla. | June 24, 2015 | awarding a fee of 33-1/3%, plus costs |
| Martin v. JTH Tax, Inc. | 13-6923 | | September 16, 2015 | 38% of TCPA class settlement fund exclusive of expenses, administration costs, and service award |
| Allen v. JPMorgan Chase Bank, N.A. | 13-cv-8285, Dkt. No. 93 | N.D. Ill. | October 21, 2015 | awarding 33%, inclusive of costs |
| Kolinek v. Walgreen Co. | 311 F.R.D. 483, 501 | N.D. Ill. | November 23, 2015 | 36% of TCPA class settlement fund exclusive of notice/admin costs and service award |
| Soto v. The Gallup Org. | 13-cv-61747, Dkt. No. 95 | S.D. Fla. | November 24, 2015 | awarding a fee of 33-1/3%, inclusive of costs |
| Prater v. Medicredit, Inc. | 4:14-CV-00159-ERW, 2015 WL 8331602, at *3 | E.D. Mo. | December 7, 2015 | awarding 33-1/3%, plus costs |
| Lofton v. Verizon Wireless (VAW) LLC | C 13-05665 YGR, 2016 WL 7985253, at *1 | N.D. Cal. | May 27, 2016 | awarding 30% of the common fund in TCPA class action |
| Mey v. Interstate National Dealer Services, Inc. | 13-cv-01846, Dkt. No. 173 | N.D. Ga. | June 8, 2016 | awarding a fee of 33-1/3%, plus costs |
| Ikuseghan v. Multicare Health Sys. | C14-5539 BHS, 2016 WL 4363198, at *2 | W.D. Wash. | August 16, 2016 | awarding 30% in TCPA class settlement and "find[ing] that 30% of the settlement fund represents a fair and reasonable fee award |
| In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig. | 11-md-02295, 2017 WL 10777695, at *1 | S.D. Cal. | January 25, 2017 | approving fee request for 27% of the common fund |
| Family Medicine Pharm., LLC v Trxade Group, Inc. | CV 15-0590-KD-B, 2017 WL 1042079, at *11 | S.D. Ala. | March 17, 2017 | awarding "25% in view of the limited recovery for the Class Members because of Defendants' limited financial resources" |
| Dakota Med., Inc. v. RehabCare Grp., Inc | 114-cv-02081, 2017 WL 4180497, at *9 | E.D. Cal. | September 21, 2017 | approving "an award of one-third of the $25 million settlement fund, or $8,333,333" |
| Abante Rooter and Plumbing, Inc. v. Birch Communications, Inc. | 1:15-cv-03562, Dkt. No. 96 | N.D. Ga. | December 14, 2017 | awarding a fee of 33-1/3%, plus costs |
| Vergara v. Uber Techs., Inc. | 15–6942 (Dkt. 111 at 3–4) | N.D. Ill. | February 26, 2018 | awarding 36% of first $10 million of TCPA class settlement fund exclusive of expenses, administration costs, and service award |
| Gergetz v. Telenav, Inc. | 16-CV-04261-BLF, 2018 WL 4691169, at *7 | N.D. Cal. | September 27, 2018 | awarding 30% of settlement fund in TCPA class settlement |
| Cabiness v. Educ. Fin. Sols., LLC | 16-CV-01109-JST, 2019 WL 1369929, at *8 | N.D. Cal. | March 26, 2019 | awarding 30% of the settlement fund in TCPA class action |

## <u>CERTIFICATE OF SERVICE</u>

      I certify a copy of the foregoing document was filed in accordance with the protocols for e-filing in the United States District Court for the Northern District of Texas, Dallas Division, on <u>January 14, 2020,</u> and served on all counsel of record who have consented to electronic notification *via* CM/ECF.

*/s/ Mason A. Barney*
Mason A. Barney
